**CHIMICLES & TIKELLIS LLP**
Nicholas E. Chimicles, Pa. Id. No. 17928
Kimberly Donaldson Smith, Pa. Id. No. 84116
Benjamin F. Johns, Pa. Id. No. 201373
Christina Donato Saler, Pa. Id. No. 92017
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone (610) 642-8500
Fax (610) 649-3633

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ORRSTOWN FINANCIAL SERVICES, INC., ORRSTOWN BANK, ANTHONY F. CEDDIA, JEFFREY W. COY, MARK K. KELLER, ANDREA PUGH, THOMAS R. QUINN, JR., GREGORY A. ROSENBERRY, KENNETH R. SHOEMAKER, GLENN W. SNOKE, JOHN S. WARD, BRADLEY S. EVERLY, JOEL R. ZULLINGER, JEFFREY W. EMBLY, SMITH ELLIOTT KEARNS & COMPANY, LLC, SANDLER O'NEILL & PARTNERS L.P., and JANNEY MONTGOMERY SCOTT LLC, <br><br> Defendants. | Civil Action No. 1:12-cv-00993 <br><br><br> **PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO AMEND** <br><br> **ECF** |
| _____ | |

# TABLE OF CONTENTS

I.    PLAINTIFF'S MOTION TO AMEND SHOULD BE GRANTED. ..............1

II.   ARGUMENT. ...................................................................................................3

   A. Defendants' SOX Certifications and Statements About the
      Effectiveness of the Company's Internal Controls Are Actionable
      Under the Federal Securities Laws. .................................................................3

      1. SOX Certifications are not mere opinions. ..........................................3

      2. Statements about the effectiveness of internal controls
         are material go well beyond asserting mere
         mismanagement. ...................................................................................6

   B. Plaintiff Has Adequately Pled the Elements of its Federal Securities
      Claims, Including Scienter. ...........................................................................9

III.  CONCLUSION. ...........................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
  505 F. Supp. 2d 662 (D. Col. Jan. 2, 2007)................................................... 8

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011) ......................................................9, 10

*Craftmatic Sec. Litig. v. Kraftsow*,
  890 F.2d 628 (3d Cir. Pa. 1989). ...............................................................7, 9

*Dobina v. Weatherford Int'l Ltd., et al.*,
  909 F. Supp. 2d 228 (S.D.N.Y. 2012) ........................................................7, 9

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
  285 F. Supp. 576 (S.D. Tex. 2003)................................................................ 6

*In re First Marblehead Corp. Secs. Litig.*,
  639 F. Supp. 2d 145 (D. Mass. 2009)............................................................ 8

*Institutional Investors Grp. v. Avaya Inc.*,
  564 F.3d 242 (3d Cir. 2009) .........................................................................13

*In re New Century*,
  588 F. Supp. 2d 1206 (C.D. Cal. 2008)..........................................................6

*Nathanson v. Polycom, Inc.*,
  2015 U.S. Dist. LEXIS 44292 (N.D. Cal. Apr. 3, 2015)................................ 8

*North Port Firefighters' Pension-Local Option Plan v.
  Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740 (M.D. Tenn. 2013) .................5

*In re Petrobras Sec. Litig.*,
  2015 U.S. Dist. LEXIS 99322 (S.D.N.Y. July 30, 2015).............................. 6

*In re PMA Capital Corp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 15696 (E.D. Pa. July 27, 2005) ................................ 6

*Santa Fe Indus., Inc. v. Green*,
　　430 U.S. 462 (1977)..........................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
　　551 U.S. 308 (2007)........................................................................................13

*In re Wilmington Trust Sec. Litig.*,
　　29 F. Supp. 3d 432 (D. Del. 2014) ................................................... 10, 13, 14

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
　　2015 U.S. Dist. LEXIS 77495 (E.D. Pa. June 16, 2015) ..............................15

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a)...................................................................................................1

L.R. 15.1......................................................................................................................1

Pursuant to Fed. R. Civ. P. 15(a), L.R. 15.1, and the Court's June 22, 2015 Opinion and Order on Defendants' Motions to Dismiss (Dkt. Nos. 92-93, "Opinion"), Plaintiff submits this Reply to Defendants' Joint Response (Dkt. No. 97) to Plaintiff's Motion for Leave to file its Second Amended Complaint ("SAC" or "¶_"), Ex. A to Plaintiff's Motion), and its Memorandum of Law submitted in support thereof ("MOL") (Dkt. Nos. 95-96).

## I.     PLAINTIFF'S MOTION TO AMEND SHOULD BE GRANTED.

The SAC uses facts derived from the Regulators' Enforcement Actions, the CWs, Defendants' statements and the SEC's ongoing investigation to sufficiently plead violations of the federal securities laws. Plaintiff pleads how, during the Class Period, Defendants made material misrepresentations and omitted material facts about the effectiveness of Orrstown's internal controls. Plaintiff pleads how, during the Class Period, Orrstown had deficient, ineffective and failed internal controls that materially impacted Orrstown's operations and its financial and operational disclosures. And, with respect to the Exchange Act claims, Plaintiff pleads how Defendants were reckless or knowingly issued false and misleading statements, and concealed material information, about Orrstown's internal controls and its financial condition throughout the Class Period.  And, perhaps most fundamentally, the SAC sets forth a factual framework that has the CWs: (a) corroborating, based on their personal observations and involvement, the

1

Enforcement Actions' detailed findings of materially inadequate internal controls; and, (b) establishing that those internal control deficiencies, that had undermined Orrstown's value, operations and financial condition, existed prior to and throughout the Class Period.  SAC ¶¶3-11, 62-73, 84-160, 174-193, 234-278. The SAC sufficiently pleads violations of law that, at this stage, warrant the granting of Plaintiff's Motion.

In response, Defendants take broad swipes at the SAC and Motion, often without legal support, or without responding to Plaintiffs' cited persuasive, legal precedent. Defendants trivialize federal imperatives governing the development, implementation and required disclosures concerning internal controls.   Also, Defendants' dismissive attitude about the critical importance of internal controls is belied by the substance and breadth of the Enforcement Actions, which begin with an indictment of one of the most obvious and material internal control failures at Orrstown – the competency of its senior management, key members of which "resigned" in the wake of the Enforcement Actions. These key managers, including named Defendants, had direct responsibility prior to and during the Class Period for (among other things) loan origination, documentation and quality, as well as reliability of financial reporting and compliance with applicable banking laws and regulations.  The SAC should be allowed because it effectively links each internal control failure identified in the Enforcement Actions to well-pleaded facts about

conduct and conditions at Orrstown during the Class Period about which the shareholders were misled.

## II.  ARGUMENT.

### A. Defendants' SOX Certifications and Statements About the Effectiveness of the Company's Internal Controls Are Actionable Under the Federal Securities Laws.

#### 1.  SOX Certifications are not mere opinions.

In 2002, Congress enacted the Sarbanes-Oxley Act in reaction to a series of high-profile accounting frauds that shook the confidence of investors in the public markets.  *See* SAC ¶¶ 172-173.   Aside from equipping the SEC with a new arsenal of enforcement tools, Sarbanes-Oxley required that "management be held responsible for the financial representations of their companies." *Senate Comm. on Banking, Housing, & Urban Affairs Public Company Accounting Reform and Investor Protection Act of 2002*, S. Rep. No. 107-205, at 26 (2002).  Section 302 of the Act mandates that the signing officers certify that they are "responsible for establishing and maintaining internal controls" and "have designed such internal controls to ensure that material information relating to the [company] and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the periodic reports are being prepared." 15 U.S.C. § 7241(a)(4) (B). The officers must "have evaluated the effectiveness of the [company's] internal controls as of a date within 90 days prior

to the report" and "have presented in the report their conclusions about the effectiveness of their internal controls based on their evaluation as of that date." *Id.* at § 7241(a)(4)(C) and (D).   The purpose behind management "establishing," "designing," "maintaining," "evaluating" and "assessing" its internal control system is so that "chief executive officers and chief financial officers of public companies [will] certify the appropriateness of their company's periodic reports and to ascertain that the financial reports fairly reflect the operations and conditions of their companies." S. Rep. No. 107-205, at 64 (2002).

Despite this legislative history and clear intent, Defendants assert – without any legal authority – that SOX Certifications are statements of opinion that can be easily disregarded and immaterial. *See* Response at 8.   Even more brazen is Defendants' assertion that they gave shareholders warnings through cautionary language that "'made clear the real tentativeness' of management's assessments about internal controls." *Id.*   Internal control disclosures are not games of cat-and-mouse or "hide the ball."   The language cited by Defendants is neither a warning nor cautionary. Response at 8-9.   It is nothing more than a hypothetical that conveys no sense of the actual and palpable problems that existed in Orrstown's internal controls.

Moreover, Sarbanes-Oxley requires that internal control assessments not be tentative, nor rendered meaningless by vague and non-specific statements. *See,*

*e.g., North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, 780-781 (M.D. Tenn. 2013); *see also* S. Rep. No. 107-205, at 25-26 (2002).   Congress intended for SOX Certifications to provide assurances to the investing public that a company has engaged in an extensive and thorough examination of its internal controls pursuant to the criteria established in the Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"), and that the certifying officers confirm that there are no material misstatements or omissions in the periodic 10-Q or 10-K filings concerning the company's internal controls.   *See* SAC ¶¶ 172-173.   The falsity of SOX Certifications is objectively verifiable by applying the COSO standards.   SOX Certifications, therefore, fall within the category of "hard information" that is not a mere "matter of opinion." *North Port Firefighters' Pension-Local Option Plan*, 929 F. Supp. 2d at 780-781 (denying motion to dismiss and finding, *inter alia*, defendants' statements about the adequacy of internal controls in SOX certifications to be hard information to which the Safe Harbor provisions of the PSLRA do not apply).

The Company and Defendants Quinn and Embly made definitive representations to investors about the adequacy of Orrstown's internal controls. *See, e.g.,* SAC ¶¶170-178.   The shareholders were told that, unequivocally, Defendants had established internal control processes and procedures, that such

5

processes and procedures were assessed so as to determine the effectiveness of

the Company's internal control structure and financial reporting procedures, and,

all material weaknesses in the Company's internal controls were reported. *Id.*

Moreover, the assessment was done using the criteria established by COSO. The

challenged statements are neither opinions nor "tentative". [1]

### 2. Statements about the effectiveness of internal controls are material and go well beyond asserting mere mismanagement.

Courts within and outside the Third Circuit recognize that misstatements in

SOX Certifications and public filings about internal controls are material. *See,*

*e.g., In re PMA Capital Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 15696, *31-33

(E.D. Pa. July 27, 2005); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 285 F.

Supp. 576, 588 n.7 (S.D. Tex. 2003) (stating Congress intended SOX Certifications

to provide investors with assurances of "a materially accurate and complete picture

of an issuer's financial condition"); *In re New Century*, 588 F. Supp. 2d 1206,

1226-27 (C.D. Cal. 2008); *Dobina v. Weatherford Int'l Ltd., et al.*, 909 F. Supp. 2d

228, 238-239 (S.D.N.Y. 2012).   Despite this authority, Defendants distort the

---

[1] Even as opinion statements, Plaintiff has sufficiently alleged that Defendants Quinn and Everly knew or could have known at the time that they signed the SOX certifications that Orrstown's internal controls did not satisfy the criteria of COSO and were ineffective. *See* MOL at 14-16; *see also In re Petrobras Sec. Litig.*, 2015 U.S. Dist. LEXIS 99322, *29-30 (S.D.N.Y. July 30, 2015) (finding it reasonable to infer that the Company disbelieved its statements about the effectiveness of its internal controls because plaintiffs alleged that at the time management was making these statements it was aware of the extensive corruption in the company's procurement activities).

holding in *Santa Fe Indus., Inc. v. Green* and its progeny to argue that Orrstown's SOX Certifications and other alleged actionable statements about the effectiveness of Orrstown's internal controls are nothing more than inactionable statements pertaining to corporate mismanagement.

To be clear, the Supreme Court has held that even acts of corporate mismanagement will violate § 10(b) or Rule 10b-5 *if there is deception, misrepresentation or nondisclosure*. *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977).[2]  The Third Circuit has observed that, while the "line between a material nondisclosure and the nondisclosure of mere mismanagement is often difficult to draw", the "'crucial difference' is whether there was misrepresentation or omission in the flow of material information…" *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 639 (3d Cir. Pa. 1989).

The cases Defendants rely upon are wholly inapposite. *See, e.g.*, *Nathanson v. Polycom, Inc.*, 2015 U.S. Dist. LEXIS 44292, *20-22 (N.D. Cal. Apr. 3, 2015) (finding statements about quality of internal controls inactionable  because plaintiff did not plead that the internal controls were "actually inadequate" nor that

---

[2]     In *Santa Fe*, the minority shareholders alleged that they were offered an inadequate share price in the short-form merger governed by Delaware law. *Id*. The Supreme Court reasoned that the objective of the securities laws is to ensure full and fair disclosure, so once the minority shareholders received full disclosure, "the fairness of the transaction is beyond the scope of the Act" since Congress did not intend for the securities laws to remedy breaches of fiduciary duty from corporate mismanagement. *Santa Fe Indus., Inc.*, 430 U.S. at 479.

defendants "sought to deceive investors about the quality of those controls"); *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662 (D. Col. 2007) (finding the company's omission of the former CEO's undocumented expenses immaterial because plaintiff failed to allege that the purported deficient internal controls over the reimbursement of an officer's expenses "led to Red Robin's earning projections to be inaccurate"). Defendant also relies upon *In re First Marblehead Corp. Secs. Litig.*, 639 F. Supp. 2d 145 (D. Mass. 2009). In *First Marblehead*, the company's SOX Certifications were not at issue and the court found that plaintiffs "fail[ed] to identify a false statement regarding First Marblehead's internal controls or specify which internal controls were inadequate." *Id*. at 161-62. Here, Plaintiff have set forth each of the alleged actionable statements concerning Orrstown's internal controls and has particularly alleged the inadequacies of Orrstown's internal controls with respect to quality of management, underwriting, risk management and financial reporting. MOL at 5-6.

The legal authority set forth in the MOL is directly on-point and plainly holds that false and misleading statements about the effectiveness of a Company's internal controls are material and actionable under federal law. *See* MOL at 16-21 (discussing *In re Genworth Fin. Inc. Sec. Litig.*; *Dobina v. Weatherford Int'l Ltd., et al.*; and *In re Bear Stearns Cos., Inc. Sec. Derivative, & ERISA Litig.*). Tellingly, Defendants ignore this legal authority. Yet, in each of these cases, the SOX

Certifications and management's statements about internal controls were found to be material. *Id*. Indeed, "disclosures mandated by law are presumably material." *Craftmatic Sec. Litig.*, 890 F.2d at 641 n.17; *see also* 15 USCS § 7241 (a) ("The Commission shall, by rule, require, for each company filing periodic reports . . . that the principal executive officer or officers and the principal financial officer or officers, or persons performing similar functions, certify in each annual or quarterly report filed or submitted . . . that" they have, among other things, "established," "designed," and "evaluated the effectiveness" of the company's internal controls).

The materiality of the SOX Certifications and the other alleged actionable statements concerning internal controls is irrefutable.  *See also*, MOL at 11-21. Defendants' Response does not support a denial of Plaintiff's Motion.

### B. Plaintiff Has Adequately Pled the Elements of its Federal Securities Claims, Including Scienter.

As detailed in the SAC and Plaintiff's MOL, the Enforcement Actions and the CWs who were involved in credit analysis at the Bank in 2009 through 2010, establish that the internal control failures existed during the Class Period. Reliance on this type of evidence to establish an inference of scienter is permissible. *See e.g., In re Wilmington Trust Sec. Litig.*, 29 F. Supp. 3d 432, 448-449 (D. Del. 2014) (considering Federal Reserve's MOU and Department of Justice's Criminal Information in scienter analysis) see also *In re Bear Stearns Cos., Inc. Sec.,*

*Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 471 (S.D.N.Y. 2011) (considering SEC "OIG Report" issued after the class period in scienter analysis).

Defendants assert that the allegations based upon the Enforcement Actions amount to pleading fraud by hindsight. This argument fails. As detailed in the MOL, the Enforcement Actions, *i.e.*, the Written Agreement and Consent Order, provide a detailed summary of the Regulators' required remedial action with respect to Orrstown's management and banking practices. This evidence confirms that Orrstown had woefully ineffective, and, in some areas of credit management, nonexistent, internal controls.

The law does not support Defendants' attempt to marginalize the relevance and import of the Enforcement Actions. The Federal Reserve and Department of Banking only institute Written Agreements and Consent Orders, respectively, when the condition of a bank is "seriously" impaired. The Joint Examination, as detailed in the MOL and exhibits thereto, required a complete revamping of Orrstown's internal controls. The reasonable inference is not, as Defendants essentially posit, that all problems materialized on March 22, 2013, the day before the Company's public announcement about the Joint Examination (*see,* Defs' Response at 3). Rather, the opposite inference is the only reasonable one – that the internal control failures and deficiencies existed prior to and during the Class Period (and, were known or recklessly disregarded), for at least the following

reasons:

- the timing and substance of, and remedies required by, the Enforcement Actions;

- the statements of the CWs about their first-hand and contemporaneous observations about the failures of Orrstown's processes and procedures that rendered the Company's internal controls materially weak and ineffective;

- that key senior management who resigned in the wake of the Enforcement Actions were in place at all relevant times during the Class Period, including Defendant Everly who was the Company's EVP, CEO and CFO until his resignation in 2012 (SAC ¶¶ 33, 43, 103);

- beginning in 2009 and throughout the Class Period, there was no reported material change to the Company's internal controls processes or procedures (in other words, Defendants do not and cannot identify any change in the Company's internal control process in late 2011 or post-Class Period that could have been the only focus of the Enforcement Actions); and,

- that after May 2010, Orrstown's SEC filings no longer stated that: "Management is not aware of any current recommendations by

11

regulatory authorities which, if implemented, would have a material effect on the Corporation's liquidity, capital resources or operations." SAC ¶ 202.

Plaintiff's reliance on the Regulators' Enforcement Actions is not pleading fraud by hindsight.  The SAC utilizes the Enforcement Actions to (i) extract the Regulators' conclusions concerning the inept and non-existent internal controls that persisted at the Bank for years; (ii) delineate each of the corrective actions the Regulators required of the Bank; and (iii) then make the temporal connection between the information provided by the Enforcement Actions and the CWs to establish that the Bank's operational and control failures were occurring in 2009 and throughout the Class Period.  *See* MOL at 14-16; *see also* SAC ¶¶ 92-151.

The Federal Reserve has the responsibility and authority to require bank directors to correct deficiencies found in the bank.  *Federal Reserve Manual*, § 5000.1, Duties and Responsibilities of Directors (April 2013). The Federal Reserve directs banks to take corrective action through formal or supervisory actions, "depending on the severity of the problem." *Id*.  Formal actions include cease-and-desist orders and written agreements, and these are only "exercised when banks have serious problems." *Id*.  "For less serious problems, the Federal Reserve issues informal actions such as a 'memorandum of understanding ["MOU"].'" *Id*. After concluding the Joint Investigation that began in late 2010 and concluded in

March of 2012, the Federal Reserve issued a "formal action" – the Written Agreement. The Pennsylvania Department of Banking's Consent Order is even stronger, commanding the Bank to stop "violations of law or regulations" and carries with it the possibility of judicial enforcement. *See,* SAC Ex. A *and* Ex. B; *see also* MOL at Exs. A-B.

To establish scienter, Plaintiff is not required to prove "intentional fraud" as a showing of recklessness will suffice. *See Institutional Investors Grp. v. Avaya Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). In accepting "all factual allegations as true," *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 222-23 (2007), the Third Circuit reminds,

> It is the composite picture, not the isolated components, that judges must evaluate in the last instance. In assessing the allegations holistically as required by *Tellabs*, **the federal courts certainly need not close their eyes to circumstances that are probative to scienter viewed with a practical and common-sense perspective.**

*Avaya*, 564 F.3d at 272-73 (emphasis added). Following these standards, an inference of scienter can be drawn from Plaintiff's SAC such that amendment would not be futile.

*In re Wilmington Trust Securities Litigation* is instructive in evaluating the impact of a regulatory enforcement action on a scienter analysis. 29 F. Supp. 3d 432, 448-449 (D. Del. 2014). *Wilmington Trust* involves similar alleged wrongdoing and the court found that plaintiffs sufficiently alleged facts giving rise

to an inference of scienter for alleged actionable statements, including the allegedly false and misleading SOX Certifications.  The *Wilmington Trust* court credited plaintiff's allegations that were derived from the Federal Reserve's MOU with the bank, the Department of Justice's Criminal Information[3] directed at one of the directors, and information provided by confidential witnesses.[4]   *Id*.   The *Wilmington Trust* court did not discount the Criminal Information or the MOU even though they were issued after most of the alleged actionable statements were made.  *Id*.

Plaintiff maintains, at this procedural juncture where discovery is stayed, that the Enforcement Actions are probative documents that support an inference of scienter.  Both the Written Agreement and Consent Order are blueprints of the systemic failures that occurred at the Bank, *i.e.*, the "serious problems" that persisted prior to and during the Class Period, over which the Company and named

---

[3]      A criminal case formally begins with an indictment or information, which is a formal accusation that a person committed a crime. http://www.fjc.gov/federal/courts.nsf/autoframe?OpenForm&nav=menu4b&page= /federal/courts.nsf/page/221?opendocument

[4]      The *Wilmington Trust* confidential witnesses confirmed the contents of the MOU and also provided statements that reflected the ineffective internal controls. *Wilmington Trust*, 29 F. Supp. 3d at 448-449.  Again, in drawing the parallels between *Wilmington Trust* and this case, months after the Regulators began formally investigating Orrstown, Orrstown – like Wilmington Trust – retained Treliant Risk Advisors to risk rate its commercial loans and handle other credit administration functions.  SAC ¶ 157(a).  The Court must give due weight to the allegations about the Joint Examination and Enforcement Actions (including the Written Agreement which, only recently was downgraded to an MOU).

Defendants were directly responsible and involved. Just as in *Wilmington Trust, supra*, and *Bear Stearns* (see MOL at 20), given the nature and scope of the Enforcement Actions, they cannot be dispensed with just because they were *made public* at the end of the Class Period.

An inference of scienter is "strong" when it is as likely as any other inference. *Tellabs*, 551 U.S. at 325. Moreover, "when the allegations of fraud relate to Defendants' core business" as they do here, courts will find this supports an inference of scienter. *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, 2015 U.S. Dist. LEXIS 77495, *44 (E.D. Pa. June 16, 2015) (citations omitted) (denying motion to dismiss). Given the totality of Plaintiff's allegations – including the Enforcement Actions, CWs' corroborating statements, and the SEC's current investigation that is focused on the very matters at the heart of the SAC – a likely inference is that Defendants either knew or recklessly disregarded the lack of effective internal controls over underwriting, risk management and financial reporting that persisted throughout the Class Period.

Finally, Defendants make a series of arguments for which they have no support. ***First***, Defendants assert that the Regulators began their Joint Investigation in March 2011, but Plaintiff has pled that the Regulators were on-site at Orrstown much earlier, in late 2010. SAC ¶ 92. This timeframe is further corroborated by the removal, after May 2010, of the following statement from Orrstown's SEC

filings: "Management is not aware of any current recommendations by regulatory authorities which, if implemented, would have a material effect on the Corporation's liquidity, capital resources or operations."  SAC ¶ 202.  The reasonable inference is that the statement could no longer be made in Orrstown's Form 10-Q quarterly SEC filings, because, just mere weeks after the IPO, the regulatory authorities were making such recommendations.  **Second**, Defendants state that it is <u>not</u> unusual for Regulators to conduct a joint examination of a bank. As Defendants are well aware, there is distinction between routine quarterly examinations that federal and state regulators simultaneously conduct and the "formal" investigation that the Regulators conducted to stress test every aspect of Orrstown's operations.  **Third**, what Defendants believe the SEC believes about its investigation of Orrstown is speculative and irrelevant; the SAC recites from the SEC's subpoena, highlighting that the SEC is zeroed in on the very same internal control failures as is the SAC.  *See* SAC ¶¶ 158-160.  **Lastly**, Defendants are wrong that the SAC "does not provide any new insights or information from the CWs." To address the points contained in the Order, the SAC ascribes a time frame for every event or occurrence that the CWs described, includes additional information concerning CW#1 and CW#3's involvement with the credit analyses on each of the lending relationships that Plaintiff specifically identifies, and ties the CW's statements to the Enforcement Actions.  *See* SAC ¶¶ 141-151.

16

## III.   CONCLUSION.

For all the foregoing reasons and for those set forth in Plaintiffs' opening Memorandum of Law in Support of its Motion, Plaintiff respectfully requests that the court grant its Motion.

Dated:  August 21, 2015                    Respectfully submitted,

                                           CHIMICLES & TIKELLIS LLP

                                           _/s/ Kimberly Donaldson Smith_
                                           Nicholas E. Chimicles
                                           Kimberly Donaldson Smith (PA 84116)
                                           Benjamin F. Johns
                                           Christina Donato Saler
                                           One Haverford Centre
                                           361 West Lancaster Avenue
                                           Haverford, PA 19041
                                           Telephone: (610) 642-8500
                                           Fax: (610) 649-3633
                                           nick@chimicles.com
                                           kimdonaldsonsmith@chimicles.com
                                           cdsaler@chimicles.com
                                           bfj@chimicles.com

                                           _Attorneys for Plaintiff_

## <u>L.R. 7.8 CERTIFICATE</u>

I, Kimberly M Donaldson Smith, a specially admitted member of the bar of this Court, hereby certify that the word count function of my computer indicates that *Plaintiff's Reply in Further Support of Plaintiff's Motion for Leave to Amend* contains 3,733 words.

Dated: August 21, 2015                    Respectfully submitted,

*/s/ Kimberly M. Donaldson Smith*
Kimberly Donaldson Smith (PA 84116)
kmd@chimicles.com
Chimicles & Tikellis LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone: (610) 642-8500
Fax: (610) 649-3633

## CERTIFICATE OF SERVICE

I, Kimberly M. Donaldson Smith, a specially admitted member of the bar of this Court, hereby certify that true and correct copies of *Plaintiff's Reply In Further Support of Its Motion For Leave To Amend* has been electronically filed and served on all Defendants' counsel, via the Court's ECF system, this 21st day of August, 2015, as follows:

David J. Creagan
David E. Edwards
**White and Williams, LLP**
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
215-864-7032

*Counsel for the Orrstown Defendants*

Jonathan S. Ziss
Seth L. Laver
**Goldberg Segalla**
1700 Market Street, Suite 1418
Philadelphia, PA 19103
267-519-6800

*Counsel for Smith Elliott Kearns & Co.*

Thomas G. Wilkinson, Jr.
Jeffrey G. Weil
Jeffrey M. Monhait
**Cozen O'Connor**
1900 Market Street
Philadelphia, PA 19103
215-665-5582

Bradley R. Wilson
Adam D. Gold
**Wachtell Lipton Rosen & Katz**
51 West 52nd Street
New York, New York 10019
212-403-1000

*Counsel for Sandler O'Neill and Janney*

By:  _/s/ Kimberly M. Donaldson Smith_____
      Kimberly M. Donaldson Smith (PA 84116)