**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SOUTHEASTERN PENNSYLVANIA** : <br> **TRANSPORTATION AUTHORITY,** : <br>     Plaintiffs : <br> :     **No. 1:12-cv-00993** <br> v. : <br> :     (Judge Kane) <br> **ORRSTOWN FINANCIAL SERVICES,** : <br> **INC., et al.** : <br>     Defendants | |

**MEMORANDUM**

Before the Court is Plaintiff's Motion for Leave to Amend in Accordance with L.R. 15.1 (Doc. No. 95). For the reasons that follow, the Court will grant Plaintiff's motion.

**I.     BACKGROUND**

The extensive factual and legal background of this action was set forth in the Court's June 22, 2015 Memorandum and Order (Doc. No. 92) (the "Opinion"), granting Defendants' motions to dismiss, and will not be repeated here. In its Opinion, the Court dismissed Plaintiff's Securities and Exchange Act claims against all Defendants without prejudice for failure to state a claim upon which relief could be granted, and provided Plaintiff with the opportunity to file a motion for leave to amend its amended complaint, accompanied by the proposed amendment, within thirty (30) days. On July 22, 2015, Plaintiff filed the instant Motion for Leave to Amend in Accordance with L.R. 15.1 (Doc. No. 95), and its Memorandum of Law in Support of its Motion for Leave to Amend (Doc. No. 96). Defendants subsequently filed a Joint Response to SEPTA's Motion for Leave to Amend (Doc. No. 97), and Plaintiff then filed its Reply in Further Support of its Motion for Leave to Amend (Doc. No. 98). Accordingly, the motion is ripe for disposition.

1

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs Plaintiff's request for amendment here, and provides, in pertinent part, that after amending a complaint once as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has stated, "the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178, 182 (1962).

Grounds potentially justifying denial of leave to amend are "undue delay, bad faith, dilatory motive, prejudice, and futility." Id.; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002); In re Burlington, 114 F.3d at 1434. In assessing "futility," a district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). In re Burlington, 114 F.3d at 1434; 3 Moore's Federal Practice, § 15.15[3] at 15-55 to 15-61 (3d ed. 2013).

The propriety of permitting subsequent amendments to try to cure identified pleading deficiencies in shareholder plaintiff cases like this one was addressed by the Third Circuit in Cal. Pub. Emples' Ret. Sys. v. Chubb Corp., 394 F.3d 126 (3d Cir. 2004) ("CALPERS"). In that case, the Court discussed the interplay between Federal Rule of Civil Procedure 15(a)'s

provision that leave "shall be freely given" with the Private Securities Litigation Reform Act ("PSLRA")'s "unique impact of narrowing application of this standard in securities fraud cases." CALPERS, 394 F.3d at 164. The Court pointed out that allowing leave to amend where there is an absence of the development of any new facts which would, if true, cure the pleading defects under the heightened requirements of the PSLRA, would frustrate the objective of Congress to "provid[e] a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." Id. (citations omitted). In CALPERS, the Court held that a district court's denial of leave to file a third amended complaint was not an abuse of discretion where the plaintiffs had amended their complaint once as of right, and then been given an opportunity to file a Second Amended Complaint after the Court granted a motion to dismiss their First Amended Complaint, but had neglected to proffer facts remedying the pleading defects of the Second Amended Complaint. Id. at 164-65.

## III.    DISCUSSION

In the parties' briefing on Plaintiff's Motion for Leave to Amend, only two of the grounds potentially justifying denial of leave to amend are discussed - prejudice and futility. Accordingly, the Court will address each ground in turn.

### A.    Prejudice

Plaintiff correctly states that the question of prejudice focuses on hardship to the Defendants if the amendment were permitted, specifically, whether amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories." Cureton v. National Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). Plaintiff argues that as discovery has been stayed in this case, no such hardship would exist for

Defendants. (Doc. No. 96 at 13-14.) While Defendants summarily argue that the statements relied upon by Plaintiff as the basis of its claims in the proposed Second Amended Complaint ("SAC") were not recently discovered and could have been included in its First Amended Complaint ("FAC"), see Doc. No. 97 at 11, Defendants make no real effort to argue that they would be prejudiced by the grant of leave to amend. Accordingly, the Court finds that prejudice to the Defendants is not a basis for denial of Plaintiff's request for leave to amend. Therefore, the Court turns to an analysis of the issue of futility.

      B.      **Futility**

As noted above, "futility" of amendment means that the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, 306 F.3d at 1332; In re Burlington, 114 F.3d at 1434. Plaintiff argues that granting its motion for leave to amend and permitting the filing of the SAC is not futile, as it has identified in the SAC additional claims and facts that cure the pleading deficiencies identified by the Court in its Opinion granting Defendants' motions to dismiss for failure to state a claim. (Doc. No. 96 at 14.) Defendants argue to the contrary, stating that the SAC largely repackages the allegations of the FAC and does not cure the pleading deficiencies that the Court identified in the FAC. (Doc. No. 97 at 5.) Specifically, Defendants argue that Plaintiff's SAC does not (1) identify any material misstatements or omissions made by Defendants sufficient to support a claim under the Securities or Exchange Acts; or (2) plead sufficient allegations of scienter necessary to support a claim under the Exchange Act. (Id.) Accordingly, Defendants argue that the proposed amendment is futile, and Plaintiff's motion for leave to amend should be denied on that basis. (Id.)

Bearing the heightened requirements of the PSLRA in mind, the Court turns to an examination of whether Plaintiff in its SAC has attempted to proffer additional facts that would remedy the pleading deficiencies of the FAC identified by the Court in its Opinion. Plaintiff argues that the SAC adequately addresses the issues the Court identified with regard to (1) the materiality of the statements challenged under the Securities and Exchange Acts, and (2) falsity and scienter, with respect to Plaintiff's Exchange Act claims. (Doc. No. 96 at 15-26.)

### 1. Materiality

In addressing materiality, Plaintiff argues that its SAC is not focused on statements previously identified in this Court's Opinion as inactionable as opinion or protected forward-looking statements or puffery; rather, Plaintiff maintains that the SAC alleges securities claims based on Defendants' declaratory statements regarding the effectiveness of the Company's internal controls in quarterly and annual SEC filings from March 2010 through March 2012. (Doc. No. 96 at 11-12, 16.) These statements consist of representations made regarding the effectiveness of internal controls in quarterly and annual reports, and certifications made pursuant to the Sarbanes-Oxley Act ("SOX certifications") during the same period, which certified the effectiveness of internal controls over financial reporting through the relevant period. (Id. at 11.) Plaintiff argues that the development and implementation of an effective system of internal controls, to ensure effective banking operations, is legally required, and that courts routinely view statements and omissions concerning the effectiveness of a company's internal controls to be material and actionable under the federal securities laws. (Id. at 16.) Defendants counter that statements regarding the effectiveness of internal controls in quarterly and annual reports and SOX certifications are mere opinions based on the knowledge of the

5

signor, and as such, are potentially immaterial and not an actionable basis for Plaintiff's claims. (Doc. No. 97 at 11-13.)

As the Court discussed in its Opinion, see Doc. No. 92 at 27-28, under the applicable standards of materiality set forth in TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976) and Basic v. Levinson, 485 U.S. 224 (1988), a misrepresentation or omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision. TSC, 426 U.S. at 449. For a misrepresentation or omission to be material, "there must be a substantial likelihood that the disclosure of the omitted fact [or misrepresentation] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Id.

As Plaintiff correctly states, the SOX certifications as to internal controls are mandated by law, as Section 302 of the Sarbanes-Oxley Act mandates that signing officers certify that they are "responsible for establishing and maintaining internal controls" and "have designed such internal controls to ensure that material information relating to the [company] and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the periodic reports are being prepared." 15 U.S.C. §§ 7241(a)(4)(A) and (B). The signing officers must have "evaluated the effectiveness of the [company's] internal controls as of a date within 90 days prior to the report" and "have presented in the report their conclusions about the effectiveness of their internal controls based on their evaluation as of that date." Id. at §§ 7241(a)(4)(C) and (D).

As Plaintiff alleges, the purpose of SOX certifications is to provide assurance to the investing public that a company has performed an assessment of internal controls over

operations, financial reporting, and compliance with applicable laws, pursuant to the criteria established in the Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). (Doc. No. 95-1 ¶¶ 172-73.) Plaintiff alleges that given the COSO standards that certifying officers are bound to follow, the SOX certifications and other statements in SEC filings regarding internal controls during the relevant reporting periods were false and misleading when made, as they omitted material information regarding the effectiveness of the Company's internal controls over loan underwriting, risk management, and financial reporting. (Id. ¶ 174.) Plaintiff's SAC details those omissions relevant to internal controls, which it alleges support its position that Defendants' SOX certifications during the relevant periods were false and misleading, and Plaintiff argues that they demonstrate that Defendants did not properly assess the effectiveness of internal controls, in violation of the "Internal-Control Integrated Framework" issued by the COSO and required by the Sarbanes-Oxley Act. (Id. ¶¶ 174-75.)

Upon review of the authorities cited by the parties, the Court cannot conclude at this stage that the SAC based on statements and certifications regarding the effectiveness of internal controls would be futile. These statements are arguably the type of information that a reasonable investor would consider significant in making an investment decision. See North Port Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc., 929 F. Supp. 2d 740, 780-81 (M.D. Tenn. 2013) (denying motion to dismiss securities fraud claims and finding, inter alia, defendants' statements about the adequacy of internal controls in SOX certifications to be hard information to which the Safe Harbor provision of the PSLRA does not apply); In re Bear Stearns Co. Inc. Sec. Deriv., and ERISA Fin. Litig., 763 F. Supp. 2d 423, 471 (S.D.N.Y. 2011)

(finding that "[m]anagement's assessment of internal control over financial reporting was a critical metric for investors because it provided assurance that the Company's financial statements were reliable and in compliance with applicable laws"); see also Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 641 n. 17 (3d Cir. 1989) ("disclosures mandated by law are presumably material").[1]

Accordingly, after reviewing Plaintiff's SAC and the limited briefing before it on Plaintiff's motion for leave to amend, the Court cannot conclude at this time that the statements and certifications regarding the effectiveness of internal controls relied on by Plaintiff as the basis for its Securities and Exchange Act claims in the SAC are immaterial as a matter of law,

---

[1]The Court notes that Defendants cite no legal authority for their proposition that SOX certifications constitute nothing more than potentially immaterial statements of opinion. Even assuming that internal control certifications may be considered statements of opinion, Plaintiff has arguably alleged facts – at least as to Defendants Quinn and Everly, who signed the certifications – that they knew at the relevant time that the Company's internal controls did not satisfy the criteria of COSO and were ineffective. See In re Petrobras Sec. Litig., 2015 U.S. Dist. LEXIS 99322, *29-30 (S.D.N.Y. July 30, 2015) (finding it reasonable to infer that the Company disbelieved its statements about the effectiveness of its internal controls because plaintiffs alleged that at the time management was making these statements it was aware of the extensive corruption in the company's procurement activities).

Defendants' attempt to argue the Plaintiff's claims regarding internal controls amount to nothing more than a "generalized claim of mismanagement" not actionable under the securities laws is similarly unpersuasive. While the "line between a material nondisclosure and the nondisclosure of mere mismanagement is often difficult to draw," the "'crucial difference' is whether there was misrepresentation or omission in the flow of material information." Craftmatic, 890 F.2d at 639 (citation omitted). The cases cited by Defendants in support of their argument are unavailing. See, e.g., Nathanson v. Polycom, Inc., 87 F. Supp. 3d 966, 978 (N.D. Cal. 2015) (finding statements regarding adequacy of internal controls inactionable because there was no allegation that internal controls were "actually inadequate" or that defendants "sought to deceive investors about the quality of those controls"); Andropolis v. Red Robin Gourmet Burgers, Inc., 505 F. Supp. 2d 662, 683 (D.Col. 2007) (finding omission of a former CEO's undocumented expenses inactionable because plaintiff did not allege that certifications regarding internal controls were actually untrue).

and therefore, the Court cannot conclude that permitting the requested amendment would be futile. See Shapiro v. UJB Fin. Corp., 964 F.2d 272, 280 n.11 (3d Cir. 1992) ("Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ of the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law") (citation omitted). Plaintiff has drafted its SAC with the provisions of the Court's Opinion in mind, and has shifted its focus from statements the Court found to be immaterial and inactionable as opinion, forward-looking statements, or puffery, to a category of statements that are potentially material and actionable.[2] This conclusion does not end the Court's inquiry, however, as with respect to Plaintiff's Exchange Act claims, the Court must also preliminarily assess the adequacy of the allegations of the SAC with regard to falsity and scienter.

### 2. Falsity and Scienter

Plaintiff notes that with regard to Plaintiff's Exchange Act claims, the Court's Opinion viewed the FAC as pleading falsity and fraud by hindsight, and as insufficiently pleading reckless or conscious behavior sufficient to support a reasonable inference of scienter. (Doc. No. 96 at 17.) Plaintiff argues that the SAC includes particularized allegations, which, when viewed holistically, support the reasonable inference that the internal control failures that Defendants acknowledged in March 2012 existed throughout the class period. (Id.) Further, Plaintiff argues that the far-reaching findings of the Enforcement Actions, coupled with the Confidential Witnesses' statements based on their personal knowledge, the SEC inquiries and investigation, and Defendants' own statements, support the reasonable inference that the Company lacked

---

[2] The Court makes this finding for purposes of this motion only.

effective internal controls over underwriting, risk management, and financial reporting at the time of the offering through March 2012, and that Defendants acted at least recklessly with respect to internal controls and related disclosures.  (Id.)  In response, Defendants argue that Plaintiff has not set forth additional facts in the SAC sufficient to plead scienter.  (Doc. No. 97 at 16.)

       As discussed by the Court in its Opinion, see Doc. No. 92 at 25, an Exchange Act plaintiff must adequately plead scienter, which is a "mental state embracing intent to deceive, manipulate, or defraud."  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).  Under the PSLRA's pleading requirements for Exchange Act claims, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The scienter standard requires a plaintiff to allege facts giving rise to a "strong inference" of "either reckless or conscious behavior."  In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534-35 (3d Cir. 1999).  As interpreted by the Supreme Court in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), scienter's "strong inference" requirement mandates that a court weigh "plausible nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff."  551 U.S. at 324.  A "strong inference" of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Id. at 314.  The pertinent question is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  Id. at 323; see also id. at 326 ("[T]he court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically.").

Plaintiff argues that the following facts detailed in the SAC support the reasonable inference that the internal control failures and deficiencies alleged existed prior to and during the class period, and were known or recklessly disregarded by the Defendants:  (1) the timing and substance of, and remedies required by, the Enforcement Actions (the March 22, 2012 Written Agreement with the Federal Reserve, and the Consent Order of the same date between Orrstown and the Pennsylvania Department of Banking); (2) the statements of Confidential Witnesses about their first-hand and contemporaneous observations about the failures of Orrstown's processes and procedures that rendered Orrstown's internal controls materially weak and ineffective; (3) the fact that senior management who resigned in the wake of the Enforcement Actions were in place at all relevant times during the class period; (4) the fact that beginning in 2009 and throughout the class period, there was no reported material change to Orrstown's internal control processes or procedures; and (5) the fact that after May 2010, the relevant SEC filings no longer stated that "[m]anagement is not aware of any current recommendations by regulatory authorities which, if implemented, would have a material effect on the Corporation's liquidity, capital resources or operations."  (Doc. No. 98 at 15-16.)  Plaintiff also relies in part on the fact that the SEC has apparently initiated an investigation into Orrstown's financial reporting and internal controls, seeking information on such issues dating back to early 2010.  (Doc. No. 95-1 ¶¶ 158-60.)

After reviewing Plaintiff's proposed SAC and the relevant authorities cited by the parties, the Court cannot conclude at this time that the allegations of the SAC fail to support a reasonable inference as to falsity and scienter with regard to Plaintiff's Exchange Act claims against all Defendants.  As discussed above, the Court must accept as true and assess all factual allegations

"holistically." Tellabs, 551 U.S. at 326. The timing and substance of the Enforcement Actions may, when viewed in connection with the other allegations of the SAC, support a scienter finding. See, e.g., In re Wilmington Trust Sec. Litig., 29 F. Supp. 3d 432, 448-49 (D. Del. 2014) (considering Federal Reserve's Memorandum of Understanding and Department of Justice's Criminal Information in its scienter analysis); In re Bear Stearns, 763 F. Supp. 2d at 471 (considering SEC "OIG Report" issued after the class period in scienter analysis). As to the statements of Confidential Witnesses allegedly corroborating the existence of the internal control failures detailed in the Enforcement Actions throughout the class period, the Court cannot conclude at this time that Plaintiff's SAC has failed to address the Court's concerns, detailed in its Opinion, see Doc. No. 92 at 50-52, as to the basis for the Confidential Witnesses' knowledge of the facts alleged, as it includes additional information concerning Confidential Witness #1 and Confidential Witness #3's bases for knowledge concerning the events and occurrences described by them in the SAC. See, e.g., Doc. No. 95-1 ¶¶ 141-51. The Court also takes note of Plaintiff's allegations regarding the timing of the resignation of senior management as a potential factor in a scienter analysis. See Thorpe v. Walter Inv. Mgmt., Corp., 2015 U.S. Dist. LEXIS 84406, *58 (S.D. Fla. June 30, 2015) (citation omitted) (a "resignation can strengthen an inference of scienter when it occurs around the same time as an investigation."). Further, the Court takes note of the fact that, as Plaintiff alleges, there was no reported material change to Orrstown's internal control processes from 2009 until March 2012, when Orrstown admitted the ineffectiveness of internal controls as of December 31, 2011, see Doc. No. 95-1 ¶ 176, which lends support to Plaintiff's allegation as to the existence of the internal control failures throughout the class period. See Dobina v. Weatherford, 909 F. Supp. 2d 228, 245 (S.D.N.Y.

2012) (court found that although company ultimately disclosed internal control failures "as of December 31, 2010," in light of the fact that the company attested throughout the class period that its internal controls had not changed, and the fact that a significant tax expense understatement persisted from 2007 to 2010, it was reasonable to infer that the internal controls were inadequate throughout the class period). Accordingly, after reviewing Plaintiff's SAC and the limited briefing before it on Plaintiff's motion for leave to amend, the Court cannot conclude at this time that the allegations of the SAC fail to support a reasonable inference of falsity and scienter with regard to Plaintiff's Exchange Act claims against all Defendants,[3] and for that reason, the Court cannot conclude that permitting the requested amendment would be futile.

IV.  **CONCLUSION**

For all of the reasons discussed above, the Court will grant Plaintiff's Motion for Leave to Amend. An order consistent with this Memorandum follows.

.

---

[3]The Court makes this finding for purposes of this motion only.