**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY,** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:12-cv-00993** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **ORRSTOWN FINANCIAL SERVICES,** | : | |
| **INC., et al.,** | : | |
| **Defendants** | | |

**MEMORANDUM**

Before the Court are the following motions: (1) a Motion to Dismiss for Failure to State a Claim by Defendants Orrstown Financial Services, Orrstown Bank, (the "Orrstown Defendants"), Individual Defendants Anthony Ceddia, Jeffrey W. Coy, Jeffrey W. Embly, Bradley S. Everly, Mark K. Keller, Andrea Pugh, Thomas R. Quinn, Jr., Gregory Rosenberry, Kenneth R. Shoemaker, Glenn W. Snoke, John Ward, and Joel Zullinger, (Doc. No. 107); (2) a Motion to Dismiss for Failure to State a Claim by Smith Elliott Kearns & Company LLC ("Defendant SEK"), (Doc. No. 105); (3) a Motion to Dismiss for Failure to State a Claim by Janney Montgomery Scott, LLC and Sandler O'Neill & Partners, L.P. (the "Underwriter Defendants"), (Doc. No. 109); and (4) Defendants' [Joint] Motion to Strike the Declaration of Kimberly Donaldson Smith (Doc. No. 114). All motions have been fully briefed and are ripe for disposition.

For the reasons that follow, the Orrstown Defendants' and Individual Defendants' motion to dismiss will be granted in part and denied in part, Defendant SEK's motion to dismiss will be granted, and the Underwriter Defendants' motion to dismiss will be granted. Defendants' joint motion to strike will be denied.

## I.    FACTUAL[1] AND PROCEDURAL BACKGROUND

This is a purported class action alleging securities violations in connection with the Orrstown Defendants' early 2010 public offering of approximately 1.4 million shares of Orrstown common stock, which raised almost $40 million dollars.  (Doc. No. 101 ¶ 1.) Following a series of revelations regarding Orrstown's financial condition, Defendant Orrstown reported significant losses for the fourth quarter of 2011, and on March 15, 2012, filed its 2011 Annual Report which disclosed that it had a "material weakness" in its internal controls, and had "failed to implement a structured process with appropriate controls to ensure that updated loan ratings were incorporated timely into the calculation of the Allowance for Loan Losses."  (Id. ¶ 152.) Orrstown further admitted that, as of March 2012, it had failed to "fully remediate its material weakness in its internal control over financial reporting relating to loan ratings and its impact on the allowance for loan losses."  (Id. ¶¶ 152, 192.)  On March 23, 2012, the Orrstown Defendants, and their shared Board of Directors, revealed that they had entered into an agreement with the Federal Reserve Bank of Philadelphia and a consent order with the Commonwealth of Pennsylvania, Department of Banking, requiring them, among other things, to revise their underwriting and credit administration policies and strengthen their credit risk management practices.  (Id. ¶ 153.)

On May 12, 2012, Lead Plaintiff Southeastern Pennsylvania Transportation Authority ("SEPTA"), on behalf of two classes, filed this purported class action pursuant to Federal Rule

---

[1] What follows is a brief statement of the factual background underlying Plaintiff's claims, taken from Plaintiff's Second Amended Complaint.  (Doc. No. 101.)  For an extensive description of the alleged historical facts, see the Court's Memorandum and Order (the "Opinion"), issued June 22, 2015.  (Doc. No. 92.)

of Civil Procedure 23(a) and (b)(3) against the Orrstown Defendants and the Individual

Defendants, Defendant SEK, and the Underwriter Defendants.  (Doc. No. 1.)  On March 4, 2013,

Plaintiff filed an amended complaint, alleging that Defendants issued materially untrue and/or

misleading statements and omissions in violation of the federal securities laws, specifically, the

Securities Act of 1933 ("Securities Act") and the Exchange Act of 1934 ("Exchange Act").

(Doc. No. 40.)  The amended complaint asserted claims on behalf of two classes: (1) the

"Securities Act Class," which consists of persons and/or entities who purchased Orrstown

common stock pursuant to, or traceable to, Orrstown's February 8, 2010 registration statement

and March 23, 2010 prospectus supplement issued in connection with Orrstown's secondary

stock offering in March 2010 and were damaged thereby;  and (2) the "Exchange Act Class,"

which consists of all persons or entities who purchased Orrstown common stock on the open

market between March 15, 2010 and April 5, 2012 (the "class period") and were damaged

thereby.  (Doc. No. 40 ¶¶ 17-18.)  Plaintiff SEPTA acquired Orrstown stock pursuant to the

offering documents for the March 2010 offering, and also purchased Orrstown common stock on

the open market during the class period.  (Id. ¶ 25.)

On May 28, 2013, the Orrstown Defendants and Individual Defendants, Defendant SEK,

and the Underwriter Defendants moved the Court to dismiss Plaintiff's amended complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. Nos. 53, 56, 58.)  After extensive

briefing and oral argument, on June 22, 2015, the Court issued an Opinion granting Defendants'

motions to dismiss.  (Doc. No. 92.)  In its Opinion, the Court dismissed Plaintiff's Securities and

Exchange Act claims against all Defendants without prejudice for failure to state a claim upon

which relief could be granted.  (Id.)

Specifically, as to Plaintiff's Securities Act claims, the Court found that, in its amended complaint, Plaintiff failed to adequately allege that the Defendants made materially false and/or misleading statements (or omissions) in the Offering Documents.  (Id.)  The Court found that the statements challenged by Plaintiff were inactionable, for one or more reasons:  (1) because they were mere puffery;  (2) because they constituted forward-looking statements entitled to the protection of the Private Securities Litigation Reform Act ("PSLRA")'s safe harbor or the "bespeaks caution" doctrine;  (3) because they were opinion statements entitled to protection under the standards articulated in Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 135 S. Ct. 1318 (2015) ("Omnicare");  or (4) because Plaintiff failed to allege a factual basis supporting a reasonable inference that they were false when made. (Id. at 37-68.)

As to Plaintiff's Exchange Act claims, the Court similarly found that all statements challenged by Plaintiff were inactionable under the heightened pleading standard dictated by the PSLRA for Exchange Act claims, for one or more reasons:   (1) because they constituted puffery; (2) because they were expressions of opinion or belief entitled to protection under Omnicare;  or (3) because Plaintiff failed to allege a factual basis supporting a reasonable inference that they were false when made.  (Id. at 69-95.)  With regard to certain statements, the Court also found that Plaintiff's allegations failed to meet the scienter requirement for claims under the Exchange Act, as they consisted of nothing more than conclusory assertions regarding Defendants' state of mind.  (Id. at 77, 82, 90-95.)

After Plaintiff moved for leave to file a second amended complaint (Doc. No. 95), on February 8, 2016, the Court granted Plaintiff's motion and deemed Plaintiff's Second Amended Complaint (the "SAC"), previously filed as an exhibit to Plaintiff's motion for leave to file a

second amended complaint, filed as of that date. (Doc. Nos. 99-100.)   On February 25, 2016, the

Court issued an Order setting a briefing schedule for any contemplated motions to dismiss the

SAC.  (Doc. No. 104.)   The SAC filed by Plaintiff asserts the same Securities and Exchange Act

claims against the same Defendants, but this time focuses exclusively on alleged materially false

and/or misleading statements made by Defendants in the Offering Documents and through the

class period pertaining to the "effectiveness of the [Orrstown Defendants'] internal controls over

underwriting of loans, risk management, financial reporting and compliance with banking

regulations." (Doc. No. 101 ¶ 22.)

On March 18, 2016, the Orrstown Defendants and Individual Defendants, Defendant

SEK, and the Underwriter Defendants filed their respective motions to dismiss the SAC for

failure to state a claim upon which relief can be granted, with supporting briefs. (Doc. Nos. 105-

110.) On April 8, 2016, in accordance with the Court's scheduling Order, Plaintiff filed its

Omnibus Opposition to Defendants' Motions to Dismiss the Second Amended Complaint. (Doc.

No. 111.)  On that same date, Plaintiff also filed the Declaration of Kimberly Donaldson Smith

in Support of Plaintiff SEPTA's Omnibus Opposition to Defendants' Motions to Dismiss the

Second Amended Complaint. (Doc. No. 112.)  On April 22, 2016, all Defendants filed reply

briefs in further support of their motions to dismiss. (Doc. Nos. 115, 116, 118.)

Also on that date, Defendants filed a [Joint] Motion to Strike the Declaration of Kimberly

Donaldson Smith filed by Plaintiff, with a supporting brief.  (Doc. Nos. 114 and 117.)  On May

5, 2016, Plaintiff filed a brief in opposition to Defendants' joint motion to strike, (Doc. No. 119),

and Defendants filed their reply brief on May 20, 2016.  (Doc. No. 120.)  In their briefs

supporting their motion to strike the Declaration of Kimberly Donaldson Smith, (the

"Declaration"), Defendants argue that the Declaration should be stricken because it improperly seeks to add factual matters beyond the allegations of the SAC for the Court's consideration in its ruling on the pending motions to dismiss. (Doc. No. 120 at 2-3.)

On September 27, 2016, the Orrstown Defendants filed a "Notice of Subsequent Event in Further Support of their Motion to Dismiss the Second Amended Complaint."  (Doc. No. 122.) That filing pertained to the Securities and Exchange Commission ("SEC") investigation of Orrstown referenced in Plaintiff's SAC, and informed the Court that the SEC had concluded its investigation and issued an "Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Orders" (the "SEC Order").  The Orrstown Defendants' Notice attached the SEC Order as an exhibit and noted that the Order memorialized a settlement between the SEC and Orrstown, between the SEC and Orrstown's current Chief Executive Officer (Thomas R. Quinn) and current Chief Accounting Officer, and between the SEC and Orrstown's former Chief Financial Officer (Bradley S. Everly) and former Chief Credit Officer (Jeffrey W. Embly).  (Doc. No. 122 at 2.)  Plaintiff filed a Response to the Orrstown Defendants' Notice on September 29, 2016, (Doc. No. 123), and the Underwriter Defendants and Defendant SEK followed suit on October 7, 2016 (Doc. No. 124), and October 11, 2016 (Doc. No. 125), respectively.

Accordingly, Defendants' three motions to dismiss and their joint motion to strike have been fully briefed and are now ripe for disposition.

## II.    LEGAL STANDARD

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)).  Generally, a court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678.

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: (1) first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual matter and disregarding legal conclusions; (2) second, a court should determine whether the remaining well-pled facts sufficiently demonstrate that a plaintiff has a "plausible claim for relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Facial plausibility exists when the plaintiff pleads factual content "that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (internal citations omitted).

In conducting its analysis, a court must accept all well-pleaded factual allegations in the complaint as true for purposes of determining whether the complaint states a plausible claim for relief, and must view the factual allegations in the light most favorable to the plaintiff.  Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  The court's determination on a Rule

12(b)(6) review is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 259, 302 (3d Cir. 2011) (internal citations omitted).  The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-64.

In ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.    DISCUSSION

### A.    Motion to Strike

The Court first addresses the Defendants' joint motion to strike the Declaration of Kimberly Donaldson Smith, filed in conjunction with the Plaintiff's Omnibus Brief in Opposition to the Defendants' motions to dismiss.  (Doc. No. 114.)  The Declaration, which consists of 29 paragraphs over 28 pages, is authored by one of Plaintiff's attorneys.  (Doc. No. 112.)  The first three paragraphs consist of an attestation as to the accuracy of the copies of the exhibits (Exhibits A through M) submitted as attachments to the Declaration and in support of

Plaintiff's brief in opposition.  (Id. at 1-3.)  Paragraphs 4 through 29 contain factual averments.
(Id. at 3-28.)

Defendants seek to strike paragraphs 4 through 29 of the Declaration and Exhibits A, H,
I, and J attached thereto.  (Doc. No. 114 at 13.)  Exhibit A to the Declaration is a chart
summarizing the corrective actions required by the two agreements entered into by the Orrstown
Defendants and regulatory agencies.  (Doc. No. 112-1.)  Exhibits H, I, and J to the Declaration
consist of Pennsylvania Company Accounting Oversight Board ("PCAOB") inspection reports
of Defendant SEK dated March 14, 2007 (Exhibit H), January 21, 2010 (Exhibit I), and May 23,
2013 (Exhibit J).  (Doc. Nos. 112-8, 112-9 and 112-10.)

Defendants argue that paragraphs 4 through 29 of the Declaration and Exhibits A, H, I,
and J attached to it should be stricken, as they improperly seek to add factual matters beyond the
allegations of the SAC for consideration by the Court in ruling on Defendants' motions to
dismiss.  (Doc. No. 120 at 3.)  Plaintiff maintains that paragraphs 4 through 29 of the Declaration
do not set forth factual allegations designed to "fill gaps" in the SAC, (Doc. No. 119 at 3), but
rather provide references to the SAC's allegations, describe the measures taken by Plaintiff's
counsel to gather information from Confidential Witnesses, and catalogue excerpts from the
Exhibits cited in its Opposition Brief.  (Id.)  In addition, Plaintiff maintains that Declaration
Exhibits A and H-J do not contain material that is outside of the pleadings, but rather consist of,
in the case of Exhibit A, a compilation of information from the Orrstown Defendants' Written
Agreement with the Federal Reserve Bank and the Consent Order entered into between Orrstown
and the Pennsylvania Department of Banking, attached as Exhibits A and B to the SAC, (Id. at 3-
4), and in the case of Exhibits H-J, inspection reports issued by the PCAOB with respect to

Defendant SEK, which Plaintiff maintains were referenced in and are tied to the allegations of the SAC.  (Id. at 4.)  Accordingly, Plaintiff maintains that those materials can be properly considered by the Court in ruling on the Defendants' motions to dismiss.  (Id.)

As noted above, in ruling on a 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer, 605 F.3d at 230 (citing Pension Benefit Guar. Corp., 998 F.2d at 1196).  A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  Buck, 452 F.3d at 260 (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

## 1.    Exhibits

The Court first addresses the exhibits challenged by Defendants.  By way of background, the Court notes that Plaintiff attached two exhibits to its SAC:  the Written Agreement between the Orrstown Defendants and the Federal Reserve Bank (Exhibit A), and the Consent Order between Orrstown and the Pennsylvania Department of Banking (Exhibit B) (collectively, the "Enforcement Actions").  (Doc. No. 101.)  Accordingly, those documents are properly considered by the Court in ruling on Defendants' 12(b)(6) motions to dismiss.  Mayer, 605 F.2d at 230.  As to Declaration Exhibits A and H-J, Plaintiff argues first that the Court should take judicial notice of those exhibits, and second, that the Court may also consider those exhibits because they are referenced in the SAC and are integral to Plaintiff's claims.  (Doc. No. 119 at 9-12.)

a.      **Judicial Notice**

Federal Rule of Evidence 201(b) permits a district court to take judicial notice of facts

that are "not subject to reasonable dispute because [they are] generally known within the trial

court's territorial jurisdiction; or can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court may take judicial

notice of matters in the public record such as judicial proceedings.  See Sands v. McCormick,

502 F.3d 263, 268 (3d Cir. 2007).  Such judicial notice is appropriate when proceedings in other

courts "relate to matters at issue" before the court.  Liberty Intern. Underwriters Canada v.

Scottsdale Ins. Co., 955 F.Supp.2d 317, 325 (D.N.J. 2013) (citations and quotations omitted);

see also Rockett v. Maiorana, No. 15-1763, 2015 WL 7424729, at *1 n. 3 (M.D. Pa. Nov. 23,

2015) (same).

With regard to Exhibit A to the Declaration, Plaintiff argues that because the

Enforcement Actions are properly considered by the Court in ruling on the motions to dismiss

(as they are exhibits attached to the SAC), Plaintiff's counsel's compilation of information from

those exhibits constitutes an exhibit that should be subject to judicial notice.  (Doc. No. 119 at

11.)  However, Plaintiff's counsel cites no authority supporting this proposition, and the Court

fails to see the necessity of taking judicial notice of a document that is a compilation of

information already properly before the Court.

As to Exhibits H-J, the Court is unpersuaded that these official reports issued by the

PCAOB are a proper subject of judicial notice in this proceeding.  The Defendants correctly note

that there is no indication that these reports are directly related to these proceedings;  i.e., that

they concern SEK audits of Defendant Orrstown, or that the SEK auditors mentioned in the

reports participated in Orrstown audits.  (<u>See</u> Doc. Nos. 112-8, 112-9, and 112-10.)

Accordingly, the Court declines to take judicial notice of those exhibits here.  <u>See</u> <u>In re Shop-</u>

<u>Vac Mktg. & Sales Practices Litig.</u>, No. 4:12-2380, 2014 WL 3557189, at *4 (M.D. Pa. July 17,

2014) (if a document "has no bearing on the Court's disposition of the motion to dismiss [it] will

. . . decline to take notice").

  Finally, with respect to the issue of judicial notice, the Court addresses Plaintiff's request

that the Court take judicial notice of the recently-issued SEC Order in connection with its

consideration of the pending motions to dismiss.  (Doc. No. 123 at 7.)  Plaintiff maintains that

the SEC Order contains findings which are consistent with and supplement the SAC's

allegations.  (<u>Id.</u> at 8.)  The Defendants do not challenge the propriety of the Court taking

judicial notice of the SEC Order.  As the SEC Order is the culmination of the SEC investigation

referenced in the SAC (which focused on issues pertaining to the past effectiveness of

Orrstown's "internal controls over financial reporting," just as the SAC does), it clearly

"relate[s] to matters at issue" before the Court.  <u>Liberty Intern. Underwriters Canada</u>, 955

F.Supp.2d at 325 (citations and quotations omitted).  Accordingly, the Court will take judicial

notice of the SEC Order in connection with its ruling on the pending motions to dismiss.  <u>See</u> <u>In</u>

<u>re UBS Auction Rate Sec. Litig.</u>, No. 08-2967, 2010 WL 2541166, at *13-14 (S.D.N.Y. June 10,

2010) (taking judicial notice of a similar SEC Order in connection with a decision on motions to

dismiss).

### b.  Incorporated by Reference or Integral to the Claim

  As noted above, a court may also consider documents extraneous to the complaint on a

motion to dismiss if they are "incorporated by reference or integral to the claim." <u>Buck</u>, 452

F.3d at 260 (citation omitted).  Plaintiff also argues that each of the four challenged exhibits

were "referenced in and are tied to the allegations of the SAC," and should be considered by the

Court for that reason.  (Doc. No. 119 at 4.)  However, with regard to Declaration Exhibit A, as

stated above, the information contained in that document is already before the Court via Exhibits

A and B to the SAC.  With regard to Declaration Exhibits H-J, which consist of Inspection

Reports issued by the PCAOB with respect to Defendant SEK, Defendants point out that those

reports are not mentioned anywhere in the SAC.  (Doc. No. 120 at 4.)  The SAC makes reference

to a 2012 PCAOB Release regarding alleged auditing failures by accounting firms in general,

(see Doc. No. 101 ¶ 185), but that Release does not reference any PCAOB reports pertaining to

SEK specifically.  (See id.)  In addition, the SAC itself does not make explicit reference to any

PCAOB reports pertaining to SEK.  (See id.)  Accordingly, the Court cannot find that Exhibits

H-J were "incorporated by reference" in the SAC.  See Mosdos Chofetz Chaim, Inc. v. Vill. of

Wesley Hills, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) ("To be incorporated by reference, the

[c]omplaint must make a clear, definite and substantial reference to the documents") (internal

quotation marks and citation omitted).  Moreover, as discussed above, given that there is no

indication that those PCAOB reports are directly related to the matter before this Court, the

Court cannot find that they are "integral to [Plaintiff's] claim[s]." Buck, 452 F.3d at 260 (citation

omitted).  Therefore, the Court finds that Exhibits A and H-J to Plaintiff's Declaration are not

properly considered by the Court in ruling on Defendants' motions to dismiss.  The Court next

addresses Defendants' challenges to paragraphs 4 through 29 of the Declaration.

### 2.        Paragraphs 4 through 29

Defendants argue that the Declaration improperly seeks to add factual matter beyond the

allegations of the SAC for the Court's consideration in ruling on the pending motions to dismiss. (Doc. No. 120 at 3.)  Plaintiff maintains that paragraphs 4-29 of the Declaration merely restate the allegations of the SAC and the exhibits thereto.  (Doc. No. 119 at 3.)  However, as Defendants point out, if that is so, paragraphs 4-29 of the Declaration are unnecessary; moreover, the Declaration's restatement of factual allegations would also constitute a violation of the Court's Order establishing page limitations for Plaintiff's Brief in Opposition to Defendants' motions to dismiss.  (See Doc. No. 104 ("Plaintiff shall file an omnibus opposition to the Defendants' motions to dismiss . . . and such opposition shall not exceed 50 pages").)

To the extent that the Declaration seeks to add to the factual allegations contained in the SAC, such an effort is improper.  See Steinagel v. Valley Oral Surgery, No. 12-05645, 2013 WL 5429269, at *5 (E.D. Pa. Sept. 30, 2013) (Plaintiff's declaration attached to brief was a matter outside the pleadings not to be considered on a motion to dismiss; the declaration was not referenced in the complaint, was not a matter of public record, and was not attached to the complaint, but was instead an improper attempt to provide supplemental factual averments).

Defendants' motion is styled as a motion to strike.  While motions to strike are generally made pursuant to Federal Rule of Civil Procedure 12(f), that rule provides no basis for striking material like that at issue here, as Rule 12(f) applies specifically to pleadings.  See Fed. R. Civ. P. 12(f) ("[t]he court may strike from a pleading");  2 Moore's Federal Practice §12.37[2] (Matthew Bender 3d Ed.) ("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly").  The Court also declines to strike Declaration paragraphs 4-29 and Declaration Exhibits A, H, I and J under its inherent authority to enforce its Rules and Orders, as Defendants suggest.  (Doc. No. 112 at 2-3.)

14

Rather, the Court is persuaded that the better approach is to simply disregard any documents or information improperly before the Court.  See Sfakianos v. Shelby County Gov't, No. 08-2172, 2010 WL 4791680, at *2 (W.D. Tenn. Aug. 2, 2010) (recognizing that federal rules do not provide a means to strike exhibits filed in connection with an opposition brief and therefore choosing to exclude from consideration any portions of exhibits not properly before the court); Lombard v. MCI Telecom. Corp., et al., 13 F.Supp.2d 621, 625 (N.D. Ohio 1998) (same); see also Dillon v. Village of Piketon, Ohio, et al., No. 2:10-888, 2011 WL 2632802, at *2 (S.D. Ohio July 5, 2011) (declining to strike affidavit submitted in opposition to 12(b)(6) motion but instead disregarding all matters not properly before the court).

Therefore, in accordance with the above discussion, the Court will disregard paragraphs 4 through 29 of the Declaration of Kimberly Donaldson Smith (Doc. No. 112 ), as well as Exhibits A, H, I and J to that Declaration (Doc. Nos. 112-1, 112-8, 112-9 and 112-10), in its analysis of Defendants' motions to dismiss.  The Court takes judicial notice of the SEC Order (Doc. No. 122, Exh. 1) and the findings contained in it in connection with its ruling on the pending motions to dismiss.  Defendants' joint motion to strike will be denied.

### B.  Securities Act

The first four counts of the SAC allege claims pursuant to the Securities Act.  (Doc. No. 101 ¶¶ 194-229.)  Plaintiff asserts in Count 1 that the Orrstown Defendants violated Section 11 of the Securities Act.  (Id. ¶¶ 194-200.)  In Count 2, Plaintiff alleges that the 11 Individual Securities Act Defendants (i.e., all Individual Defendants with the exception of Defendant Embly), each of whom signed the Registration Statement, as well as Defendant SEK, who audited the financial statements included in the Registration Statement, and the Underwriter

Defendants, who are named as underwriters on the Registration Statement, "acted negligently in issuing the Registration Statement which made materially false and misleading written statements to the investing public and misrepresented or failed to disclose" the facts described above, and violated Section 11 of the Securities Act.  (Id. ¶¶ 201-11.)  Count 3 alleges that the Orrstown Defendants, the Individual Securities Act Defendants, Defendant Embly, and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act.  (Id. ¶¶ 212-22.)  In Count 4, Plaintiff alleges that the Individual Securities Act Defendants are subject to "control person" liability per Section 15 of the Securities Act.  (Id. ¶¶ 223-29.)

### 1. Legal Standard

The Securities Act creates federal duties related to the registration and disclosure of public offerings.  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269 (3d Cir. 2006) (citations and quotation marks omitted).  Sections 11 and 12(a)(2) of the Securities Act "impose civil liability for the making of materially false statements in registration statements and prospectuses."  In re Adams Golf Inc. Sec. Litig., 381 F.3d 267, 273 (3d Cir. 2004); see 15 U.S.C. §§ 77k, 77l(a)(2).  Additionally, Section 15 allows a plaintiff to bring a claim for "control liability" against a person who controls a person liable for an underlying violation of the Securities Act.  See In re Suprema, 438 F.3d at 284-85.

Section 11 of the Securities Act concerns material misstatements or omissions in registration statements.  15 U.S.C. § 77k(a).  A Section 11 claim may be brought against the issuer of securities, its directors or partners, underwriters, and accountants who prepared or certified the registration statement.  Id.  Under Section 11, a plaintiff must allege that a registration statement (1) contained an untrue statement of material fact, (2) omitted to state a

material fact required to be stated therein, or (3) omitted to state a material fact necessary to make the statements therein not misleading.  In re Suprema, 430 F.3d at 269 (citations and quotation marks omitted).  Section 11 does not require a plaintiff to allege that the defendants possessed any scienter; rather, if a plaintiff purchases a security issued pursuant to a registration statement, he or she need only show a material misstatement or omission to establish a prima facie case.  Herman & MacLean v. Huddleston, 459 U.S. 375, 381-82 (1983).

Section 12(a)(2) provides civil liability for anyone who offers or sells a security "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements . . . not misleading."  15 U.S.C. § 77l(a)(2), and, like Section 11, is a "virtually absolute" liability provision that does not require a plaintiff to allege that the defendants possessed scienter; rather, only that the plaintiff made the purchase pursuant to a materially false or misleading prospectus or oral communication.  In re Adams Golf, 381 F.3d at 274 & n. 7.

Section 11 and 12(a)(2) claims are generally not subject to the heightened pleading standards set forth in the PSLRA and Federal Rule of Civil Procedure 9(b) applicable to Exchange Act claims, as "[f]raud . . . is not a necessary element to establish a prima facie claim under Section 11 or Section 12(a)(2).  But claims under those provisions can be, and often are, predicated on allegations of fraud . . . . where the plaintiff grounds these Securities Act claims in allegations of fraud - and the claims thus 'sound in fraud' - the heightened pleading requirements of Rule 9(b) apply."  In re Suprema, 438 F.3d at 269 (citing Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 161-63 (3d Cir. 2004) ("CALPERS")).  However, if the allegations are pled separately and plaintiffs expressly premise Securities Act claims on negligence rather than fraud,

Rule 9(b) is inapplicable.  Id. at 272.

Although claims brought under the Securities Act generally require a lesser pleading standard than those brought under the Exchange Act, the standard for pleading "a material misrepresentation or omission" is the same under both acts.  See In re Trump Casino Sec. Litig., 7 F.3d 357, 369 (3d Cir. 1992) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976) ("TSC")); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 629 (3d Cir. 1989)).  Not all misrepresentations or omissions in connection with public offerings are actionable.  Rather, a plaintiff's right to recover under either act is limited by the doctrine of materiality, and the exceptions developed to that doctrine for statements of opinion, forward-looking statements and puffery.  As the Supreme Court defined materiality in TSC, a misrepresentation or omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision.  TSC, 426 U.S. at 449.[2]  For a misrepresentation or omission to be material, "there must be a substantial likelihood that the disclosure of the omitted fact [or misrepresentation] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  Id.  Materiality must be determined as of the date of the alleged misstatement or omission, not with the benefit of hindsight.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1330 (3d Cir. 2002).[3]

---

[2] In TSC, the Supreme Court defined materiality within the proxy solicitation context of Section 14(a) of the Exchange Act.  Subsequently the Court made the TSC standard applicable to actions brought under Section 10 and Rule 10b-5 of the Exchange Act, see Basic Inc. v. Levinson, 485 U.S. 224, 232 (1988), and the Third Circuit has made the standard applicable as well to claims under Sections 11 and 12(a)(2) of the Securities Act.  See Craftmatic, 890 F.2d at 641 n. 18.

[3] This Court discussed the doctrine of materiality in depth in its June 22, 2015 Opinion in this matter, see Doc. No. 92 at 27-35, and will not repeat the entirety of that discussion here.

### 2.    Pleading Standard

At the outset then, the Court must determine whether Plaintiff's Securities Act claims "sound in fraud" or negligence to determine the proper pleading standard applicable to Plaintiff's claims - that is, whether Plaintiff must meet the particularity requirements dictated by Federal Rule of Civil Procedure 9(b) and the PSLRA for its Securities Act claims.  The Third Circuit held in In re Suprema that "where . . . individual defendants are accused in separate claims of the same complaint as having violated Section 11, Section 12(a)(2), and Section 10(b), the Securities Act claims do not sound in fraud if ordinary negligence is expressly pled in connection with those claims."  In re Suprema, 438 F.3d at 273.  In In re Suprema the plaintiff carefully separated its allegations of negligence from its allegations of fraud against the same defendants by "pleading its Section 11 and Section 12(a)(2) claims in negligence before - and wholly apart from - pleading its fraud-based Section 10(b) claims."  Id.

Similar to Plaintiff's amended complaint, the SAC separates the factual allegations supporting the Securities Act claims from those supporting the Exchange Act claims, pleading the Section 11 and 12(a)(2) claims before the Section 10(b) claims.  Plaintiff's SAC prefaces the Securities Act allegations by stating that "[t]he Securities Act claims in this portion of the Complaint specifically exclude any allegations of knowledge or scienter, and any allegation that could be construed as alleging fraud or intentional or reckless misconduct," as they are "rooted exclusively in theories of strict liability and negligence."  (Doc. No. 101 ¶ 161.)  Accordingly, under the pleading standards discussed in In re Suprema, the Court finds that Plaintiff has pled its Securities Act claims in a manner sufficient "to avoid triggering Rule 9(b)."  In re Suprema,

_____

Materiality will be referenced as necessary infra in this Memorandum.

438 F.3d at 273.

### 3.    Section 11 (Counts 1 and 2)

The Court will address Plaintiff's Section 11 claims in two parts: first, the Court addresses Plaintiff's claims against the Orrstown Defendants, Individual Securities Act Defendants, and Underwriter Defendants, all of which are based on the same representations included in Orrstown's 2009 Annual Report on Form 10-K, which was incorporated by reference in the Offering Documents;  second, the court addresses Plaintiff's claim against Defendant SEK, which is based on its audit opinion issued in connection with Orrstown's 2009 Annual Report on Form 10-K, also incorporated by reference in the Offering Documents.

### a.    Claim Against Orrstown Defendants, Individual Securities Act Defendants, and Underwriter Defendants

In its SAC, Plaintiff alleges that the Orrstown Defendants, Individual Securities Act Defendants, and Underwriter Defendants issued materially false and misleading statements (or omissions) in the Offering Documents.  (Doc. No. 101 ¶¶ 169-71.)  Specifically, Plaintiff challenges Orrstown's statement in its 2009 Annual Report on Form 10-K that represented that Orrstown had "evaluated the effectiveness of [its] internal control over financial reporting" and determined that it was "effective."  (Id. ¶ 170.)  In addition, the SAC challenges certifications made by Defendants Quinn and Everly as CEO and CFO, respectively, in Orrstown's 2009 Form 10-K pursuant to § 302 of the Sarbanes-Oxley Act of 2002 ("SOX Certifications"), as to the fact that Orrstown's internal control over financial reporting was designed "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements . . . in accordance with generally accepted accounting principles."  (Id. ¶ 171.) Plaintiff alleges that the above statements were materially false and/or misleading when made

because in March 2012, Defendant Orrstown disclosed in its 2011 Annual Report on Form 10-K

that, as of December 31, 2011, there existed a "material weakness" in Orrstown's internal

controls over financial reporting as related to "loan ratings and its impact on the allowance for

loan losses." (Doc. No. 101 ¶ 152.)

The SAC's factual basis for Plaintiff's allegation of a Securities Act violation stemming

from Orrstown's 2009 Annual Report rests on its theory that the operational changes dictated by

the March 2012 Enforcement Actions reflected weaknesses in "internal controls over financial

reporting" that existed as far back as early 2010. The facts the SAC points to in support of this

theory are: the fact that the SEC initiated an investigation into Orrstown's financial reporting

and controls, seeking information on those issues dating back to early 2010, (see id. ¶¶ 158-59),

and its allegation that Orrstown's 2011 deficient internal controls mirrored those that were in

place for reporting periods ending December 31, 2009, and March 31, 2010. (Id. ¶ 176.) The

SAC also relies on statements of Confidential Witnesses (largely included in the amended

complaint), (see id. ¶¶ 102, 111-13, 116-27), to support its Securities Act claim.

Defendants move to dismiss Plaintiff's Securities Act claim on the ground that it fails to

state a claim upon which relief can be granted, arguing that the factual predicate of Plaintiff's

claim remains the same from its previously dismissed amended complaint, and that the SAC's

shift in focus to statements made regarding the effectiveness of internal controls over financial

reporting does not remedy the defects identified by the Court in Plaintiff's amended complaint.

(See Doc. No. 108 at 8-9, Doc. No. 110 at 7-8.) Defendants make several specific arguments in

this regard, including: (1) that none of those facts previously alleged in the amended complaint

pertaining to Orrstown's loan underwriting and risk management practices, which are reiterated

in the SAC, implicate Orrstown's representations and certifications regarding the effectiveness of "internal control over financial reporting," as that term is defined by the SEC, (see Doc. No. 108 at 10, Doc. No. 110 at 15-17); and (2) that to the extent any alleged facts are relevant to the appropriate definition of "internal control over financial reporting," the SAC does not allege sufficient facts from which a reasonable inference can be drawn that the representations of effective "internal control over financial reporting" were false when made. (See Doc. No. 108 at 13-21, Doc. No. 110 at 22-28.) The Underwriter Defendants also argue that the SAC fails to plead its Securities Act claim in accordance with the requirements of Omnicare, as it disclaims any allegations of knowledge with respect to the claim, and further fails to allege the omission of any material facts that might have cast doubt on the basis for management's representation. (See Doc. No. 110 at 28-31.)

In response, Plaintiff argues the following: (1) Defendants impermissibly seek to narrowly construe the term "internal control over financial reporting," (see Doc. No. 111 at 17-22); and that (2) all of the facts alleged in the SAC, including the Enforcement Actions, the SEC investigation, and Confidential Witness allegations, support a reasonable inference that Orrstown's representations and certifications as to the effectiveness of "internal control over financial reporting" in the 2009 Annual Report were materially false and/or misleading when made. (See id. at 22-30.) Further, Plaintiff argues that its Securities Act claim is not subject to the requirements of Omnicare, as the challenged representations are not ones of opinion or belief, but even if they are, Plaintiff argues that the SAC sufficiently alleges an "omissions" claim under Omnicare. (See id. at 45-47.)

Upon review of the SAC, the briefs of the parties and relevant authorities, the Court's

Opinion dismissing the amended complaint in this matter, and the SEC Order, the Court finds

that the SAC fails to allege facts supporting a reasonable inference that the representations and

certifications in Orrstown's 2009 Annual Report as to the effectiveness of its "internal control

over financial reporting" were materially false and/or misleading when made.  In order "[t]o be

actionable, a statement or omission must have been misleading at the time it was made; liability

cannot be imposed on the basis of subsequent events."  In re NAHC, Inc. Sec. Litig., 306 F.3d

1314, 1330 (3d Cir. 2002).  Even assuming that the representations and SOX certifications are

"hard" information material to an investor and not subject to the requirements of Omnicare, as

opposed to statements of opinion or belief, the SAC still fails to allege facts supporting a

reasonable inference that the representations and certifications at issue were materially false

and/or misleading at the time they were made.  The SAC's new allegations (or more precisely,

new theory, based on factual allegations largely identical to those in the amended complaint) do

not change the Court's view that, at bottom, Plaintiff's Securities Act claim amounts to a claim

of fraud by hindsight.

As noted above, Plaintiff in the SAC seeks to state a Securities Act claim based on the

alleged materially false and/or misleading nature of representations and certifications made by

Orrstown in its 2009 Annual Report as to the effectiveness of its "internal control over financial

reporting"[4] as of December 31, 2009, (Doc. No. 101 ¶ 170), because in March 2012, Orrstown

---

[4] The phrase "internal controls over financial reporting" is defined by the SEC to mean:

[A] process designed by, or under the supervision of, the issuer's principal
executive and principal financial officers . . . to provide reasonable assurance
regarding the reliability of financial reporting and the preparation of financial
statements for external purposes in accordance with generally accepted
accounting principles.

disclosed a "material weakness" in internal controls over financial reporting related to "loan ratings and their impact on loan losses," as of December 31, 2011.  (Id. ¶ 152.)  Plaintiff points to operational changes dictated by the March 2012 Enforcement Actions, and argues that the issues identified by those Enforcement Actions existed since early 2010, basing its allegation on the fact of the SEC investigation into matters related to Orrstown's internal controls going back to April of 2010, (see id. ¶¶ 158-60), the statements of Confidential Witnesses, (see id. ¶¶ 102, 111-13, 116-27), and the alleged fact that the controls found to be deficient in 2011 had not changed in any significant respect from those in place in 2009.  (See id. ¶ 176.)  The Court addresses each argument in turn.

The SAC discloses the existence of a confidential, non-public SEC investigation indicating the SEC's review of Orrstown's internal controls from the time period of early 2010 to 2012.  (See Doc. No. 101 ¶¶ 158-60.)  As Defendants correctly point out, an investigation is not evidence of fraud, or even negligence or mistake.  See Meyer v. Greene, 710 F.3d 1189,

---

17 C.F.R. § 240.15d-15(f).  Accordingly, only facts pertaining to internal controls designed to insure the reliability of financial reporting are implicated by this definition.  Facts pertaining to loan underwriting or risk management, for example, are beyond the scope of the term.  See Management's Report on Internal Control Over Financial Reporting and Certification of Disclosure in Exchange Act Periodic Reports, 68 Fed. Reg. 36, 636, 2003 WL 21391634, at *36639 (June 18, 2003) (explaining its refusal to adopt "a more expansive definition of internal control" that would include "internal control objectives associated with enterprise risk management and corporate governance");  see also In re PetroChina Co. Ltd. Sec. Litig., 120 F. Supp. 3d 340, 359 and n. 22 (S.D.N.Y. 2015), aff'd, No. 15-2528 (2d Cir. Mar. 21, 2016), (with regard to SOX-mandated disclosures, where no allegations were made regarding PetroChina's accounting, "[e]ven if PetroChina officials were engaging in bribery, the [complaint] does not make any allegations that would imply that the Company had flawed internal controls over financial reporting") (emphasis in original); In re Elan Corp. Sec. Litig., 543 F. Supp. 2d 187, 223 (S.D.N.Y. 2008) (dismissing claim of nondisclosure based on SOX certifications by looking to the SEC regulations and determining that references to "internal control over financial reporting" must be limited to "processes that ensure reliable financial information and financial statements").

1201 (11th Cir. 2013) ("The announcement of an investigation reveals just that – an investigation – and nothing more.") An SEC investigation does not "reveal to the market that a company's previous statements were false or fraudulent." Id.;  see also In re Am. Apparel, Inc. Shareholder Litig., , No. 10-06352, 2013 WL 174119, at *13 (C.D. Cal. Jan. 16, 2013) ("the existence or nonexistence of an SEC enforcement action is of little help in assessing whether plaintiffs have alleged sufficient facts to state a claim for violation of the securities laws.") Accordingly, the representation of an SEC investigation directed at Orrstown's internal controls as they existed in the 2010-2012 period does not support the inference that Orrstown's 2009 Annual Report included false representations regarding the effectiveness of the bank's internal controls.

As discussed above, the Court takes judicial notice of the SEC Order and the findings it makes resulting from the SEC investigation.  Upon review of the SEC Order, the Court's analysis of Plaintiff's Securities Act claims remains unaltered.  The findings included in it pertain only to the "Relevant Period" covered by the settlement – specifically, April 2010 through December 2011.  (See Doc. No. 122, Exh. 1, SEC Order ¶ 4.)  Accordingly, those findings do not address Orrstown practices during the period ending December 31, 2009, which is the period relevant to Plaintiff's Securities Act claims.  As the Underwriter Defendants note, the SEC Order states that deficiencies in internal controls over financial reporting arose in 2010, as lending markets experienced a "significant decline in real estate values," (id. ¶ 2), and further, that the specific acts of executive "negligence" which contributed to the deficiencies in internal controls over financial reporting occurred in 2010 and 2011 (id. ¶ 4).

With regard to information provided by Confidential Witnesses, the Court addressed that issue previously in its Opinion dismissing Plaintiff's amended complaint.  (See Doc. No. 92 at

48-55.)  In its previous Opinion, the Court found the Confidential Witness testimony of

Confidential Witness #1 and Confidential Witness #3 (who are the only Confidential Witnesses

alleged to have worked at Orrstown prior to the March 2010 Offering) to be of only "minimal

reliability" due to their lack of first-hand knowledge relevant to the workings of the Loan

Committee as it related to alleged misleading statements regarding loan loss reserves.  (Doc. No.

92 at 51-52.)  The SAC, while adding some additional factual material regarding Confidential

Witnesses #1 and #3, (see Doc. No. 101 ¶¶ 63, 66-67, 102, 113, 115-22), still fails to include

facts from which it can be reasonably inferred that the representations and certifications made by

Orrstown and its officers in its 2009 Annual Report pertaining to the effectiveness of internal

controls over financial reporting were materially false and/or misleading when made.

Instead, the bulk of the Confidential Witness allegations relate to the issues of loan

underwriting and risk management practices at Orrstown at different points in time.  For

example, the SAC alleges that Confidential Witness #1 has knowledge about Orrstown's internal

controls over the "credit review and underwriting process," (id. ¶ 63), and that Confidential

Witness #3 has personal knowledge of Orrstown's internal controls over "credit review,

underwriting procedures, and loan approval process." (Id. ¶ 67.)  However, these allegations and

other more specific allegations along these lines do not attribute to Confidential Witness #1 or #3

any personal knowledge with regard to the design and evaluation of internal controls over

financial reporting.  Accordingly, the SAC's Confidential Witness allegations do not support a

reasonable inference that the challenged representations were false when made.  See CALPERS,

394 F.3d 126, 152 (3d Cir. 2004) (dismissing claims based on alleged testimony of "former

employees who held positions that would not appear to render them privy to the company's

26

bookkeeping practices, let alone the specific accounting that went into the company's financial reporting").

Finally, with regard to Plaintiff's allegation that the internal controls revealed to be deficient as of the end of 2011 had not changed in any significant respect from those in existence in 2009, (see Doc. No. 101 ¶ 176), the Court finds that the facts alleged in the SAC do not support Plaintiff's assertion of "no measurable difference" in Orrstown's internal control over financial reporting between early 2010 and the disclosure of a "material weakness" in such controls as of December 31, 2011. (Id.)  The only support the SAC offers for this assertion is Confidential Witness #2's statement that the examination of the regulators (which led to the Enforcement Actions) began in or about November or December of 2010.  (See Doc. No. 101 ¶ 92.)[5]  Even using Plaintiff's alleged date of late 2010, the regulators' examination started a number of months after the March 2010 offering, and almost a year after the effective date of the challenged representations.  That is a very thin and unspecific thread upon which to hang a claim that the internal controls disclosed to be inadequate at the end of 2011 were the same as those in place at the beginning of 2010.  This is especially so given that the SAC details at least two changes to internal controls related to financial reporting during that period.

First, Plaintiff's SAC details the fact that in late July 2011, Orrstown disclosed in its Form 8-K regarding its Second Quarter 2011 financial results that it was reporting a quarterly loss, and that it had "outsource[d] certain credit review responsibilities in order to mitigate the

---

[5] In paragraph 176 of the SAC, Plaintiff states that "as reported by CW #3," regulators were on site and had begun their investigation of Orrstown in 2010.  Given CW #2's statement detailed in paragraph 92, the Court assumes that paragraph 176 incorrectly refers to CW #3 instead of CW #2.

Company's risk of loss, and to reduce its level of nonaccrual and classified loan[s]." (<u>Id.</u> ¶ 190.)
As the SAC notes, that news was more fully disclosed in Orrstown's Form 10-Q, filed on August
9, 2011.  (<u>Id.</u>) Further, the SAC points out that in the third quarter of 2011 Orrstown formed a
"Special Assets Group" staffed with "12 employees actively engaged in the identification and
work out of problem credits."  (<u>Id.</u> ¶ 152 (quoting Orrstown Form 10-K 2011 Annual Report,
filed 3/15/2012 at 125).)  However, notwithstanding the above efforts, Orrstown admitted in
March 2012 that as of December 31, 2011, it had "failed to implement a structured process with
appropriate controls to ensure that updated loan ratings were incorporated timely into the
calculation of the Allowance for Loan Losses." (<u>Id.</u>)

        Accordingly, the Court finds that the allegations of the SAC do not support a reasonable
inference that there was "no measurable difference" in internal controls over financial reporting
from Orrstown's 2009 representations and certifications until its disclosure of a "material
weakness" in internal controls over financial reporting related to "loan ratings and their impact
on loan losses," as of December 2011, as Plaintiff contends, and therefore, the March 2012
disclosure of a "material weakness" does not support a reasonable inference that the same
"material weakness" existed at the time of Orrstown's  representations and certifications in its
2009 Annual Report.

        Because statements that create a misleading impression in hindsight "are not sufficient to
constitute the basis of a securities action under section 11," the Court finds that Plaintiff's SAC
has failed to state a Section 11 claim against the Orrstown Defendants, Individual Securities Act
Defendants, and the Underwriter Defendants, and the Court will dismiss the claim.  <u>Zucker v.
Quasha</u>, 891 F. Supp. 1010, 1017 (D.N.J. 1995) (citation omitted).

b.      **Claim Against Defendant SEK**

Plaintiff's Section 11 claim against Defendant SEK stems from the "clean" audit opinion

SEK issued in connection with Orrstown's 2009 Annual Report, which was incorporated in

Orrstown's 2010 Registration Statement.  (Doc. No. 101 ¶¶ 177-78.)  Plaintiff challenges SEK's

opinion that Orrstown's financial statements relied on by Defendant SEK in its audit "present

fairly, in all material respects, the financial position of Orrstown Financial Services, Inc., and its

wholly-owned subsidiary as of December 31, 2009 and 2008."  (Id. ¶ 178.)  Plaintiff further

challenges Defendant SEK's opinion that Orrstown "maintained, in all material respects,

effective internal control over financial reporting as of December 31, 2009."  (Id.)  Plaintiff

alleges that SEK failed to follow PCAOB Rule 3100,[6] AS No. 5,[7] AU Section 342,[8] and FASB

Statement No. 5[9] in conducting its audit, and that Defendant SEK "disregarded red flags, failed

to obtain sufficient evidence to support opinions and proceeded to issue a clean audit report and

---

[6] PCAOB 3100 requires an auditor "to comply with all applicable auditing and related
professional practice standards of the PCAOB."  Securities and Exchange Commission Release
no. 2003-010, 04/06/2004, at 1.

[7] AS No. 5 "establishes requirements and provides direction that applies when an auditor
is engaged to perform an audit of management's assessment of the effectiveness of internal
control over financial reporting ('audit of internal control') that is integrated with an audit of the
financial statements.  Risk assessment underlies the entire audit process described in AS No. 5,
including the determination of significant accounts and disclosures and relevant assertions, the
selection of controls to test, and the determination of the extent of audit evidence necessary for a
given control."  PCAOB Release No. 2010-006, 12/10/2012, at 1.

[8] AU Section 342, Auditing Accounting Estimates, provides guidance as to how an
auditor should test management's estimates and review and test management's process.  See AU
Section 342 10-11.

[9] FASB Statement No. 5 is the primary guidance on accounting and reporting loss
contingencies, including credit losses.  Statement No. 5 uses the terms "probable, reasonably
possible," and "remote" to identify "the likelihood that [a] future event or events will confirm the
loss or impairment of an asset or the incurrence of a liability."  FASB Statement No. 5.

affirmed that Orrstown had maintained, in all material respects, effective internal controls."
(Doc. No. 101 ¶ 182.)

As the representation challenged is a statement of opinion, SEK's potential Section 11 liability is governed by the Supreme Court's decision in <u>Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund</u>, 135 S. Ct. 1318 (2015) ("<u>Omnicare</u>"),which defined the limited circumstances under which Section 11 liability may attach to sincerely held opinions that ultimately prove to be incorrect.  In <u>Omnicare</u>, the Court analyzed the status of opinion statements under the two clauses of Section 11's disclosure provision, which provides for liability if a registration statement (1) contained an untrue statement of a material fact, or (2) omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.  15 U.S.C. § 77k(a).  Under the first clause, an opinion can constitute an untrue statement of a material fact if (1) the opinion is not sincerely held, or, in other words, is subjectively disbelieved, or (2) the opinion contains an embedded statement of untrue material facts.  <u>Omnicare</u>, 135 S. Ct. at 1326-27.  Under the second clause, a statement of pure opinion can subject an issuer to liability if a registration statement "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself."  <u>Id.</u> at 1329.

Upon review of the SAC, the Court is persuaded that the allegations of the SAC pertaining to SEK fail to provide a factual basis supporting a reasonable inference that Defendant SEK did not honestly hold the challenged opinion.  Nor does Plaintiff point to an untrue material fact embedded in SEK's opinion.  Accordingly, under <u>Omnicare</u>, Plaintiff's theory of Section 11 liability against Defendant SEK can only proceed under the "omissions" clause of Section 11.

To state a claim under Section 11's omissions clause for a statement of opinion,

> "[t]he investor must identify particular (and material) facts going to the basis for the issuer's opinion – facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."

Omnicare, 135 S. Ct. at 1332.

In its earlier Opinion, the Court found that Plaintiff's amended complaint offered little more than a conclusory assertion that the opinions of Defendant SEK "lacked a reasonable basis," (Doc. No. 40 ¶¶ 176, 181), which fell below the Omnicare standard for pleading a Section 11 omissions claim.  (Doc. No. 92 at 65.)  With regard to allegations against Defendant SEK, Plaintiff's SAC is virtually identical to the previously dismissed amended complaint.

Just as in the amended complaint, Plaintiff fails to identify actual and material steps taken or not taken by Defendant SEK in its audit, or knowledge that it did or did not have in the formation of its opinion.  Instead, Plaintiff's SAC alleges that if SEK had performed its audit of Orrstown in accordance with applicable auditing standards, any reasonable auditor would have "discovered that the financial statements contained material understatements of Risk Assets and that there was a material weakness in the Company's internal controls over the financial reporting of Risk Assets and loan loss reserve allocations such that the financial statements were not prepared in accordance with GAAP."  (Doc. No. 101 ¶ 268.)  This allegation, which is identical to that contained in the amended complaint, (see Doc. No. 40 ¶ 299), is still not sufficient to state a Section 11 claim under Omnicare.  See Omnicare, 135 S. Ct. at 1333 ("recitation of the statutory language – that [Defendant] 'omitted to state facts necessary to make the statements made not misleading' is not sufficient; neither is the [Plaintiff's] conclusory

allegation that [Defendant] lacked 'reasonable grounds for the belief'"); In re Fairway Group Sec. Litig., No. 14-0950, 2015 U.S. Dist. LEXIS 109941, at * 54 (S.D.N.Y. Aug. 19, 2015) ("allegations that defendants 'should have' been aware of facts contradicting their opinions" is insufficient to "state a securities fraud claim") (citation omitted).

Even if Plaintiff could assert a Section 11 claim against Defendant SEK based on what SEK "should have known," Plaintiff's allegations still fail. As the Court discussed in its earlier Opinion, the "red flags" Plaintiff accuses SEK of missing when conducting its audit stem from Confidential Witness assertions that the loan approval process was seriously flawed. (See, e.g., Doc. No. 101 ¶¶ 107-27, 141-51.)   However, as before in its amended complaint, Plaintiff in its SAC fails to assert how Defendant SEK could have been aware of these purported "red flags," in that the Confidential Witnesses are not alleged to have divulged the "red flag" information to Defendant SEK.  See In re Lululemon Sec. Litig., 14 F. Supp. 3d 553, 579-81 (S.D.N.Y. 2014), aff'd, 604 F. App'x 62 (2d Cir. 2015) (confidential witness allegations about "widespread" undisclosed deficiencies generally known to defendants were insufficiently specific to establish falsity, as "it is the facts known to, and the intent of, the maker of the statements which is ultimately relevant when the [c]ourt considers the falsity of statements of belief or opinion").

Plaintiff's Section 11 claim against Defendant SEK based on its opinion issued in connection with Orrstown's 2009 Annual Report is based on hindsight provided by the allegations of the Confidential Witnesses, and the substance of the March 2012 Enforcement Actions.[10]  As before, because omissions or statements that create a misleading impression in

---

[10] Further, the Court notes that the SEC Order resulting from its investigation of Orrstown fails to make any reference to SEK in relation to the internal accounting deficiencies it describes, see Doc. No. 122, Exh. 1, SEC Order, and therefore, does not further Plaintiff's claims against

hindsight "are not sufficient to constitute the basis of a securities action under section 11," the Court finds that Plaintiff's SAC has failed to state a Section 11 claim against Defendant SEK, and the Court will dismiss the claim.  Zucker v. Quasha, 891 F.Supp. 1010, 1017 (D.N.J. 1995) (citation omitted).

**4.    Section 12(a)(2) - Against Orrstown Defendants, Individual Securities Act Defendants, Defendant Embly and Underwriter Defendants  (Count 3)**

Plaintiff and the Securities Act class allege that the conduct of Orrstown, the Bank, the Individual Securities Act Defendants, Defendant Embly, and the Underwriter Defendants in soliciting purchasers of the shares of the Registration Statement violated Section 12(a)(2) of the Securities Act.  (Id. ¶¶ 214, 219.)  A prerequisite for a Section 12(a)(2) claim is the allegation of a purchase of securities "pursuant to a materially false or misleading prospectus or oral communication."  14 U.S.C. § 77l(a)(2).  Because the Court has already found that the allegations of the SAC fail to support a reasonable inference of the materially false or misleading nature of the statements challenged by Plaintiff, it must also find that the SAC fails to state a claim against Orrstown, the Bank, the Individual Securities Act Defendants, Defendant Embly, and the Underwriter Defendants under Section 12(a)(2) of the Securities Act.  Accordingly, the Court will dismiss this claim.[11]

---

Defendant SEK.  See In re DNTW Chartered Accountants Sec. Litig., 172 F.Supp. 3d 675, 687-89 (S.D.N.Y. 2016) (despite plaintiff's allegation that SEC cease and desist order evidenced that information was available to the auditors that should have disclosed fraud, court dismissed the complaint for failure to establish that the auditor "disregarded 'red flags' that are themselves 'indicative of actual fraud'" or intended to defraud investors by a "pretend" audit) (citations and quotations omitted).

[11] Given the Court's dismissal of Counts 1-3 above, the Court must also dismiss Count 4, which alleges "control person liability" against the Individual Securities Act Defendants

C.      **Exchange Act**

The last three counts of the SAC allege claims pursuant to the Exchange Act.  Plaintiff

asserts in Count 5 that the Orrstown Defendants and Defendants Quinn, Everly, Embly,

Zullinger, Shoemaker, Snoke and Coy disseminated or approved false statements, "which they

knew to be or recklessly disregarded as to whether they were misleading," and in so doing,

deceived the investing public, including Plaintiff and other members of the purported Exchange

Act class, by artificially inflating and maintaining the market price of Orrstown common stock

and causing Plaintiff and other members of the purported Exchange Act class to purchase

Orrstown stock at artificially inflated prices, in violation of Section 10(b) and Rule 10b-5.  (Doc

No. 101 ¶¶ 294-95.)  In Count 6, Plaintiff and the purported Exchange Act class allege that

Defendant SEK "made, prepared, disseminated, and/or approved statements contained in reports

and other documents the Company filed with the SEC which were, at the time in light of the

circumstances under which they were made, false and misleading with respect to material facts,"

specifically, that SEK's unaudited opinions on Orrstown's 2009, 2010 and 2011 financial

statements "materially understated [Orrstown's] Risk Assets, loan loss reserves and net income,"

and that these materially false and/or misleading statements proximately caused Plaintiff and the

purported class to purchase Orrstown's common stock at artificially inflated prices throughout

the class period and suffer damages, in violation of Section 10(b) and Rule 10b-5.  (Id. ¶¶ 300-

09.)  Count 7 alleges that Defendants Quinn, Everly, and Embly acted as controlling persons

within the meaning of Section 20(a) of the Exchange Act, and therefore are liable for the alleged

---

pursuant to Section 15 of the Securities Act, as such liability is "premised upon a predicate
violation of the . . . 1933 Act."  See 15 U.S.C. §77o; CALPERS, 394 F.3d at 142.

underlying violations of Section 10(b) and Rule 10b-5.  (Id. ¶¶ 311-16.)

### 1.    Legal Standard

Section 10(b) of the Exchange Act prohibits the use of fraudulent schemes or devices in connection with the purchase or sale of securities.  15 U.S.C. § 78j(b).  The private right of action under Section 10(b) and Rule 10b-5 reaches beyond statements and omissions made in a registration statement or prospectus or in connection with an initial distribution of securities, and creates liability for false or misleading statements or omissions of material fact that affect trading on the secondary market.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997).  To implement the statute, the Securities and Exchange Commission promulgated Rule 10b-5.  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 195-96 (1976).  In relevant part, Rule 10b-5 makes it unlawful for an individual "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(b).

To state a claim for securities fraud under Section 10 of the Exchange Act and Rule 10b-5, a plaintiff must plead the following: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  Amgen, Inc. v. Conn. Retirement Plans & Trust Fund, 133 S.Ct. 1184, 1192 (2013) (internal citation omitted).

Claims brought under the Exchange Act pursuant to Section 10(b) and Rule 10b-5 must meet a heightened pleading standard pursuant to the PSLRA and Federal Rule of Civil Procedure

9(b).  See 15 U.S.C. §§ 78u-4(b)(1), (b)(2); Fed. R. Civ. P. 9(b).  The PSLRA "imposes another

layer of factual particularity to allegations of securities fraud," In re Rockefeller Ctr. Prop., Inc.

Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002), and requires claims brought under the Exchange

Act to:

> specify each statement alleged to have been misleading, the reason or reasons why
> the statement is misleading, and, if an allegation regarding the statement or omission
> is made on information and belief, the complaint shall state with particularity all facts
> on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).  If this requirement is not met, "the court shall . . . dismiss the

complaint."  Id. at 4(b)(3)(A).  "[U]nless plaintiffs in securities fraud actions allege facts

supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and

the [PSLRA], they may not benefit from inferences flowing from vague or unspecific allegations

- inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis."  In

re Rockefeller, 311 F.3d at 224.

Additionally, Rule 9(b) requires a plaintiff pleading fraud-based claims to state with

"particularity" the "circumstances constituting fraud or mistake."  CALPERS, 394 F.3d at 144.

Courts rigorously apply the particularity requirement in securities fraud cases.  In re Burlington,

115 F.3d at 1417.  Under Rule 9(b), a plaintiff asserting a securities fraud claim must allege "the

who, what, when, where and how: the first paragraph of any newspaper story."  In re Advanta

Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (internal citations omitted), abrogated on

other grounds by Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007).

In addition to pleading with particularity a material misrepresentation or omission by the

defendant, an Exchange Act plaintiff must also adequately plead scienter.  Scienter is a "mental

state embracing intent to deceive, manipulate, or defraud."  Ernst & Ernst, 425 U.S. at 218 n. 12.

36

Under the PSLRA's second pleading requirement for Exchange Act claims, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The scienter standard requires a plaintiff to allege facts giving rise to a "strong inference" of "either reckless or conscious behavior."  In re Advanta, 180 F.3d at 534-35.

The Supreme Court interpreted the meaning of scienter's "strong inference" requirement in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), where the Court held that courts must weigh "plausible nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff."  551 U.S. at 324.  A "strong inference" of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Id. at 314; see also id. at 324 ("The inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking gun' genre, or even the most plausible of competing inferences." (internal quotation marks omitted). The pertinent question is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  Id. at 323; see also id. at 326 ("[T]he court's job is not to scrutinize each allegation in isolation but to assess all of the allegations holistically.").

An Exchange Act plaintiff must also plead a connection between the misrepresentation or omission and the purchase or sale of a security, see Blue Chip Stamps et al. v. Manor Drug Stores, etc., 421 U.S. 723 (1975), and reliance.  See Amgen, 133 S.Ct. at 1192.  In Basic, Inc. v. Levinson, 485 U.S. 224 (1988), in a proposed class action securities fraud context, the Supreme Court held that plaintiffs can invoke a rebuttable presumption of reliance based on what is

known as the "fraud on the market" theory.  Under that theory, "the market price of shares traded

on well-developed markets reflects all publicly available information available, and, hence, any

material misrepresentations."  Id. at 246.  Under that doctrine, a court can assume an investor

relies on public misstatements whenever he "buys or sells stock at the price set by the market."

Id. at 247.  Finally, an Exchange Act plaintiff must allege economic loss and loss causation, i.e.,

a causal connection between the material misrepresentation and the loss.  15 U.S.C. § 78u-

4(b)(4).

 Section 20(a) imposes joint and several liability on any individual who exercises control

over a "controlled person" who violates Section 10(b).  15 U.S.C. § 78t(a).  Accordingly,

liability under Section 20(a) is contingent upon sufficiently pleading an underlying violation of

Section 10(b) by the controlled person, such that a plaintiff must not only plead that "one person

controlled another person," but also that the 'controlled person' is liable under [Section 10(b)]."

City of Roseville Emp. Ret. Sys. v. Horizon Lines, Inc., 686 F. Supp. 2d 404, 412 (D. Del. 2009)

(citing In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 153 (3d Cir. 2004)).  Section 20(a) applies

to corporations as well as individuals.  Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242,

252 (3d Cir. 2009).

2.      **10b-5 - Orrstown and Individual Defendants (Count 5)**

Count 5 of the SAC alleges that, during the Class Period, the Orrstown Defendants, and

Individual Defendants Quinn, Everly, Embly, Zullinger, Shoemaker, Snoke and Coy

(collectively, the "Orrstown Exchange Act Defendants"), knowingly or recklessly issued or

approved materially false and/or misleading statements in furtherance of a scheme to defraud the

public.  (Doc. No. 101 ¶¶ 294-95.)  Specifically, Plaintiff's SAC challenges Orrstown's

statements in its 2009,[12] 2010 and 2011 Annual Reports on Form 10-K, as well as statements in

quarterly financial reports (Form 10-Q) beginning with the first quarter of 2010 and continuing

through the first quarter of 2012, verifying that the "management-prepared financial statements

were prepared in accordance with GAAP without material weaknesses and that [Orrstown] was

maintaining effective internal controls." (Id. ¶¶ 253-256.)  In addition, the SAC challenges the

SOX certifications made by Defendants Quinn and Everly as CEO and CFO, respectively, in

those same filings to the effect that Orrstown's internal control over financial reporting was

designed "to provide reasonable assurance regarding the reliability of financial reporting and the

preparation of financial statements . . . in accordance with generally accepted accounting

principles."  (Id. ¶ 250.)  Plaintiff alleges that the above statements issued throughout the Class

Period were materially false and/or misleading when made because in March 2012, Defendant

Orrstown disclosed in its 2011 Annual Report on Form 10-K that, as of December 31, 2011,

---

[12] The Court has already found that the SAC fails to adequately plead facts supporting a reasonable inference that representations contained in Orrstown's 2009 Annual Report on Form 10-K were materially false and/or misleading when made.  See supra 23-29.  Accordingly, only financial reporting dated from 2010 onward can potentially form the basis of an Exchange Act claim here.

there existed a "material weakness" in Orrstown's internal controls over financial reporting as related to "loan ratings and its impact on the allowance for loan losses," and therefore it had failed to "maintain effective internal control over financial reporting as of December 31, 2011." (Doc. No. 101 ¶¶ 259-60.)

In its earlier Opinion, the Court rejected Plaintiff's claim in its amended complaint that Orrstown's financial reporting provided the basis for an Exchange Act claim.  (Doc. No. 92 at 88, 92.)  First, the Court found that Orrstown's admission of ineffective "internal control over the process to prepare and report information related to loan ratings and its impact on the allowance of loan losses," as of December 31, 2011, in its 2011 Annual Report on Form 10-K, did not support a reasonable inference that Orrstown's financial reports for earlier periods of time were false and/or misleading at the time they were issued.  (Doc. No. 92 at 88.)  The Court also rejected Plantiff's broader allegation in its amended complaint that Orrstown financial reports (specifically, unaudited quarterly reports (Form 10-Q) throughout 2010 and 2011 up to and including the first quarter of 2012, and audited 2009, 2010 and 2011 annual reports (Form 10-K)) contained knowing or reckless false or misleading statements or omissions.  (See Doc. No. 92 at 92.)  The Court did so because it found that Plaintiff's amended complaint failed to adequately allege scienter pursuant to the exacting standards of the PSLRA.  (See id.) Specifically, the Court found that while the amended complaint "provides specific allegations regarding what it believes the Exchange Act Defendants actually knew, Plaintiff fails to plead specific facts raising a strong inference as to how Defendants knew their . . . statements were misleading" beyond conclusory assertions.  (Id. at 91.)

Similar to Plaintiff's Securities Act allegations, Plaintiff's Exchange Act allegations in

the SAC amount to a more focused theory of liability centered solely on representations in

financial reporting, but are based on factual underpinnings very similar to those asserted in the

amended complaint, largely relying on statements of Confidential Witnesses and the operational

changes dictated by the March 2012 Enforcement Actions to establish falsity and scienter with

regard to the financial reporting representations.  However, given the relevant time period

addressed by the SEC Order (i.e., second quarter 2010 through 2011), which is the same time

period relevant to Plaintiff's Exchange Act claims, that document assists in providing a fuller

factual basis for evaluating the inferences that can be drawn from the SAC's Exchange Act

allegations.  With that in mind, the Court turns to an evaluation of the Orrstown Exchange Act

Defendants' motion to dismiss the SAC's Exchange Act claims.  In their briefing on the motion,

the parties dispute (1) whether the SAC pleads facts supporting a reasonable inference that the

representations at issue were materially false and/or misleading at the time they were made, and

(2) whether the SAC adequately alleges scienter.

### a.      Material Misstatement or Omission

As noted above, Plaintiff's SAC alleges that the admitted "material weakness" in

Orrstown's internal controls over financial reporting as related to "loan ratings and its impact on

the allowance for loan losses" which resulted in its admitted failure to "maintain effective

internal control over financial reporting as of December 31, 2011," existed throughout 2010 and

2011, and therefore, the Orrstown Exchange Act Defendants issued or approved materially false

and/or misleading statements in Orrstown's 2010 and 2011 Annual Reports on Form 10-K, as

well as in its quarterly financial reports (Form 10-Q), during the same two year period when they

verified that Orrstown's financial statements "were prepared in accordance with GAAP without

material weaknesses and that [Orrstown] was maintaining effective internal controls." (Doc. No. 101 ¶ 256.) Plaintiff's SAC further challenges the SOX certifications made by Defendants Quinn and Everly as CEO and CFO, respectively, in those same filings to the effect that Orrstown's internal controls over financial reporting were designed "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements . . . in accordance with generally accepted accounting principles." (Id. ¶ 250.)

Plaintiff's SAC details facts supporting the alleged understatement of impaired loans throughout that two year period, during which Orrstown issued and/or approved the above statements as to the effectiveness of its internal controls over financial reporting, and its preparation of financial statements in accordance with generally accepted accounting principles, resulting in allegedly materially misstated financial statements. (Id. ¶¶ 239-43, 251-60.) Specifically, Plaintiff alleges that after Orrstown's March 2010 public offering, the Orrstown Exchange Act Defendants "moved quickly to formulate and implement a scheme to defraud investors about the health and financial condition of Orrstown and to conceal and materially understate [Orrstown's] Risk Assets." (Id. ¶ 240.) Plaintiff's SAC alleges that Orrstown adopted a risk rating system which gave it discretion to "use several different rating levels until it would ultimately have to move a troubled loan into the nonperforming category;" consequently, Orrstown no longer identified as "impaired" its "performing substandard loans," facilitating Orrstown's "concealment of the magnitude of impaired loans." (Id.) Accordingly, Plaintiff alleges that Orrstown's 10-Q filings for the second, third, and fourth quarters of 2010 depict significant decreases in Risk Assets. (Id. ¶ 241.) However, Plaintiff asserts that Orrstown's representations and certifications as to the effectiveness of its internal controls over

42

financial reporting during this period were materially false and misleading, as Orrstown was in the process of "restructuring many of its troubled loan relationships," and therefore Orrstown's financial reporting depicted an "artificial decline in Risk Assets and understatement of loan loss reserves [which] provided investors with misleading financial data that created a false reassurance that [Orrstown] was competently managing the credit risks of its portfolio." (Id. ¶¶ 242-43.)

In support of its allegations, Plaintiff's SAC further relies on the Enforcement Actions, disclosed on March 23, 2012, and attached as Exhibits A and B to the SAC, which resulted from a Joint Investigation by the Federal Reserve Bank of Philadelphia and Commonwealth of Pennsylvania Department of Banking, apparently initiated at some point in late 2010 or early 2011. (Id. ¶¶135-37.)  Plaintiff relies on the operational changes dictated by the Enforcement Actions to corroborate the existence of the alleged failures of internal control over financial reporting throughout the purported class period, during the same time that Orrstown attested to the "effectiveness" of those controls and its compliance with generally accepted accounting principles in preparing its financial statements.  (Id. ¶ 153.)  Pursuant to the Enforcement Actions, in March, 2012, Orrstown agreed to adopt and implement a plan to do the following: strengthen oversight of management and operations, reduce the Bank's interest in criticized or classified assets, strengthen the Bank's credit risk management practice, maintain an adequate allowance for loan and lease losses, maintain sufficient capital, and revise the Bank's loan underwriting and credit administration policies.  (Id.)

The Orrstown Exchange Act Defendants argue, as they did with regard to the amended complaint, that Plaintiff's SAC attempts to plead an Exchange Act claim by hindsight,

maintaining that just because the Enforcement Actions made findings and issued

recommendations as of December 31, 2011, those findings do not support an inference that

Orrstown needed to address the identified issues prior to that time, and therefore, they cannot

support an inference that Orrstown's representations in its financial reporting throughout the

class period were false and/or misleading at the time they were made.  (Doc. No. 115 at 15.)

This concern that Plaintiff attempts to plead "fraud by hindsight" motivated the Court in its

earlier Opinion dismissing the amended complaint to find the allegations of ineffective internal

controls during 2010 and through 2011 inactionable.  (Doc. No. 92 at 88.)

However, because the Court has taken judicial notice of the recently-issued SEC Order

and the findings contained in it in connection with its review of the SAC, there now exists a

fuller factual basis upon which to analyze Plaintiff's Exchange Act allegations.  The SEC Order

supports the SAC's allegations of misstatement or omission beginning in the second quarter of

2010 through the end of 2011, finding that during that period, Orrstown "did not maintain a

system of internal accounting controls sufficient to provide reasonable assurances that

transactions were recorded as necessary to permit preparation of financial statements in

accordance with GAAP."  (Doc. No. 122, Exh. 1, SEC Order ¶ 50.)  Specifically, the SEC Order

summarizes its findings as follows:

> In 2010, as Orrstown's primary lending markets were experiencing a significant
> decline in real estate values, Orrstown incorrectly accounted for its commercial
> loans by not disclosing as much as approximately $69.5 million in loans as
> "impaired" in accordance with U.S. generally accepted accounting principles
> ("GAAP"). . . . Orrstown did not comply with GAAP's impaired loan disclosure
> requirements due to certain Respondents' negligence and Orrstown's lack of
> sufficient internal accounting controls.  This failure resulted in material misstatements
> in Orrstown's impaired loan disclosures in its quarterly filings for the period ended
> June 30, 2010 through September 30, 2011, and its annual filings for the years ended
> December 31, 2010 and 2011 (the "Relevant Period").

> Additionally, Orrstown (I) did not calculate loan losses in accordance with GAAP in connection with the filing of its Form 10-Q for the period ended June 30, 2011, (II) incorrectly implemented a newly issued GAAP accounting pronouncement in connection with the filing of its Form 10-Q for the period ended June 30, 2011 in a manner that was not consistent with the new standard, and (III) incorrectly applied GAAP when calculating fair value for certain collateral in connection with its impairment analyses for its Form 10-Q for the periods ended June 30, 2010 and September 20, 2010.

(Id., SEC Order ¶¶ 2-5.)

In light of this additional information, and viewing all well-pleaded factual allegations in the light most favorable to Plaintiff, as the Court must do when analyzing a Rule 12(b)(6) motion to dismiss, the Court finds that the Plaintiff's allegations support a reasonable inference that the challenged statements in Orrstown's financial reports from the second quarter of 2010 through 2011 were false and/or misleading at the time they were made.

As discussed above, a misrepresentation or omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important" in making an investment decision. TSC, 426 U.S. at 449. For a misrepresentation or omission to be material, "there must be a substantial likelihood that the disclosure of the omitted fact [or misrepresentation] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Id. Materiality is a mixed question of law and fact, "and the delicate assessments of the inference a reasonable shareholder would draw from a given set of facts are peculiarly for the trier of fact." Shapiro v. UJB Financial Corp., 964 F.2d 272, 280 n. 11 (3d Cir. 1992) (citing TSC, 426 U.S. at 450); see Weiner v. Quaker Oats Co., 129 F.3d 310, 317 (3d Cir. 1997) ("the emphasis on a fact-specific determination of materiality militates against a dismissal on the pleadings"). "Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of

materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." Shapiro, 964 F.2d at 280 n. 11 (citation omitted).

Upon review of the SAC, the briefs of the parties and relevant authorities, the Court's Opinion dismissing the amended complaint in this matter, and the SEC Order, the Court cannot conclude at this stage of the proceedings that Orrstown's alleged misstatements regarding the effectiveness of its internal controls over financial reporting in its 2010 and 2011 Annual Reports on Form 10-K, and its quarterly reports on Form 10-Q (beginning with the second quarter of 2010 through the end of 2011) are "so obviously unimportant to an investor" as to be immaterial as a matter of law. See Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 641 n. 17 (3d Cir. 1989) ("disclosures mandated by law are presumably material"); In re Bear Stearns Co. Inc. Sec. Deriv. and ERISA Fin. Litig., 763 F.Supp. 2d 423, 471 (S.D.N.Y. 2011) (finding that "[m]anagement's assessment of internal control over financial reporting was a critical metric for investors because it provided assurance that the Company's financial statements were reliable and in compliance with applicable laws").

### b.    Scienter

Having found that Plaintiff's allegations and additional information appropriately considered when analyzing a motion to dismiss support a reasonable inference that the representations at issue contained in Orrstown's financial reporting from the second quarter of 2010 through 2011 were false and/or misleading at the time they were made, and also that such representations are potentially material, the Court turns to the issue of whether Plaintiff has adequately pled facts supporting a finding of scienter on the part of the Exchange Act Defendants.

Under the PSLRA, as noted above, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Accordingly, as to state of mind, a plaintiff must allege specific facts "to show that defendants had both the motive and opportunity to commit fraud," or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." In re Suprema, 438 F.3d at 276 (citation omitted). Moreover, those specific facts must support an inference of scienter that is <u>strong</u>, which means that the inference is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 314. Further, "[t]he PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions." Winer Family Trust v. Owen, 503 F.3d 319, 335-36 (3d Cir. 2007).

As mentioned above, the Court found that Plaintiff's amended complaint failed to adequately allege scienter as to statements contained in Orrstown's financial reporting because while it provided "specific allegations regarding what it believes the Exchange Act Defendants knew, Plaintiff fails to plead specific facts raising a strong inference as to how Defendants knew their . . . statements were misleading" beyond conclusory assertions. (Doc. No. 92 at 91.) Accordingly, in order to permit a strong inference of scienter, Plaintiff's SAC must allege, at a minimum, specific facts demonstrating how the Exchange Act Defendants knew - or were at least reckless as to their knowledge - that the relevant SOX certifications and representations regarding the effectiveness of internal control over financial reporting were false at the time they were made. See In re Radian Sec. Litig., 612 F.Supp. 2d 594, 620 (E.D. Pa. 2009) (to support an inference of scienter where the alleged misrepresentations consist of GAAP violations or false

SOX certifications, "something more is needed" to support an inference of conscious behavior or recklessness, such as an allegation that a defendant "knew or turned a 'blind eye' to the fact that . . . accounting or disclosure practices were insufficient").

As noted above, Plaintiff's SAC attempts to allege a new theory of liability (one based exclusively on representations as to the effectiveness of internal controls over financial reporting) yet still focuses on factual allegations largely identical to those in its previously dismissed amended complaint.  The scienter allegations of the SAC largely mirror those contained in the amended complaint;  however, the recently-issued SEC Order, of which the Court has taken judicial notice, provides additional factual information as to <u>how</u> certain of the Exchange Act Defendants knew - or were at least reckless as to their knowledge - that the relevant representations as to financial reporting were false and/or misleading at the time they were made.     Specifically, the SEC Order supports an inference that, given the information they knew or should have known as members of Orrstown's Loan Committee, Executive Committee, and/or Board of Directors, Defendants Quinn, Everly and Embly knew or should have known in 2010 that certain significant lending relationships became impaired or should have been evaluated for impairment, yet they did not raise any concerns as to whether the loans should have been disclosed as impaired in accordance with relevant accounting standards.  (Doc. No. 122, Exh. 1, SEC Order ¶ 26.)  Moreover, the SEC Order supports an inference that, as Chief Financial Officer and Chief Credit Officer, Defendants Everly and Embly "were directly notified that Orrstown's Loan Review Officer did not appropriately record as impaired in Orrstown's books and records loans that had been assigned impairment losses," and that such a failure was inconsistent with accounting guidance, resulting in numerous misstatements by Orrstown in SEC

filings from the second quarter of 2010 through the end of 2011, yet neither took action upon

receipt of this information.  (Id. ¶ 34.)  Further, the SEC Order supports an inference that

Defendants Quinn, Everly, and Embly knew or should have known in 2011 that loan losses were

not calculated in accordance with generally accepted accounting principles, yet they failed to

take action to remedy that fact.  (Id. ¶¶ 41-43.)  Finally, the SEC Order supports an inference that

Defendants Quinn, Everly, and Embly knew or should have known, in the second and third

quarters of 2010, that [Orrstown's] "use of stale appraisals in connection with the measurement

of impairment loss, and its use of a universal discount rate, did not comply with GAAP and

Orrstown's own loan policy."  (Id. ¶ 49.)

   In sum, the findings of the SEC Order support an inference that Orrstown failed to

maintain an adequate system of internal accounting controls through the relevant time period -

second quarter 2010 through 2011 - and that such failure resulted in inaccuracies in financial

reporting during that time, including "(1) incorrect loan risk ratings; (2) incorrect disclosures of

impaired loans; (3) incorrect calculations and disclosures of loan losses; (4) incorrect application

of newly issued accounting pronouncements; and (5) the lack of action to remedy accounting

problems after being alerted to them."  (Id. ¶ 50.)

   Accordingly, upon review of the SAC, the briefs of the parties and relevant authorities,

the Court's Opinion dismissing the amended complaint in this matter, and the SEC Order, and

assessing all of Plaintiff's allegations "holistically," as the Court is required to do when

assessing scienter, Tellabs, 557 U.S. at 326, the Court finds that as to Exchange Act Defendants

Quinn, Everly, Embly, and the Orrstown Defendants, Plaintiff has alleged facts supporting a

strong inference that those defendants issued or approved the challenged representations in

Orrstown's financial reporting with the requisite scienter to state a claim under the Exchange Act.[13]  The inference that the representations and certifications were made with reckless disregard of their truth is "at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 557 U.S. at 314.  However, as to Exchange Act Defendants Zullinger, Shoemaker, Snoke, and Coy, absent any allegation as to how they would have known the challenged representations were false and/or misleading at the time they were made, the Court finds that Plaintiff has failed to allege facts supporting a strong inference of scienter as to those defendants.  Accordingly, the Defendants' motion to dismiss Count 5 of Plaintiff's SAC will be granted as to Defendants Zullinger, Shoemaker, Snoke, and Coy, but will be denied as to the Orrstown Defendants and Defendants Quinn, Everly, and Embly.[14]

### 3.      Section 20(a)  - Defendants Quinn, Everly and Embly (Count 7)

Count 7 alleges that Defendants Quinn, Everly, and Embly acted as controlling persons within the meaning of Section 20(a) of the Exchange Act.  (Doc. No. 101 ¶¶ 310-16.)  As noted above, under Section 20(a), a plaintiff must prove that one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities

---

[13] The Court's finding of a sufficient allegation of scienter as to Defendants Quinn, Everly, and Embly suffices to support a finding of scienter on the part of the Orrstown Defendants as well, as "[w]hen the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.  In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant."  Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008).

[14] The Orrstown Exchange Act Defendants' challenge to Plaintiff's standing as it relates to purchases of stock made after May 9, 2011, will be addressed by the Court in connection with class certification.

laws.  See In re Suprema, 438 F.3d at 285 (citation omitted).  The Court has found that Plaintiff

has adequately alleged a primary violation of Section 10(b) by these defendants.  As to control

liability, Plaintiff alleges that, by virtue of their power to control public statements about

Orrstown as Chief Executive Officer, Chief Financial Officer, and Chief Credit Officer,

respectively, Defendants Quinn, Everly, and Embly had the power and authority to control

Orrstown and its employees.  (Id. ¶ 311.)  The Court finds that Plaintiff has adequately pled

"actual control" sufficient to comply with the PSLRA.  Therefore, Defendants' motion to dismiss

count 7 will be denied as well.

### 4.     10b-5 - Defendant SEK (Count 6)

In Count 6 of the SAC, Plaintiff reiterates its claim from the amended complaint that

Defendant SEK violated Section 10(b) of the Exchange Act and Rule 10b-5 because it "knew or

recklessly disregarded the facts which indicated that Orrstown and the Bank's financial

statements were materially false and misleading, and issued unqualified opinions on 2009, 2010,

2011 financial statements when such financial statements materially understated the Company's

Risk Assets, Loss Loan Reserves and net income."  (Doc. No. 101 ¶ 306.)  As Defendant SEK

notes in its brief, and as the Court's review confirms, the SAC contains virtually no new factual

allegations as to Defendant SEK.  (Compare Doc. No. 101 ¶¶ 262-78 and ¶¶ 298-309 with Doc.

No. 40 ¶¶ 293-309 and ¶¶ 329-340.)

In this Court's Opinion granting Defendant SEK's motion to dismiss the amended

complaint, the Court found that, with regard to Plaintiff's Section 10(b) and Rule 10b-5 claim

against Defendant SEK, the amended complaint failed to allege material misrepresentations in

SEK's 2009, 2010 and 2011 audits, and further failed to plead facts supporting a strong inference

of scienter.  (Doc. No. 92 at 94-95.)  Specifically, the Court found that "Plaintiff's allegations against Defendant SEK are no more than conclusory assertions that Defendant SEK violated accounting principles – not that Defendant SEK intentionally issued false and misleading statements." (Id. at 94.)  Accordingly, the Court found that Plaintiff had failed to plead with particularity a material misrepresentation or omission by Defendant SEK.  (Id.)

Further, the Court found Plaintiff's argument that SEK failed to independently assess Orrstown's internal controls, violated GAAP, and did not exercise "professional skepticism" insufficient to state a claim under Section 10(b) or Rule 10b-5. (Id.)  The Court cited the Third Circuit's opinion in In re Ikon Office Solutions, Inc., 277 F.3d 658 (3d Cir. 2002), in rejecting Plaintiff's argument that SEK had intentionally or recklessly disregarded "glaring irregularities, [held] out to the public and the SEC that it had conducted the audits in accordance with PCAOB, and certif[ied] the Company's financial statements as prepared in accordance with GAAP without material weaknesses," an argument Plaintiff repeats in the SAC.  (See Doc. No. 101 ¶ 303.)  The Court noted that in In re Ikon, the Third Circuit found allegations that an auditor "failed to investigate sufficiently evidence of fraud by [the defendant] or take into account other conspicuous risk factors or 'red flags'" and "impermissibly relied on [the defendant's] internal controls in preparing its audit calculations," in violation of GAAP, were insufficient "to draw a reasonable inference that [the auditor] recklessly or knowingly issued a materially false and misleading audit opinion . . . ."  (Doc. No. 92 at 95, citing In re Ikon, 277 F.3d at 667-68.)  In its Opinion, the Court found that, similar to In re Ikon, Plaintiff likewise failed to allege facts allowing an inference that Defendant SEK "recklessly or knowingly issued a materially false and misleading audit opinion," or that "the accounting judgments which were made were such that

no reasonable accountant would have made the same decisions if confronted with the same facts." (Doc. No. 92 at 95, citing <u>In re Ikon</u>, 277 F.3d at 667-69 (citation omitted).)

Given that Plaintiff's SAC contains virtually no new factual allegations as to Defendant SEK, and that the SEC Order fails to make any reference to SEK in relation to the internal accounting deficiencies it describes, (<u>see</u> Doc. No. 122, Exh. 1, SEC Order), the Court sees no reason to revisit its conclusion in its Opinion that Plaintiff's Section 10(b) and Rule 10b-5 claims against Defendant SEK were subject to dismissal. Accordingly, the Court finds that Plaintiff's SAC has failed to state a claim under Section 10b(b) and Rule 10b-5 against Defendant SEK, and will therefore dismiss the claim.

## IV.    CONCLUSION

For all of the reasons discussed above, the Court will grant Defendant SEK and the Underwriter Defendants' motions to dismiss in their entirety. The motion to dismiss filed by the Orrstown Defendants and Individual Defendants Ceddia, Coy, Embly, Everly, Keller, Pugh, Quinn, Rosenberry, Shoemaker, Snoke, Ward, and Zullinger will be granted in part and denied in part, as follows: the motion to dismiss will be granted as to Plaintiff's Securities Act claims (counts 1-4) against all defendants; the motion to dismiss will be granted as to Plaintiff's Exchange Act claims (counts 5 and 7) against Individual Defendants Zullinger, Shoemaker, Snoke and Coy; the motion to dismiss will be denied as to count 5 against the Orrstown Defendants and Individual Defendants Quinn, Everly and Embly, and count 7 against Individual Defendants Quinn, Everly, and Embly. An order consistent with this Memorandum follows.

.