# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SOUTHEASTERN PENNSYLVANIA  :
TRANSPORTATION AUTHORITY,  :
    Plaintiff  :
     :  **No. 1:12-cv-00993**
  v.  :
     :  **(Judge Kane)**
ORRSTOWN FINANCIAL SERVICES,  :
INC., <u>et al.</u>,  :
    Defendants  :

## <u>MEMORANDUM</u>

Before the Court is Plaintiff SEPTA ("SEPTA")'s Motion to Compel Production of Documents withheld by Defendants Orrstown Financial Services, Inc., Orrstown Bank (collectively, "Orrstown"), Thomas R. Quinn, Bradley S. Everly, and Jeffrey W. Embly (collectively, the "Orrstown Defendants"), as well as by third parties, on the basis that such documents potentially contain "confidential supervisory information" ("CSI") protected under the limited bank examination privilege provided by regulations of the Board of Governors of the Federal Reserve System ("FRB") and the Pennsylvania Department of Banking ("PADOB") (collectively, the "Regulators"). (Doc. No. 157.) For the reasons that follow, SEPTA's motion will be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

This is a purported class action alleging securities violations in connection with Orrstown's early 2010 public offering of approximately 1.4 million shares of Orrstown common

---

[1] What follows is a brief statement of the factual background underlying SEPTA's claims, taken from the Court's December 7, 2016 Memorandum and Order addressing several motions to dismiss SEPTA's Second Amended Complaint. (Doc. Nos. 126, 127.) For a more extensive description of the alleged historical facts, see the Court's Memorandum and Order issued June 22, 2015. (Doc. No. 92.)

stock, which raised almost $40 million dollars. (Doc. No. 126 at 2.) Following a series of

revelations regarding Orrstown's financial condition, Orrstown reported significant losses for the

fourth quarter of 2011, and on March 15, 2012, filed its 2011 Annual Report, which disclosed

that it had a "material weakness" in its internal controls and had "failed to implement a

structured process with appropriate controls to ensure that updated loan ratings were

incorporated timely into the calculation of the Allowance for Loan Losses." (Id.) Orrstown

further admitted that, as of March 2012, it had failed to "fully remediate its material weakness in

its internal control over financial reporting relating to loan ratings and its impact on the

allowance for loan losses." (Id.) On March 23, 2012, Orrstown and its Board of Directors

revealed that they had entered into an agreement with the Federal Reserve Bank of Philadelphia

(the "Written Agreement"), and a consent order with the Commonwealth of Pennsylvania,

Department of Banking (the "Consent Order"), (collectively, the "Enforcement Actions"),

requiring them, inter alia, to revise their underwriting and credit administration policies and

strengthen their credit risk management practices. (Id.)

On May 12, 2012, SEPTA, on behalf of two classes, filed this purported class action

pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) against the Orrstown Defendants

and several additional individual Defendants, as well as Orrstown's auditor and underwriters

involved in the subject stock offering. (Doc. No. 1.) On March 4, 2013, Plaintiff filed an

amended complaint, alleging that the defendants issued materially untrue and/or misleading

statements and omissions in violation of the Securities Act of 1933 ("Securities Act") and the

Exchange Act of 1934 ("Exchange Act"). (Doc. No. 40.) The amended complaint asserted

claims on behalf of two classes: (1) the "Securities Act Class," which consists of persons and/or

entities who purchased Orrstown common stock pursuant to, or traceable to, Orrstown's February 8, 2010 registration statement and March 23, 2010 prospectus supplement issued in connection with Orrstown's secondary stock offering in March 2010 and were damaged thereby; and (2) the "Exchange Act Class," which consists of all persons or entities who purchased Orrstown common stock on the open market between March 15, 2010 and April 5, 2012 (the "class period") and were damaged thereby. (Doc. No. 126 at 3.) SEPTA acquired Orrstown stock pursuant to the offering documents for the March 2010 offering and also purchased Orrstown common stock on the open market during the class period. (Id.)

After extensive briefing, the Court dismissed SEPTA's Securities and Exchange Act claims against all defendants for failure to state a claim upon which relief may be granted. (Doc. No. 92.) With permission of the Court, SEPTA filed a Second Amended Complaint ("SAC") against the same defendants, which focused exclusively on alleged materially false and/or misleading statements made by Defendants in the offering documents and through the class period pertaining to the "effectiveness of the [Orrstown Defendants'] internal controls over underwriting of loans, risk management, financial reporting and compliance with banking regulations." (Doc. No. 101 ¶ 22.)

All defendants filed motions to dismiss, and while those motions were pending, on September 27, 2016, Orrstown filed a "Notice of Subsequent Event in Further Support of their Motion to Dismiss the Second Amended Complaint." (Doc. No. 122.) That filing pertained to the Securities and Exchange Commission ("SEC"), investigation of Orrstown referenced in Plaintiff's SAC, and informed the Court that the SEC had concluded its investigation and issued an "Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A

of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934 and

Rule 102(e) of the Commission's Rules of Practice, Making Findings and Imposing Remedial

Sanctions and Cease-and-Desist Orders" (the "SEC Order").  Orrstown's Notice attached the

SEC Order as an exhibit and noted that the Order memorialized a settlement between the SEC

and Orrstown, between the SEC and Orrstown's current Chief Executive Officer (Thomas R.

Quinn) and current Chief Accounting Officer, and between the SEC and Orrstown's former

Chief Financial Officer (Bradley S. Everly) and former Chief Credit Officer (Jeffrey W. Embly).

(Doc. No. 122 at 2.)

On December 7, 2016, the Court granted the auditor and underwriters' motions to

dismiss, and granted in part and denied in part the Orrstown Defendants' and additional

Individual Defendants' motion to dismiss.  (Doc. Nos. 126, 127.)  Specifically, the Court denied

the motion to dismiss as it pertained to certain Exchange Act claims asserted against the

Orrstown Defendants.  (Doc. No. 126.)  Those Exchange Act claims pertain to certain allegedly

false and/or misleading statements in Orrstown's financial reports from the second quarter of

2010 through 2011.  (Id. at 45.)  Specifically, the Exchange Act claims involve alleged

misstatements about the effectiveness of Orrstown's internal controls over financial reporting in

its 2010 and 2011 Annual Reports on Form 10K and its quarterly reports on Form 10Q

(beginning with the second quarter of 2010 through the end of 2011).  (Id. at 46.)

In connection with its decision, the Court took judicial notice of the SEC Order and its

findings, which the Court determined support the SAC's allegations of misstatement or omission

beginning in the second quarter of 2010 through the end of 2011, as the SEC Order found that,

during that time period, Orrstown "did not maintain a system of internal accounting controls

sufficient to provide reasonable assurances that transactions were recorded as necessary to

permit financial statements in accordance with [generally accepted accounting principles]."

(Doc. No. 122, Exh. 1, SEC Order ¶ 50.)  Specifically, the SEC Order summarized its findings as

follows:

> In 2010, as Orrstown's primary lending markets were experiencing a significant
> decline in real estate values, Orrstown incorrectly accounted for its commercial
> loans by not disclosing as much as approximately $69.5 million in loans as
> "impaired" in accordance with U.S. generally accepted accounting principles
> ("GAAP"). . . . Orrstown did not comply with GAAP's impaired loan disclosure
> requirements due to certain Respondents' negligence and Orrstown's lack of
> sufficient internal accounting controls.  This failure resulted in material
> misstatements in Orrstown's impaired loan disclosures in its quarterly filings for
> the period ended June 30, 2010 through September 30, 2011, and its annual
> filings for the years ended December 31, 2010 and 2011.

> Additionally, Orrstown (i) did not calculate loan losses in accordance with GAAP
> in connection with the filing of its Form 10-Q for the period ended June 30, 2011,
> (ii) incorrectly implemented a newly issued GAAP accounting pronouncement in
> connection with the filing of its Form 10-Q for the period ended June 30, 2011 in
> a manner that was not consistent with the new standard, and (iii) incorrectly
> applied GAAP when calculating fair value for certain collateral in connection
> with its impairment analyses for its Form 10-Q for the periods ended June 30,
> 2010 and September 30, 2010.

(Id., SEC Order ¶¶ 2-5.)

Accordingly, the Court concluded that the allegations of the SAC, coupled with the SEC

Order, support an inference that:

> Orrstown failed to maintain an adequate system of internal accounting controls
> through the relevant time period – second quarter 2010 through 2011 – and that
> such failure resulted in inaccuracies in financial reporting during that time,
> including "(1) incorrect loan risk ratings; (2) incorrect disclosures of impaired
> loans; (3) incorrect calculations and disclosures of loan losses;  (4) incorrect
> application of newly issued accounting pronouncements; and (5) the lack of
> action to remedy accounting problems after being alerted to them."

(Doc. No. 126 at 49.)  Further, the Court found that the allegations of the SAC also support a

strong inference that the relevant defendants issued or approved the challenged reports with the requisite scienter to state a claim under the Exchange Act.  (Id. at 50.)

On January 18, 2017, the Orrstown Defendants served upon SEPTA Initial Disclosures listing the FRB and PADOB regulatory reviews as evidence it would use to support its defenses to SEPTA's claims.  (Doc. No. 159-3 at 5.)  On February 2, 2017, SEPTA served document requests on the Orrstown Defendants pertaining to the Regulators' Enforcement Actions against the Orrstown Defendants.  (Doc. No. 159-4.)

Shortly thereafter, the Orrstown Defendants communicated to SEPTA their stated intent to withhold documents from production because they potentially contain confidential supervisory information, or CSI,[2] which is protected from disclosure without the express written consent of the FRB.[3]  On February 14, 2017, SEPTA sent a formal waiver request ("February 14,

---

[2] "Confidential supervisory information" is defined in 12 C.F.R. § 261.2(c)(1) as follows:

(i)    Exempt information consisting of reports of examination, inspection and visitation, confidential operating and condition reports, and any information derived from, related to, or contained in such reports;

(ii)   Information gathered by the Board in the course of any investigation, suspicious activity report, cease-and-desist orders, civil money penalty enforcement orders, suspension, removal or prohibition orders, or other orders or actions . . .  [and]

(iii)  Any documents prepared by, on behalf of, or for the use of the Board, a Federal Reserve Bank, a federal or state financial institutions supervisory agency, or a bank or bank holding company or other supervised financial institution.

12 C.F.R. § 261.2(c)(1).  "Confidential supervisory information" does not include "documents prepared by a supervised financial institution for its own business purposes and that are in its possession."  Id. § 261.2(c)(2).

[3] FRB policy provides that confidential supervisory information is "confidential and privileged."  12 C.F.R. § 261.22(a).  Accordingly, such information is not normally disclosed to the public, but the FRB considers requests for disclosure of such information and will authorize

2017 Request") to the FRB pursuant to 12 C.F.R. § 261.22, seeking access to the withheld

documents.[4] (Doc. No. 159-5.) In its February 14, 2017 Request, SEPTA provided a brief

description of this litigation and SEPTA's claims that the Orrstown Defendants made false and

misleading statements to the public regarding a number of issues, including internal control

failures over financial reporting, impaired loans, loan review processes, certain borrowers,

---

such disclosure if the requester is able to demonstrate "a substantial need for such information that outweighs the need to maintain confidentiality." Id.; see also 12 C.F.R. §§ 261.20(g), 261.22(e), 261.23(b).

[4] Such a waiver request, known as a Touhy request, is governed by 12 C.F.R. § 261.22(b), which provides, as to requests from litigants, that anyone

> seeking access to confidential supervisory information or seeking to obtain the testimony of present or former Board of Reserve Bank employees on matters involving confidential supervisory information of the Board, whether by deposition or otherwise, for use in litigation before a court, board, commission, or agency, shall file a written request with the General Counsel of the Board. The request shall describe:

> (i)      The particular information, kinds of information, and where possible, the particular documents to which access is sought;

> (ii)     The judicial or administrative action for which the confidential supervisory information is sought;

> (iii)    The relationship of the confidential supervisory information to the issues or matters raised by the judicial or administrative action;

> (iv)     The requesting person's need for the information;

> (v)      The reason why the requesting person cannot obtain the information sought from any other source; and

> (vi)     A commitment to obtain a protective order acceptable to the Board from the judicial or administrative tribunal hearing the action preserving the confidentiality of any information that is provided.

12 C.F.R. § 261.22(b)(1).

impaired commercial loans, failed impairment analyses, GAAP violations, and Sarbanes-Oxley

("SOX") certifications.  (Doc. No. 159-5 at 4-5.)  In connection with its February 14, 2017

Request, SEPTA also submitted to the FRB: the SAC with the Enforcement Actions attached;

this Court's Order and Opinion disposing of the motions to dismiss, the SEC Order; the parties'

joint case management plan; the Court's case management order issued January 30, 2017; a

Protective Order governing the exchange of information in this case; and its First Request for

Production of Documents directed to the Orrstown Defendants ("Request for Production").  (Id.

at 3.)

That Request for Production, dated February 2, 2017, specifically seeks the following

categories of information, covering the period from January 1, 2009, to the date of the Request

for Production:

1.  All documents that you produced to the SEC in connection with the investigation
    and proceedings that culminated in the SEC Order.

2.  All documents produced by any person to you or the SEC in connection with the
    investigation and proceedings that culminated in the SEC Order.

3.  All transcripts or recordings of any depositions or interviews of witnesses taken
    during the investigation and proceedings that culminated in the SEC Order,
    including all documents identified, used or marked as exhibits during those
    depositions or interviews.

4.  All documents that the SEC delivered to you during the investigation and
    proceedings that culminated in the SEC Order.

5.  All documents that were sent to the SEC or delivered by you to the SEC
    subsequent to the issuance of the SEC Order with respect to the SEC Order.

6.  All communications and documents that relate to or reflect any communications
    that you had internally or with any other person concerning the SEC investigaiton
    and proceedings that culminated in the SEC Order.

7.  The joint reports of examination and all documents concerning the joint reports of

examination.

8.     All documents that you produced to the Federal Reserve in connection with the Joint Examination.

9.     All documents produced by any person to you or the Federal Reserve in connection with the Joint Examination.

10.    All documents that the Federal Reserve delivered to you in connection with the Joint Examination.

11.    All documents concerning the Written Agreement.

12.    All documents that were sent to the Federal Reserve or delivered by you to the Federal Reserve subsequent to the issuance of the Written Agreement with respect to the Written Agreement.

13.    The Stipulation of Consent and Entry of Order, and any Documents concerning the Stipulation of Consent and Entry of Order.

14.    All documents that you produced to the Department of Banking in connection with the Joint Examination.

15.    All documents produced by any person to you or the Department of Banking in connection with the Joint Examination.

16.    All documents that the Department of Banking delivered to you in connection with the Joint Examination.

17.    All documents concerning the Consent Order.

18.    All documents that were sent to the Department of Banking or delivered by you to the Department of Banking subsequent to the issuance of the Consent Order with respect to the Consent Order.

19.    All transcripts or recordings of any depositions or interviews of witnesses taken in connection with the Joint Examination which culminated in the Enforcement Action, including all Documents identified, used or marked as exhibits during those depositions or interviews.

20.    All communications and documents that relate to or reflect any communications that you had internally or with any other person concerning the:
       (a)     Joint Reports of Examination;
       (b)     Stipulation of Consent and Entry of Order;

<div style="margin-left: 2em;">

(c)     Joint Examination;

(d)     Enforcement Actions;

(e)     Written Agreement; and

(f)     Consent Order.

</div>

(Doc. No. 159-4 at 12-15.)

SEPTA's February 14, 2017 Request to the FRB also describes its view of the relevance of confidential supervisory information to this litigation (id. at 6-8), as well as its view of its need for the information and the unavailability of such information from other sources (id. at 8-9). Lastly, the February 14, 2017 Request represents that the release of any such confidential supervisory information to SEPTA would be governed by the Protective Order previously issued by the Court in this case. (Id. at 9.)

On March 1, 2017, the FRB responded to a February 2, 2017 letter and follow-up February 13, 2017 email from the Orrstown Defendants requesting permission to produce to SEPTA all documents Orrstown previously produced to the SEC. (Doc. No. 159-6.) In that letter, the FRB requested that the Orrstown Defendants produce to the FRB a log reflecting the information designated as CSI by Orrstown and produced to the SEC in connection with its investigation. (Id.)[5] In addition, the letter clarified that "nothing in the Board's Rules prevents the Orrstown Defendants from providing relevant, responsive portions of the SEC production that are clearly not CSI" to SEPTA. (Id. at 3.) According to a status report filed with the Court on February 9, 2018, SEPTA contacted the FRB in December of 2017 to inquire about the status of the FRB's review of documents designated as CSI by the Orrstown Defendants. (Doc. No.

---

[5] According to SEPTA, the documents produced to the SEC constitute the bulk of documents at issue in this motion because only 157 documents on the CSI log were not produced to the SEC. (Doc. No. 159-9.)

143.)  In that status report, SEPTA informed the Court that a representative of the FRB, Ms. Yvonne F. Mizusawa, Senior Counsel of the Litigation, Enforcement and System Matters at the Federal Reserve, advised SEPTA that the Regulators had not yet completed their review of the documents designated CSI by Orrstown.  (Id. at 6.)   SEPTA reported that as a result of its discussion with Ms. Mizusawa, she thereafter instructed the Orrstown Defendants to provide a copy of the CSI log to SEPTA.  (Id.)

In its February 9, 2018 status report filed with the Court, SEPTA further reported that after receiving the CSI log in December 2017, it discovered that a number of the documents on the log contained only "partial" CSI and that others were publicly disseminated documents.  (Id.) Accordingly, the Orrstown Defendants subsequently produced to SEPTA redacted versions of partial-CSI documents and removed additional documents from the log.  (Doc. No. 144 at 3.)  In March 2018, counsel for the parties and the Regulators participated in a conference call to discuss the Regulators' review of documents the Orrstown Defendants had designated as containing full or partial CSI.  (Doc. No. 153 at 2.)  As a result of the discussion that occurred, the Regulators requested re-production of the potential CSI documents in two groups – the first containing the full CSI documents, and the second containing the redacted, partial-CSI documents.  (Id.)  Accordingly, on March 27, 2018, the Orrstown Defendants produced the 3,398 full CSI documents, comprising 17,419 pages, to the Regulators.  (Id. at 3.)  On April 3, 2018, the Orrstown Defendants produced the partial-CSI, redacted documents, which consisted of 649 documents comprising 48,984 pages, to the Regulators.  (Id.)

Thereafter, the parties filed a Joint Status Report with the Court on May 2, 2018, reporting that the parties had participated in an April 2018 conference call with the Regulators to

discuss the status of the Regulators' review of the CSI documents. (Doc. No. 153 at 3-4.) In

that status report, all parties agreed that the withheld documents may be released to SEPTA only

under the following conditions: (1) should the Regulators consent to the production of them to

SEPTA, or (2) "in the event that the Regulators withhold consent, the Court determines either

that the privilege does not apply, or the Court determines that good cause exists to override the

privilege." (Id. at 2.) Subsequent to the filing of the May 2, 2018 Joint Status Report, the Court

held a status call with the parties on May 10, 2018, and scheduled another status call for August

17, 2018, with a Joint Status Report to be filed on August 15, 2018, in advance of the call. (Doc.

No. 155.)

 In the meantime, on June 18, 2018, Katherine H. Wheatley, Associate General Counsel to

the FRB, sent a detailed letter to SEPTA's counsel (the "Wheatley letter"), formally responding

to SEPTA's February 14, 2017 Request seeking the FRB's waiver of any applicable bank

examination privilege and approval of the Orrstown Defendants' production of CSI to SEPTA.

(Doc. No. 159-1.)[6] In the Wheatley letter, the FRB stated its position that SEPTA's February 14,

---

[6] The Wheatley letter referenced its notification that, in addition to the documents sought from the Orrstown Defendants, SEPTA sought, via subpoena, CSI in the possession of six third parties between April 2017 and May 2018. (Id. at 6-7.) The Wheatley letter noted that despite receiving a copy of an April 17, 2017 FRB letter issued to one such third party indicating that litigants such as SEPTA "may request access to confidential supervisory information by filing a written request with the Board's general counsel under the procedures set forth in 12 C.F.R. § 261.22(b)," SEPTA did not submit a request to the FRB for access to CSI in the possession of third parties until May 1, 2018. (Id. at 7.) The Wheatley letter noted that SEPTA's May 1, 2018 letter to the FRB regarding CSI in the possession of third parties did not independently seek to provide information regarding "the particular kinds of information or particular documents sought from the third parties, the relationship of this information to the issues in this litigation, SEPTA's need for the information, or the reason information was unavailable from any other source, as required by the Board's rules." (Id. at 7-8.) Instead, SEPTA's May 1, 2018 letter incorporated by reference its February 14, 2017 letter to the FRB. (Id. at 8.)

2017 Request "does not comply with the requirements of the Board's regulations regarding requests for access to confidential supervisory information," and therefore, the FRB is "unable to process [SEPTA's] request in its current form." (Id. at 3.)

Following its receipt of the Wheatley letter, SEPTA filed the instant Motion to Compel Production of Documents ("Motion to Compel"), with supporting brief and exhibits on August 9, 2018. (Doc. Nos. 157-159.) The Orrstown Defendants filed a brief in response to the Motion to Compel on August 23, 2018. (Doc. No. 165.) Thereafter, the FRB filed an unopposed Motion to Intervene in this action for the limited purpose of opposing SEPTA's Motion to Compel. (Doc. No. 166.) Ultimately, the Court issued an Order approving a Stipulation filed by the parties permitting the intervention of the FRB and setting a briefing schedule on SEPTA's Motion to Compel. (Doc. No. 170.) The FRB filed its brief in opposition to SEPTA's Motion to Compel on September 27, 2018 (Doc. No. 173), and SEPTA filed its brief in reply (Doc. No. 174), with supporting Declaration and exhibits (Doc. No. 175), on October 11, 2018. Accordingly, the Motion to Compel is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Motion to Compel

Federal Rule of Civil Procedure 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1). The scope of discovery is defined by Federal Rule of Civil Procedure 26, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in

> controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Discovery sought pursuant to Rule 26 may include Requests for Production under Federal Rule of Civil Procedure 34, which requires a party to produce documents requested that are "items in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the [C]ourt's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are 'committed to the sound discretion of the district court.'" Pilchesky v. Deputy U.S. Marshal Barone, No. 14-381, 2016 WL 7118147, at *2 (M.D. Pa. Dec. 7, 2016) (quoting DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974)).

**B.     The Bank Examination Privilege**

Courts in the Third Circuit have recognized the bank examination privilege as a version of the government's deliberative process privilege and official information privilege. See Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 853 n.18 (3d Cir. 1995) (citing Schreiber v. Soc'y for Sav. Bancorp, Inc., 11 F.3d 217, 220-22 (D.C. Cir. 1993)); In re Sunrise Sec. Litig., 109 B.R. 658, 664-65 (E.D. Pa. 1990) (finding that as "the policies supporting the 'bank examination privilege' are similar to other, more general governmental privileges . . . I will treat [the] claim of privilege as an assertion of an 'official information privilege'"). The deliberative process privilege allows a governmental agency to withhold from disclosure information containing "confidential deliberations of law or policymaking, reflecting opinions,

recommendations or advice." <u>In re Grand Jury</u>, 821 F.2d 946, 959 (3d Cir. 1987) (citing <u>NLRB</u>

<u>v. Sears Roebuck & Co.</u>, 421 U.S. 132, 150-54 (1975)).

The bank examination privilege is a qualified privilege, protecting from disclosure

agency opinions and recommendations.  <u>See Schreiber</u>, 11 F.3d at 220.  The purpose of the

privilege is to preserve and promote candor in communications between banks and their

regulators.  <u>See Redland</u>, 55 F.3d at 854.   The privilege does not apply to factual information.

<u>See Bancorp v. F.D.I.C.</u>, No. 99-3799(JCL), 1999 WL 1332312, at *4 (D.N.J. Nov. 10, 1999)

(citing <u>Redland</u>, 55 F.3d at 853).  The privilege protects:

> only agency opinions and recommendations from disclosure; purely factual
> material falls outside the privilege and, if relevant, must be produced.  The agency
> asserting the privilege has the burden of establishing its applicability to the
> documents at issue.  If the agency fails to establish the privilege with respect to
> the subpoenaed material, then the documents must be produced.

<u>Schreiber</u>, 11 F.3d at 220 (citations omitted).  If the relevant documents contain a combination of

opinion and factual material, an agency should redact the documents and produce the factual

material.  <u>See In re Midatlantic Corp. S'holder Litig.</u>, No. 92-99, 1994 WL 750664, at *2

(D.D.C. Oct. 24, 1994).  If the opinion and factual material are inextricably intertwined, a court

must determine whether to override the privilege for good cause.  <u>See Schreiber</u>, 111 F.3d at

220.

## III.    DISCUSSION

### A.    Arguments of the Parties

In support of its Motion to Compel, SEPTA argues that the FRB's determination that its

February 14, 2017 Request is administratively insufficient and its attendant refusal to complete

its review of all of the documents withheld by the Orrstown Defendants and third parties to

determine whether to assert or waive the protection of any applicable bank examination privilege over such documents "indicate[s] a clear intent to deny SEPTA's request for waiver of CSI privilege." (Doc. No. 158 at 11.) Therefore, SEPTA argues that "[a]ny attempt to cure the purported administrative shortcomings would be futile," and so asserts that its motion is ripe for review by this Court, maintaining that the FRB's "current refusal to review the documents is tantamount to a refusal to waive CSI." (Id. at 11, 7.) Accordingly, SEPTA urges the Court to treat the FRB's determination that its February 14, 2017 Request is administratively insufficient as the FRB's implicit assertion of the bank examination privilege over the entirety of the documents being withheld by Orrstown and third parties.

SEPTA then argues that this Court should override what it characterizes as the FRB's implicit assertion of the bank examination privilege, for two reasons: (1) SEPTA maintains that most of the documents withheld by Orrstown and third parties as potentially containing CSI are not privileged; and (2) SEPTA argues that in those limited instances where the privilege applies, good cause exists to override the privilege and order production of the documents. (Doc. No. 158 at 14-26.) As to its first point, SEPTA argues that: (1) factual information is not privileged; (2) bank examination reports and related documents are not privileged; (3) communications amongst bank personnel are not privileged; and (4) bank communications with regulators are not privileged. (Id. at 14-17.)

As to its second point, SEPTA first argues that it has exhausted its administrative remedies with regard to its February 14, 2017 Request, as it maintains that the request satisfies

12 C.F.R. § 261.22(b),[7] and any further administrative requests would be futile because the Wheatley letter "makes intent to deny the request clear." (Id. at 22.) Having asserted its position that the Court should treat the Wheatley letter as an implicit assertion of the bank examination privilege over the entirety of the documents at issue, SEPTA then argues that good cause exists to override the privilege, maintaining that all five factors considered by courts in assessing the good cause exception support its applicability in the instant case.

Specifically, with regard to the good cause exception, SEPTA maintains that the documents are highly relevant to the Orrstown Defendants' knowledge of Orrstown's financial problems, Orrstown's alleged misrepresentations, and scienter, and that bank examination reports have no satisfactory substitute. (Id. at 23-25.) Further, SEPTA maintains that the seriousness of the allegations against the Orrstown Defendants, as well as the SEC's involvement in the matter, weigh in favor of disclosure of documents to SEPTA. (Id. at 25.) Finally, SEPTA maintains that disclosure of the documents sought by it would have no "chilling" impact on communication between banks and their regulators. (Id. at 26.)

In their brief in response to SEPTA's Motion to Compel, the Orrstown Defendants acknowledge that while "the privilege attaching to CSI belongs to Orrstown's banking Regulators," Orrstown must adhere to all restrictions imposed by the FRB regulations on the dissemination of CSI. (Doc. No. 165 at 4.) Accordingly, Orrstown states that, in preparing its response to SEPTA's Request for Production, it reviewed documents relating to the Regulators' examinations of Orrstown, Orrstown's communications with Regulators regarding those

---

[7] While SEPTA maintains that its February 14, 2017 Request complies with 12 C.F.R.§ 261.22, it also argues – in a seemingly contradictory fashion – that "strict compliance is not required where the Regulators have received actual notice of the request." (Id. at 21.)

examinations, and any documents that discussed those documents or communications, setting aside for FRB review "any documents that are or could be CSI under the broad definition given in the C.F.R. so that, upon proper request, the Regulators could determine whether to give written permission to release some or all of the documents" so designated.  (Id.)  Orrstown maintains that while it objects to SEPTA's Request for Production on the grounds of both relevance and need, it will produce any requested documents to SEPTA (excepting any documents potentially subject to attorney-client privilege), in the event the FRB provides its written permission for it to do so, in accordance with the regulations governing disclosure of CSI.  (Id. at 7.)

The FRB as Intervenor opposes SEPTA's Motion to Compel production of confidential supervisory information belonging to the FRB under its Touhy regulations, maintaining that despite being informed of the requirements of those regulations, SEPTA has failed to comply with them by filing a perfected Touhy request.  (Doc. No. 173 at 1-2.)  Further, the FRB points out that, in the Wheatley letter, after informing SEPTA of the fact that its Requests[8] did not contain information required by the regulations such that the FRB could make a determination as to assertion or waiver of any applicable privilege at this time, it also informed SEPTA that it would "hold the requests open in the event that [SEPTA] wished to submit additional information."  (Id. at 7.)  The FRB argues that the Court should deny SEPTA's Motion to Compel, as SEPTA has not exhausted its administrative remedies by attempting to perfect its Touhy request in light of the guidance offered by the FRB in the Wheatley letter.  (Id. at 8.)  In

---

[8] "Requests" includes SEPTA's February 14, 2107 Request, pertaining to documents in possession of the Orrstown Defendants, as well as its May 1, 2018 letter requesting access to CSI in the possession of third parties.

support of its position, the FRB cites numerous district court decisions from across the country that have denied motions to compel discovery of bank examination information in the possession of regulated financial institutions where the party moving to compel failed to exhaust administrative remedies.  (Id. at 12-13.)

The FRB maintains that, contrary to its representations, SEPTA has not complied with the FRB regulations' requirements as to specificity, instead seeking a wide range of CSI over an extended time period via its Request for Production, without specific regard to subject matter or the relationship of the documents to this litigation.  (Id. at 14-15.)  The FRB maintains that this lack of specificity prevents it from reasonably determining whether SEPTA has shown substantial need for the information outweighing the need to maintain confidentiality.  (Id.)  The FRB also argues that SEPTA's claim that the breadth of the February 14, 2017 Request results from overbroad designations of CSI by Orrstown is disingenuous in light of Orrstown's efforts to re-review the CSI logs and the production of an additional 1523 full and partial documents to SEPTA in an effort to limit its designation of CSI documents for the FRB's review as much as possible.  (Id. at 16-17.) The FRB further maintains that SEPTA's argument that it adequately described the relationship of the information it seeks to the issues in this litigation in connection with its Requests because relevance is a "broad concept" for civil discovery purposes ignores the fact that the information sought by SEPTA is presumed privileged pursuant to applicable regulations, and may be disseminated only with the FRB's permission, upon a showing of substantial need.  (Id. at 17.)

In addition, the FRB takes issue with SEPTA's argument that attempted compliance with the FRB's instructions would be "futile" in light of the FRB's "clear intent to deny SEPTA's

request." (Id. at 18 (citing Doc. No. 158 at 17-18).) The FRB maintains that the Wheatley letter provided step-by-step guidance to SEPTA with regard to the information necessary for its requests to comply with the Touhy regulations and with regard to why the information provided thus far by SEPTA is insufficient to permit the Board to make a decision on its Requests. (Id. at 18.) Finally, the FRB maintains that SEPTA's arguments regarding the scope of the bank examination privilege and the five factors governing an assessment of whether good cause exists to override the privilege are premature, as the FRB has not yet asserted or waived that privilege with regard to the documents at issue. (Id. at 19.)

In its reply brief, SEPTA takes issue with the FRB's recitation of the facts governing the instant situation, maintaining that the FRB's position that it cannot make a determination as to whether the withheld documents fall within the protection of the bank examination privilege in the absence of additional information from SEPTA is at odds with the FRB's March 2017 request to the Orrstown Defendants for production of the requested documents and applicable privilege logs to the FRB in order to enable it to act upon SEPTA's February 14, 2017 Request. (Doc. No. 174 at 2-3.) SEPTA argues that any issues with its February 14, 2017 Request, if they existed, should have been raised at that time, but were not. (Id. at 3.) SEPTA argues that all of its interactions with the FRB over the following year were "consistent with the substantive attention that . . . Regulators were giving to making an assessment of any CSI content in the documents sought" by SEPTA. (Id. at 3.) SEPTA maintains that the FRB's current position is not credible in light of what it views as the Regulators' efforts toward facilitating a review of the CSI-designated documents, leading SEPTA to expect a substantive response to SEPTA's February 14, 2017 Request. (Id. at 4.) SEPTA accuses the FRB of manipulating the Touhy

process so as to "immunize itself from judicial review, unless and until the FRB unilaterally deems its own reviews and determinations sufficiently 'final.'" (Id.) SEPTA maintains that the FRB's position in connection with this litigation is an effort to avoid a substantive response to SEPTA's motion and the judicial review of its determination in In re Wilmington Trust Securities Litigation, No. 10-990-SLR-SLF, 2016 WL 9753979 (D. Del. Aug. 16, 2016). Moreover, SEPTA maintains that the FRB, by focusing on SEPTA's failure to exhaust administrative remedies in its opposing papers, has waived any substantive response to SEPTA's arguments regarding the applicability of the good cause exception to any asserted bank examination privilege. (Id. at 5.)

**B.** **Analysis**

Upon careful consideration of the briefs of the parties, the supporting documents filed in connection with those briefs, including the Wheatley letter, and the relevant authorities, the Court is unpersuaded by SEPTA's argument that this Court should treat the FRB's refusal to process SEPTA's waiver Requests in their current form, as articulated by the Wheatley letter, as tantamount to a denial of those Requests and an assertion of the bank examination privilege over the entire universe of potentially CSI-designated documents sought by SEPTA from the Orrstown Defendants and third parties. Rather, the Court finds that, by its refusal to respond to the Wheatley letter and engage with the FRB in an effort to provide the necessary information for the FRB to complete its review of the relevant documents, SEPTA has failed to exhaust its administrative remedies. Accordingly, its Motion to Compel will be denied on that basis.

Pursuant to 5 U.S.C. § 301, the head of each federal agency "may prescribe regulations for . . . the custody, use, and preservation of its records, papers and property." See 5 U.S.C. §

301. The Supreme Court in <u>United States ex rel Touhy v. Ragen</u>, 340 U.S. 462 (1951) found regulations governing the circumstances under which agency employees could testify in response to a subpoena to be valid, holding that agency employees could not be held in contempt of court for their refusal to respond to a subpoena upon the instruction of a superior. <u>Id.</u> at 467-68. The purpose of <u>Touhy</u> regulations is "to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." <u>Boron Oil Co. v. Downie</u>, 873 F.2d 67, 70 (4th Cir. 1989). As to what constitutes exhaustion of administrative remedies for discovery purposes in a civil action, the FRB's <u>Touhy</u> regulations provide as follows: "[a]ction on a request under this section by the General Counsel of the Board shall exhaust administrative remedies for discovery purposes in any civil, criminal, or administrative proceeding." 12 C.F.R. § 261.22(d).

In the Wheatley letter, the FRB described to SEPTA the requirements of its <u>Touhy</u> regulations, contained in 12 C.F.R. § 261.22, with reference to SEPTA's Requests and articulated its determination that SEPTA's Requests failed to comply with those regulations as follows:

> Here, your February 14 and May 1 letters do not describe with particularity the specific kinds of confidential supervisory information you seek, the relationship of the information to the issues in this litigation, your need for the information, and why you cannot obtain information from any other source, as required by the Board's <u>Touhy</u> regulations. 12 C.F.R. §§ 261.22(b)(i), (iii)-(v). Without a more specific description of the kinds of information or particular documents you seek, the relationship of those documents to the issues in this litigation, your need for them, and the reason information cannot be obtained from any other source, I am unable to make a determination whether you have shown a "substantial need" for confidential supervisory information that "outweighs the need to maintain confidentiality." 12 C.F.R. § 261.22(a). Because your February 14 and May 1 letters do not contain this information, they are not perfected requests for access to confidential supervisory information under the rules.

(Doc. No. 159-1 at 9-10.)

The Wheatley letter articulated three reasons for the failure of SEPTA's Requests to comply with the FRB regulations. Specifically, the Wheatley letter first discussed the FRB's requirement that a request for access to confidential supervisory information describe "[t]he particular information, kinds of information, and where possible, the particular documents to which access is sought." (Doc. No. 159-1 at 10 (quoting 12 C.F.R. § 261.22(b)(i)).) The Wheatley letter determined that SEPTA's Request for Production, "rather than seeking particular documents or even particular kinds of information on well-defined subjects for a narrow time-period," seeks a broad universe of documents pertaining to a lengthy period of time, requesting all Reports of Examination and all documents concerning Reports of Examination; all documents concerning the Written Agreement and all communications between the FRB and Orrstown subsequent to the Written Agreement, for a period of time beginning January 1, 2009 until the present; as well as all confidential supervisory information Orrstown provided to the SEC from January 1, 2010 through 2012. (Doc. No. 159-1 at 10.)

The letter discussed what the FRB viewed as SEPTA's continued refusal to narrow or clarify the scope of its February 14, 2017 Request, noting that in December of 2017, in light of the broad scope of SEPTA's Request for Production, FRB staff "discussed with counsel for SEPTA the possibility of narrowing the scope of its Requests." (Id. at 8.) Toward that end, Orrstown and SEPTA engaged in the process described supra to narrow the universe of potential CSI documents for review by the FRB. The Wheatley letter noted that one purpose of the conference calls engaged in by SEPTA, Orrstown ,and the FRB in March, April, and June of 2018 was "to determine whether, in view of the discovery SEPTA had already received from the

Bank, . . . and the additional 1523 full and partially redacted documents Orrstown provided in January 2018, SEPTA could narrow its Requests for confidential supervisory information." (Id. at 8.) The Wheatley letter further noted that "SEPTA declined, however, to narrow or clarify its Requests," and stated that, in total, with regard to Orrstown and third parties, "SEPTA is seeking the Board's determination regarding access to approximately 5103 documents totaling at least 83,278 pages." (Id. at 9.) The Wheatley letter stated that the FRB cannot make a determination as to whether a requester has demonstrated a "substantial need" for information that "outweighs the need to maintain confidentiality" when a request is exceedingly broad in scope, noting that "it is not sufficient for [SEPTA] to state that it would like access to virtually all confidential and privileged supervisory communications over a lengthy period in order to determine whether some might contain information relevant to this lawsuit." (Id. at 10.)

Second, the Wheatley letter stated that, in addition to not meeting the regulations' requirements for specificity as to the particular information sought, SEPTA's Requests had not "sufficiently described the 'relationship' of confidential supervisory information to the issues in this lawsuit," as required by the regulations. (Id. at 11.) With specific regard to SEPTA's request for all confidential supervisory information provided to the SEC, the Wheatley letter stated that because the SEC Order does not make specific reference to the FRB's confidential supervisory information as the basis for its factual findings, SEPTA had not shown that confidential supervisory information was material to the SEC Order. (Id.) Moreover, the Wheatley letter further clarified that the standards governing the dissemination of confidential supervisory information to government agencies for official purposes differ from the standards applicable to private litigants, noting that the regulations provide that the FRB "may make" CSI

available to agencies "for use where necessary in the performance of official duties," while the

FRB typically "will not normally disclose" CSI to the public absent a showing of "substantial

need" for the information "outweigh[ing] the need to maintain confidentiality" and compliance

with the requirements of § 261.22(b). (Id. at 12 (citing 12 C.F.R. §§ 261.21(a), (c)(3), (c)(5),

261.22(a)-(b)).)

Similarly, as it found with regard to SEPTA's requests concerning confidential

supervisory information provided to the SEC, the FRB in the Wheatley letter expressed its view

that SEPTA's broad request for all documents concerning the Written Agreement between the

FRB and Orrstown, as well as all communications between the FRB and Orrstown subsequent to

the Written Agreement, did not sufficiently describe the particular information or documents

sought and the relationship of that information to the issues in this litigation. (Id. at 12.) The

Wheatley letter pointed out that the Written Agreement did not make findings of fact as to past

conduct or identify violations of law, but, rather, constituted a forward-looking document

seeking "prospective changes" to strengthen Orrstown going forward. (Id.) The Wheatley letter

also found SEPTA's request for "all Reports of Examination of Orrstown, and related

supervisory communications" from March 2011 going forward to be similarly "exceedingly

broad, not limited by subject matter . . . cover[ing] a period of several years, almost all of them

after the agreed-upon relevant period" (id. at 13), and, therefore, not sufficiently descriptive of

particular documents sought and their relationship to this litigation. (Id.) The Wheatley letter

emphasized that SEPTA's Requests did not indicate how CSI after the relevant period (identified

by the Court in its December 7, 2016 Memorandum and Order as the second quarter 2010

through 2011) "could be relevant to alleged misleading statements of material fact during that

period." (Id.)

Third, the Wheatley letter stated the FRB's determination that SEPTA had not provided "sufficient information why the requested information is not available from any other source," as required by the regulations.  (Id. at 14.)  The letter detailed the broad universe of documents received by SEPTA from the Orrstown Defendants, as well as third parties, and noted that "[s]upervisory determinations are based on the same kinds of internal bank documents, and your letters do not describe why supervisory communications in particular, as opposed to the source documents upon which they are based, are relevant, and why you are unable to obtain the information that you need from Orrstown's non-privileged internal business records and non-privileged information from third parties."  (Id.)  Finally, the Wheatley letter noted that SEPTA's subpoenas for confidential supervisory information in the hands of third parties (and accompanying request for access to that CSI memorialized in SEPTA's May 1, 2018 letter to the FRB) were overbroad for similar reasons, lacking information on the relationship of the documents to this litigation, as well as SEPTA's need for the information and inability to obtain it from another source.  (Id. at 14-15.)

Accordingly, for all of the above reasons, the Wheatley letter communicated the FRB's determination that SEPTA's February 14, 2017 and May 1, 2018 Requests did not contain information required by the regulations sufficient to permit the FRB to make a determination as to the Requests, and, accordingly, "they are therefore not considered complete requests."  (Id. at 15.)  The letter concludes with the FRB's invitation to "supplement your requests."  (Id.)

It is clear as a general matter that courts should deny a party's motion to compel disclosure of an agency's confidential supervisory information when a litigant fails to submit

information required by that particular agency's Touhy regulations. See Aiken v. Eady, No. 14-811(WJM), 2016 U.S. Dist. LEXIS 13932 at *13 (D.N.J. Feb. 4, 2016) (stating that "pursuant to Touhy, most courts require a party seeking information from the Government, as a non-party, to make a request to the [agency] pursuant to their administrative regulations"); McLeod v. Bentley, No. 8:13-cv-3036-T-23TBM, 2014 U.S. Dist. LEXIS 24417, at *9 (M.D. Fla. Jan. 27, 2014) (finding no final agency decision to review where "[p]etitioner has yet to submit an actual Touhy request" summarizing "information sought and its relevance to the proceeding"); Lopez v. Chertoff, No. CV-07-1566-LEW, 2009 WL 1575209, at *2 (E.D. Cal. June 2, 2009) (stating that "[t]he [C]ourt will not compel [the agency] to respond to the subpoena . . . because the request did not follow [the agency's] Touhy regulations"); Lerner v. Dist. of Columbia, No. 00-1590 (GK), 2005 U.S. Dist. LEXIS 10154 at *10 (D.D.C. Jan. 7, 2005) (denying motion to compel and granting motion to quash where requester refused to "'set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought'" (quoting regulations)); Landry v. FBI, No. 97-197, 1997 U.S. Dist. LEXIS 9850, at * 11 (E.D. La. July 3, 1997) (stating that "[w]hether plaintiff seeks testimony or documents from the FBI, he must comply with the appropriate Touhy regulations").[9]

However, the instant situation presents a twist on this basic principle – here, while it is

---

[9] As the FRB notes, the fact that the instant motion seeks to compel the Orrstown Defendants and third parties, rather than the FRB, to produce CSI makes no practical difference, as the FRB regulations provide that bank examination reports and CSI "remain the property of the Board," even in the hands of a regulated financial institution, and that regulated entity, or a third party, may not disclose it "without the prior written permission of the Board's General Counsel." See 12 C.F.R. § 261.20(g); see also Schreiber, 11 F.3d at 222 (stating that reports and records gathered or created by federal regulatory agency in the course of performing its duties "are deemed the records of the agenc[y]" and therefore, are available "only with the permission of the agenc[y]").

undisputed that SEPTA has made an effort to comply with the FRB's <u>Touhy</u> regulations, the FRB has deemed that effort inadequate to enable it to process SEPTA's Requests, in light of the volume of documents involved in SEPTA's Requests, and the level of specificity (or lack thereof) included in the information provided by SEPTA to the FRB in connection with its Requests.  Accordingly, the FRB maintains that SEPTA has failed to exhaust its administrative remedies.  On the other hand, SEPTA seeks to have this Court determine that SEPTA has exhausted its administrative remedies and find that all additional efforts to comply with the Wheatley letter would be futile.  Should the Court make such a finding, SEPTA would then have this Court determine that the FRB has implicitly asserted the bank examination privilege over the entire universe of approximately 5103 documents, totaling 83,278 pages, being withheld for review by the FRB, and, apparently without examining those documents, decide that SEPTA has demonstrated good cause to override any applicable bank examination privilege and order production of all documents to SEPTA.

In support of its request to the Court, SEPTA points to a handful of cases that it maintains support the proposition that when a litigant provides notice to the FRB and some opportunity for it to advance the privilege, no further requirement to exhaust administrative remedies exists. Having reviewed the cases cited by SEPTA, the Court is unpersuaded that they justify SEPTA's request for relief here, either because they are distinguishable from the facts of the instant case, or because they are contrary to the weight of authority on this issue.  SEPTA relies heavily on <u>Local 295/Local 851 IBT Emplr. Grp. Pension Tr. v. Fifth Third Bancorp</u>, No. 1:08cv00421, 2012 U.S. Dist. LEXIS 12850 (S.D. Ohio Feb. 2, 2012), as support for its argument that strict compliance with 12 C.F.R. § 261.22 is not required where the FRB has actual notice of the

request, and any further efforts to exhaust administrative remedies would be futile.[10]  In that

case, the court, after noting that "strict adherence to 12 C.F.R. § 261.11(b)(1) would often seem

warranted when a party seeks financial-examination documents held by the Federal Reserve,"

found the case to be "atypical" and permitted the FRB to intervene for purposes of potentially

asserting the bank examination privilege in an action where it had "actual notice" of the

plaintiff's document requests, but the plaintiff had not filed a Touhy request in accordance with

the FRB's regulations.  See Local 295/Local 851, 2012 U.S. Dist. LEXIS 12850, at *25.

However, there the court denied the plaintiff's motion to compel without prejudice to plaintiff's

renewal of the same in the event the FRB sought to advance the bank examination privilege with

regard to the approximately 4,000 documents at issue.  Id. at *26.  Accordingly, this Court does

not read Local 295/Local 851 as supporting SEPTA's request that the Court treat notice to the

FRB as equivalent to exhaustion of administrative remedies and an implicit assertion of the bank

examination privilege by the FRB.

　　　In addition, the Court is unpersuaded by SEPTA's argument that the Wheatley letter

makes the FRB's "intent to deny the request clear," rendering any effort to respond to the letter

"futile."  (Doc. No. 158 at 22.)  The case cited by SEPTA as support for its argument, Denny v.

Carey, 78 F.R.D. 370 (E.D. Pa. 1978), is distinguishable from the instant case because in that

case, the FRB responded to an "oral request" with a letter that noted the requester's lack of

compliance with the Touhy regulations, but also stated that FRB counsel was aware of the

request and "asserted the privilege."  Id. at 372.  Here, the terms of the Wheatley letter make

---

[10] As noted above, SEPTA simultaneously argues that it has complied with 12 C.F.R. § 261.22 and that "strict compliance is not required."  (Doc. No. 158 at 21.)

clear that it is not intended to assert or waive the bank examination privilege over the requested documents, but instead is focused on detailing the information required from SEPTA in order for the FRB to process its Requests, concluding with an invitation to "supplement your requests." (Doc. No. 159-1 at 15.)

SEPTA has not referred the Court to a case on all fours with this one – one where the FRB or another agency has responded to a <u>Touhy</u> request with a request for additional information from the requester in order to enable the agency to process the request, and a court, rather than ordering the requester to engage with the agency in an effort to exhaust administrative remedies and obtain a substantive response from the agency as to assertion or waiver of the privilege, construed such an agency request as the implicit assertion of the bank examination privilege. In the absence of such a reference, and in light of the content of the Wheatley letter, which specifically identified information absent from SEPTA's Requests and invited SEPTA to engage with the FRB to facilitate its review of the subject documents, the Court concludes that SEPTA has failed to exhaust its administrative remedies, and, accordingly, its motion to compel is premature. <u>See, e.g.,</u> <u>Alaska Elec. Pension Fund v. Bank of Am. Corp.</u>, No. 14-cv-7126(JMF), 2016 U.S. Dist. LEXIS 158455, at *27-28 (S.D.N.Y. Nov. 16, 2016) (finding that "[p]laintiffs would have to seek relief 'through the established administrative process' before coming back to this court") (internal quotation omitted); <u>In re JP Morgan Chase Mortg. Modification Litig.</u>, No. 11-md-02290-RGS, 2012 U.S. Dist. LEXIS 167966, at *6 (D. Mass. Nov. 27, 2012) (stating that "[p]laintiffs may not move to compel the production of privileged examination information until they have first contacted the agency that holds the privilege and followed the agency's procedures for obtaining information," finding the motion

"premature"); In re Countrywide Fin. Corp. Sec. Litig., No. 07-cv-5295-MRP, 2009 U.S. Dist. LEXIS 120590 at *4 (C.D. Cal. Dec. 28, 2009) (providing that "[p]laintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC, pursuant to federal regulations").

The Court notes that discovery in this case has been pending for over two years, and is now at a standstill awaiting the resolution of this issue. The Court expects that the good faith efforts of SEPTA to engage with the FRB as outlined in the Wheatley letter will be met with the FRB's timely and good faith review of the relevant documents and prompt final action – whether it be assertion or waiver of the bank examination privilege – on SEPTA's Requests.

## IV.    CONCLUSION

For all of the reasons discussed above, the Court will deny SEPTA's Motion to Compel. An Order consistent with this Memorandum follows.

.