**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:12-cv-00993** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **ORRSTOWN FINANCIAL SERVICES,** | : | |
| **INC., et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is Plaintiff Southeastern Pennsylvania Transportation Authority

("SEPTA")'s Motion for Leave to File Third Amended Complaint.   (Doc. No. 182.)   For the

reasons that follow, the Court will grant SEPTA's motion.

**I.      FACTUAL AND PROCEDURAL BACKGROUND[1]**

This is a purported class action alleging securities violations in connection with

Defendant Orrstown Financial Services, Inc. ("Orrstown")'s early 2010 public offering (the

"Offering") of approximately 1.4 million shares of Orrstown common stock, which raised almost

$40 million dollars.   (Doc. No. 126 at 2.)   Following a series of revelations regarding

Orrstown's financial condition, Orrstown reported significant losses for the fourth quarter of

2011, and on March 15, 2012, filed its 2011 Annual Report, which disclosed that it had a

"material weakness" in its internal controls and had "failed to implement a structured process

---

[1]  What follows is a brief statement of the factual background underlying SEPTA's claims, taken
from the Court's December 7, 2016 Memorandum and Order addressing several motions to
dismiss SEPTA's Second Amended Complaint.   (Doc. Nos. 126, 127.)   For a more extensive
description of the alleged historical facts, see the Court's Memorandum and Order issued June
22, 2015 addressing several motions to dismiss SEPTA's First Amended Complaint.   (Doc. No.
92.)

with appropriate controls to ensure that updated loan ratings were incorporated timely into the calculation of the Allowance for Loan Losses." (Id.) Orrstown further admitted that, as of March 2012, it had failed to "fully remediate its material weakness in its internal control over financial reporting relating to loan ratings and its impact on the allowance for loan losses." (Id.)

On March 23, 2012, Orrstown and its Board of Directors revealed that they had entered into an agreement with the Federal Reserve Bank of Philadelphia (the "Written Agreement"), and a consent order with the Commonwealth of Pennsylvania, Department of Banking (the "Consent Order"), (collectively, the "Enforcement Actions"), requiring them, inter alia, to revise their underwriting and credit administration policies and strengthen their credit risk management practices. (Id.)

On May 12, 2012, SEPTA, on behalf of two classes, filed this purported class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) against Orrstown Financial Services, Inc. and Orrstown Bank (the "Orrstown Defendants"), and several additional individual Defendants associated with Orrstown. (Doc. No. 1.) On March 4, 2013, Plaintiff filed a First Amended Complaint (the "FAC"), adding as Defendants Orrstown's auditor, Smith Elliott Kearns & Company, LLC ("SEK"), and Janney Montgomery Scott LLC and Sandler O'Neill & Partners L.P. (the "Underwriter Defendants"), the underwriters involved in the Offering, and alleging that Defendants issued materially untrue and/or misleading statements and omissions in violation of the Securities Act of 1933 ("Securities Act") and the Exchange Act of 1934 ("Exchange Act"). (Doc. No. 40.) The amended complaint asserted claims on behalf of two classes: (1) the "Securities Act Class," which consists of persons and/or entities who purchased Orrstown common stock pursuant to, or traceable to, Orrstown's February 8, 2010 registration

statement and March 23, 2010 prospectus supplement issued in connection with Orrstown's

Offering in March 2010 and were damaged thereby; and (2) the "Exchange Act Class," which

consists of all persons or entities who purchased Orrstown common stock on the open market

between March 15, 2010 and April 5, 2012 (the "class period") and were damaged thereby.

(Doc. No. 126 at 3.) SEPTA acquired Orrstown stock pursuant to the offering documents for

the March 2010 Offering and also purchased Orrstown common stock on the open market during

the class period. (Id.)

  After extensive briefing, the Court dismissed SEPTA's Securities and Exchange Act

claims against all Defendants for failure to state a claim upon which relief may be granted.

(Doc. No. 92.) With permission of the Court, SEPTA filed a Second Amended Complaint

("SAC") against the same Defendants, which focused exclusively on alleged materially false

and/or misleading statements made by Defendants in the offering documents and through the

class period pertaining to the "effectiveness of the [Orrstown Defendants'] internal controls over

underwriting of loans, risk management, financial reporting and compliance with banking

regulations." (Doc. No. 101 ¶ 22.)

  All Defendants filed motions to dismiss, and while those motions were pending, on

September 27, 2016, Orrstown filed a "Notice of Subsequent Event in Further Support of their

Motion to Dismiss the Second Amended Complaint." (Doc. No. 122.) That filing pertained to

the Securities and Exchange Commission ("SEC") investigation of Orrstown referenced in

Plaintiff's SAC and informed the Court that the SEC had concluded its investigation and issued

an "Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A

of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934 and

Rule 102(e) of the Commission's Rules of Practice, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Orders" (the "SEC Order"). Orrstown's Notice attached the SEC Order as an exhibit and noted that the Order memorialized a settlement between the SEC and Orrstown, between the SEC and Orrstown's current Chief Executive Officer (Thomas R. Quinn) and current Chief Accounting Officer, and between the SEC and Orrstown's former Chief Financial Officer (Bradley S. Everly) and former Chief Credit Officer (Jeffrey W. Embly). (Doc. No. 122 at 2.)

On December 7, 2016, the Court granted SEK and the Underwriter Defendants' motions to dismiss and granted in part and denied in part the Orrstown Defendants' and additional individual Defendants' motion to dismiss. (Doc. Nos. 126, 127.) In connection with its decision on the motions to dismiss, the Court took judicial notice of the SEC Order and its findings, which the Court considered supportive of the SAC's allegations of misstatement or omission, beginning in the second quarter of 2010 through the end of 2011, because the SEC Order found that, during that time period, Orrstown "did not maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit financial statements in accordance with [generally accepted accounting principles]." (Doc. No. 122, Exh. 1, SEC Order ¶ 50.) Specifically, the SEC Order summarized its findings as follows:

> In 2010, as Orrstown's primary lending markets were experiencing a significant decline in real estate values, Orrstown incorrectly accounted for its commercial loans by not disclosing as much as approximately $69.5 million in loans as "impaired" in accordance with U.S. generally accepted accounting principles ("GAAP"). . . . Orrstown did not comply with GAAP's impaired loan disclosure requirements due to certain Respondents' negligence and Orrstown's lack of sufficient internal accounting controls. This failure resulted in material

misstatements in Orrstown's impaired loan disclosures in its quarterly filings for
the period ended June 30, 2010 through September 30, 2011, and its annual filings
for the years ended December 31, 2010 and 2011.

Additionally, Orrstown (i) did not calculate loan losses in accordance with GAAP
in connection with the filing of its Form 10-Q for the period ended June 30, 2011,
(ii) incorrectly implemented a newly issued GAAP accounting pronouncement in
connection with the filing of its Form 10-Q for the period ended June 30, 2011 in
a manner that was not consistent with the new standard, and (iii) incorrectly
applied GAAP when calculating fair value for certain collateral in connection with
its impairment analyses for its Form 10-Q for the periods ended June 30, 2010 and
September 30, 2010.

(Id., SEC Order ¶¶ 2-5.)

Accordingly, the Court concluded that the allegations of the SAC, coupled with the SEC

Order, support an inference that:

Orrstown failed to maintain an adequate system of internal accounting controls
through the relevant time period – second quarter 2010 through 2011 – and that
such failure resulted in inaccuracies in financial reporting during that time,
including "(1) incorrect loan risk ratings; (2) incorrect disclosures of impaired
loans; (3) incorrect calculations and disclosures of loan losses; (4) incorrect
application of newly issued accounting pronouncements; and (5) the lack of action
to remedy accounting problems after being alerted to them."

(Doc. No. 126 at 49.)

Specifically, as to the Securities Act claims asserted in the SAC (counts one through

four), the Court granted the motions to dismiss all such claims upon the Court's finding that the

SAC failed to allege facts supporting a reasonable inference that the representations and

certifications in Orrstown's 2009 Annual Report on Form 10-K, which was incorporated by

reference in the Offering documents, as to the effectiveness of its "internal controls over financial

reporting" were materially false and/or misleading when made.   (Doc. No. 126 at 23-33.)

As to the Exchange Act claims asserted in the SAC, the Court granted the motions as to

the claims asserted against SEK (count six) and all individual Defendants, with the exception of Quinn, Everly, and Embly. (Id. at 34-53.) The Court denied the motions as to the SAC's Exchange Act claims against the Orrstown Defendants. (Id.) With specific regard to the Exchange Act claims against the Orrstown Defendants and individual Defendants Quinn, Everly, Embly, having found that the allegations of the SAC supported a reasonable inference that the representations contained in Orrstown's financial reporting from the second quarter of 2010 through 2011 were false and/or misleading at the time they were made, and also that such representations were potentially material, the Court assessed the issue of scienter and found that, as to the Orrstown Defendants and individual Defendants Quinn, Everly, Embly, the SAC alleged facts supporting a strong inference that those Defendants issued or approved the challenged representations in Orrstown's financial reporting with the requisite scienter to state a claim under the Exchange Act. (Id. at 39-51.) Specifically, the remaining Exchange Act claims involve alleged misstatements about the effectiveness of Orrstown's internal controls over financial reporting in its 2010 and 2011 Annual Reports on Form 10-K and its quarterly reports on Form 10-Q (beginning with the second quarter of 2010 through the end of 2011). (Id. at 46.)[2]

---

[2] The Court's Order regarding the motions to dismiss the SAC provided as follows with regard to the dismissal of claims against Defendant SEK and the Underwriter Defendants: "[t]he [m]otion to [d]ismiss filed by Defendant SEK . . . is GRANTED in its entirety" and "[t]he [m]otion to [d]ismiss filed by the Underwriter Defendants . . . is GRANTED in its entirety." (Doc. No. 127 at 2.) With regard to the motion to dismiss filed by the Orrstown Defendants and Individual Defendants Ceddia, Coy, Embly, Every, Keller, Pugh, Quinn, Rosenberry, Shoemaker, Snoke, Ward, and Zullinger, the Order provided that their motion to dismiss was granted in part and denied in part, as follows: "(a) [t]he motion is GRANTED as to Plaintiff's Securities Act claims (Counts 1-4) against all Defendants, and as to Count 5 against Individual Defendants Zullinger, Shoemaker, Snoke and Coy; (b) [t]he motion is DENIED as to Count 5 against the Orrstown Defendants and Individual Defendants Quinn, Everly and Embly, and as to Count 7 against Individual Defendants Quinn, Everly and Embly." (Id.)

After the entry of a case management order in January of 2017 (Doc. No. 133), the parties initiated discovery.[3]  Shortly thereafter, the Orrstown Defendants communicated to SEPTA their stated intent to withhold documents from production because they potentially contain confidential supervisory information, or CSI,[4] which is protected from disclosure under the limited bank examination privilege provided by regulations of the Board of Governors of the Federal Reserve System ("FRB") and the Pennsylvania Department of Banking ("PADOB") (collectively, the "Regulators") without the express consent of the Regulators, thereby initiating a lengthy process whereby SEPTA and the Orrstown Defendants sought to facilitate the Regulators' review of the relevant documents in aid of the Regulators' decision as to whether to assert the bank examination privilege over potential CSI contained in the documents that were the subject of SEPTA's document requests.   In connection with that process, the Court held a

---

[3] The initial Case Management Order set a close of fact discovery date of November 3, 2017. (Doc. No. 33 at 1.)

[4] "Confidential supervisory information" is defined in 12 C.F.R. § 261.2(c)(1) as follows:

> (i)     Exempt information consisting of reports of examination, inspection and visitation, confidential operating and condition reports, and any information derived from, related to, or contained in such report;
>
> (ii)    Information gathered by the Board in the course of any investigation, suspicious activity report, cease-and-desist orders, civil money penalty enforcement orders, suspension, removal or prohibition orders, or other orders or actions . . . [and]
>
> (iii)   Any documents prepared by, on behalf of, or for the use of the Board, a Federal Reserve Bank, a federal or state financial institutions supervisory agency, or a bank or bank holding company or other supervised financial institution.

12 C.F.R. § 261.2(c)(1).   "Confidential supervisory information" does not include "documents prepared by a supervised financial institution for its own business purposes and that are in its possession."   See § 261.2(c)(2).

status conference with the parties in August of 2017, resulting in the issuance of an amended

Case Management Order.   (Doc. No. 138.)[5]   In an effort to monitor the status of the Regulators'

review of the relevant documents, the Court held another status conference with the parties in

February of 2018, and ultimately granted the parties' concurred-in motion to continue the

pending case management deadlines awaiting the outcome of the Regulators' review of the

relevant documents.   (Doc. No. 149.)

Thereafter, the parties filed a Joint Status Report with the Court on May 2, 2018,

reporting that the parties had participated in an April 2018 conference call with the Regulators to

discuss the status of the Regulators' review of the potential CSI documents.   (Doc. No. 153 at

3-4.)   In that Joint Status Report, all parties agreed that the withheld documents may be released

to SEPTA only under the following conditions: (1) should the Regulators consent to the

production of them to SEPTA, or (2) "in the event that the Regulators withhold consent, the

Court determines either that the privilege does not apply, or the Court determines that good cause

exists to override the privilege."   (Id. at 2.)   Subsequent to the filing of that Joint Status Report,

the Court held a status conference with the parties on May 10, 2018, and scheduled another status

conference for August 17, 2018.   (Doc. No. 155.)

Unsatisfied with the Regulators' process to review potential CSI documents to determine

whether to assert the bank examination privilege over any of the documents sought by SEPTA

from the Orrstown Defendants and third parties, and immediately prior to the scheduled status

conference in August of 2018, SEPTA filed a motion to compel seeking an order from this Court

---

[5] The amended Case Management Order set a close of fact discovery date of March 1, 2018. (Id.)

compelling production of all documents under review by the Regulators.   (Doc. No. 157.)[6]

After briefing on the motion, the Court denied SEPTA's motion by Memorandum and Order.

(Doc. Nos. 176, 177.)[7]

Thereafter, SEPTA filed the instant Motion for Leave to File Third Amended Complaint

(Doc. No. 182), along with the proposed Third Amended Complaint (Doc. No. 181-1), a

supporting declaration (Doc. No. 181-2), and a supporting brief (Doc. No. 181-3).[8]   In its

motion, SEPTA seeks leave to file a Third Amended Complaint ("TAC") that reasserts claims

previously dismissed by the Court's December 7, 2016 Order against several individual

Defendants associated with Orrstown, as well as Orrstown's auditor, SEK, and the Underwriter

Defendants.   In its motion, SEPTA maintains that discovery produced in this case in late 2018

has revealed evidence supporting the amendment of the SAC to include the previously dismissed

Securities Act claims against the Orrstown Defendants, several individual Defendants, SEK, and

the Underwriter Defendants. (Doc. No. 182.)   SEPTA's motion also seeks to reassert the

previously dismissed Exchange Act claims against four individual Defendants associated with

Orrstown and SEK.   (Id.)

---

[6] The Court subsequently granted the FRB's unopposed motion to intervene in this litigation for the purpose of addressing SEPTA's motion to compel.   (Doc. Nos. 166-70.)

[7] For a detailed recitation of the particular circumstances surrounding SEPTA's motion, see the Court's Memorandum issued February 12, 2019.   (Doc. No. 176.)

[8] SEPTA filed a Motion to Seal Documents in Support of its Motion for Leave to File TAC, on the basis that the materials submitted in support of its motion referenced material designated "confidential" under the protective order governing the exchange of information in this case. (Doc. No. 180.)   The Court granted the motion.   (Doc. No. 183.)

Orrstown filed a brief in opposition to SEPTA's motion (Doc. No. 184), as did SEK (Doc. No. 185), and the Underwriter Defendants (Doc. No. 186). After receiving permission from the Court, SEPTA filed a consolidated reply brief. (Doc. No. 190.) The motion has been fully briefed and is ripe for disposition.[9]

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) generally governs requests for amendment of pleadings[10] and provides, in pertinent part, that after amending a complaint once as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the [C]ourt's leave. The [C]ourt should freely give leave when justice so requires." See Fed. R. Civ. P. 15(a)(2). As the Supreme Court has stated, "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules." See Foman v. Davis,

---

[9] After the briefing on SEPTA's motion, the Orrstown Defendants and certain third-party witnesses (the "Movants") filed a Motion for Protective Order to Stay Discovery of the Orrstown Defendants and Third-Party Witnesses arising out of SEPTA's efforts to depose the Third-Party Witnesses. (Doc. No. 192.) The Movants sought a protective order from the Court staying all discovery in this action pending the Court's resolution of SEPTA's Motion for Leave to File Third Amended Complaint, and if SEPTA's Motion for Leave is granted, pending the resolution of any motion to dismiss to be filed by the Orrstown Defendants or others. SEK and the Underwriter Defendants filed a "Joinder of Non-Parties in Motion for Protective Order." (Doc. No. 193.) On June 17, 2019, the Court issued an Order granting in part the Movants' Motion for Protective Order to Stay Discovery and staying all deposition discovery in this action pending the Court's resolution of the instant motion. (Doc. No. 196.)

[10] While the parties note the potential applicability of Federal Rule of Civil Procedure 16(c)'s provision regarding modification of a case management order only for "good cause;" here, given the previous concurred-in stay of all case management deadlines due to delays in discovery related to the Regulators' review of potential CSI documents (Doc. No. 149), no modification of an existing case management order would be necessitated by the potential filing of the TAC.

371 U.S. 178, 182 (1962). In general, a court should grant leave to amend "unless equitable considerations render it otherwise unjust." See Arthur v. Maersk, 434 F.3d 196, 204 (3d Cir. 2006).

Grounds potentially justifying denial of leave to amend are "undue delay, bad faith, dilatory motive, prejudice, and futility." See Foman, 371 U.S. at 182; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). The Third Circuit has "consistently recognized . . . that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" See Arthur, 434 F.3d at 204 (quoting Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993)). The issue of "prejudice" focuses on hardship to the defendant if the amendment were permitted, specifically, whether amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories." See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001). In order to demonstrate prejudice, "the non-moving party must do more than merely claim prejudice; 'it must show that it [would be] unfairly disadvantaged or deprived of the opportunity to present facts or evidence.'" See Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (quoting Heyl & Patterson Int'l v. F.D. Rich Housing, 663 F.2d 419, 426 (3d Cir. 1981)).

With regard to "undue delay," the Third Circuit has held that the mere passage of time does not require that a motion to amend a pleading be denied; "however, at some point, the [movant's] delay will become 'undue,' placing an unwarranted burden on the [C]ourt, or will become 'prejudicial,' placing an unfair burden on the opposing party." See Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984). In assessing the issue of "undue" delay, the Court's focus is on the movant's motives for not amending sooner. See id.

"Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.   See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002); In re Burlington, 114 F.3d at 1434.   In assessing "futility," a district court applies the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6).   See In re Burlington, 114 F.3d at 1434; 3 Moore's Federal Practice, § 15.15[3] at 15-55 to 15-61 (3d ed. 2013).   Accordingly, in assessing the potential futility of a proposed amended complaint, the Court must accept as true the allegations in the proposed amended complaint and construe those allegations in the light most favorable to the party seeking leave to amend.   See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).

III.   DISCUSSION

    A.   **Arguments of the Parties**

        1.   SEPTA

In its brief in support of its Motion, SEPTA maintains that "recently discovered evidence" shows "not only that the material weaknesses in internal controls over financial reporting ("ICFR") at the heart of this case existed at least as early as 2008, but also that certain of the Defendants, with the complicity of SEK, deliberately manipulated Orrstown's financial statements in Orrstown's 2009 10-K in advance of the 2010 public offering in order to conceal material weaknesses in ICFR and loan losses inherent in Orrstown's commercial lending portfolio."   (Doc. No. 181-3 at 7.)   Accordingly, SEPTA seeks to file a TAC reasserting previously dismissed Securities Act claims based on financial statements in Orrstown's 2009 10-K issued in advance of the Offering.   As noted by SEPTA in its brief, the Court previously dismissed SEPTA's Securities Act claims because (1) it found that SEPTA's SAC lacked

adequate allegations that Orrstown's material weaknesses in ICFR existed prior to the second quarter of 2010, and (2) as to SEK, the Court found that the SAC contained insufficient allegations that SEK's clean audit opinions issued in connection with the Offering were false and misleading when made, or that SEK did not honestly believe the statements made in those opinions.   (Id. at 9.)

        In the TAC, SEPTA also seeks to reassert previously dismissed Exchange Act claims against SEK and four other individual Defendants associated with Orrstown.   As noted by SEPTA, the Court dismissed the SAC's Exchange Act claims against SEK based on its conclusion that the SAC failed to allege that SEK did not honestly believe the statements made in its audit opinions, and/or that there were untrue material facts embedded in its opinions, and further, that SEK had the requisite scienter to support such claims.   (Id.)   In support of its motion, SEPTA points to documents produced by the Orrstown Defendants in late November 2018, consisting of emails from 2009, as well as board and committee meeting materials from 2009, and documents produced by SEK in October 2018, consisting of its audit work papers for its 2008 audit of Orrstown, as "the foundation of [SEPTA's] request to file the TAC to reassert previously dismissed claims."   (Id. at 11.)

        As an initial matter, SEPTA notes that Federal Rule of Civil Procedure 15 embodies a liberal standard, requiring a party opposing an amendment to show "prejudice, bad faith, undue delay, or futility," none of which, it argues, is present here.   (Id. at 34.)   As to the issue of undue delay, SEPTA acknowledges that "this case is unquestionably long and complex," but it "has been diligent in moving this case forward and pursuing discovery in order to resolve this case on the merits."   (Id. at 35.)   SEPTA maintains that the documents upon which the allegations of the

TAC are based were produced to it by Orrstown and others in late 2018, "after persistent pursuit and much negotiation."  (Id.)   SEPTA also notes that, in light of the volume of documents produced (over one million pages), and the "highly technical banking and accounting issues involved," a review of the documents after production and the drafting of the TAC required significant time on the part of SEPTA's counsel and various consultants, and accordingly, SEPTA has not "unduly delayed" in seeking leave to file the TAC.   (Id. at 35.)

As to the issue of prejudice, SEPTA asserts that the burden on a non-moving party to establish prejudice upon allowance of amendment is "high" and that no such prejudice is present here because the TAC does not contain new causes of action or defendants, but instead, "fills evidentiary gaps that this Court cited in its Opinion dismissing these claims."   (Id. at 36.) SEPTA maintains that the "allegations in the TAC were drawn from materials in the possession of Defendants that were largely unknown and unknowable to [SEPTA] prior to discovery," and that discovery in this case is ongoing, which weighs against a finding of prejudice.   (Id.) SEPTA argues that where, as here, a requested amendment is "based on facts learned during the discovery process that were already known to the defendants and do not assert novel causes of action, there is no prejudice."   (Id. at 36-37.)

Furthermore, SEPTA argues that the requested amendment is not futile, specifically noting that leave to amend may be granted where a plaintiff identifies "facts that cure pleading deficiencies."   (Id. at 37.)   As to the Securities Act claims reasserted in the TAC, SEPTA notes that this Court previously dismissed these claims based on the SAC's failure to allege facts from which a reasonable factfinder could conclude that the allegedly false and misleading statements (in Orrstown's 2009 10-K and March 2010 Prospectus) were misleading at the time they were

made.  (Id. at 38.)   With specific regard to the Securities Act claims against the Orrstown

Defendants and individual Defendants associated with Orrstown, SEPTA maintains that the TAC

cures the pleading deficiencies by providing facts from which a reasonable factfinder can

conclude that the material weakness in ICFR existed "at least as early as 2008 and 2009, and that

Orrstown's Offering Documents, including the 2009 10-K, were materially false and misleading"

when issued to the public.  (Id. at 38-39.)    As to the TAC's reasserted Securities Act claims

against SEK, SEPTA notes that the Court previously dismissed this claim due to a lack of

evidence that, at the time it issued its clean audit opinion in connection with Orrstown's 2010

Offering, SEK did not honestly believe the representations contained in its opinion and/or that

there were untrue material facts embedded in its opinion.  (Id. at 39.)   SEPTA maintains that the

allegations of the TAC demonstrate that "SEK (1) knew that Orrstown did not maintain effective

ICFR, and (2) lacked reasonable grounds to issue a clean audit opinion, including because SEK

did not review the loans of many of [Orrstown's] largest borrowers, many of whom were SEK's

clients."  (Id.)   Finally, as to the TAC's reasserted Securities Act claims against the Underwriter

Defendants, SEPTA argues that the allegations of the TAC "leave[] no doubt that the Offering

Documents contain false and misleading statements," and that "underwriter Sandler was actively

involved in drafting false and misleading portions of the 2009 10-K and Prospectus."  (Id. at

39-40.)

     As to the TAC's reassertion of Exchange Act claims against SEK,[11] SEPTA points out

that the Court's previous opinion noted that such claims require allegations that SEK "recklessly

_____

[11] SEPTA's brief in support of its motion does not explicitly address the TAC's reassertion of
previously dismissed Exchange Act claims against individual Defendants associated with

or knowingly issued a materially false and misleading audit opinion," or that "no reasonable accountant would have made the same decisions if confronted with the same facts," and maintains that the TAC states an Exchange claim against SEK under that standard. (Id. at 40.) SEPTA maintains that it has alleged that: Orrstown "did not maintain effective ICFR;" "SEK expressly disagreed with [Orrstown's] ratings of several loans in 2009;" and that SEK "was in an untenable conflict situation, knowing that many of its own clients, who were large borrowers of [Orrstown], were facing financial Armageddon, yet nevertheless issued clean audit opinions in order to protect its position as both auditor to [Orrstown] and accountant to [Orrstown's] largest borrowers." (Id.) Accordingly, SEPTA asserts that it has "adequately alleged fact[s] giving rise to a reasonable inference that SEK acted with intent to deceive in issuing false and misleading clean audit opinions." (Id.) As a final note, SEPTA maintains that its effort to amend the SAC is the first after it had an opportunity to pursue discovery in this matter, and that "[g]iven the strong policy in favor of allowing claims to be heard on their merits, it is not uncommon for plaintiffs to be afforded multiple opportunities to amend, particularly in complex litigation such as securities litigation." (Id. at 41.) For all of the above reasons, SEPTA argues that its motion should be granted.

### 2. The Orrstown Defendants[12]

---

Orrstown, Zullinger, Shoemaker, Snoke and Coy.

[12] While the Court has previously defined the "Orrstown Defendants" to include Orrstown Financial Services, Inc., and Orrstown Bank, for purposes of opposing SEPTA's motion, and in accordance with the Orrstown Defendants' brief (Doc. No. 184 at 6 n.1), the "Orrstown Defendants" as used herein refers to Orrstown Financial Services, Inc., Orrstown Bank, and the twelve (12) individual defendants associated with Orrstown originally named as defendants in this litigation, and on whose behalf the opposition brief is filed.

In opposition to SEPTA's motion, the Orrstown Defendants argue that SEPTA's motion for leave to file the proposed TAC should be denied because the filing of the TAC is (1) futile, (2) unduly delayed, and (3) unduly prejudicial. (Doc. No. 184 at 2.) The Orrstown Defendants' argument as to futility centers on their contention that both the previously dismissed Securities and Exchange Act claims are now barred by the respective Act's statutes of repose.[13] (Id. at 6.) The Orrstown Defendants note that the Securities Act contains a statute of repose setting forth "when a claim must be brought and when claims under the Act become time-barred." (Id. at 11.) Specifically, the Orrstown Defendants rely on the following section of the relevant statute: "[i]n no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale." (Id.) (quoting 15 U.S.C. § 77m). The Orrstown Defendants cite a recent Supreme Court case for the proposition that "the text, purpose, structure and history of the statute all disclose the congressional purpose to offer defendants full and final security after three years." (Id.) (quoting Ca. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc., __ U.S. __, 137 S. Ct. 2042, 2052 (2017) ("CalPERS")). The Orrstown Defendants argue that because nine years have passed since the Offering, it is now too late for SEPTA to reassert the previously dismissed Securities Act claims under the applicable statute of repose. (Id. at 12.)[14]

_____

[13] The Court notes that the Orrstown Defendants do not address the potential futility of the proposed TAC beyond the issue of the statutes of repose and limitation; however, their brief states their intent to move to dismiss the TAC in its entirety if the Court grants SEPTA permission to file it. (Doc. No. 184 at 10 n.3.)

[14] The Orrstown Defendants also argue that the Securities Act claims contained in the TAC are barred by the Securities Act's one-year statute of limitations. (Id. at 13 n.4.) They make a

Similarly, the Orrstown Defendants maintain that the previously dismissed Exchange Act claims against several individual Orrstown Defendants (i.e., Zullinger, Shoemaker, Snoke, and Coy) are barred by the Exchange Act's five (5) year statute of repose.   (Id. at 14.)   They maintain that because the alleged Exchange Act class period runs until, at the latest, April 26, 2012, SEPTA cannot state an Exchange Act claim more than five (5) years after the last alleged violation, or at the latest, April 26, 2017.   (Id.)   Accordingly, the Orrstown Defendants maintain that SEPTA's effort to file the TAC to reassert Exchange Act claims against Zullinger, Shoemaker, Snoke, and Coy is time-barred under the applicable statute of repose and, therefore, futile.   (Id.)[15]

In addition, the Orrstown Defendants maintain that SEPTA has unduly delayed its motion to file the TAC, justifying denial of the motion, asserting that "Orrstown has engaged in massive, costly discovery for several years," and that the "alleged facts justifying the TAC were (or could have been) known to SEPTA years ago, at least since 2017 when the documents Orrstown produced to the SEC (minus CSI) were given to SEPTA."   (Id. at 19.)

The Orrstown Defendants further maintain that they will be significantly prejudiced if SEPTA is granted leave to file the TAC.   They argue that the "totality of the circumstances, including SEPTA's delay in requesting leave to amend, expenses incurred, discovery conducted,

---

similar argument with regard to the Exchange Act claims, maintaining that they are barred by the Exchange Act's two-year statute of limitations.   (Id. at 14 n.5.)

[15] The Orrstown Defendants maintain that SEPTA may not permissibly argue that the reasserted claims relate back to its SAC under Rule 15(c) of the Federal Rules of Civil Procedure for purposes of evading the applicable statutes of repose, because a statute of repose creates "a substantive right to be free from liability" which cannot be "abridged by the relation back doctrine" and "applies equally to new and existing parties."   (Id. at 15-16.)

the length of the litigation, whether the amendment would require additional discovery or cost, and whether the amendment would result in the loss of any substantive rights" dictate that the nonmoving parties will be substantially prejudiced if SEPTA is granted leave to file the TAC. (Id. at 20-21.)   As to discovery, the Orrstown Defendants note that their production of more than 500,000 pages of documents to date required an expenditure of "substantial time" and "significant expense," and if SEPTA is permitted to file the TAC, the Orrstown Defendants would incur additional discovery expenses "particularly . . . in light of SEPTA's effort to bring back the parties dismissed by the Court's December 7, 2016 Order."   (Id. at 21-22.)    Along these lines, the Orrstown Defendants also maintain that they have "incurred significant expense in preparing and critiquing expert reports relating to class certification," pursuant to the Court's August 15, 2017 Case Management Order.   (Id. at 22.)   The Orrstown Defendants argue that they "now face the prospect of having [their] expert prepare a new report, and review additional materials to address the claims and parties SEPTA seeks to reintroduce in the TAC," resulting in an expenditure of time and resources that "would be prejudicial."   (Id.)[16]

---

[16] The Orrstown Defendants also state that, some time after exchanging expert reports in this matter, SEPTA's expert, Dr. Nejat Seyhun, prepared an expert report that was excluded as "unreliable" in another class action; accordingly, they maintain that SEPTA will use the opportunity for additional discovery required by the TAC as an "excuse to retain a different expert, further increasing Orrstown's costs."   (Id. at 22-23.)

Further, the Orrstown Defendants argue that permitting the filing of the TAC will cause additional delay in the "ultimate adjudication of this matter, making it harder for Orrstown to defend the case." (Id. at 23.) They note that the events that form the basis of this litigation occurred between 2008 and 2012, and as time passes, memories fade, documents become harder to find, and witnesses become unavailable. (Id.)[17] Finally, the Orrstown Defendants maintain that permitting the filing of the TAC would "effectively permit [SEPTA] to circumvent the PSLRA," which was enacted "to curb abusive securities litigation practices." (Id.) The Orrstown Defendants assert that SEPTA's TAC "was prepared in violation of the PSLRA's automatic stay," in that Orrstown moved forward with the discovery phase of this litigation under the expectation that SEPTA's discovery requests related to the Exchange Act claims that survived the Court's Memorandum and Order on the motions to dismiss the SAC. (Id. at 24.) The Orrstown Defendants argue that "[b]y seeking discovery from Orrstown and third parties for the purpose of attempting to revive the dismissed claims, SEPTA is effectively circumventing the PSLRA." (Id.) For all of the above reasons, the Orrstown Defendants argue that the Court should deny SEPTA's motion.

### 3. The Underwriter Defendants

The Underwriter Defendants take a slightly different approach in opposing SEPTA's motion. First, they argue that SEPTA's motion is not one properly brought under Rule 15(a) seeking leave to amend but rather an untimely motion under Federal Rule of Civil Procedure 54(b) seeking revision of the Court's order dismissing claims against them prior to the entry of

---

[17] The Orrstown Defendants note that two of the previously dismissed parties, Jeffrey W. Coy and Gregory A. Rosenberry, have died. (Id.)

final judgment, and that SEPTA has not demonstrated the "extraordinary circumstances" required for reconsideration.  (Doc. No. 186 at 2, 11.)   Second, they maintain that, even if SEPTA's motion for leave to amend is properly construed as one brought under Rule 15(a), it fails to meet the applicable standard because the proposed TAC is futile and would result in substantial prejudice to them.  (Id.)

The Underwriter Defendants argue initially that, although SEPTA's motion purports to seek relief under Federal Rule of Civil Procedure 15(a), that Rule does not apply where "a plaintiff seeks to resurrect claims that were 'previously dismissed with prejudice.'"   (Id. at 11.) (quoting In re Bisys Sec. Litig., 496 F. Supp.2d 384, 386 (S.D.N.Y. 2007)).   The Underwriter Defendants maintain that SEPTA's motion is really a Rule 54(b) motion seeking revision of this Court's December 7, 2016 Memorandum and Order dismissing the claims against it prior to the entry of final judgment, which, pursuant to Local Rule 7.10, must be filed within fourteen (14) days of the entry of the order challenged; accordingly, they maintain that the instant motion is untimely.   (Id.)   The Underwriter Defendants maintain that SEPTA's noncompliance with the timing requirements of the applicable local rule is sufficient reason alone to deny the motion, but also argue that, in any event, SEPTA cannot demonstrate the "extraordinary circumstances" justifying reconsideration under Rule 54(b).   (Id. at 12.)

First, the Underwriter Defendants maintain that the "new evidence" that SEPTA references in its motion was obtained "in an impermissible end run around the automatic discovery stay imposed by the PSLRA, and allowing SEPTA to use that discovery to shore up a previously dismissed claim would undermine the important protections that Congress enacted." (Id. at 13.)   The Underwriter Defendants maintain that SEPTA "had two bites at the apple and

twice failed to state viable Securities Act claims against the underwriters (or anyone else)," and

"[b]ut for the fact that SEPTA was allowed to move forward on <u>different</u> claims against <u>different</u>

defendants based on <u>different</u> alleged misstatements that post-dated the relevant offering, the

proceedings in this Court would have come to a close in 2016, and SEPTA would have received

no discovery at all." (<u>Id.</u> at 14.)   The Underwriter Defendants maintain that, upon receipt of

subpoenas from SEPTA for documents that pre-dated Orrstown's March 2010 Offering, they

objected on the ground that SEPTA sought discovery "relevant only to claims that the Court

dismissed in its Order of December 7, 2016." (<u>Id.</u>)   The Underwriter Defendants state that

SEPTA's counsel subsequently represented to them that such was not the case, and that the

information sought related to the remaining Exchange Act claims in the case.   (<u>Id.</u> at 14-15.)

They argue that "had [they] known that SEPTA was seeking pre-offering discovery as part of a

plan to one day revive the Securities Act claims the Court had dismissed," they "never would

have agreed to produce those documents," and maintain that due to SEPTA's representation,

their "objection to pre-offering discovery was not brought to the Court's attention at the time."

(<u>Id.</u> at 15.)   The Underwriter Defendants argue that "SEPTA's lack of candor undeniably

prejudiced [the Underwriter Defendants] and should not be rewarded." (<u>Id.</u>)   In sum, the

Underwriter Defendants assert that permitting SEPTA's use of the discovery obtained under

these circumstances to attempt to revive previously dismissed Securities Act claims "would

render the PSLRA stay 'meaningless and the Congressional intent of the statute vitiated.'" (<u>Id.</u>)

(quoting <u>In re AOL Time Warner, Inc., Secs. & "ERISA" Litig.</u>, No. MDL1500,02-cv-5575

(SWK), 2004 WL 1810661, at *2 (S.D.N.Y. Aug. 12, 2004)).

     Second, the Underwriter Defendants maintain that the "new evidence" referenced by

SEPTA in its motion is not "sufficiently compelling to warrant reconsideration," noting that

SEPTA did not submit any evidence in support of its motion, only the proposed TAC.   (Id. at

16.)    The Underwriter Defendants characterize the proposed TAC as "predominantly uncited"

and lacking any "exhibits that were not before the Court" when it issued its December 2016

decision regarding the SAC.   (Id. at 17.)   They maintain that, absent a "smoking gun" that might

justify the "extraordinary remedy of reconsideration," SEPTA has presented a summary from

over one (1) million pages of discovery produced in this litigation, and the weight of this

material, if any, is significantly outweighed by the prejudice the Underwriter Defendants would

suffer upon reinstatement of claims dismissed several years ago.   (Id.)   The Underwriter

Defendants maintain that SEPTA "does not cite a single case governed by the PSLRA in which a

plaintiff was permitted to resurrect claims against a previously dismissed party based on

discovery obtained in the same lawsuit in connection with claims against others that had survived

dismissal," and rely on the holding of the court in In re Bisys Securities Litigation, 496 F.

Supp.2d 384 (S.D.N.Y. 2007), aff'd sub nom. Public Employees Retirement Ass'n of N.M. v.

PriceWaterhouseCoopers LLP, 305 F. App'x 742 (2d Cir. 2009), in support of their position.

(Id. at 16.)

        The Underwriter Defendants further maintain that, even assuming Rule 15(a) is the

appropriate standard for assessing SEPTA's motion, SEPTA fails to meet the relevant standard

established by Foman v. Davis in that all of the potential bases for denial of a Rule 15 motion –

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of the allowance of the amendment, [or] futility of amendment" – apply here and justify denial of

SEPTA's motion.   (Id. at 17-18) (quoting Foman, 371 U.S. at 182).

As an initial matter, the Underwriter Defendants maintain that the proposed TAC is futile because, like the Orrstown Defendants, they argue that the proposed claims against them contained in the TAC are barred by the Securities Act's three-year statute of repose.[18]   (Id. at 19.)[19]   The Underwriter Defendants also take issue with any argument made by SEPTA to the effect that, because it seeks to amend a complaint in an action begun within the repose period, the proposed reasserted claims are not barred, maintaining that SEPTA has cited no case endorsing what they characterize as "this illogical interpretation of Section 13 – under which SEPTA could reassert previously dismissed Securities Act claims against the underwriters ad nauseam, ad infinitum so long as SEPTA's other claims against other defendants remained pending."   (Id. at 20-21.)

The Underwriter Defendants further maintain that the proposed Securities Act claims sought to be asserted against them are futile because they are barred by the Securities Act's one-year statute of limitations.   (Id. at 22.)   They maintain that because SEPTA "must concede that it discovered the Securities Act claims that it proposes to assert in the TAC more than one year ago . . . [a]bsent tolling or relation back under Rule 15(c), therefore, SEPTA's proposed claims under that Act are barred by the statute of limitations."   (Id. at 22-23.)   As to the issue of

---

[18]  Like that of the Orrstown Defendants, the Underwriter Defendants' argument as to futility focuses solely on the issue of the statutes of repose and limitation; however, their brief states their intent to seek dismissal of the TAC under Federal Rule of Civil Procedure 12(b)(6) if the Court permits SEPTA to file it.   (Id. at 18 n.2.)

[19]  Also like the Orrstown Defendants, the Underwriter Defendants maintain that such a statutory bar precludes the use of the relation back doctrine embodied in Federal Rule of Civil Procedure 15(c) to save the Securities Act claims sought to be asserted by SEPTA in the TAC.   (Id. at 20.)

relation back, the Underwriter Defendants argue that the language of Rule 15(c)(1) provides that in order for relation back to apply to an amendment adding parties, there must have been a mistake concerning the identity of the proper party, but where, as here, there was no mistake as to identity, relation back cannot apply.   (Id. at 24-25.)

In addition to arguing that the proposed TAC is futile due to the applicable statutes of repose and limitation, the Underwriter Defendants, like the Orrstown Defendants, maintain that permitting the filing of the TAC at this time would substantially prejudice them, which they note is the "touchstone" for the denial of leave to amend under Rule 15.   (Id. at 25.)   In addition to prejudice resulting from a denial of "the protections of the PSLRA discovery stay," the Underwriter Defendants argue that they also face significant prejudice resulting from "the passage of time and the extent to which the case ha[s] advanced since they were dismissed." (Id.)   They maintain that, since the dismissal of the claims asserted against them in December 2016, they "have not attended Court conferences, joined the parties' case management discussions, attended depositions, or participated in discovery as a party," and, therefore, have not seen "any of the documents that the Orrstown Defendants and SEK produced over the past 28 months, which apparently span more than one million pages and which SEPTA says required a 'substantial investment of resources' to review."   (Id. at 25-26.)   The Underwriter Defendants note that, if the Court permits SEPTA to file the proposed TAC, and the claims asserted against them survive a motion to dismiss, they will need to review all discovery that has occurred to date, and "supplement it where appropriate with their specific defenses in mind," as well as engage experts, maintaining that "fundamentally, there will be no practical way for [the Underwriter Defendants] to catch up," justifying denial of leave to amend under these circumstances.   (Id. at

26.)

### 4.    SEK

In opposition to SEPTA's motion for leave to amend, Defendant SEK proffers arguments similar to those made by the Underwriter Defendants and the Orrstown Defendants.   First, SEK argues that the motion is analogous to an untimely motion for reconsideration pursuant to Rule 54(b), instead of a Rule 15 motion, because SEK "has already been dismissed as a party, with prejudice, pursuant to the Court's December 2016 order."   (Doc. No. 185 at 9.)   SEK argues that SEPTA's motion effectively requests that the Court reconsider its previous order dismissing all claims against SEK and maintains that SEPTA has failed to articulate any basis for the Court to do so;   first, because pursuant to local rule, any such motion must be made within fourteen (14) days of the entry of an order, and second, because SEPTA fails to identify any "extraordinary circumstances" justifying reconsideration.   (Id. at 10-11.)

Further, SEK argues that leave to amend should be denied under the Rule 15 standard as well, maintaining that the claims asserted against it in the proposed TAC are barred under the applicable statutes of repose, rendering the amendment futile.   (Id. at 12.)   Like the Orrstown Defendants and the Underwriter Defendants, SEK argues that the three (3) year statute of repose established by the Securities Act and the five (5) year statute of repose established by the Exchange Act[20]  bar the reassertion of such claims against SEK now.   (Id.)[21]

---

[20]  SEK notes that SEK's conduct alleged to give rise to a Section 10(b) Exchange Act claim occurred, at the latest, in March 2012, when SEK issued its final audit opinion as to Orrstown. (Id. at 15.)   Accordingly, SEK maintains that the statute of repose expired, at the latest, in March 2017, more than two (2) years prior to the filing of SEPTA's motion. (Id.)

[21]  Further, SEK argues that Rule 15's relation back provision cannot save the claims sought to be asserted against it in the TAC because statutes of repose constitute substantive rights to beree

Moreover, like the Orrstown Defendants and the Underwriter Defendants, SEK argues that the proposed TAC is futile because the proposed Securities and Exchange Act claims sought to be asserted against SEK are barred by the controlling statutes of limitation. (Id. at 16.) SEK maintains that the facts and allegations included in the proposed TAC were "available to SEPTA to investigate prior to 2017 and 2018; i.e. within the limitations period," and, therefore, the assertion of those allegations in the TAC is time-barred. (Id. at 17.) SEK asserts that the fact that it was a defendant in the FAC and SAC does not alter this result, maintaining that because the Court in December of 2016 granted SEK's motion to dismiss the claims asserted against it in the SAC in its entirety, the proposed TAC seeking to reassert dismissed claims against it "must be treated as if SEK were being named as a defendant for the first time," and given that the statute of limitations applicable to such claims has long since expired, SEPTA's motion should be denied as futile. (Id. at 18.)

Finally, SEK argues that, even assuming that the proposed TAC contained viable claims against SEK, SEPTA's motion should be denied because of the "undue prejudice" to it that would result from any such amendment. (Id. at 21.) SEK notes that its only involvement in this litigation since December of 2016 has been in the context of responding to a subpoena for documents and testifying as a non-party witness. (Id. at 23.) SEK notes that it has not participated in the substantial discovery that has occurred in this case since the dismissal of the SAC's claims against SEK in December of 2016, consisting of the production of hundreds of

---

from suit, and the Rules Enabling Act, 28 U.S.C. § 2072(b), pursuant to which the Federal Rules of Civil Procedure were promulgated, prohibits any interpretation of the rules that would abridge or modify any substantive right. (Id. at 19-20.) SEK also maintains that the relation back doctrine is inapplicable to claims against a party previously dismissed with prejudice. (Id. at

thousands of pages of documents, and that it would be "greatly prejudiced if it were suddenly joined back into the action now, years after it was dismissed, and required to get up to speed on hundreds of thousands of pages of documents that SEPTA has had for years, while SEPTA moves forward with depositions."   (<u>Id.</u>)   SEK also points out that, since the claims against it were dismissed, it has not "engaged with the necessary team of standard of care, class action, and damages experts."   (<u>Id.</u>)   Emphasizing the prejudice to it that would result from a grant of SEPTA's motion for leave to file the TAC, SEK maintains that SEPTA's motion should be denied.

### 5.      SEPTA's Arguments in Reply

In reply to the arguments proffered by the various Defendants, SEPTA maintains that its motion is properly considered under Federal Rule of Civil Procedure 15 and that Defendants have failed to meet their burden under that Rule to demonstrate why leave to amend should not be "freely" given.   (Doc. No. 190 at 11.)   As to the various Defendants' argument that SEPTA's motion should be treated as a "motion for reconsideration under Rule 54(b), subject to the doctrine of 'law of the case,'" SEPTA maintains that its motion does not seek reconsideration of the Court's decision regarding the motions to dismiss the SAC, but, rather, seeks permission to file a new complaint superseding the SAC and containing "new material factual allegations." (<u>Id.</u> at 21.)   SEPTA maintains that its motion should be assessed under traditional Rule 15 standards.   (<u>Id.</u> at 23-25.)

Further, SEPTA maintains that the various Defendants' arguments regarding statutes of repose and limitation applicable to Securities and Exchange Act claims are inapposite.   Rather,

_____

20-21.)

SEPTA maintains that pursuant to Rule 54(b), "the Court's earlier decision on the motions to dismiss did not end this litigation as to <u>any</u> claim or defendant.   Thus, the TAC is not a new action, it does not add new parties, it does not insert new claims, and no statute of limitations or repose is calculated by reference to the filing of the TAC."   (<u>Id.</u> at 11.)

First, in support of its position that no applicable statute of repose or limitation bars its effort to file the TAC, SEPTA references the language of the Securities Act, which provides that

> [n]o action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) . . . unless brought within one year after the discovery of the untrue statement or the omission . . . In no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) . . . more than three years after the security was bona fide offered to the public.

(<u>Id.</u> at 14) (quoting 15 U.S.C. § 77m).[22]   SEPTA takes issue with the position of the various Defendants that the Court's previous Order dismissing claims against them ended the "action" as to the claims and parties dismissed such that the potentially reasserted claims in the TAC constitute a new "action" barred by the applicable statutes of limitation and repose.   (<u>Id.</u>) SEPTA relies on the language of Federal Rule of Civil Procedure 54(b) in support of its position, noting that it provides as follows: "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liability of fewer than all the parties does not end the action as to any of the claims or parties."   (Doc. No. 190 at 14) (quoting Fed. R. Civ. P. 54(b)).

SEPTA argues that the primary case relied on by the various Defendants in support of their argument as to the application of the relevant statutes of repose, <u>CalPERS</u>, 137 S. Ct. 2042 (2017) "demonstrates clearly the error of their argument," noting that in <u>CalPERS</u>, an unnamed

---

[22] SEPTA notes that the statute establishing statutes of limitation and repose for Exchange Act claims, 28 U.S.C. § 1658, utilizes the same reference to commencement of an "action."   (<u>Id.</u>)

class member opted out of a timely-filed securities class action and proceeded to file a new action in a different court, outside of the statute of repose period.   Accordingly, because it was a new "action," the applicable statute of repose barred the claim and no tolling applied.   (Id. at 15.) SEPTA maintains that "CalPERS reaffirms that a claim is timely so long as the 'action' asserting the claim is filed within the relevant statutes of limitations and repose, which is exactly what happened here."   (Id. at 16.)

In further support of its position, SEPTA points to the Fifth Circuit's decision in Crostley v. Lamar County, 717 F.3d 410, 421 (5th Cir. 2013), which it maintains rejected the precise argument asserted by the various Defendants here.   (Id. at 17-18.)   In Crostley, the Fifth Circuit reversed a decision of the district court denying leave to amend to reassert claims against a defendant previously dismissed with prejudice after discovery revealed evidence in support of those claims, finding that under Rule 54(b), the dismissal with prejudice of claims against that one defendant, while claims against other defendants proceeded, did not end the action with respect to that defendant.   See Crostley, 717 F.3d at 420-21.   Accordingly, the Court found that the applicable statute of limitations was calculated in connection with the filing of the initial complaint against the defendant previously dismissed.   See id. at 421.   SEPTA maintains that, under Rule 54(b), because the Court's December 7, 2016 Order regarding the motions to dismiss the SAC "disposed of fewer than all claims and fewer than all parties [] in an order that was not immediately appealable . . .   the action therefore continued as to all parties."   (Id. at 19-20.)

SEPTA also disputes the various Defendants' arguments regarding the potential for relation back under Rule 15(c), maintaining that while Rule 15(c) "allows relation back where an amended pleading inserts a new claim or a new defendant not previously included in the action,"

it is irrelevant in the case of an amendment that "merely adds factual allegations to bolster a claim already asserted against an existing or previously named party." (Id. at 20.) SEPTA asserts that all of the cases cited by Defendants on this point are inapposite because they "all involve[] addition of a new party or new claim that would have been barred absent relation back." (Id.)

SEPTA similarly takes issue with the various Defendants' position that the PSLRA bars amendment once discovery has begun, asserting that "[n]umerous courts have rejected it, and none have adopted it." (Id. at 26.) SEPTA maintains that the purpose of the PSLRA stay of discovery is served where a court has sustained the legal sufficiency of a complaint, and that the stay provision does not prohibit a plaintiff's use of discovery produced in litigation on other claims. (Id. at 26-27.) SEPTA cites several cases finding that the PSLRA discovery stay did not bar leave to amend where a plaintiff sought to amend based on new information gathered in discovery. (Id. at 27-28.) SEPTA also asserts that the claims sought to be reasserted in the TAC "are not fundamentally different from the claims the Court previously upheld in the SAC," but, rather, demonstrate that the issues regarding financial reporting in the second quarter of 2010 existed since 2008-2009. (Id. at 28-29.) Ultimately, SEPTA maintains that the various Defendants attempt to argue for the applicability of "inapposite rules" because "they cannot meet their burden to overcome the presumption in favor of amendment under the Rule 15(a) standards that actually apply to SEPTA's [m]otion." (Id. at 31.)

As to the issue of undue delay under Rule 15(a), SEPTA notes that only the Orrstown Defendants argue that SEPTA has unduly delayed in its effort to seek leave to amend, and maintains that the argument is baseless because many of the documents upon which the TAC is

based were produced only late in 2018.   (Id. at 32.)   SEPTA takes issue with the Orrstown

Defendants' argument that facts underlying the motion could have been known to SEPTA earlier,

 maintaining that Orrstown resisted the production of documents predating 2010 until November

2018, which undercuts any argument the Orrstown Defendants make regarding delay.   (Id. at

34.)   Further, SEPTA points out that review of the more than one (1) million pages of

documents produced in this litigation required a substantial investment of time by its attorneys

and consultants in order to prepare the TAC, and, therefore, the Orrstown Defendants cannot

credibly claim that SEPTA's motion could have been filed earlier.   (Id. at 32-33.)   SEPTA

argues that the "mere passage of time" does not constitute undue delay, but, rather, undue delay

is properly measured by the amount of time remaining between amendment and the ultimate

resolution of this case on its merits.   (Id. at 33.)   SEPTA argues that "the case is still in a

relatively early stage" because "[d]iscovery is ongoing, few depositions have occurred to date,

class certification and dispositive motions have not been filed, and trial is not imminent."   (Id.)

        SEPTA asserts that the various Defendants have failed to sustain their heavy burden to

demonstrate undue prejudice justifying denial of its motion for leave to amend.   As to the

Orrstown Defendants, SEPTA takes issue with their argument that they would suffer undue

prejudice as a result of the filing of the TAC because the TAC will not require any Defendant to

duplicate discovery already produced, and "[n]or will allowing the TAC require Orrstown to redo

expert discovery."   (Id. at 37.)   SEPTA maintains that Orrstown's "one affirmative expert report

to date" covering the alleged Class Period extending from March 15, 2010 and April 5, 2012,

"already includ[es] the begin date of the Class Period asserted in the TAC," and that "[a]ny

supplemental expert reports to ensure coverage of the TAC Class Period, which extends the

Class Period in the SAC by only a couple weeks, would entail minimal burden." (Id.) SEPTA also notes that any additional expert reports required for the Securities Act claims sought to be reasserted in the TAC would not be "duplicative of prior work." (Id.)

SEPTA also disputes the Orrstown Defendants' argument that prejudice results from the length of time this case has been pending and the effect of that length of time on witnesses' memories or the availability of documents. (Id. at 38.) SEPTA maintains that "virtually everything banks, auditors, and underwriters do is (or should be) documented, and well over a million pages of documents are available to refresh the recollections of any witnesses." (Id.) Moreover, it asserts that Orrstown "should have already taken steps to preserve documents, including issuing litigation holds." (Id. at 38.) Ultimately, SEPTA argues that the Orrstown Defendants' claim of prejudice fails because "[w]here, as here, the newly pleaded facts share a close factual nexus with the existing claims, and would likely come into the case as evidence even absent amendment, there can be no claim of undue prejudice." (Id.) SEPTA maintains that this is especially true where, as here, the "majority of the allegations in the TAC were derived from Orrstown's own documents, which were revealed to SEPTA only much later through discovery." (Id. at 40.)

SEPTA also challenges SEK's claim of undue prejudice, maintaining that SEK's need to "get up to speed on discovery. . . .does not qualify as prejudice," especially where the relevant discovery produced in this case "consists primarily of SEK's own documents and those of Orrstown, which SEK audited." (Id. at 41.) Similarly, SEPTA notes that the claims sought to be reasserted against SEK are based largely on "its own documents and its own knowledge," and asserts that "courts consistently find no prejudice when an amendment is based on the opposing

party's own documents." (Id. at 42.)  SEPTA notes that the discovery period in this case remains open, and that while   SEK "is free to seek its own discovery," it maintains that "the existing discovery is likely to materially, if not fully, overlap with the evidence necessary for SEK's defense."  (Id.)  SEPTA also argues that SEK "cannot establish that amendment will deprive it of the opportunity to present facts or evidence."  (Id. at 43.)

SEPTA similarly challenges the Underwriter Defendants' argument that it will be subject to prejudice if amendment is permitted because "they have not been privy to the discovery exchanged thus far."  (Id. at 44.)  SEPTA maintains that (1) "having to defend oneself is not undue prejudice;" (2) the Underwriter Defendants "will not be deprived of the ability to present any facts, evidence or argument, and will be able to participate in depositions, almost all of which remain to be taken;" and (3) "the claims alleged against the Underwriter Defendants in the TAC share a common factual nexus with the discovery already exchanged amongst parties, easing any perceived discovery burden should the Underwriter Defendants be given access to this discovery."  (Id.)  Finally, SEPTA argues that, due to the delays in discovery in this case related to its efforts to obtain documents designated as CSI, "discovery in this case is far from over and . . . final resolution of the CSI issue will require time to play out."  (Id.)[23]  Ultimately, SEPTA argues that this is the first opportunity it has had to seek leave to amend after the receipt of discovery, and that its effort to amend its pleading to "reflect information learned in discovery is

---

[23] SEPTA maintains that any claim of bad faith raised by the Underwriter Defendants is "wholly without merit" because the discovery sought from the Underwriter Defendants in this matter was "entirely proper," noting that "the fact that some discovery received from the Underwriters supports the claims reasserted in the TAC only serves to demonstrate the close factual nexus between the claims that are currently pending and the claims that are reasserted in the TAC." (Id. at 45.)

common and entirely appropriate." (<u>Id.</u> at 46.) Accordingly, SEPTA requests that the Court grant its Motion for Leave to File the TAC.

**B. Analysis**

**1. Applicable Standard**

As an initial matter, the Court addresses the parties' arguments regarding the applicable standard to apply to SEPTA's motion seeking to file an amended complaint reasserting previously dismissed claims. The Court notes that none of the parties have cited a case from the Third Circuit addressing this issue under similar circumstances. As noted above, the various Defendants urge the Court to consider SEPTA's motion as one seeking revision of the Court's December 7, 2016 Order dismissing several claims and parties from this case under Federal Rule of Civil Procedure 54(b). Rule 54(b) provides as follows:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the [C]ourt may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the [C]ourt expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

As noted by the Underwriter Defendants, the Supreme Court has held, in connection with a discussion of the "law of the case" doctrine,[24] that while "[a] court has the power to revisit prior decisions," "as a rule courts should be loathe to do so in the absence of extraordinary

---

[24] The law of the case doctrine generally provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988). The Third Circuit has held that "extraordinary circumstances" might also exist in the situation where "(1) new evidence is available or (2) a supervening new law has been announced," but only if other parties "are not prejudiced by reliance on the prior ruling." See In re Pharmacy Benefit Mgrs. Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (quotations omitted).

In support of their position that the Rule 54(b) standard is the appropriate one for the Court to apply, the Defendants cite two securities fraud cases from district courts in the Second Circuit. They primarily rely on In re Bisys, where Judge Rakoff of the Southern District of New York addressed a motion by the plaintiffs to amend a complaint to reinstate claims against a dismissed defendant. In that case, the previously dismissed defendant PricewaterhouseCoopersLLP ("PwC"), was dismissed for failure to allege a sufficient inference of fraudulent scienter in connection with an Exchange Act claim. See In re Bisys, 496 F. Supp. 2d at 385. This dismissal was initially without prejudice to the plaintiffs' ability to file an amended complaint by a date certain addressing scienter allegations. See id. After failing to amend the complaint by the relevant date, the plaintiffs later entered into a stipulation dismissing claims against PwC with prejudice. See id. at 386. Thereafter, the case proceeded to discovery and settlement. After settlement, plaintiffs filed a Rule 15 motion to amend the operative complaint to add PwC back as a party and include new allegations regarding scienter. See id. Because the claims against PwC were "previously dismissed with prejudice" pursuant to stipulation, the court construed the motion as one filed pursuant to Rule 54(b) "seeking revision

See Arizona v. California, 460 U.S. 605, 618 (1983).

of the dismissal with prejudice prior to final judgment being entered." See id. The court stated that such requests must be made in accordance with the law of the case doctrine and found that after dismissal of a party with prejudice, the court's decision should be altered only upon a demonstration of an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." See id. (quotation omitted). The court noted, however, that the presence of any of the above factors "must be weighed against the prejudice that reopening will cause to the dismissed party." See id.

The court denied the plaintiffs' request on two grounds. First, it found that any added weight of the new evidence that formed the basis of plaintiffs' motion "is more than outweighed by the prejudice PwC would suffer from having plaintiffs' claims reinstated against PwC more than 18 months after they were dismissed with prejudice," noting that PwC had not participated in the "vast discovery" that had occurred in the case during that time and "was not provided with copies of the remaining 2 million pages of documents produced during discovery." See id. at 386-87. Second, the court denied the motion because it found that the reinstatement of claims against PwC "under these circumstances would defeat one of the central aims of the [PSLRA]. Specifically, that legislation, in an effort to 'filter out strike suits' and reduce the litigation burden for defendants, imposed 'more stringent pleading requirements and mandatory discovery stays for securities fraud cases filed in federal court.'" See id. at 387 (quotation omitted). The court found that allowing a plaintiff who failed to sustain a pleading burden to add a dismissed defendant back into the case upon completion of discovery "would wholly defeat this policy."

See id.[25]

Defendants also rely on the more recent securities fraud case of <u>New York ex rel Khurana</u> <u>v. Spherion Corp.</u>, No. 15-cv-6605(JFK), 2019 WL 1274710, at *2-3 (S.D.N.Y. Mar. 20, 2019). In <u>Khurana</u>, another district court in the Second Circuit similarly treated a party's motion for leave to amend a claim previously dismissed with prejudice as a motion for reconsideration under Rule 54(b). <u>See</u> <u>id.</u> at *2. The court denied the motion under this standard on the grounds that some of the evidence relied on by the plaintiff was "not new," and significantly, upon its finding that any added weight of new evidence "does not overcome the prejudice [the defendant] would incur if this [c]ourt were to grant Plaintiff's motion." <u>See</u> <u>id.</u> at *3. Specifically, the court noted that the filing of the amended complaint would require the court to reopen discovery, which had closed. <u>See</u> <u>id.</u> The court in <u>Khurana</u> also found that the additional discovery required "would significantly delay the resolution of this dispute, which has been pending for over three years." <u>See</u> <u>id.</u>

SEPTA maintains that the Court should apply the Rule 15 standard to its motion, arguing that the Defendants' citation to the above cases is "inapt." (Doc. No. 190 at 23.) SEPTA asserts that <u>In re Bisys</u> is "sui generis" and that the court's decision in <u>Khurana</u> was based on the minimal nature of the new evidence and unfair prejudice to the defendant, neither of which is

---

[25] Although the Second Circuit affirmed the district court's ruling in <u>In re Bisys</u>, it bears noting that it did so on the basis of the Court's discretion under "either Rule 15(a) or Rule 54(b)," concluding that the district court did not abuse its discretion in denying the motion based on its finding of undue prejudice. <u>See</u> <u>Public Employees Retirement Ass'n</u>, 305 F. App'x at 745. The Second Circuit explicitly declined to reach the issue as to "whether the PSLRA bars a plaintiff from using evidence obtained in discovery in litigation with one defendant to reinstate a claim against a defendant which had previously been dismissed for failure to state a claim." <u>See</u> <u>id.</u> at 745 n.3.

present here.   (Id. at 23-24.)   In support of its argument that Rule 15(a) should apply to its motion, SEPTA also points to another decision of Judge Rakoff in a securities fraud case, In re: Petrobras Securities Litigation, No. 14-cv-9662(JSR), 2016 WL 3144395, at *1 (S.D.N.Y. May 5, 2016), where the court addressed a request for leave to amend seeking to revive a previously dismissed Exchange Act claim under the Rule 15(a)/Rule 16(b) standard, not the Rule 54(b) standard of reconsideration.   The court in In re: Petrobras ultimately denied the motion for leave to amend to revive a previously dismissed Exchange Act claim in part because amendment of the complaint "would either unfairly prejudice defendants or unduly delay the case."   See id. at *1.[26]

Upon consideration of the arguments of the parties and the relevant authorities cited to the Court, and noting that no party has cited to the Court a controlling case addressing whether Rule 54(b) or Rule 15(a) applies to a motion for leave to amend seeking to reassert previously dismissed claims against previously dismissed parties,[27] the Court is persuaded that it is appropriate to apply the traditional Rule 15 analysis to SEPTA's motion, which does not ask the Court to reconsider its analysis of the SAC as contained in its December 7, 2016 Memorandum and Order, but seeks to assert new factual allegations addressing previously-identified pleading deficiencies.   See Askins v. United States Dep't of Homeland Sec., 899 F.3d 1035, 1043 (9th Cir. 2018) (stating that "the filing of an amended complaint does not ask the court to reconsider

---

[26] The court also cited as a basis for denial of the motion the fact that "granting plaintiffs' request would amount to an end run around the PSLRA," in that plaintiffs would "receive the benefits of discovery without adequately pleading scienter before discovery began."   See id.

[27] The Court notes that in NXIVM Corporation v. Sutton, No. 06-cv-1051(DMC), 2009 WL 4667088, at *3 (D.N.J. Nov. 30, 2009), the plaintiffs filed a motion under both Federal Rules of Civil Procedure 54(b) and 15(a) seeking permission to replead several counts of a complaint that were previously dismissed based on new evidence.   In that case, the court addressed the motion under both Rule 54(b) and Rule 15(a) and ultimately denied the motion.

its analysis of the initial complaint. The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits"). In addition, the Court is persuaded by SEPTA's argument that the "law of the case" doctrine does not apply in the situation where an amended complaint contains significant new factual allegations. See Bellezza v. Holland, No. 04-cv-8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 11, 2011) (stating that "[t]he law of the case doctrine does not control . . . as the Amended Complaint alleges materially different and more detailed claims than the original Complaint"); Bayer v. Healthcare Pharms. Inc. v. RJ Health Sys. Int'l LLC, No. 15-6952(KM)(MAH), 2017 WL 253954, at *1 (D.N.J. Jan. 20, 2017) (asserting that the law of the case does not apply in the situation where the amended complaint contains significantly different allegations); Farmer v. Lanigan, No. 12-5716 (SDW), 2016 WL 4107693, at *3 (D.N.J. Aug. 1, 2016) (finding that where an amended complaint contained new factual allegations, "the law of the case doctrine . . . is inapplicable . . . and the law as it applies to the facts as they now stand must be re-evaluated").[28]

Moreover, the Court is persuaded that the two cases relied on by Defendants in support of their argument that the Rule 54(b) standard should apply to SEPTA's motion are distinguishable from the instant case. In In re Bisys, the case primarily relied on by Defendants, the plaintiffs failed to amend their complaint in accordance with the permission of the court as to the relevant

---

[28] Further, the Court is also persuaded by SEPTA's argument that, even if the "law of the case" doctrine applied to its motion, that doctrine does not necessarily bar the filing of an amended complaint, given that new evidence is an appropriate basis to revisit an earlier decision. See, e.g., Salud Servs., Inc. v. Caterpillar, Inc. (In re Caterpillar Inc.), 67 F. Supp. 3d 663, 671 (D.N.J. 2014) (permitting filing of amended complaint based on new evidence over defendant's argument that denial of a prior motion for leave to amend was the law of the case); TriState HVAC Equip., LLP v. Big Belly Solar, Inc., No. 10-1054, 2011 WL 3047784, at *4 (E.D. Pa. July 22, 2011) (permitting filing of amended complaint based on new evidence notwithstanding

defendant, and thereafter presented the court with a stipulation providing that all claims against the relevant defendant had been dismissed with prejudice. See In re Bisys, 496 F. Supp. 2d at 385-86. The Court agrees with SEPTA that the case does not establish a rule, much less a controlling one, that all efforts to amend seeking to reassert previously dismissed claims against previously dismissed defendants are subject to analysis under Rule 54(b) standards.[29] Khurana is distinguishable on its facts as well, because in making its decision, the court relied on the lack of new evidence and the fact that permitting an amended complaint would have required reopening of the discovery period. See Khurana, 2019 WL 1274710, at *3. Accordingly, the Court will evaluate SEPTA's motion for leave to amend under the traditional Rule 15(a) analysis. As noted above, the various Defendants argue that several grounds exist here to overcome the general principle embodied in Rule 15, which provides that leave to amend should be "freely" given; specifically, they maintain that SEPTA's motion is (1) unduly delayed, (2) unduly prejudicial, and (3) futile. The Court addresses each argument in turn.

### 2. Rule 15 - Undue Delay

Only the Orrstown Defendants argue that SEPTA's motion is unduly delayed, and, as noted above, they do so on the basis that the "alleged facts justifying the TAC were (or could have been) known to SEPTA years ago, at least since 2017 when the documents Orrstown produced to the SEC (minus CSI) were given to SEPTA." (Doc. No. 184 at 19.) As to the

_____

court's prior ruling on legal grounds).

[29] The Court notes that, in affirming the district court's ruling, the Second Circuit found no abuse of discretion in the district court's conclusion that undue prejudice warranted denial of the motion "[u]nder either Rule 15(a) or Rule 54(b)." See Public Employees Retirement Ass'n, 305 F. App'x at 745.

Orrstown Defendants' argument that SEPTA had (or could have had) knowledge of the facts upon which the TAC is based since 2017 when the documents that they produced to the SEC were provided to SEPTA, the Court notes that because the SEC's investigation of Orrstown addressed only the time period beginning January 1, 2010 (Doc. No. 181-2 at 2), any documents predating that time period would not necessarily have been produced to the SEC and, therefore, not included in any initial 2017 document production to SEPTA.   The Court is persuaded that SEPTA has not unduly delayed the filing of its motion, where it asserts that the documents upon which the TAC is based were produced to it only in November of 2018, after the Orrstown Defendants agreed to produce documents predating 2010, and in light of the volume of documents produced and the complexity of the issues in this case.   In addition, even though this case has been pending for some time, the Court notes that in light of the delay in these proceedings related to the FRB review of potential CSI documents withheld from production to SEPTA, this case is procedurally still in a relatively early stage.   See Cureton, 252 F.3d at 273 (holding that "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay").

### 3.      Rule 15 - Prejudice

The Court next turns to the issue of prejudice, which is the "touchstone" regarding the potential denial of a motion for leave to amend.   See Lorenz, 1 F.3d at 1414.   As noted above, in order to demonstrate prejudice, "the non-moving party must do more than merely claim prejudice; 'it must show that it [would be] unfairly disadvantaged or deprived of the opportunity to present facts or evidence.'"   See Bechtel, 886 F.2d at 652 (quotation omitted).   Upon review of the arguments of the parties and the relevant authorities cited to the Court, the Court is not

42

persuaded that the various Defendants have met their burden to demonstrate prejudice sufficient to justify denial of SEPTA's motion for leave to amend.

The Court first addresses the argument raised by the Orrstown Defendants and Underwriter Defendants that the reinstatement of claims based on information learned during discovery would defeat the policies underlying the PSLRA's discovery stay, and is, therefore, prejudicial. The PSLRA provides for a stay of discovery until a court sustains the legal sufficiency of a complaint. See, e.g., 15 U.S.C. § 77z-1(b)(1) (Securities Act discovery stay). The stay serves as "a filter at the earliest stage (the pleading stage) to screen out lawsuits that have no factual basis." See In re NAHC, Inc. Sec. Litig., 306 F.3d at 1332 (quotation omitted). As an initial matter, the Court notes that no party has cited to the Court a controlling case on this issue. However, the Court is persuaded by the authorities cited by SEPTA concluding that the PSLRA discovery stay, explicitly directed at limiting the availability of discovery prior to a court sustaining the sufficiency of a complaint, does not bar the use of subsequently discovered evidence in support of a motion for leave to amend. See In re Silver Wheaton Corp. Secs. Litig., No. 2:15-cv-5173-CAS (JEMx), 2018 WL 1517130, at *5 (C.D. Ca. Mar. 26, 2018) (noting that courts "freely grant leave to amend in securities cases where plaintiffs learn new information during discovery," and rejecting argument that the plaintiffs' efforts constituted an "'end run' around the PSLRA discovery stay through third-party discovery"); In re Constellation Energy Grp., Inc., No. CCB-08-02854, 2012 WL 1067651, at *4 (D. Md. Mar. 28, 2012) (declining to "read into the PSLRA a limit that Congress did not create," and stating that the discovery stay "is not meant to shield all defendants from any adverse evidence that may properly be discovered over the course of litigation"); see also Rooney v. EZ CORP, Inc., No. A-15-CA-00608-SS, 2018

WL 3596054, at *3 (W.D. Tex. July 26, 2018) (rejecting defendants' argument that the "PSLRA

bars Plaintiff from using information uncovered during discovery to revive previously dismissed

claims" where no discovery stay was at issue).

    Moreover, the Court finds the cases cited by the various Defendants on this point to be

distinguishable.   For example, in Podany v. Robertson Stephens, Inc., 350 F. Supp.2d 375, 377

(S.D.N.Y. 2004), the court had dismissed all claims for failure to state a claim, and the plaintiffs

sought relief pursuant to Rule 59(e) to alter the judgment to permit an amended pleading and

relief from the PSLRA discovery stay.   The court rejected that effort where there were no viable

claims pending, finding that "discovery is authorized solely for parties to develop the facts in a

lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff

to find out whether he has such a claim, and still less to salvage a lawsuit that has already been

dismissed for failure to state a claim."   See id. at 378.   Defendants also rely on Judge Rakoff's

decisions in In re Bisys and In re: Petrobras in support of their argument that permitting

amendment to reinstate claims against a previously dismissed party based on evidence obtained

during discovery would defeat the policies of the PSLRA and is, therefore, prejudicial.

However, the Court agrees with SEPTA that those cases are "inapt" because in both cases, the

efforts at reinstatement of claims came after the close of discovery.   See, e.g., In re Bisys, 496 F.

Supp. 2d at 387 (concluding that the policies of the PSLRA would be defeated if a plaintiff could

wait "until all discovery in the rest of the case was completed and then add that defendant back

into the case").[30]

---

[30]  The Court notes that, while not directly on point, in Winer Family Trust v. Queen, 503 F.3d
319, 337 (3d Cir. 2007), the Third Circuit stated that "[i]f a private securities case proceeds past

The Court turns to the various Defendants' other arguments regarding prejudice. As to the Underwriter Defendants and SEK's argument that they would be unduly prejudiced by having to defend against the TAC after not participating in this case for an extended period of time beyond responding to subpoenas, especially in light of the volume of documents produced in this case, the Court is mindful of the significant cost that review of that discovery will entail.[31] However, in seeking to overcome the Rule 15 presumption in favor of amendment, a defendant must demonstrate that it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." See Dole v. Arco. Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990) (quotation omitted). Because this case remains in an early procedural stage due to the delay in discovery resulting from the FRB review of potential CSI documents (at this point, no deadline for fact discovery is currently in place[32] and the Court has stayed all deposition discovery pending resolution of the instant motion), and while acknowledging the volume of documents already produced in this case, the Court is not persuaded that, despite their absence from the case for a period of time, the Underwriter Defendants and SEK will be "deprived of the opportunity to present facts or evidence" in connection with their defense of the claims asserted against them in

---

the pleadings stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants."

[31] The Underwriter Defendants and SEK also argue that they would suffer prejudice because they have not engaged with various experts.

[32] The Court notes that, as a general matter, the fact that discovery remains open weighs heavily against a finding of prejudice. See Luppino v. Mercedes-Benz USA, LLC, No. 09-cv-5582 JLL-JAC, 2014 WL 4474004, at *4 (D.N.J. Sept. 4, 2014) (stating that "[g]enerally, courts have not found unfair prejudice when a party moves to amend while discovery is still open").

the TAC.[33]

With regard to the prejudice arguments made by the Orrstown Defendants, they also argue that they will incur additional discovery expenses due to the potential reassertion of claims against the Underwriter Defendants and SEK, as well as the reassertion of Securities Act claims against them.   As an initial matter, the Court notes that any claim of prejudice here by Orrstown regarding additional discovery is undercut by the fact that the new allegations of the proposed TAC share a close factual nexus with the claims currently pending against them in the SAC, and SEPTA represents that "virtually all of the necessary document discovery has already been produced."   (Doc. No. 190 at 38.)   Under these circumstances, Orrstown has not demonstrated prejudice resulting from additional discovery.   See Coventry v. United States Steel Corp., 856 F.2d 514, 519 (3d Cir. 1988) (finding that district court erred when it denied leave to amend where the proposed amendments pertained to the same subject matter as issues already in the case and about which discovery had occurred); DOCA Co. v. Westinghouse Elec. Co. LLC, No. 04-1951, 2011 WL 3476428, at *8 (W.D. Pa. Aug. 9, 2011) (finding no prejudice from amendment adding claims where discovery required by amendment was similar to discovery that would be required absent amendment).   In addition, even assuming the potential need for additional discovery, that need and the cost attendant to it do not alone establish prejudice.   See Dole, 921 F.2d at 488; Soroof Trading Dev. Co. v. GeMicrogen, Inc., 283 F.R.D. 142, 153

---

[33] The Underwriter Defendants cite Magness v. Walled Lake Credit Bureau, LLC, No. 12-6586, 2014 WL 12610218, at *3 (E.D.Pa. Jan. 31, 2014), in support of their prejudice argument. However, that case is distinguishable in that the plaintiff moved to amend after the close of discovery and sought to add new claims against new defendants based on new facts.   Here, as noted above, discovery is ongoing, and SEPTA seeks to file the TAC to address pleading deficiencies in its previous efforts to state a claim against the Underwriter Defendants.

(S.D.N.Y. 2012) (holding that allegations that an amendment would require the expenditure of time, effort, or money does not suffice to constitute undue prejudice).

The Orrstown Defendants also argue that they will suffer prejudice because of the efforts they have expended regarding expert reports. They maintain that they have incurred significant expenses in preparing an expert report related to class certification on the Exchange Act claim pending against them pursuant to the Court's earlier Case Management Order, and they would face the prospect of their expert needing to review additional materials and preparing a new report in the event that SEPTA is permitted to file the TAC. Again, due to the fact that this case remains in an early procedural stage due to the delays attendant to the FRB's review of potential CSI documents, the Court finds that the Orrstown Defendants' potential need to re-engage with experts or revise an existing expert report does not suffice to constitute prejudice. As to the Exchange Act claims currently pending against the Orrstown Defendants, SEPTA represents that only one affirmative expert report has been prepared by Orrstown, in light of the parties' earlier agreement to continue all case management deadlines pending the outcome of the FRB review process. The Court is persuaded that any required supplementation to that expert report would not involve a significant burden to the Orrstown Defendants. Moreover, as to any necessary expert reports potentially related to the Securities Act claims reasserted in the TAC, such reports would not involve the duplication of prior expert work regarding Exchange Act claims.

Moreover, the Court is persuaded that the Orrstown Defendants cannot demonstrate that they will be unfairly disadvantaged by the filing of the TAC, in light of SEPTA's representation that "the majority of the allegations in the TAC were derived from Orrstown's own documents, which were revealed to SEPTA only much later through discovery." (Doc. No. 190 at 39-40.)

47

The fact that the claims against Orrstown in the proposed TAC are based largely on documents produced by Orrstown weighs against any finding of prejudice.   See Grill v. Aversa, No. 1:12-cv-120, 2014 WL 198805, at *4 (M.D.Pa. Jan. 15, 2014) (finding no prejudice to opposing party by permitting amendment of pleading based on facts the opposing party provided in discovery); Kephart v. ABB, Inc., No. 2:12-668, 2013 WL 12141534, at *4 (W.D. Pa. Dec. 30, 2013) (rejecting prejudice argument where the proposed complaint's new allegations came from discovery materials in the defendant's possession and were an "outgrowth or expansion" of the claims pending in the case, and where the parties had already engaged in some discovery regarding the allegations).[34]   Ultimately, for all of the above reasons, the Court concludes that the Defendants have failed to meet their burden to demonstrate that they would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence," see Dole, 921 F.2d at 488, sufficient to justify denial of SEPTA's motion for leave to amend.   The Court next addresses the Defendants' arguments regarding futility.[35]

---

[34]  The Court is similarly unpersuaded that SEK has demonstrated prejudice where the new allegations against it are based on discovery obtained from SEK and SEK's client, Orrstown.   As SEPTA notes, the fact that the claims sought to be reasserted against SEK regarding its clean audit opinions "hinge on SEK's own documents" (Doc. No. 190 at 42), weighs against any finding of prejudice.   See Grill, 2014 WL 198805, at *4; Kephart, 2013 WL 12141534, at *4. Further, SEPTA notes that as Orrstown's auditor, "SEK had broad access to Orrstown's internal records, loan files, and other critical documents, which became available to SEPTA only recently through discovery."   (Doc.   No. 190 at 13.)

[35]  With regard to any potential Rule 15 argument based on bad faith arising out of SEPTA's efforts to seek discovery from the Underwriter Defendants regarding the pre-2010 time period (Doc. No. 186 at 14-15), the Court notes that bad faith in connection with a motion for leave to amend examines "whether the motion itself is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith."   See Trueposition, Inc. v. Allen Telecom, Inc., No. 01-823, 2002 WL 1558531, at *2 (D. Del. July 16, 2002); see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 614 (3d Cir. 1987) (stating that "[t]he question . . . of bad faith requires that we focus on the plaintiff's

## 4. Rule 15 - Futility

As noted above, the various Defendants also maintain that SEPTA's motion should be denied on the grounds that the filing of the TAC is futile[36] because the claims sought to be reasserted are barred by the Securities and Exchange Act's respective statutes of repose[37] and limitations.[38]   In <u>CTS Corp. v. Waldburger</u>, 573 U.S. 1, 134 S. Ct. 2175 (2014), the Supreme Court described the similarities and distinctions between statutes of limitations and statutes of repose in the following way:

> Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts.   Both types of statutes can operate to bar a plaintiff's suit, and in each instance time is the controlling factor.   There is considerable common ground in the policies underlying the two types of statute.   But the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives. . . . In the ordinary course, a statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued."   Measured by this standard, a claim accrues in a personal-injury or property-damage action "when the injury occurred or was discovered."

<u>Id.</u> at 2182 (internal citations omitted).

The Supreme Court continued its discussion, noting that:

---

motives for not amending their complaint earlier").

[36] The Court notes that the various Defendants strictly limit their discussion of futility to the issues of statutes of repose and limitation, and do not argue that the filing of the TAC is futile for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).   Accordingly, the Court limits its futility analysis to the arguments presented to it.

[37] As noted above, the statute of repose applicable to the Securities Act is three (3) years, <u>see</u> 15 U.S.C. § 77m, and the statute of repose applicable to the Exchange Act is five (5) years, <u>see</u> 28 U.S.C. § 1658(b)(2).

[38] Also as noted above, the statute of limitations applicable to the Securities Act is one (1) year, <u>see</u> 15 U.S.C. § 77m, and the statute of limitations applicable to the Exchange Act is two (2) years, <u>see</u> 28 U.S.C. § 1658(b)(1).

A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury." The statute of repose limit is "not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered."

Id. at 2182-83 (internal citations omitted). The Supreme Court further noted that statutes of repose "effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'" See id. at 2183 (internal citations omitted).

The relevant language of the Securities Act pertaining to the applicable statute of repose and limitation provides that:

[n]o action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) . . . unless brought within one year after the discovery of the untrue statement or the omission . . . In no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) . . . more than three years after the security was bona fide offered to the public.

15 U.S.C. § 77m. The statute establishing statutes of repose and limitations for Exchange Act claims utilizes the same reference to the commencement of an "action." See 28 U.S.C. § 1658(b).

In arguing that SEPTA's effort to amend its complaint to reassert previously dismissed claims is futile, the Defendants, as noted above, rely on the Supreme Court's recent discussion of the three-year statute of repose applicable to Securities Act claims in CalPERS. Specifically, the Defendants quote the Supreme Court's statement that "the text, purpose, structure, and history of the statute all disclose the congressional purpose to offer defendants full and final security after three years." See CalPERS, 137 S. Ct. at 2052. In CalPERS, an unnamed member of a class

action opted out of a timely-filed suit asserting claims under section 11 of the Securities Act and later filed a new action in a separate court, alleging violations identical to those asserted in the class action, outside of the applicable three-year statute of repose period.  See id. at 2044.   The Supreme Court held that equitable tolling was inapplicable to the three-year statute of repose contained in the Securities Act, and that the unnamed opt-out class member's filing of an individual complaint outside of the statute of repose period was time-barred.  See id.   In so holding, the Supreme Court found unpersuasive the argument that the relevant statute of repose's requirement that an "action" be "brought" within three years of the relevant securities offering was met "because the filing of the class-action complaint 'brought' petitioner's individual 'action' within the statutory time period."   See id. at 2054.   The Court noted that such an argument rested on the premise that "an 'action' is 'brought' when substantive claims are presented to any court, rather than when a particular complaint is filed in a particular court." See id.   The Court continued, stating that "[t]he term 'action,' however, refers to a judicial 'proceeding,' or perhaps to a 'suit' – not to the general content of claims. . . . Whether or not petitioner's individual complaint alleged the same securities law violations as the class-action complaint, it defies ordinary understanding to suggest that its filing – in a separate forum, on a separate date, by a separate named party – was the same 'action,' 'proceeding,' or 'suit.'"   See id.

With regard to their arguments as to futility and the statutes of repose and limitation, the Underwriter Defendants note the dismissal of Securities Act claims against them by way of the Court's December 2016 Order and maintain that "ever since that Order was entered, the underwriters have been non-parties.   SEPTA thus proposes to assert new claims against new

51

defendants under the Securities Act more than nine years after the Orrstown Bank offering in question."  (Doc. No. 186 at 22.)   SEK similarly argues that "[t]he fact that SEK was previously a party to these proceedings does not change the application of the statute of repose."   (Doc. No. 185 at 14.)   The Orrstown Defendants also argue that the previously-dismissed Securities and Exchange Act claims sought to be reasserted against them are now barred by the relevant statute of repose.   (Doc. No. 18 at 11-14.)

Implicit in the arguments of the Defendants on this point is the contention that, with regard to the relevant Securities Act and Exchange Act claims initially asserted against them in this action and sought to be reasserted against them by SEPTA in the TAC, such claims constitute a new "action" sought to be "brought" by SEPTA against them for purposes of calculating the relevant statutes of repose and limitations.   Also implicit in such an argument is the contention that the previous "action" "brought" against all Defendants by SEPTA by way of the March 4, 2013 FAC, which asserted Securities and/or Exchange Act claims against them (and which no one argues was filed outside of the applicable statutes of repose and limitations periods),[39] ended with this Court's dismissal of such claims in its December 7, 2016 Order.

As noted above, SEPTA counters this argument by reference to Federal Rule of Civil Procedure 54(b).   Federal Rule of Civil Procedure 54(b) provides as follows:

> When an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third party claim – or when multiple parties are involved, the [C]ourt may direct entry of a final judgment as to one or more, but

---

[39]  The Court also notes that, after the Court granted motions to dismiss the FAC, SEPTA sought leave to file the SAC on July 22, 2015, reasserting the same claims against the same defendants. After the Court granted SEPTA permission to file the SAC, no defendants argued that the relevant statute of repose or limitations posed a bar to the claims in connection with their motions to dismiss the SAC.

fewer than all, claims or parties only if the [C]ourt expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all of the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Pursuant to Rule 54(b), SEPTA maintains that the Court's December 7, 2016 Order did not end the original "action" as to any of the claims or parties. SEPTA also relies on CalPERS, which it maintains confirms that a claim is timely as long as the "action" asserting that claim is filed within the relevant statute of repose and limitations period. Accordingly, SEPTA maintains that because the TAC seeks to reassert the same claims against the same parties contained in its FAC (and later in the SAC), and given that an order dismissing a limited number of claims in a multi-party, multi-claim action "does not end the action as to any of the claims or parties" in the absence of a certification pursuant to Rule 54(b), no statute of repose or limitations period is calculated in connection with the potential filing of the TAC. With regard to SEPTA's argument, the Court notes that, since the entry of its December 7, 2016 Memorandum and Order, none of the parties against whom claims were dismissed has sought a final judgment from the Court making an express finding that "there is no just reason for delay" pursuant to Rule 54(b). The Court also notes that SEPTA's position that an order dismissing fewer than all claims in a multi-party, multi-claim action does not end the action as to any claim or party is supported by the lack of finality attendant to any such order. See Elliott v. Archdiocese of New York, 682 F.3d 213, 221 (3d Cir. 2012) (stating that, in the absence of an express determination that there is no just reason for delay, any order "that does not dispose of all claims against all parties is not final under Rule 54(b)").

Because all parties point to the Supreme Court's decision in <u>CalPERS</u> in support of their positions, the Court turns to <u>CalPERS</u> in an effort to discern the meaning of when an "action" is "brought" for purposes of the Securities and Exchange Act's statutes of repose and limitations. While the facts of <u>CalPERS</u> are distinguishable from those in the instant case, and so it does not directly control the resolution of the issue before the Court, the Supreme Court in <u>CalPERS</u> stated that, under the "ordinary understanding" of the term, an "action" refers to a judicial proceeding or suit, and rejected the argument asserted by the petitioner that an "'action' is 'brought' when substantive claims are presented to any court, rather than when a particular complaint is filed in a particular court." <u>See</u> <u>CalPERS</u>, 137 S. Ct. at 2054.

Upon review of the arguments of the parties and consideration of the relevant authorities cited to the Court, and noting that no party has cited to the Court a controlling case on all fours with the instant case, the Court is persuaded by SEPTA's argument that because the Court's December 7, 2016 Order adjudicated "fewer than all the claims or rights and liabilities of fewer than all the parties [and] does not end the action as to any of the claims or parties," and because through the TAC SEPTA seeks to reassert the <u>same</u> claims against the <u>same</u> parties originally brought by way of the FAC, filed within the applicable statute of repose and limitations period, no statute of repose or limitation is calculated by reference to the potential filing of the TAC. <u>See</u> Fed. R. Civ. P. 54(b). The lack of finality attendant to the Court's previous Order dismissing claims supports the Court's finding here, because to accept the Defendants' argument would be to accept that the original "action" "brought" against them by way of the FAC ended by way of a decision of this Court lacking the status of a final order with attendant appellate rights. <u>See</u> <u>Elliott</u>, 682 F.3d at 221. Defendants have not identified any authority supporting such a

proposition.[40]

In the absence of any controlling authority on point, and while acknowledging that the case is outside of the context of Securities Act and Exchange Act claims, and, therefore, addresses only the issue of a statute of limitations, and not a statute of repose, the Court finds persuasive SEPTA's citation to the Fifth Circuit's decision in Crostley v. Lamar County, 717 F.3d 410, 421 (5th Cir. 2013), in support of its position that, pursuant to Rule 54(b), the "action" against all Defendants continues despite the dismissal of claims against them, and, therefore, the statutes of limitations and repose are calculated by reference to the original filing date of the initial complaint against the dismissed Defendants. In Crostley, the Fifth Circuit reversed a decision of the district court denying leave to amend to reassert claims against a defendant previously dismissed with prejudice, finding that under Rule 54(b), the dismissal with prejudice of claims against that one defendant, while claims against other defendants proceeded, did not

---

[40] The Court acknowledges the Defendants' argument regarding the potential tension between their reading of Section 13's statute of repose and the substantive right it provides and Rule 54(b). The application of a federal rule implicates the Rules Enabling Act, which grants the Supreme Court "the power to prescribe general rules of practice and procedure," including the Federal Rules of Civil Procedure, but provides that those rules "shall not abridge, enlarge or modify any substantive right." See 28 U.S.C. § 2072(a), (b). Accordingly, the Rules Enabling Act "counsel[s] against adventurous application of" any federal rule. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S. Ct. 2295, 2314 (1999). However, rules "which incidentally affect litigants' substantive rights do not violate [the Rules Enabling Act] if reasonably necessary to maintain the integrity of that system of rules." See Burlington Northern R. R. Co. v. Woods, 480 U.S. 1, 107 S. Ct. 967, 970 (1987). Ultimately, the Court must be guided by the plain meaning of Rule 54(b) and its provision regarding when an "action" ends as to any claim in a multi-party, multi-claim case, especially in the absence of any alternative proposition or guidance regarding when an "action" ends as to any claim in such litigation. See Berckeley Inv. Grp. Ltd. v. Colkitt, 259 F.3d 135, 142 n.7 (3d Cir. 2001) (stating that "[t]he Supreme Court and this Court have repeatedly held that the Federal Rules of Civil Procedure, like any other statute, should be given their plain meaning").

end the "action" with respect to that defendant.   Therefore, the Court found that where discovery revealed new information supporting the initial claim against the previously dismissed defendant, the applicable statute of limitation was calculated in connection with the filing of the initial complaint against the defendant previously dismissed.   See Crostley, 717 F.3d at 420-21; see also Alholm v. Am. S.S. Co., 167 F.R.D. 75, 76 n.3 (D. Minn. 1996) (finding that, despite the dismissal of claims against them, "in the absence of an express Rule 54(b) determination, the [m]edical [d]efendants remain parties to this case").

The cases cited by Defendants in this regard are distinguishable.   For example, SEK cites Ahmed v. Dragovich, 297 F.3d 201, 207 (3d Cir. 2002), for the proposition that "dismissal of a complaint after the statute of limitations has run forecloses the plaintiff's ability to remedy the defect and refile the complaint."   (Doc. No. 185 at 5-6.)   However, in Ahmed, the Third Circuit found that the dismissal was a final judgment that disposed of all claims and parties, which is not the case here pursuant to Rule 54(b).   See Ahmed, 297 F.3d at 207-08.   Similarly, Defendants' citation to Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005) for the proposition that "[a] 'statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice,' as 'the original complaint is treated as if it never existed,'" is inapposite because in that case, the entire action had been dismissed without prejudice, which, as the Third Circuit noted, amounted to "a final and appealable order."   See id.[41]

In light of the Court's conclusion that, pursuant to Rule 54(b), the previous dismissal of claims against the various Defendants did not end the "action" against them as to the claims

---

[41] DirecTV, Inc. v. Leto, 467 F.3d 842, 845 (3d Cir. 2006) is also distinguishable on its facts because it discusses the effect on the statute of limitations of dropping a defendant under Rule 21

initially brought by way of the FAC for purposes of the statutes of repose or limitation, the Court is persuaded that Rule 15(c)'s relation back provision permitting an amended pleading asserting a new claim to "relate back" to the date of the original pleading is inapplicable. In <u>Crostley</u>, the Fifth Circuit noted that where it determined that the applicable statute of limitations had not elapsed when plaintiffs filed their initial complaint against the previously dismissed defendants, "we need not address whether any of the exceptions to the normal rules of limitations periods (estoppel, equitable tolling, or relation back doctrine) apply." <u>See</u> <u>Crostley</u>, 717 F.3d at 421. The cases cited by Defendants on this point involve the potential addition of a new party or claim that would have been barred in the absence of Rule 15(c)'s relation back provision. <u>See, e.g.</u>, <u>DeVito v. Liquid Holdings Grp., Inc.</u>, No. 15-6969 (KM) (JBC), 2018 WL 6891832, at *20-24 (D.N.J. Dec. 31, 2018) (addressing plaintiffs' effort to add a new party to establish standing); <u>Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Secs. Inc.</u>, 291 F. Supp.3d 364, 372 (S.D.N.Y. 2018) (finding plaintiff's effort to amend to assert new claims time-barred when statute of repose period had run). As noted above, SEPTA seeks to reassert the same claims against the same parties in the same action that was initiated by way of the FAC and, despite the partial dismissal of claims, was not ended by way of the Court's December 7, 2016 Order. Accordingly, for all of these reasons, the Court finds that futility does not provide a basis for denial of SEPTA's motion for leave to amend.[42]

_____

due to misjoinder of parties.

[42] The Court again notes that, in accordance with the arguments presented to it by the parties, this Memorandum does not address the potential futility of the TAC's reasserted claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## IV.   CONCLUSION

For all of the reasons discussed above, the Court will grant SEPTA's Motion for Leave to File Third Amended Complaint.   (Doc. No. 182.)   An Order consistent with this Memorandum follows.