**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:12-cv-00993** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **ORRSTOWN FINANCIAL SERVICES,** | : | |
| **INC., et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court are two Motions for Certification of Interlocutory Appeal filed by the

Orrstown Defendants[1] (Doc. No. 201) and Defendants Sandler O'Neill & Partners L.P. and

Janney Montgomery Scott ("Underwriter Defendants") with Defendant Smith Elliott Kearns &

Company, LLC ("SEK") (Doc. No. 202), both seeking certification of the Court's February 14,

2020 Order granting Plaintiff Southeastern Pennsylvania Transportation Authority ("SEPTA")'s

Motion for Leave to File Third Amended Complaint (Doc. No. 198).   For the reasons that

follow, the Court will grant the motions.

## I.     BACKGROUND

Because the factual background and procedural history of this case are well known to the

parties and comprehensively stated in this Court's February 14, 2020 Memorandum (Doc. No.

197), the Court will not repeat them here beyond a brief summary relevant to the instant motions.

This is a purported class action alleging securities violations in connection with Defendant

Orrstown's early 2010 public offering (the "Offering") of approximately 1.4 million shares of

---

[1] "Orrstown Defendants" as used herein refers to Defendants Orrstown Financial Services, Inc.
("Orrstown"), Defendant Orrstown Bank, and the twelve (12) individual defendants associated
with Orrstown.

Orrstown common stock, which raised almost $40 million dollars.   (Doc. No. 126 at 2.)

Following a series of revelations regarding Orrstown's financial condition, Orrstown reported

significant losses for the fourth quarter of 2011, and on March 15, 2012, filed its 2011 Annual

Report, which disclosed that it had a "material weakness" in its internal controls and had "failed

to implement a structured process with appropriate controls to ensure that updated loan ratings

were incorporated timely into the calculation of the Allowance for Loan Losses."   (Id.)

On May 12, 2012, SEPTA, on behalf of two classes, filed this purported class action

pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) against Orrstown, Orrstown Bank,

and several additional individual Defendants associated with Orrstown.   (Doc. No. 1.)   On

March 4, 2013, Plaintiff filed a First Amended Complaint ("FAC"), adding as Defendants

Orrstown's auditor, SEK, and the Underwriter Defendants (the underwriters involved in the

Offering), and alleging that Defendants issued materially untrue and/or misleading statements

and omissions in violation of the Securities Act of 1933 ("Securities Act") and the Exchange Act

of 1934 ("Exchange Act").   (Doc. No. 40.)   After the Court's dismissal of SEPTA's Securities

and Exchange Act claims against all Defendants for failure to state a claim upon which relief

may be granted, SEPTA, with permission of the Court, filed a Second Amended Complaint

("SAC") against the same Defendants, which focused exclusively on alleged materially false

and/or misleading statements made by Defendants in the offering documents and through the

class period pertaining to the "effectiveness of the [Orrstown Defendants'] internal controls over

underwriting of loans, risk management, financial reporting and compliance with banking

regulations."   (Doc. No. 101 ¶ 22.)   All Defendants subsequently moved to dismiss the SAC.

On December 7, 2016, the Court granted SEK and the Underwriter Defendants' motions

to dismiss and granted in part and denied in part the Orrstown Defendants' motion to dismiss. (Doc. Nos. 126, 127.)   Specifically, as to the Securities Act claims asserted in the SAC (counts one through four), the Court granted the motions to dismiss all such claims upon the Court's finding that the SAC failed to allege facts supporting a reasonable inference that the representations and certifications in Orrstown's 2009 Annual Report on Form 10-K as to the effectiveness of its "internal controls over financial reporting" were materially false and/or misleading when made.   (Doc. No. 126 at 23-33.)   As to the Exchange Act claims asserted in the SAC, the Court granted the motions as to the claims asserted against SEK (count six) and all individual Defendants, with the exception of claims asserted against individual Defendants Quinn, Everly, and Embly.   (Id. at 34-53.)   The Court denied the motions as to the SAC's Exchange Act claims against the Orrstown entity Defendants.   (Id.)   Accordingly, after the issuance of the Court's December 7, 2016 Order, the remaining Exchange Act claims involved alleged misstatements about the effectiveness of Orrstown's internal controls over financial reporting in its 2010 and 2011 Annual Reports on Form 10-K and its quarterly reports on Form 10-Q (beginning with the second quarter of 2010 through the end of 2011).   (Id. at 46.)[2]

---

[2]  The Court's Order regarding the motions to dismiss the SAC provided as follows with regard to the dismissal of claims against Defendant SEK and the Underwriter Defendants: "[t]he [m]otion to [d]ismiss filed by Defendant SEK . . . is GRANTED in its entirety" and"[t]he [m]otion to [d]ismiss filed by the Underwriter Defendants . . . is GRANTED in its entirety." (Doc. No. 127 at 2.)   With regard to the motion to dismiss filed by the Orrstown Defendants and Individual Defendants Ceddia, Coy, Embly, Every, Keller, Pugh, Quinn, Rosenberry, Shoemaker, Snoke, Ward, and Zullinger, the Order provided that their motion to dismiss was granted in part and denied in part as follows: "(a) [t]he motion is GRANTED as to Plaintiff's Securities Act claims (Counts 1-4) against all Defendants, and as to Count 5 against Individual Defendants Zullinger, Shoemaker, Snoke and Coy; (b) [t]he motion is DENIED as to Count 5 against the Orrstown Defendants and Individual Defendants Quinn, Everly and Embly, and as to Count 7 against Individual Defendants Quinn, Everly and Embly."   (Id.)

The parties subsequently initiated discovery on the remaining Exchange Act claims, a process that has been delayed to a significant extent by the potentially privileged status of a number of the documents to which SEPTA sought access and the regulatory review attendant to that potentially privileged status.  (Doc. Nos. 138, 149, 153, 155, 157, 176, 177.)

Thereafter, SEPTA filed a Motion for Leave to File Third Amended Complaint (Doc. No. 182), seeking leave to file a Third Amended Complaint ("TAC") reasserting the Securities and Exchange Act claims previously dismissed by the Court's December 7, 2016 Order against several individual Defendants associated with Orrstown, as well as Orrstown's auditor, SEK, and the Underwriter Defendants, based upon information gleaned during the discovery process in 2018, which SEPTA maintained demonstrated "that the material weaknesses in internal controls over financial reporting ("ICFR") at the heart of this case existed at least as early as 2008," and that "certain of the Defendants, with the complicity of SEK, deliberately manipulated Orrstown's financial statements in Orrstown's 2009 10-K in advance of the 2010 public offering in order to conceal material weaknesses in ICFR and loan losses inherent in Orrstown's commercial lending portfolio."  (Doc. No. 181-3 at 7.)   After extensive briefing, on February 14, 2020, the Court issued a Memorandum and Order granting SEPTA's motion for leave to file the TAC.  (Doc. Nos. 197, 198.)   In its Memorandum, the Court rejected Defendants' argument that the Securities and Exchange Act's respective statutes of repose barred SEPTA's reassertion of claims and therefore rendered its effort to amend the operative complaint futile, and in doing so, noted that no party had cited to it any controlling authority on point.   However, the Court was persuaded that "because the Court's December 7, 2016 Order adjudicated 'fewer than all the claims or rights and liabilities of fewer than all the parties [and] does not end the action as to any

of the claims or parties,' and because through the TAC SEPTA seeks to reassert the <u>same</u> claims against the <u>same</u> parties originally brought by way of the FAC, filed within the applicable statute of repose and limitations period, no statute of repose or limitation is calculated by reference to the potential filing of the TAC."   (Doc. No. 197 at 54) (quoting Federal Rule of Civil Procedure 54(b)).

On February 24, 2020, the Orrstown Defendants and the Underwriter Defendants (along with Defendant SEK) filed the instant motions to certify the Court's February 14, 2020 Order for interlocutory appeal.   (Doc. Nos. 201, 202.)   Specifically, the moving Defendants seek certification of the question as to whether the Securities and Exchange Act's respective statutes of repose preclude SEPTA from reasserting the previously dismissed Securities and Exchange Act claims against the Orrstown Defendants, the Underwriter Defendants, and SEK by way of the TAC. (<u>Id.</u>)   The moving Defendants filed briefs in support of their motions on March 9, 2020 (Doc. Nos. 204, 205), and, pursuant to stipulation, SEPTA filed a consolidated brief in opposition to both motions on April 20, 2020 (Doc. No. 212).   The moving Defendants filed reply briefs on May 11, 2020.   (Doc. Nos. 222, 223.)   Accordingly, the motions have been fully briefed and are ripe for disposition.[3]

---

[3]  At about the same time Defendants filed the instant motions, all Defendants filed motions to dismiss the TAC with supporting briefs.   (Doc. Nos. 213, 214, 215, 216, 217, 218.)   In accordance with the most recent stipulation between the parties (Doc. No. 224), SEPTA filed its brief in opposition to the motions to dismiss on July 8, 2020 (Doc. No. 228), and Defendants' reply briefs are due on or before August 12, 2020.

## II.     LEGAL STANDARD

28 U.S.C. § 1292(b) provides for the immediate appeal of an interlocutory order of a

district court under the following circumstances:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference
> of opinion and that an immediate appeal from the order may materially advance
> the ultimate termination of the litigation, he shall so state in writing in such order.
> The Court of Appeals which would have jurisdiction of an appeal of such action
> may thereupon, in its discretion, permit an appeal to be taken from such order.

28 U.S.C. § 1292(b).   Accordingly, the "three criteria for the district court's exercise of

discretion to grant a § 1292(b) certificate" consist of the Court's determination that an order "(1)

involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as

to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination

of the litigation.'"   See Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974) (quoting

28 U.S.C. § 1292(b)).   Even if the three statutory criteria are satisfied, a district court retains

"discretion to deny certification of an [interlocutory] appeal."   See In re Chocolate

Confectionary Antitrust Litig., 607 F. Supp. 2d 701, 708 (M.D. Pa. 2009) (citing Bachowski v.

Usery, 545 F.2d 363, 368 (3d Cir. 1976)).   Certification under 28 U.S.C. § 1292(b) is

appropriate only under "exceptional circumstances."   See Knopick v. Downey, 963 F. Supp. 2d

378, 398 (M.D. Pa. 2013) (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 74 (1996)).

The first requirement for certification is that a prior order involves a "controlling question

of law."   "A question of law is controlling if: (1) an incorrect disposition would constitute

reversible error, or (2) it is serious to the litigation, either practically or legally."   Sayles v.

Allstate Ins. Co., No. 3:16-cv-01534, 2017 WL 2985402, at *2 (M.D. Pa. July 13, 2017) (citing

Katz, 419 F.2d at 755).   The Third Circuit has noted that "on the practical level, saving of time

of the district court and of expense to the litigants . . . [are] highly relevant factor[s]."   See Katz,

496 F.2d at 755; see also 19 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 203.31[3]

(3d ed. 2013) (stating that a controlling question of law is one that "has the potential of

substantially accelerating disposition of the litigation").

        As to the second requirement for certification, it is clear that a party's disagreement with

the district court's ruling does not constitute a "substantial ground for difference of opinion"

within the meaning of the statute.   See In re Chocolate Confectionary Antitrust Litig., 607 F.

Supp. 2d at 706.   Rather, a "substantial ground for difference of opinion exists when there is a

genuine doubt or conflicting precedent as to the correct legal standard" to be applied in the order

at issue.   See Juice Entm't, LLC v. Live Nation Entm't, Inc., 353 F. Supp. 3d 309, 313 (D.N.J.

2018) (quotation omitted); Knipe v. SmithKline Beecham, 583 F. Supp. 2d 553, 599 (E.D. Pa.

2008).   The difference of opinion must involve "one or more difficult and pivotal questions of

law not settled by controlling authority."   See Sayles, 2017 WL 2985402, at *2 (quotations and

citations omitted); Knipe, 583 F. Supp. 2d at 599.   The moving party may meet its burden to

demonstrate a "substantial ground for difference of opinion" by showing that "different courts

have issued conflicting and contradictory opinions when interpreting a particular question of

law," see Vares-Ebert v. Twp. of Hamilton, No. 15-cv-7331, 2020 WL 948774, at *2-3 (D.N.J.

Feb. 27, 2020), or by demonstrating the absence of controlling law on a particular issue, see

Sayles, 2017 WL 2985402, at *2; Knipe, 583 F. Supp.2d at 600.

        With regard to the third requirement, the statute requires the moving party to demonstrate

that an interlocutory appeal may "materially advance the ultimate termination of the litigation."

See 28 U.S.C. § 1292(b).   "Several factors are pertinent in determining whether an immediate

appeal would materially advance the ultimate termination of the litigation, including: (1) whether

the need for trial would be eliminated; (2) whether the trial would be simplified by the

elimination of complex issues; and (3) whether discovery could be conducted more expeditiously

and at less expense to the parties."   Patrick v. Dell Fin. Servs., 366 B.R. 378, 387 (M.D. Pa.

2007) (citing Interwave Tech., Inc. v. Rockwell Automation, Inc., No. 05-398, 2006 WL 401843,

at *6 (E.D. Pa. Feb. 16, 2008)).

## III.   DISCUSSION

### A.   Arguments of the Parties

#### 1.   The Orrstown Defendants

In their brief in support of their motion, the Orrstown Defendants maintain that all three

criteria are met here, justifying the Court's certification of its February 14, 2020 Order.   (Doc.

No. 204 at 8-9.)   The Orrstown Defendants address the first and third criteria together, arguing

that the Court's February 14, 2020 Order involves a controlling question of law, the resolution of

which may materially advance the ultimate termination of this litigation.   (Id. at 9.)

As to the issue of a controlling question of law, the Orrstown Defendants argue that there

is "no doubt" that the question regarding whether the statutes of repose applicable to SEPTA's

Securities Act and Exchange Act claims preclude SEPTA from reasserting previously-dismissed

claims by way of the TAC is a "threshold issue."   (Id. at 11.)   They maintain that "[i]f the Third

Circuit disagreed with [this Court's] answer to that question given in the February 14, 2020

Order, this Court's ruling would be reversible error" and that this "threshold question is very

serious for the conduct of the litigation both legally and practically."   (Id.)   They posit that a

reversal of this Court's Order regarding the potential futility of SEPTA's reasserted Securities and Exchange Act claims due to the applicable statutes of repose "would be dispositive of SEPTA's Securities Act Claims and its Exchange Act Claims against the Previously Dismissed Orrstown Defendants (as well as the Underwriters and SEK)," and would, therefore, "limit the parties to the litigation to SEPTA and the Orrstown Management Defendants, and the claims to those arising under the Exchange Act – as was the case before the Court granted SEPTA leave to file the TAC."   (Id. at 11-12.)   They argue that the absence of the Securities Act and additional Exchange Act claims from this case would "greatly simplify this litigation" because document discovery regarding the would-be remaining claims is "largely completed," while the reassertion of previously-dismissed claims via the TAC "greatly expands discovery as to these new claims and parties."   (Id. at 12.)

Further, as to the material advancement of the termination of this litigation, the Orrstown Defendants note that a reversal of the Court's decision would "significantly narrow the scope of the trial in this matter," limiting it to the "parties that have been involved in the litigation for the past 3 years" and the Exchange Act claims previously sustained in the SAC.   (Id. at 12-13.)   In addition, the Orrstown Defendants maintain that an interlocutory appeal will not unduly delay this case because "they are prepared to brief [their motion to dismiss the TAC] pending their interlocutory appeal to the Third Circuit."   (Id. at 13.)

Moreover, with regard to a determination of whether there exists a "substantial ground for difference of opinion about a particular issue," the Orrstown Defendants note that the Court recognized in its February 14, 2020 Memorandum that "there is no controlling law (in the Third Circuit or elsewhere) that answers the question whether the Securities Act's and the Exchange

Act's respective statutes of repose preclude SEPTA from reasserting the previously dismissed

Securities Act claims against all defendants and the Exchange Act claims against some

defendants."   (Id. at 13-14.)   In the absence of such controlling law, as noted by the Orrstown

Defendants, the Court chose to rely on the "plain meaning of Rule 54(b)" when construing

Federal Rule of Civil Procedure 15 in a "multi-party, multi-claim case," and the Orrstown

Defendants maintain that such reasoning "effectively over[rode] the substantive rights granted

parties by the applicable statutes of repose," in contravention of the Rules Enabling Act, which

does not permit the Federal Rules of Civil Procedure to "abridge, enlarge or modify any

substantive right."   (Id. at 14-15) (citing 28 U.S. C. § 2072(b); Ortiz v. Fibreboard Corp., 527

U.S. 815, 845 (1999)).

### 2.        The Underwriter Defendants and SEK

The Underwriter Defendants and SEK proffer similar arguments in support of their

motion.   They maintain that they seek certification of a "pure question of law," that is, "whether,

in the circumstances of this case, [Rule] 54(b) should be interpreted to permit the filing of claims

that would otherwise be barred by Section 13 of the Securities Act and Section 804 of the

Sarbanes-Oxley Act."   (Doc. No. 205 at 13.)   They argue that the disposition of this question

"requires no factual analysis," making it a legal question that an appellate court "can decide

'quickly and cleanly without having to study the record.'"   (Id.) (quoting EEOC v. Hora, Inc.,

No. 03-cv-1429, 2005 WL 1745450, at *3 (E.D. Pa. July 22, 2005)).   They further posit that the

Third Circuit's reversal of this Court's disposition of this issue "would resolve all claims asserted

against the Underwriters and SEK."   (Id. at 13-14.)

In addition, the Underwriter Defendants and SEK maintain that there exists substantial

ground for difference of opinion as to whether "because the Orrstown Defendants remained in

the case after the Court dismissed SEPTA's claims against the Underwriters and SEK[,]" SEPTA

may permissibly "rely on [Rule] 54(b) and re-assert claims against the Underwriters and SEK

years after the relevant repose periods had expired."   (Id. at 14.)   The Underwriter Defendants

and SEK acknowledge that:

> [n]either SEPTA nor defendants cited any case law addressing this precise issue
> in their briefs [on the motion for leave to amend].   But the Underwriters' and
> SEK's position finds strong support in a series of decisions from courts in this
> Circuit and across the country that have rejected plaintiffs' efforts to use other
> federal rules – most frequently, the relation-back principles of [Rule] 15(c) – to
> salvage claims that would otherwise be barred by a statute of repose.

(Id. at 15.)   Accordingly, the Underwriter Defendants and SEK maintain that the Court's Order

"involves a complex and novel question of law that has caused disagreement among the federal

courts," making certification appropriate.   (Id. at 18.)

Finally, these Defendants maintain that resolution of the statute of repose issue could

materially advance the termination of this litigation because if the Third Circuit agrees with them

and precludes SEPTA from re-asserting previously dismissed claims by way of the TAC, "they

will be dismissed from this action and only the Exchange Act claims will remain to be

adjudicated," thereby substantially narrowing the scope of this litigation "with costs and burdens

on the parties and the Court significantly reduced."   (Id.)   Like the Orrstown Defendants, the

Underwriter Defendants and SEK maintain that certification would not inject any undue delay

into this already long-pending action because "they are prepared to brief [their motions to

dismiss] in parallel with such appeal."   (Id. at 18-19.)

### 3.      SEPTA's Opposition

In response to the arguments proffered by the Orrstown Defendants and the Underwriter

Defendants and SEK, SEPTA takes issue with their position on each of the three criteria for certification, maintaining that: the issue sought to be certified does not constitute a controlling question of law; there is no substantial ground for difference of opinion as to whether the Court properly permitted SEPTA to file the TAC; and immediate appeal will not materially advance the ultimate termination of this litigation.   (Doc. No. 212.)

First, with regard to whether the issue sought to be certified constitutes a "controlling question of law," SEPTA maintains that "[b]ecause permission to file an amended pleading is a discretionary order, it is not typically considered a controlling question of law that justifies interlocutory appeal."   (Id. at 21.)   SEPTA argues that Section 1292(b) "was not intended to put legal questions before the court of appeals in which the exercise of the district court's discretion [was] necessarily intertwined with its understanding of the facts of the case."   (Id. at 21-22) (quoting Vares-Ebert, 2020 WL 948774, at *2).   SEPTA maintains that the moving Defendants seek to certify just such a question because they seek certification of the question as to "whether, in the circumstances of this case," Rule 54(b) "should be interpreted to permit the filing of claims that would otherwise be barred by Section 13 of the Securities Act and Section 804 of the Sarbanes-Oxley Act."   (Id. at 23) (quoting Doc. No. 205 at 13).   In support of its position, SEPTA relies primarily on Stanley v. St. Croix Basic Services, Inc., No. 2003/0055, 2008 WL 4861448, at *2-3 (D.V.I. Nov. 3, 2008), where the court declined to certify its decision to deny leave to amend a complaint based on its finding of undue delay and prejudice to the defendants as a result of the amendment.

SEPTA further maintains that there exists no substantial ground for difference of opinion regarding whether the Court properly permitted the filing of the TAC.   (Doc. No. 212 at 11.)

SEPTA argues that, in its February 14, 2020 Memorandum, the Court did not find that any tension exists between the relevant statutes of repose and Federal Rule of Civil Procedure 54(b) so as to constitute a substantial ground for difference of opinion, and that the Court merely "acknowledged" Defendants' "argument" regarding the potential tension between "their reading" of the statutes of repose and Rule 54(b).   (Id. at 13.)   SEPTA also posits that while the Court noted that the Supreme Court's decision in In re California Public Employees' Retirement System v. ANZ Securities, Inc., 137 S. Ct. 2042, 2044 (2017) ("CALPERS") did not directly control its decision regarding the interplay between the statutes of repose and Rule 54(b), that decision "makes clear that the statute of repose is satisfied so long as the original action is timely filed."   (Id. at 14.)

SEPTA also takes issue with the Defendants' argument that their position regarding Rule 54(b)'s implications for the substantive right provided by the statutes of repose "find[s] strong support in a series of decisions from courts in this Circuit and across the country."   (Id.) (quoting Doc. No. 205 at 15).   SEPTA maintains that all of the cases cited by Defendants regarding the potential interplay between the substantive right provided by the statutes of repose and the federal rules are readily distinguishable because "all of those cases involved addition of a new party or new claim."   (Id.)   Accordingly, SEPTA argues that there is no conflicting precedent as to the correct legal standard in the order at issue, and further, that "the fact that an issue may be a matter of first impression is, in itself, 'insufficient to support certification.'"   (Id. at 17) (quoting Cuttic v. Crozer-Chester Med. Ctr., 806 F. Supp. 2d 796, 805 (E.D. Pa. 2011)).

Finally, SEPTA maintains that certification of the Court's February 14, 2020 Order for purposes of interlocutory appeal would not materially advance this litigation.   (Id. at 19.)

13

SEPTA argues that "an appeal here would be almost certain to fail on the merits" and would "cause substantial delay." (Id. at 20.)   SEPTA asserts that "[i]t would be far more efficient to proceed with the litigation with all appeals presented at one time, as is typical." (Id. at 21.) Further, SEPTA maintains that the newly reasserted claims in the TAC will not greatly expand the scope of discovery because those claims share a close factual nexus with the claims previously asserted in the SAC, "[n]or would reversal on interlocutory appeal necessarily insulate the Underwriters and SEK from discovery, as SEPTA would still be free to pursue discovery and depositions from both entities as third parties." (Id.)   For all of these reasons, SEPTA maintains that the Court should deny the pending motions for certification of interlocutory appeal.

      **B.**      **Analysis**

      Upon consideration of the briefs of the parties and the relevant authorities, the Court finds that the moving Defendants have demonstrated that the Section 1292(b) criteria are met, and that certification of the Court's February 14, 2020 Order for interlocutory appeal is warranted.   As an initial matter, the Court is persuaded that the issue at bar —whether the operation of the statutes of repose in the Securities and Exchange Acts renders SEPTA's effort to reassert such claims previously-dismissed by way of a non-final order in this multi-party, multi-claim action futile—is a controlling question of law because if the Third Circuit Court of Appeals were to disagree with this Court's resolution of that issue, SEPTA's re-asserted Securities and Exchange Act claims against the Underwriter Defendants, SEK, and several individual Orrstown Defendants would be precluded.   See Sayles, 2017 WL 2985402, at *2 (stating that a question of law is controlling if "an incorrect disposition would constitute

reversible error") (citing <u>Katz</u>, 419 F.2d at 755).   Further, the question is one that is certainly serious to this litigation, both practically and legally.   If this Court's interpretation of the interplay between the relevant statutes of repose and the provisions of Federal Rule of Civil Procedure 54(b) is incorrect, the Underwriter Defendants, SEK, and several individual defendants may be insulated from Securities and Exchange Act liability, and, moreover, the substance of this litigation will be streamlined going forward, with SEPTA's claims potentially limited to Exchange Act claims against Orrstown-related Defendants.

The Court is unpersuaded by SEPTA's argument that the fact that the Court's February 14, 2020 Order involved the exercise of its discretion in granting a motion for leave to amend means that it does not involve a controlling question of law.   While the Court acknowledges the authority cited by SEPTA to the effect that "[d]ecisions committed entirely to the district court's discretion rarely present 'a controlling questions of law' and are generally not appropriate for certification under § 1292(b)," <u>see</u> <u>Stanley</u>, 2008 WL 4861448, at *2, the Court finds that this is a case where the Court's exercise of its discretion is appropriately viewed as involving a "controlling question of law."   Unlike in <u>Stanley</u>, where the court declined to certify its decision denying leave to amend based on undue delay and prejudice, the moving Defendants here do not seek to certify the Court's discretionary conclusions regarding undue delay and prejudice in connection with SEPTA's motion for leave to amend, but, rather, seek certification of the Court's conclusion regarding the potential "futility" of the filing of the TAC based on a question of statutory interpretation.   If the Court had reached a different conclusion regarding the statute of repose-based futility arguments proffered by Defendants in opposition to SEPTA's motion for leave to amend, it would have denied SEPTA's motion; accordingly, the Court finds that its

15

February 14, 2020 Order granting SEPTA permission to file a TAC involves a "controlling question of law" appropriate for certification for interlocutory appeal.   See Whalen v. W.R. Grace & Co., 56 F.3d 504, 506 (3d Cir. 1995) (entertaining and deciding an interlocutory appeal from an order granting leave to amend where the order presented a "narrow issue" that involved the "interpretation and application of legal principles" under a federal statute); In re Dwek, No. 10-4259 (MLC), 2011 WL 487582, at *5 (D.N.J. Feb. 4, 2011) (applying the Section 1292(b) standard to a motion seeking leave to appeal a bankruptcy court order granting leave to amend and finding the "controlling question of law" criteria satisfied because an erroneous decision on the question as to "whether the allegations in the Second Amended Complaint relate back to the Amended Complaint under Rule 15(c)" would constitute reversible error).

Secondly, the Court finds that there exists a "substantial ground for difference of opinion" as to the question whether SEPTA's previously-dismissed Securities and Exchange Act claims in this multi-party, multi-claim action remain subject to amendment pursuant to the provisions of Federal Rule of Civil Procedure 54(b), or whether the previous dismissal of those claims ended the "action" with regard to those claims, such that any future amendment of those claims would be subject to the relevant statute of repose.   As noted above, "[s]ubstantial grounds for difference of opinion exist where there is genuine doubt or conflicting precedent as to the correct legal standard" to be applied.   See Knipe, 583 F. Supp. 2d at 599.   That difference of opinion must involve "one or more difficult and pivotal questions of law not settled by controlling authority."   See Sayles, 2017 WL 2985401, at *2 (quotations and citations omitted); Knipe, 583 F. Supp. 2d at 599.   As noted by the Court in its February 14, 2020 Memorandum, with regard to the issue of the interplay between Federal Rule of Civil Procedure 54(b) and the

relevant statutes of repose that may be applicable to the reassertion of previously-dismissed claims, the Court identified "no controlling case on all fours with the instant case."   (Doc. No. 197 at 54.)   Moving Defendants state that "there is no precedent anywhere that addresses the precise question of statutory interpretation they seek to have certified."   (Doc. No. 223 at 11.) As noted above, a novel legal question may present substantial grounds for a difference of judicial opinion.   See Pennsylvania v. Navient Corp., No. 3:17-cv-1814, 2019 WL 1052014, at *2 (M.D. Pa. Mar. 5, 2019) (finding that "[q]uestions of first impression can present substantial grounds for difference of opinion"); Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co., No. 05-281, 2011 WL 1044864, at *3 (E.D. Pa. Mar. 23, 2011) (concluding that "[t]he sheer absence of any persuasive, let alone controlling, law on this issue is sufficient on its own to provide substantial grounds for difference of opinion"); Klapper v. Commonwealth Realty Trust, 662 F. Supp. 235, 236 (D. Del. 1987) (granting certification where the "standing question present[ed] a 'case of first impression'" (citation omitted)).

The relevant question is whether reasonable jurists might disagree as to the proper resolution of a disputed issue.   See Navient, 2019 WL 1052014, at *4 (finding a substantial ground for difference of opinion to exist where the novelty of the issue presented meant that reasonable jurists might differ as to its resolution); accord F.T.C. v. Wyndham Worldwide Corp., 10 F. Supp. 3d 602, 634 (D.N.J. 2014), aff'd, 799 F.3d 236 (3d Cir. 2015) (stating that "given the novelty of [the legal issue presented], the Court finds that reasonable jurists may differ over the Court's resolution" of the issue presented and, therefore, "a substantial ground for difference of opinion" existed).

In the absence of authority supporting Defendants' position that the Court's December 7,

2016 order ended the "action" with regard to the claims dismissed by it such that the relevant statutes of repose would operate to bar the reassertion of those claims in SEPTA's TAC, the Court in its February 14, 2020 Memorandum ultimately relied on the plain meaning of Federal Rule of Civil Procedure 54(b) and the non-final nature of its December 7, 2016 order to permit SEPTA leave to amend to reassert previously-dismissed claims.   (Doc. No. 197 at 52-57.) However, the Court acknowledged Defendants' argument regarding the substantive right provided by the relevant statutes of repose and the limitations of the Rules Enabling Act, which provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right."   (Id. at 55 n.40) (quoting 28 U.S.C. § 2072(b)).   Accordingly, in light of the foregoing, the Court finds that, in the absence of any controlling authority, there may exist "substantial grounds for difference of opinion" among reasonable jurists as to this complex issue of statutory interpretation.

Finally, as to the third criteria for certification, the Court easily concludes that the moving Defendants have met their burden to demonstrate that the prompt resolution of this legal issue "may materially advance the ultimate termination of this litigation."   See 28 U.S.C. § 1292(b). As stated above, this criteria is met where an immediate appeal may eliminate the need for trial or simplify a trial by the elimination of complex issues, and where it may result in more expeditious and less costly discovery.   See Patrick, 366 B.R. at 387.   Certainly, if the Third Circuit would reach a different conclusion on the statute of repose issue, such a decision would eliminate the Securities Act claims from this case, thereby "eliminat[ing] the need for a trial" on those claims, "simplify[ing] [the] case by foreclosing complex issues" unique to those claims, and "enabl[ing] the parties to complete discovery more quickly [and] at less expense."   See

Miller v. SmithKline Beecham Corp., No. 13-2382, 2013 WL 6506570, at *3 (M.D. Pa. Dec. 12,

2013).   Indeed, SEPTA does not dispute that a reversal of this Court's decision on appeal would

significantly simplify this litigation but instead argues that the Court should deny certification

because "an appeal here would be almost certain to fail on the merits."   (Doc. No. 212 at 20.)

However, as noted by the moving Defendants, Section 1292(b) does not mandate a finding that

an appeal is likely to be successful, but instead requires only that the Court find that the outcome

of an immediate appeal may materially advance the ultimate termination of this litigation.   See

Miller, 2013 WL 6506570, at *3 (stating that Section 1292(b) "requires the [C]ourt to analyze

whether an immediate appeal may materially advance the termination of the litigation, not

whether an immediate appeal definitively will advance the termination of the litigation").

        The Court is also unpersuaded by SEPTA's contention that an interlocutory appeal would

result in substantial delay of this long-pending litigation because the applicable statute provides

that an "application for an appeal hereunder shall not stay proceedings in the district court unless

the district judge or the Court of Appeals or a judge thereof shall so order."   See 28 U.S.C. §

1292(b).   Moving Defendants have not requested a stay from this Court; moreover, they have

explicitly represented that they will continue to brief their pending motions to dismiss in concert

with their pursuit of an interlocutory appeal.   (Doc. Nos. 204 at 13 n.5; 223 at 17.)

Accordingly, the Court finds that an immediate appeal of this Court's February 14, 2020 Order

may materially advance the termination of this litigation.

        Therefore, having determined that the Moving Defendants have met their burden to

demonstrate that the Section 1292(b) criteria are satisfied, this Court, in the exercise of its

discretion, finds this action to be that "exceptional case" justifying certification of its February

14, 2020 Order for interlocutory appeal.

**IV.    CONCLUSION**

For all of the foregoing reasons, the Court will grant the Defendants' Motions for Certification of Interlocutory Appeal (Doc. Nos. 201, 202) and amend its February 14, 2020 Order accordingly.   An Order consistent with this Memorandum follows.