**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
Nicholas E. Chimicles, Pa. Id. No. 17928
Kimberly Donaldson Smith, Pa. Id. No. 84116
Timothy N. Mathews, Pa. Id. No. 91430
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Phone (610) 642-8500
Fax (610) 649-3633

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> ORRSTOWN FINANCIAL SERVICES, INC., ORRSTOWN BANK, ANTHONY F. CEDDIA, JEFFREY W. COY, MARK K. KELLER, ANDREA PUGH, THOMAS R. QUINN, JR., GREGORY A. ROSENBERRY, KENNETH R. SHOEMAKER, GLENN W. SNOKE, JOHN S. WARD, BRADLEY S. EVERLY, JOEL R. ZULLINGER, JEFFREY W. EMBLY, SMITH ELLIOTT KEARNS & COMPANY, LLC, SANDLER O'NEILL & PARTNERS L.P., and JANNEY MONTGOMERY SCOTT LLC, <br><br> Defendants. | Civil Action No. 1:12-cv-00993 <br><br> CLASS ACTION <br><br><br> **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF AN ORDER PRELIMINARILY APPROVING SETTLEMENT, ESTABLISHING NOTICE PROCEDURES, AND SETTING SETTLEMENT HEARING DATE** |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................1

II.    HISTORY OF THE LITIGATION AND SETTLEMENT ...........................2

III.   SETTLEMENT TERMS ..............................................................9

IV.  THE COURT SHOULD GRANT PRELIMINARY
APPROVAL OF THE SETTLEMENT .......................................11

    A.    Plaintiff and Its Counsel Have Adequately Represented
        the Settlement Class .............................................................13

    B.    The Proposed Settlement Is the Result of Good Faith,
        Arm's-Length Negotiation ................................................14

    C.    The Relief Provided for the Class Is More Than Adequate ...............15

        (i)    The Settlement accounts for the costs, risks,
             and delay of trial and appeal ...................................17

        (ii)   The Settlement provides for an effective method
             of distributing relief to the Class...............................18

        (iii)  The terms of the proposed award of
             attorneys' fees are reasonable ..................................20

        (iv)  Additional agreement required to be identified
             under Rule 23(e)(3)...................................................22

    D.    The Settlement Treats Class Members Equitably
        Relative to Each Other ........................................................23

V.   THE COURT SHOULD CONDITIONALLY CERTIFY THE
SETTLEMENT CLASS .............................................................24

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a).........24

        (i)    The Class Is Sufficiently Numerous and Ascertainable ...........24

(ii)   There are Questions of Law or Fact Common to the Class......25

(iii)   The Class Representative's Claims are Typical
of the Claims of the Class .........................................................26

(iv)   The Class Representative and Counsel Will Fairly
and Adequately Represent the Class........................................27

B.   The Proposed Class Meets the Rule 23(b) Requirements...................27

VI.   THE COURT SHOULD APPROVE THE PROPOSED FORM
AND METHOD OF CLASS NOTICE .........................................................29

A.   The Method of Notice is Adequate .....................................................29

B.   The Content of the Notice is Adequate ...............................................31

VII.   SETTLEMENT HEARING AND PROPOSED SCHEDULE
OF SETTLEMENT EVENTS .......................................................................33

VIII.   CONCLUSION..............................................................................................34

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Allen v. Ollie's Bargain Outlet*,
　　37 F.4th 890 ( 3d Cir. 2022) ..............................................................................25

*In re Am. Bus. Fin. Servs. Noteholders Litig.*,
　　2008 U.S. Dist. LEXIS 95437 (E.D. Pa. Nov. 21, 2008) ....................................30

*Amchem Prods. v. Windsor*,
　　521 U.S. 591 (1997).............................................................................................28

*Byrd v. Aaron's Inc.*,
　　784 F.3d 154 (3d Cir. 2015) ................................................................................25

*In re Cendant Corp. Litig.*,
　　264 F.3d 201 (3d Cir. 2001) ................................................................................15

*Dartell v. Tibet Pharm., Inc.*,
　　2017 U.S. Dist. LEXIS 100872 (D.N.J. June 29, 2017).....................................21

*Ehrheart v. Verizon Wireless*,
　　609 F.3d 590 (3d Cir. 2010) ................................................................................11

*Girsh v. Jepson*,
　　521 F.2d 153 (3d Cir. 1975) .................................................................13, 15, 17

*Gruber v. Price Waterhouse*,
　　117 F.R.D. 75 (E.D. Pa. 1987).............................................................................28

*Hall v. AT&T Mobility LLC*,
　　2010 U.S. Dist. LEXIS 109355 (D.N.J. 2010) ....................................................14

*Hefler v. Wells Fargo & Co.*,
　　2018 U.S. Dist. LEXIS 15092 (N.D. Cal. Sept. 4, 2018)...................................22

*In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*,
　　2022 U.S. Dist. LEXIS 42793 (E.D. Pa. Mar. 10, 2022) ......................16, 20, 23

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
　　339 U.S. 306 (1950).............................................................................................29

*In re N.J. Tax Sales Certificates Antitrust Litig.*,
   2016 U.S. Dist. LEXIS 137153 (D.N.J. Sep. 30, 2016) *aff'd*, 750 F.
   App'x 73 (3d Cir. 2018) ...........................................................................17

*In re Nat. Football League Players Concussion Inj. Litig.*,
   775 F.3d 570 (3d Cir. 2014) ...................................................................24

*In re PNC Fin. Servs. Grp., Inc., Sec. Litig.*,
   440 F. Supp. 2d 421 (W.D. Pa. 2006).....................................................17

*In re Prudential*
   148 F.3d 283 (3d Cir. 1998) ...................................................................28

*In re Ravisent Techs., Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005)..........................22

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...................................................................21

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 124269 (D.N.J. Dec. 8, 2008)...........................30

*SEPTA v. Orrstown Fin. Servs.*,
   12 F.4th 337 (3d Cir. 2021) ......................................................................7

*Stevens v. SEI Invs. Co.*,
   2020 U.S. Dist. LEXIS 35471 (E.D. Pa. Feb. 26, 2020) ........................17

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ...................................................................28

*Utah Ret. Sys. V. Healthcare Servs. Grp., Inc.*,
   2022 U.S. Dist. LEXIS 5841 (E.D. Pa. Jan. 12, 2022).........................29

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................25

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ..............................................................25, 26

*In re Warfarin*,
   212 F.3d at 250 .......................................................................................27

iv

*Yedlowski v. Roka Bioscience, Inc.*,
 2016 U.S. Dist. LEXIS 155951 (D.N.J. Nov. 10, 2016) ....................................21

## STATUTES

15 U.S.C. §78u-4(a)(4) ...........................................................................................24

15 U.S.C. § 78u-4(a)(7)(A)-(F)...............................................................................32

28 U.S.C. §1292 .......................................................................................................7

28 U.S.C. §1715 *et seq.*..........................................................................................31

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 *et seq.*..................................................................................*passim*

NERA Economic Consulting, Recent Trends in Securities Class
 Action Litigation: 2021 Full-Year Review (January 25, 2022),
 available at:
 https://www.nera.com/content/dam/nera/publications/2022/PUB_2
 021_Full-Year_Trends_012022.pdf ................................................................16

# I.   <u>INTRODUCTION</u>

After more than a decade of hard-fought litigation—which included the filing of four complaints, numerous rounds of motions to dismiss, an interlocutory appeal to the Third Circuit, production and review of over 1 million pages of documents, preparation of expert reports, depositions, and significant motion practice—Lead Plaintiff Southeastern Pennsylvania Transportation Authority ("Plaintiff" or "SEPTA") and Lead Counsel, Chimicles Schwartz Kriner & Donaldson-Smith LLP, are pleased to seek preliminary approval of a Settlement of all claims against all Defendants in this Action for $15 million, inclusive of all fees and costs.   The settlement amount, reached with the assistance of an experienced mediator, Robert A. Meyer, Esq. of JAMS, after numerous sessions spanning several months, represents a very significant percentage of estimated damages under even Plaintiff's most aggressive damages model.

Pursuant to Rule 23(e), SEPTA, individually and on behalf of all others similarly situated, respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed $15 million Settlement[1] with Defendants; (ii) certification of the proposed Class for purposes of

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the definitions provided in the Stipulation and Agreement of Settlement dated December 5, 2022 ("Stipulation"). The Stipulation is Exhibit 1 to the Donaldson-Smith Declaration. All emphasis is added and all citations are omitted unless otherwise noted.

the Settlement only; (iii) appointment of Lead Counsel and the Lead Plaintiff to represent the Class; (iv) appointment of the Settlement Claims Administrator; (v) approval of the form, content, and plan for dissemination of the long-form notice ("Notice"), Claim Form, and summary form of the Notice for publication ("Summary Notice"), attached as Exhibits A-1, A-2, and A-3 to the Preliminary Approval Order (Exhibit A to the Stipulation), respectively;   (vi) preliminary approval of the Plan of Allocation for the Net Settlement Fund as set forth in detail in the Notice; (vii) establishment of deadlines and procedures for Class Members to opt-out or exclude themselves from the Class and Settlement or to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses; (viii) scheduling of the final Settlement Hearing; and (ix) approval of such other matters as set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order" or "POA"), filed herewith.

## II.  <u>**HISTORY OF THE LITIGATION AND SETTLEMENT**</u>

The long history of this lawsuit is familiar to the Court.  There is no question it was hard-fought by all parties.

The core of Plaintiff's claims are its allegations that Orrstown made materially false and misleading statements about its commercial loan portfolio, its loan loss reserves, and internal controls over financial reporting in filings with the SEC

beginning March 2010, including in the offering documents for Orrstown's March 2010 public offering of 1.7 million shares of its common stock at $27 per share. From July 2011, when Orrstown began to identify losses tied to its commercial loan portfolio, to April 27, 2012, Orrstown's share price fell to $7.94.

Plaintiff filed its initial complaint on May 25, 2012, asserting claims against Orrstown and certain of Orrstown's officers and directors under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder ("Exchange Act Claims"), and under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act Claims"). (Dkt. No. 1.)

On August 20, 2012 the Court appointed SEPTA as Lead Plaintiff, and approved Chimicles Schwartz Kriner & Donaldson-Smith LLP ("Chimicles")[2] as Lead Counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Dkt. No. 33.)

On March 4, 2013, Plaintiff filed its First Amended Complaint ("FAC", Dkt. No. 40), which added Exchange Act Claims against Orrstown's auditor, Smith, Elliott, Kearns & Company ("SEK"), and Securities Act Claims against SEK and the underwriters of Orrstown's March 2010 public offering, Piper Sandler & Co. and Janney Montgomery Scott LLC (collectively, the "Underwriters").

---

[2] Effective January 2019, Plaintiff's Counsel, which was known for 25 years as Chimicles & Tikellis LLP, changed its name to Chimicles Schwartz Kriner & Donaldson-Smith LLP, reflecting the retirement of former partner Pamela Tikellis.

On June 22, 2015, the Court granted Defendants' motions to dismiss the FAC in its entirety.  (Dkt. Nos. 92-93.) Plaintiff thereafter filed a motion for leave to amend, which the Court granted, and on February 6, 2016, Plaintiff's Second Amended Complaint ("SAC") was deemed filed. (Dkt. No. 101.)

Each group of Defendants moved to dismiss the SAC on March 18, 2016 (Dkt. Nos. 105–10), and while their motions were *sub judice*, on September 27, 2016, Defendants Orrstown, Quinn, Everly and Embly agreed to a Consent Order with the Securities and Exchange Commission ("SEC Order"), which found, *inter alia*, that Orrstown had under-reported its impaired loans beginning second quarter 2010 and continuing through 2011. Pursuant to the SEC Order, Orrstown was required to pay a civil monetary penalty of $1 million, and Quinn, Everly, and Embly were required to pay civil penalties of $100,000 each. The Court was promptly apprised of the SEC Order. (Dkt. No. 122.)  The SEC Order did not provide any recovery for investors.

On December 7, 2016, the Court granted in part and denied in part Defendants' motions to dismiss the SAC. (Dkt. Nos. 126–27.) The Court upheld Exchange Act Claims against Orrstown, Quinn, Everly, and Embly, which had been bolstered by the SEC Order, but dismissed the Exchange Act Claims against SEK, dismissed all Exchange Act Claims arising prior to the second quarter of 2010, and dismissed the Securities Act Claims against all Defendants. *Id.*

With the motions to dismiss the SAC resolved, the PSLRA-imposed stay of discovery was lifted and the Parties commenced discovery in or around March 2017. *See* Declaration of Kimberly Donaldson-Smith ("Donaldson-Smith Decl."), at ¶ 5. Plaintiff received and reviewed over a million pages of documents from Defendants, SEK and the Underwriters, and over two dozen third parties (including many of the Bank's commercial borrowers and numerous Bank consultants). *Id.* at ¶ 6. Due to the technical nature of many of the documents, Plaintiff retained several consulting banking and accounting experts to assist in Plaintiff's analysis of the documents. *Id.* at ¶ 8. Plaintiff deposed one representative from SEK and one of the Bank's consultants. *Id.* at ¶ 9.

In December 2017 and January 2018, certain parties exchanged opening and rebuttal expert reports addressing issues relevant to class certification. *Id.* at ¶ 9-10.

Plaintiff also engaged in numerous discussions with federal and state banking regulators in an attempt to obtain production of documents that were withheld by certain Defendants and certain third parties based on the assertion of confidential supervisory information ("CSI") privilege. *Id.* at ¶ 11. On August 9, 2018, Plaintiff filed a motion to compel production of documents withheld as CSI (Dkt. Nos. 157–58), which the federal and state banking regulators opposed (Dkt. No. 173.) On February 12, 2019, this Court denied the motion without prejudice to Plaintiff refiling after exhausting administrative procedures. (Dkt. Nos. 176–77.)

On April 12, 2019, Plaintiff sought leave to file the Third Amended Complaint ("TAC"), incorporating evidence and facts secured in discovery and reflecting the work of the banking and accounting consulting experts retained by Plaintiff. (Dkt. No. 182.); Donaldson-Smith Decl., at ¶ 12. The TAC reasserted previously dismissed Securities Act Claims and Exchange Act Claims, and expanded the class period for the Exchange Act Claims from March 15, 2010 through April 26, 2012, inclusive ("Class Period").

Defendants opposed the motion for leave to file the TAC, asserting, *inter alia*, that claims were barred by the statute of repose. (Dkt. Nos. 184–86.)  On February 14, 2020 the Court granted Plaintiff leave to file the TAC. (Dkt. Nos. 197–98.)

In March 2020, Defendants moved the Court to certify for immediate interlocutory appeal the issue of whether the statutes of repose barred previously dismissed claims that were re-asserted in the TAC.  (Dkt. Nos. 204–05.) Then, in April 2020, all Defendants filed motions to dismiss the TAC in its entirety. (Dkt. Nos. 213–19.)   On July 8, 2020, Plaintiff filed its omnibus response to the Defendants motions to dismiss the TAC.  (Dkt. No. 228.)

On July 17, 2020, the Court granted Defendants' motion for interlocutory appeal, finding that there existed substantial ground for difference of opinion on the issue of whether claims reasserted against the Defendants were barred by the statute of repose. (Dkt. Nos 229–30.)  Thereafter, on July 27, 2020, Defendants filed a

petition to appeal pursuant to 28 U.S.C. §1292 in the United States Circuit Court for the Third Circuit (Appeal Docket: 20-8030, Dkt. No. 1), which SEPTA opposed on August 5, 2020 (Appeal Dkt. No. 5.)  The Third Circuit granted the petition on August 13, 2020, allowing the appeal. (Dkt. No. 236.)

On August 24, 2020, having exhausted all administrative procedures, Plaintiff filed a renewed motion to compel production of the documents withheld as CSI. (Dkt. No. 239–41.)

In November and December 2020, the Parties filed their principal appeal briefs and, then, in January 2021, they filed supplemental briefs pursuant to the Order of the Court of Appeals. (Appeal Dkt. Nos. 23–24, 27.)  The Third Circuit panel heard oral argument on February 10, 2021, and on September 2, 2021, in a unanimous, precedential opinion, the Third Circuit affirmed this Court's ruling, holding that SEPTA could reassert the previously dismissed claims in the TAC. *SEPTA v. Orrstown Fin. Servs.*, 12 F.4th 337 (3d Cir. 2021).

Soon thereafter, while the motions to dismiss the TAC and motion to compel production of CSI were pending, the Parties engaged the services of Robert Meyer, Esquire, an experienced and nationally recognized mediator with JAMS. Donaldson-Smith Decl., at ¶ 13.  After exchanging mediation briefs, the Parties participated in an all-day mediation with Mr. Meyer on January 19, 2022, but were unsuccessful in reaching a resolution. *Id.* at ¶ 14.

The Parties so informed the Court (*id.* at ¶ 15), and the Court rescheduled to July 13, 2022 the previously-continued December 9, 2021 hearing and oral argument on Defendants' motions to dismiss the TAC. (Dkt. No. 273.)  The Parties appeared in person before the Court on July 13, 2022 for the hearing on Defendants' motions to dismiss the TAC.

On August 18, 2022, the Court issued a 156-page opinion and an order denying in part and granting in part Defendants' motions to dismiss the TAC (Dkt. Nos. 276–77.) The Court upheld Plaintiff's Securities Act Claims asserted in the TAC against SEK, the Underwriters, Orrstown, the Bank, and certain Individual Defendants, and upheld and extended to encompass Orrstown's 2009 Annual Report filed in March 2010 the Exchange Act Claims against SEK, Orrstown, the Bank, and certain Individual Defendants.

In a separate order also issued by the Court on August 18, 2022, the Court granted SEPTA's motion to compel production of the withheld CSI, giving SEPTA access to over 3,000 documents concerning or reflecting the Regulators' examinations and findings about Orrstown from 2010 through 2012. (Dkt. Nos. 278–79.) Orrstown promptly produced the CSI, and Plaintiff commenced its review of the CSI.  *Id.* at ¶¶ 16-17.

Defendants filed their answers to the TAC on October 3, 2022. (Dkt. Nos. 284–85.)

During an October 5, 2022 Court-scheduled status conference, the Parties informed the Court that they were re-engaging in settlement discussions with the aid of Mr. Meyer.  Donaldson-Smith Decl., at ¶18.  In the weeks that followed, the Parties separately engaged with Mr. Meyer on several occasions to discuss their respective positions, and on October 28, 2022 the Parties participated in a scheduled full-day mediation session with Mr. Meyer. *Id.* at ¶ 19.  They did not reach a settlement during the October 28, 2022 mediation, but agreed to continue discussions with Mr. Meyer's assistance. *Id.* at ¶ 20.

In early November 2022, after additional discussions, Mr. Meyer presented the Parties with a mediator's proposal to assist them in forging an agreement-in-principle to resolve the Action. *Id.* at ¶ 21.

The Parties accepted the mediator's proposal, and on November 7, 2022 the Parties executed a memorandum of understanding, which set forth their agreement-in-principle to resolve and settle the Action in exchange for a total payment of $15 million to the Class, inclusive of fees and costs. *Id.* at ¶ 22.

The Parties then negotiated the terms of the Stipulation. *Id.* at ¶ 24.

## III.   SETTLEMENT TERMS

The Settlement provides that Defendants shall pay a total of $15 million (the "Settlement Amount") in exchange for the release of all claims that were or could

have been asserted relating to Defendants' conduct set forth in the TAC.[3]
Stipulation, ¶¶ 4.1-4.4.  Of the total, Orrstown will pay $13 million and SEK will
pay $2 million. *Id.* at ¶ 2.1.  All costs of notice to the Class and the costs of settlement
administration ("Notice and Administration Fees"), court-approved attorneys' fees
and litigation expenses, taxes, and any other Court-approved fees or expenses shall
be paid from the Settlement Fund (which includes the Settlement Amount plus any
interest earned thereon), and the balance (i.e., the "Net Settlement Fund") shall be
distributed pursuant to the proposed Plan of Allocation to Class Members who
submit timely, valid claims, and whose payments would equal $10.00 or more. *Id.*
at ¶ 5.13.  Any balance remaining in the Net Settlement Fund after a reasonable
period of time after the date of the initial distribution will be reallocated if feasible
among Authorized Claimants in an equitable and economic fashion. *Id.* at ¶ 5.14.
Thereafter, any *de minimis* balance still remaining in the Net Settlement Fund shall
be distributed to MidPenn Legal Services[4], or a non-profit and non-sectarian
organization(s) chosen by the Court. *Id.*

---

[3] The Parties' obligations are subject to approval by the Court and entry of the final
proposed Judgment (Exhibit B to the Stipulation), resulting in full and final
disposition of the Action with respect to the Released Parties and Released Claims.
Stipulation, at ¶¶ 4.1, 4.3. The pertinent definitions of Effective Date, Released
Plaintiff's Claims, Unknown Claims, Defendants' Released Parties, Plaintiff's
Released Parties, Released Claims, and Released Parties are set forth at paragraphs
1.9, 1.27, 1.38, 1.8, 1.21, 1.25, and 1.28, respectively, of the Settlement Stipulation.
[4] MidPenn Legal Services is a non-profit, public interest law firm that provides high
quality free civil legal services to low-income residents and survivors of domestic

As discussed herein, the proposed Settlement is an excellent recovery for Plaintiff and the Class.  It is in every respect fair, adequate, reasonable, and in the best interests of the Class.

## IV.   **THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT**

The Third Circuit has a "strong judicial policy in favor of class settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Id.*

Rule 23 requires that a class action settlement be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e) ("The claims…[of] a class proposed to be certified for purposes of settlement…may be settled…only with the court's approval.").

Approval of a class action settlement occurs in two steps: preliminary approval and final approval. After the court grants preliminary approval, notice of the proposed Settlement and its terms are provided to Class Members who are then given an opportunity to object to the Settlement, or opt-out of the Class and Settlement. Final approval follows.

At the preliminary approval stage, the settling parties must provide the Court with "information sufficient to enable it to determine whether to give notice" of the

---

violence and sexual assault in 18 counties in Central Pennsylvania. *See* https://www.midpenn.org/.

proposed settlement to the class. Fed. R. Civ. P. 23(e)(1). To determine that giving notice is justified, the Court must determine that it will "*likely* be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

Rule 23(e)(2), as amended in 2018, outlines several factors the Court must consider in determining whether a settlement is fair, reasonable, and adequate:

> **(A)** the class representatives and class counsel have adequately represented the class;
>
> **(B)** the proposal was negotiated at arm's length;
>
> **(C)** the relief provided for the class is adequate, taking into account:
> **(i)** the costs, risks, and delay of trial and appeal;
> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and
> **(iv)** any agreement required to be identified under Rule 23(e)(3); and
>
> **(D)** the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The 2018 Advisory Committee Notes make clear that these factors should be addressed as the "core concerns" but they do not displace other "lists of factors" courts have traditionally applied. The nine factors that courts in the Third Circuit traditionally consider when determining the fairness of a proposed settlement, as set

forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), significantly overlap with the Rule 23(e)(2) factors. The *Girsh* factors are: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." Accordingly, Plaintiff addresses all relevant factors following Rule 23(e)(2) factors, noting *Girsh* when applicable. Under all relevant factors, the Settlement here merits approval.

### A. Plaintiff and Its Counsel Have Adequately Represented the Settlement Class.[5]

SEPTA and Lead Counsel have relentlessly and effectively represented the interests of the Class Members.

SEPTA has demonstrated its ability and willingness to pursue this action on the Class's behalf through more than a decade of vigilant involvement in the action.

---

[5] This factor overlaps with the third *Girsh* factor: "the stage of the proceedings and the amount of discovery completed." Here, Plaintiff conducted substantial discovery, much of which is reflected in the very detailed TAC, and litigated for ten years.

Throughout the litigation, SEPTA devoted significant time to reviewing filings, participating in discovery, overseeing the litigation, and, ultimately, approving the Settlement. Donaldson-Smith Decl., at ¶ 26.

Likewise, the quality of representation by Lead Counsel is apparent from the record before the Court, the record in the Third Circuit, and the result achieved here through the Settlement.

Plaintiff's decision to settle this Action is the culmination of years of investigation of relevant claims; robust fact discovery; extensive briefing on the motions to dismiss and the motion to compel CSI; and ardent participation in an arm's-length mediation process. The Settlement is the product of well-documented, educated, vigorous advocacy by both Plaintiff and its Counsel on behalf of the Class Members. *Id.* at ¶ 27. Consequently, this factor weighs in favor of approval.

**B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiation.**

The Settlement resulted from extensive arm's-length negotiations between experienced counsel with an understanding of their respective positions in this litigation, assisted by Mr. Meyer, a highly experienced mediator. Donaldson-Smith Decl., at ¶ 23. "[T]he participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties." *Hall v. AT&T Mobility LLC*, 2010 U.S. Dist. LEXIS 109355 at *7 (D.N.J. 2010) (internal quotations omitted). Here,

the Settlement is the product of nearly a year of negotiations between Lead Counsel and Defendants' Counsel. Stipulation, at 5–6.

Proposed settlements are generally presumed to be fair, reasonable, and adequate if reached by experienced counsel after arm's length negotiations. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). Here, counsel for all parties are well-respected, experienced attorneys in securities class action litigation. *See,* Exhibit 2 to Donaldson-Smith Decl. (Lead Counsel's Firm Resume).[6]

### C.   The Relief Provided for the Class Is More Than Adequate.[7]

Most importantly, the Settlement relief here is excellent. The $15 million Settlement represents approximately 29-36% of the maximum damages estimated by Plaintiff's expert of $42-52.5 million.[8] Donaldson-Smith Decl., at ¶ 25. Moreover, that estimated damages range does not account for the potential success of affirmative defenses that Defendants might have been able to prove at trial,

---

[6] The biographies of the Defendants' attorneys are available on their respective websites.  Each is highly experienced.

[7] This factor overlaps with the eighth and ninth *Girsh* factors: "the range of reasonableness of the settlement fund in light of the best possible recovery," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

[8] The range consist of the expert's most aggressive loss calculation for both the Securities Act and Exchange Act claims at the high end, and the same damages less an estimated amount for "negative loss causation" on the lower end.  Defendants, however, have contended that the actual, recoverable damages, if any, are much lower.

meaning the Settlement amount could represent a significantly higher percentage of the damages than would have been won at trial, which in theory could be zero. *Id.*

A recovery of 29-36% of damages in a securities fraud lawsuit is outstanding. A recent Cornerstone Research study of securities fraud settlements over a nine-year period found that, in cases involving Rule 10b-5 claims with $25-74 million in estimated damages, the median settlement amount was 7.2-7.3% of the estimated damages. *See* Cornerstone Research, Securities Class Action Settlements: 2021 Review and Analysis (2021), at Figure 5, available at: https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf. Similarly, a NERA study found that in cases where investor damages ranged from $20-99 million, the median settlement represented 4.2-5.2% of damages. *See* NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review (January 25, 2022) , available at: https://www.nera.com/content/dam/nera/publications/2022/PUB_2021_Full-Year_Trends_012022.pdf

Thus, the settlement here is far above the median for a case of this size. *See also, In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, 2022 U.S. Dist. LEXIS 42793, at *12 (E.D. Pa. Mar. 10, 2022) ("12% [recovery of damages] is not an unreasonable recovery, given the 'costs, risks, and delay of trial and appeal' for both sides");

*Stevens v. SEI Invs. Co.*, 2020 U.S. Dist. LEXIS 35471, at *15-16 (E.D. Pa. Feb. 26, 2020) (a 31% recovery of total calculated damages was a "significant settlement" that "substantially outweigh[ed] the mere possibility of future relief"); *In re N.J. Tax Sales Certificates Antitrust Litig.*, 2016 U.S. Dist. LEXIS 137153, at *37 (D.N.J. Sep. 30, 2016) *aff'd*, 750 F. App'x 73 (3d Cir. 2018) (a settlement fund of 2.5% of total calculated damages was "within the range of reasonableness" for satisfaction of the *Girsh* factors); *In re PNC Fin. Servs. Grp., Inc., Sec. Litig.*, 440 F. Supp. 2d 421, 436 (W.D. Pa. 2006) (approving a settlement recovery of 12% of calculated total damages).

### (i)   The Settlement accounts for the costs, risks, and delay of trial and appeal.[9]

Not only is the Settlement Amount excellent, but the immediate benefits that the Settlement will provide are favorably juxtaposed by the risks, uncertainties, and inevitable delays of continued litigation. Plaintiff and Lead Counsel thoroughly weighed those contingencies in considering the terms of the Settlement.

Were the litigation to continue, Plaintiff and the Settlement Class would face costs, delay, and litigation risks, including securing class certification, briefing motions for summary judgment, defending expert opinions, and maintaining class

---

[9] This factor overlaps with the first, fourth, fifth, and sixth Girsh factors, which are: "the complexity, expense and likely duration of the litigation;" "the risks of establishing liability;" "the risks of establishing damages;" and "the risks of maintaining the class action through the trial."

certification through a lengthy trial.  Further, there is no guarantee of success at trial.

Defendants are represented by experienced counsel and have asserted numerous

affirmative defenses.  The Settlement avoids these risks, while providing a very

substantial recovery.

> **(ii)** **The Settlement provides for an effective method of distributing relief to the Class.**

The method for collecting and processing Class Members' claims and

distributing relief to eligible claimants follows well-established, effective

procedures for accomplishing both tasks.  Here, Kroll Settlement Administration,

LLC, the Claims Administrator selected by Lead Counsel subject to Court approval

(*see* Donaldson-Smith Decl., at ¶ 28), will collect and process claims in accordance

with the processes set forth in the Plan of Allocation (Section 8 of the Notice,

(Exhibit A-1 to the Stipulation) pp. 7–10) and in the Proof of Claim and Release

form ("Claim Form") (Exhibit A-2 to the Stipulation). *Id.*

The Plan of Allocation, which is described in the Notice and was developed

in consultation with one of Plaintiff's experts, provides for distribution of the Net

Settlement Fund to Class Members who submit valid, timely claims accepted by the

Claims Administrator in proportion to their Recognized Claim Amount. *Id.* at ¶ 29;

Notice, at pp. 7–10; Stipulation, at ¶ 5.10.  The objective of the Plan of Allocation

is to equitably distribute the Net Settlement Fund among Authorized Claimants

based on their respective alleged economic losses as a result of Defendants' alleged

misstatements and omissions, as opposed to losses caused by market- or industry-wide factors, or company-specific factors unrelated to the alleged misstatements and omissions. Donaldson-Smith Decl., at ¶ 29. It reflects a reasonable allocation of the Net Settlement Fund based on the evaluation of the trading price of Orrstown Stock in relation to the alleged revelation of previously concealed information alleged in the TAC and Action. *Id.* The Plan of Allocation takes into account the dates on which the public disclosure of relevant information occurred and the market's reaction to this information. *See id.*; Notice, at pp. 7–10.

Requiring Class Members to file a Claim Form, as provided for here, is standard in securities class action settlements, since neither Plaintiff nor Defendant possess the individual investor trading data necessary to distribute the Net Settlement Fund.[10]  Among other things, the process, which is detailed in the Notice and Claim Form, provides for subsequent distributions to Authorized Claimants if feasible, and allows Claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims. *See, e.g.,* Notice, at pp. 7–10. In addition, Class Members can choose to submit their Claim Form by mail or electronically, including via a Settlement-dedicated website maintained by the Claims Administrator. *Id.* at 6–7.

---

[10] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.

The process here is consistent with standard practice in securities litigation. *See, e.g., In re Innocoll* at *14 (preliminarily approving a securities class action settlement where the distribution process involved the use of proofs of claim and a plan of allocation that was "based on an objective formula that considers how many shares [claimants] owned, when the shares were purchased and for what price, and the estimated inflation of the price of the shares based on the alleged misstatements… [ensuring] that shareholders will recover based on the  extent of their individual injuries.") (cleaned up).

> **(iii)    The terms of the proposed award of attorneys' fees are reasonable.**

As disclosed in the Notice (Notice, at p. 11), Lead Counsel will apply, at the time of seeking final approval of the Settlement, for an award of (i) attorneys' fees of up to 35% of the Settlement Fund; plus (ii) reimbursement of litigation expenses incurred in connection with the prosecution and resolution of the Action in an amount for litigation expenses not to exceed $800,000.

At this preliminary stage the Court need not finally approve the fees or expenses. Rather, it need only determine that the proposal is reasonable for the purposes of providing Notice to the Class Members and setting the Settlement Hearing date.  Lead Counsel, who have litigated for ten years on a purely contingent basis, will not receive any fees or expenses until after the Court grants final approval of the fee and expense application.

As will be discussed more fully in Lead Counsel's motion for an award of attorneys' fees and litigation expenses, which will be filed prior to the Settlement Hearing, a proposed request for attorneys' fees of up to 35% of the Settlement Fund is reasonable in light of the relevant factors, including the results obtained and the work performed. *See generally In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) (discussing relevant factors for fee awards).

The $15 million recovery is an excellent result and well above the median recovery in comparable cases, as discussed above.  The quality of work performed was also excellent, as demonstrated by Lead Counsel's doggedness and success in, *inter alia*, defeating (in part) motions to dismiss the SAC, developing the evidence necessary to defeat (in large part) motions to dismiss the TAC, winning the motion to compel, and winning the Third Circuit interlocutory appeal. Yet, despite the excellent quality of work, Lead Counsel's fee request will represent a substantial discount of approximately 40% of their lodestar.  Finally, the request is within the range typically awarded in similar cases within the Third Circuit.  *See e.g., Dartell v. Tibet Pharm., Inc*., 2017 U.S. Dist. LEXIS 100872, at *26 (D.N.J. June 29, 2017) (awarding 1/3 fees in a "relatively small" securities class action where plaintiff achieved a recovery of about 13% of damages); *Yedlowski v. Roka Bioscience, Inc.*, 2016 U.S. Dist. LEXIS 155951, at *66 (D.N.J. Nov. 10, 2016) ("For smaller securities fraud class actions, courts within this Circuit have typically awarded

attorneys' fees of 30% to 35% of the recovery, plus expenses.") (citations and internal quotation omitted); *In re Ravisent Techs., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680, at *40 (E.D. Pa. Apr. 18, 2005) ("[C]ourts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses.") (citing cases).

### (iv)   Additional agreement required to be identified under Rule 23(e)(3).

Rule 23(2)(2)(C)(iv) also requires courts to consider any agreement among the parties outside of the settlement agreement. "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).  Paragraph 7.3 of the Stipulation expressly identifies that the Defendants shall have the option to terminate the Settlement if Class Members who in the aggregate purchased more than a certain number of shares of Orrstown Financial Services, Inc. common stock during the Class Period, timely and validly exclude themselves from the Class in accordance with and in the manner set forth in the Notice. Section 9 of the Notice also informs Class Members of the existence of such provision. Notice, at p. 10. Here, the percentage is set forth in a confidential "Supplemental Agreement".[11]  "This type of agreement is standard in securities class

---

[11] As is standard practice in securities class actions, the supplemental agreement is identified in the Stipulation, but its terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, 2018

action settlements and has little to no negative impact on the fairness of the settlement." *In re Innocoll* at *13.

### D. The Settlement Treats Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. As discussed above and set forth in Section 8 of the Notice, the Plan of Allocation apportions the Net Settlement Fund among Class Member who submit timely, valid claims in proportion to their losses calculated pursuant to the model developed in consultation with Plaintiff's damages expert. Notice, at pp. 7–10. The calculation of each Class Member's Recognized Loss under the Plan of Allocation is detailed in the Notice and, as disclosed therein (*id.*), will be based on several factors, including when the shares of Orrstown stock were purchased and sold, the purchase and sale price of the shares, and the estimated artificial inflation in the respective prices of the shares at the time of purchase and at the time of sale. *Id.* at pp. 7–8. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Loss. *Id.* Thus, it treats Class Members equitably relative to each other.

---

U.S. Dist. LEXIS 15092, at *33 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

Further, SEPTA, despite its years of service in this lawsuit, requests no incentive award, nor reimbursement of costs or expenses relating to the representation of the class as allowed by 15 U.S.C. §78u-4(a)(4), and will share in the recovery only in proportion to all other Class Members who submit valid, accepted claims.

## V.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS.

The Court should conditionally certify the Settlement Class. At this stage of the Action prior to a motion for class certification, the Court need only preliminarily determine that class treatment is appropriate. Fed. R. Civ. P. 23(e)(1); *In re Nat. Football League Players Concussion Inj. Litig.*, 775 F.3d 570, 586 (3d Cir. 2014). "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.* at 586.

The Court must determine that (1) the proposed class and class representatives meet all of the requirements of Rule 23(a); and (2) the case fits into one of the categories of Rule 23(b).

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a)

#### (i)   The Class Is Sufficiently Numerous and Ascertainable.

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable". Fed. R. Civ. P. 23(a)(1). This court "presume[s] joinder is

impracticable when the potential number of class members exceeds forty." *Allen v. Ollie's Bargain Outlet*, 37 F.4th 890, 896 ( 3d Cir. 2022) (citing *Mielo v. Steak'n Shake Operations Inc.*, 897 F.3d 467, 483-84 (3d Cir. 2018)). Here, the estimated class size is well in excess of forty shareholders. Plaintiff's consulting expert estimates that there are approximately 7 million shares in the Class, which were owned by thousands of Class Members; during the Class Period Orrstown's SEC filings reported approximately 3,000 shareholders of record annually. Donaldson-Smith Decl., at ¶ 30.

Further, the Class is defined by "objective" and "administratively feasible" criteria and is therefore ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 164 (3d Cir. 2015).

### (ii) There are Questions of Law or Fact Common to the Class.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). "Rule 23(a)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527–28 (3d Cir. 2004) (citing *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). This does not mean that all class members have the exact same claims—"for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alteration omitted).

25

Here, as discussed below in connection with the predominance requirement, there are multiple common questions. The commonality requirement is easily met.

### (iii)   The Class Representative's Claims are Typical of the Claims of the Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Warfarin* at 250 (quoting *In re Prudential* 148 F.3d 283, 311 (3d Cir. 1998)). Typicality exists where, among class representatives and class members, there is a "strong similarity of legal theories or where the claims arise from the same alleged course of conduct by the defendant." *Id.* Here, SEPTA's claims are substantially similar, if not identical, to those of all other Class Members.

Plaintiff purchased Orrstown common stock during the Class Period, including shares sold in the March 2010 public offering, at prices that were allegedly artificially inflated by Defendants' alleged false and misleading statements. There are no valid defenses unique to SEPTA. Thus, SEPTA's claims are typical of the class delineated for the proposed settlement.

26

### (iv)   The Class Representative and Counsel Will Fairly and Adequately Represent the Class.

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy test is two-pronged. First, the inquiry tests the qualifications of counsel to represent the class. Second, it unravels any conflicts of interests between the Class Representative and the class it seeks to represent. *In re Warfarin*, 212 F.3d at 250 (internal quotations omitted).

Here, SEPTA and Lead Counsel have already actively pursued the litigation for ten years. There are no conflicts of interest between SEPTA and Class Members. SEPTA retained knowledgeable and well-qualified counsel who have vigorously pursued the action from the beginning and have devoted considerable effort and resources on behalf of the class.

### B.   The Proposed Class Meets the Rule 23(b) Requirements.

In addition to the Rule 23(a) requirements, a class must meet the predominance and superiority requirements of Rule 23(b)(3). To certify a class under Rule 23(b)(3), the Court must find that:

> "[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Fed. R. Civ. P. 23(b)(3).

The proposed Class meets the predominance requirement of Rule 23(b)(3). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). Plaintiff and Class Members all purchased Orrstown common stock at artificially inflated prices based on uniform statements filed with the SEC and were subsequently harmed upon reveal of Defendants' alleged false and misleading statements. As the Supreme Court notes, predominance is "readily met" in cases involving securities fraud. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The requirement is readily met here.

The proposed Class also satisfies the superiority requirement of Rule 23(b)(3). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Ins. Co. of Am. (In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 316 (3d Cir. 1998). Here, it would be deleterious to the Class Members to pursue actions individually. The time and expense of litigation measured against the potentially minimal relief any individual may receive weighs in favor of certification of the Class. *See Gruber v. Price Waterhouse*, 117 F.R.D. 75, 80 (E.D. Pa. 1987) (granting class certification and finding that class action is appropriate where "a large number of investors may have

been harmed"). Additionally, if every Class Member diligently prosecuted their own claim against Orrstown, there would be significant strain on judicial resources. *See Utah Ret. Sys. V. Healthcare Servs. Grp., Inc.*, 2022 U.S. Dist. LEXIS 5841, at *14 (E.D. Pa. Jan. 12, 2022) (maintaining a class action in part because of the potential waste of judicial resources otherwise). Certification of the Class for purposes of this Settlement will allow every Class Member the opportunity to benefit from this litigation and will maximize judicial efficiency.

## VI.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A.  The Method of Notice is Adequate

Rule 23(e) requires that notice of the Settlement be provided to Class Members in such manner as the Court directs. To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

As outlined in the Stipulation, notice to the Class Members includes the following. The Claims Administrator will: (a) mail the Notice and Claim Form to all Class Members who can be reasonably identified using the Orrstown Notice

List[12] and to proprietary lists maintained by the Claims Administrator of over 1,400 banks, brokers and other nominees ("nominees"); (b) mail Notices and Claim Forms to the beneficial holders identified by nominees to the Claims Administrator, or provide the nominees copies of the Notice and Claim Form to send to the beneficial holders;[13] (c) post the Notice, Summary Notice and Settlement documents on a website dedicated to the Settlement maintained by the Claims Administrator;  and (d) cause the publication of the Summary Notice in *Investor's Business Daily* and disseminate the Summary Notice through PRNewswire, a national newswire service. Stipulation, ¶5.4. Courts routinely find these methods of notice sufficient. *See, e.g., In re Royal Dutch/Shell Transp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 124269, at \*34-35 (D.N.J. Dec. 8, 2008) (granting final approval of a settlement and holding that notice including direct mailing, publication on websites, and broad publication in newspapers "more than satisfie[d] due process and the requirements of Rule 23"). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication. *See In re Am. Bus. Fin.*

---

[12] Orrstown will provide Plaintiff and the Claims Administrator its transfer agent's list of record holders of Orrstown common stock during the Class Period (the "Orrstown Notice List"), to the extent such records are retrievable by the transfer agent(s).

[13] The Notice informs the nominees that they can be reimbursed out of the Settlement Fund solely for administrative costs actually incurred in connection with forwarding the Notice and which would not have been incurred but for the obligation to forward the Notice *up to $0.20 per record plus postage (if applicable),* upon submission of appropriate documentation to the Claims Administrator. *See* Notice, at p. 12.

*Servs. Noteholders Litig.*, 2008 U.S. Dist. LEXIS 95437, at *32 (E.D. Pa. Nov. 21, 2008) (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1985) (granting final approval of a settlement in part because notice included general publication and individual notice).

Defendants will provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq*. Stipulation ¶5.2.

### B.     The Content of the Notice is Adequate

As required by Rule 23(c)(2) and due process, the Notice will inform the Class Members of: (i) the claims alleged in the Action; (ii) the terms of the Settlement; (iii) the Plan of Allocation; (iv) Lead Counsel's intended application for an award of attorneys' fees and litigation expenses; (v) the right of and method for Class Members to opt out of the Class or object to the Settlement, Plan of Allocation, and/or the proposed attorneys' fees and expenses, and the deadlines by which to do so; and (vi) the date of the Settlement Hearing.

The proposed Notice contains all of the information required by Fed. R. Civ. P. 23, the PSLRA, and due process. The proposed Notice provides: (a) the rights of Class Members, including the manner in which objections may be lodged and exclusions may be requested and instructions on how to complete and submit a Claim Form to the Claims Administrator; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Claim Form;

(e) a description of the proposed Plan of Allocation; (f) the maximum fees and expenses that will be sought by Lead Counsel; (g) the definition of the Settlement Class; (h) the reasons the Parties have proposed the Settlement; (i) the estimated distribution per damaged share; (j) the Class's claims and issues; (k) the Parties' disagreement over damages and liability; (l) contact information for all counsel and the Court; and (m) the time, date, and location of the Settlement Hearing. *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Class Members that Lead Counsel will apply to the Court for attorneys' fees of up 35% of the Settlement Amount, and reimbursement of expenses of up to $800,000, all to be paid from the Settlement Fund. Lead Plaintiff will also file its motions for, and memoranda in support of, final approval of the Settlement and an award of fees and litigation expenses *prior to* the dates by which Class Members must object or opt-out of the Settlement, so that Class Members can make such decisions based on the detailed information and law that will be presented in those filings.

The Court should approve the proposed Notice as it abides by all requirements.

## VII.  SETTLEMENT HEARING AND PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiff respectfully proposes the following schedule of Settlement-related events. The schedule is keyed off of (i) the date the Court enters the [Proposed] Preliminary Approval Order and (ii) the date of the Settlement Hearing, at which the Court will consider and determine whether to grant final approval of the Settlement, the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and expenses, and consider valid and timely written objections.

Plaintiff requests that the Court schedule the Settlement Hearing for a date approximately 100 days from the entry of the Preliminary Approval Order.

These events and deadlines are set forth in the Preliminary Approval Order filed herewith, which is Exhibit A to the Stipulation.

| Event | Deadline Stated in Number of Days from Entry of Preliminary Approval Order ("PAO") or Days Prior to Settlement Hearing |
|---|---|
| Commence Mailing of the Notice and Proof of Claim ("Notice Date") | 21 days after PAO |
| Settlement Website with Notice and Proof of Claim Posted on Website | 21 days after PAO |
| Publication of Summary Notice in Investor's Business Daily and PR Newswire | 28 days after PAO |
| Plaintiff's Motion for Final Approval and Motion for Fees & Expenses | 35 days prior to the Settlement Hearing |

| Objections | Received no later than 21 days prior to the Settlement Hearing |
|---|---|
| Request for Exclusion | Postmarked no later than 21 days prior to the Settlement Hearing |
| Proof of mailing and publishing of notice served on Defs and filed with the Court | 7 days prior to the Settlement Hearing |
| Replies to Objections | 7 days prior to the Settlement Hearing |
| Deadline to Revoke Requests for Exclusion | 5 days prior to Settlement Hearing |
| Settlement Hearing | Approximately 100 days from Date of the PAO |
| Proof of Claim Filing | 120 Calendar Days from the Notice Date |

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the parties' agreed-upon form of proposed Preliminary Approval Order and schedule the Settlement Hearing.

Dated:  December 8, 2022              Respectfully submitted,

<u>/s/ Timothy N. Mathews</u>
Nicholas E. Chimicles
Kimberly Donaldson-Smith
Timothy N. Mathews
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

34

Telephone: (610) 642-8500
Fax: (610) 649-3633
nick@chimicles.com
kimdonaldsonsmith@chimicles.com
tnm@chimicles.com

*Counsel for Plaintiff Southeastern
    Pennsylvania Transportation Authority*

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy N. Mathews, a specially admitted member of the bar of this Court, hereby certify that a true and correct copy of *LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF AN ORDER PRELIMINARILY APPROVING SETTLEMENT, ESTABLISHING NOTICE PROCEDURES, AND SETTING SETTLEMENT HEARING DATE* was served on all counsel of record via the Court's ECF system on December 8, 2022.


By:  */s/ Timothy N. Mathews*
     Timothy N. Mathews

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.8(b)</u>

This brief complies with the word-count limitation of Local Rule 7.8(b) because this brief contains 7,954 words, excluding the cover page, table of contents, table of authorities, signature blocks, and certificates. Counsel relied on the word count feature of Microsoft Word in calculating this number.


*/s/ Timothy N. Mathews*
Timothy N. Mathews