## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY, on** | : | |
| **behalf of itself and all others similarly** | : | **No. 1:12-cv-00993** |
| **situated,** | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **ORRSTOWN FINANCIAL SERVICES,** | : | |
| **INC., et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Before the Court is Plaintiff Southeastern Transportation Authority ("SEPTA" or

"Plaintiff")'s Unopposed Motion for Entry of an Order Preliminarily Approving Settlement,

Establishing Notice Procedures, and Setting Settlement Hearing Date.  (Doc. No. 295.)  For the

reasons that follow, the Court will grant the motion and schedule a fairness hearing.

## I.      BACKGROUND

On May 12, 2012, SEPTA filed this putative class action pursuant to Federal Rule of

Civil Procedure 23(a) and (b)(3) against Orrstown Financial Services, Inc. ("Orrstown"),

Orrstown Bank (the "Bank"),[1] Anthony Ceddia, Jeffrey W. Coy, Jeffrey W. Embly, Bradley S.

Everly, Mark K. Keller, Andrea Pugh, Thomas R. Quinn, Jr., Gregory Rosenberry, Kenneth R.

Shoemaker, Glenn W. Snoke, John S. Ward, and Joel R. Zullinger (collectively, the "Orrstown

Defendants"), alleging securities violations in connection with Orrstown's March 2010 public

offering (the "Offering") of approximately 1.4 million shares of common stock, which raised

almost $40 million dollars.  (Doc. Nos. 1, 199 ¶¶ 1, 26-27.)  SEPTA's claims related to

Orrstown's report of significant losses for the fourth quarter of 2011, and the filing of its 2011

---

[1]  Orrstown is the Bank's parent company.  (Doc. No. 199 at 9.)

Annual Report on March 15, 2012, which disclosed that Orrstown had a "material weakness" in its internal controls and "did not maintain effective internal control over the process to prepare and report information related to loan ratings and its impact on the allowance for loan losses" as of December 31, 2011.  (Doc. No. 199 ¶ 2.)  SEPTA's claims also related to Orrstown's March 23, 2012 revelation that it had entered into an agreement with the Philadelphia Federal Reserve Bank and a consent order with the Pennsylvania Department of Banking, requiring Orrstown to revise its underwriting and credit administration policies and strengthen its credit risk management practices.  (Id. ¶¶ 6-7.)  On August 20, 2012, the Court appointed SEPTA as Lead Plaintiff and approved Chimicles Schwartz Kriner & Donaldson-Smith LLP[2] as Lead Counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA").  (Doc. No. 33.)

On March 4, 2013, SEPTA filed a First Amended Complaint (the "FAC"), adding as defendants Orrstown's auditor Smith Elliott Kearns & Company LLC ("SEK") and the underwriters involved in the Offering, Janney Montgomery Scott, LLC and Sandler O'Neill & Partners, L.P. (the "Underwriter Defendants"), and alleging that Defendants issued materially untrue and/or misleading statements and omissions in violation of both the Securities Act of 1933 and the Exchange Act of 1934.  (Doc. No. 40.)  SEPTA asserted claims on behalf of two classes: (1) the "Securities Act Class," i.e., persons and/or entities who purchased Orrstown common stock pursuant to, or traceable to, Orrstown's February 8, 2010 Registration Statement and March 23, 2010 Prospectus Supplement (the "Offering Documents") issued in connection with its secondary stock offering in March 2010 and were damaged thereby; and (2) the "Exchange Act Class," i.e., persons and/or entities who purchased Orrstown common stock on

---

[2]  The firm was previously known as Chimicles & Tikellis LLP.

the open market between March 15, 2010 and April 5, 2012 (the "class period")[3] and were damaged thereby.  (Id. ¶¶ 17-18.)  SEPTA acquired Orrstown stock pursuant to the Offering Documents for the March 2010 Offering and also purchased Orrstown common stock on the open market during the class period.  (Id. ¶ 25.)  Following extensive briefing, the Court dismissed SEPTA's claims for failure to state a claim upon which relief could be granted.  (Doc. No. 92.)

Subsequently, SEPTA, with the Court's permission, filed a Second Amended Complaint ("SAC") against the same Defendants.  (Doc. No. 101.)  The SAC asserted Securities and Exchange Act claims against the same Defendants, but this time focused on alleged materially false and/or misleading statements made by Defendants in the Offering Documents and through the class period pertaining to the "effectiveness of the [Orrstown Defendants'] internal controls over underwriting of loans, risk management, financial reporting and compliance with banking regulations."  (Id. ¶ 22.)

All Defendants moved to dismiss the SAC, and while their motions were pending, on September 27, 2016, the Orrstown Defendants filed a "Notice of Subsequent Event in Further Support of their Motion to Dismiss the Second Amended Complaint."  (Doc. No. 122.)  That filing pertained to the Securities and Exchange Commission ("SEC") investigation of Orrstown referenced in the SAC and informed the Court that the SEC had concluded its investigation and issued an "Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice, Making Findings and Imposing Remedial Sanctions and Cease-and-Desist Orders" ("SEC Order").  Orrstown attached the SEC

---

[3]  This period was subsequently extended from April 5, 2012 to April 26, 2012 in SEPTA's later-filed Third Amended Complaint ("TAC").  (Doc. No. 199 ¶ 29.)

Order to its filing, noting that it memorialized a settlement between the SEC and Orrstown, between the SEC and Orrstown's current Chief Executive Officer (Defendant Quinn) and current Chief Accounting Officer, and between the SEC and Orrstown's former Chief Financial Officer (Defendant Everly) and former Chief Credit Officer (Defendant Embly).  (Id. at 2.)  Pursuant to the SEC Order, Orrstown was required to pay a civil monetary penalty of $1 million, and Quinn, Everly, and Embly were required to pay civil penalties of $100,000 each.  (Id. at 21.)

On December 7, 2016, the Court granted the motions to dismiss as to SEK and the Underwriter Defendants and granted in part and denied in part the Orrstown Defendants' motion to dismiss.  (Doc. Nos. 126-27.)  In connection with its decision, the Court took judicial notice of the SEC Order and its findings.  The Court dismissed the SAC's Securities Act claims after concluding that SEPTA's allegations did not support a reasonable inference that the representations and certifications in Orrstown's 2009 Annual Report on Form 10-K as to the effectiveness of its "internal controls over financial reporting" were materially false and misleading when made.  (Doc. No. 126 at 23-33.)  The Court dismissed the Exchange Act claims as to SEK and the Individual Defendants, excepting Quinn, Everly, and Embly, but denied the motion to dismiss as to Orrstown and the Bank.  (Id. at 34-53.)  Accordingly, after the issuance of the Court's December 7, 2016 Order regarding the parties' motions to dismiss the SAC, the claims remaining in this case consisted of Exchange Act claims under Section 10(b) and rule 10b-5 against Orrstown, the Bank, Quinn, Everly, and Embly, as well as a Section 20(a) claim for control person liability against Quinn, Everly, and Embly.  (Id. at 49-51.)

The parties subsequently initiated discovery on the remaining Exchange Act claims. During this time Plaintiff received and reviewed over one million pages of documents from the Orrstown Defendants, SEK, and the Underwriter Defendants, as well as numerous third parties

(including many of the Bank's commercial borrowers and numerous Bank consultants).  (Doc. No. 297 at 3.)  Due to the technical nature of many of the documents, Plaintiff retained several banking and accounting consultants to assist it in its analysis of the documents.  (Id.)  Plaintiff deposed a representative of SEK and one of the Bank's consultants.  (Id.)  In addition, in December 2017 and January 2018, certain parties exchanged opening and rebuttal expert reports addressing issues relevant to class certification.  (Id. at 4.)  The Court notes that discovery involved substantial delays and Court intervention to address claims of privilege by Orrstown and banking regulators.  The details of the privilege claims and the extensive motion practice related to them are set forth in the Court's August 18, 2022 Memorandum and Order addressing SEPTA's renewed motion to compel (Doc. Nos. 277-78) and will not be repeated here.

In April 2019 SEPTA sought leave to file its operative pleading, the TAC (Doc. No. 182), incorporating facts obtained in discovery and reasserting Securities and Exchange Act claims previously dismissed against several Individual Defendants, SEK, and the Underwriter Defendants based upon information gathered during discovery in 2018.  After extensive briefing, the Court granted SEPTA's motion for leave to file the TAC in a February 14, 2020 Order. (Doc. Nos. 197-98.)  In so doing, the Court rejected Defendants' argument that the Securities and Exchange Act's respective statutes of repose barred SEPTA's reassertion of claims, rendering its effort to amend the operative complaint futile.  On February 24, 2020, Defendants filed motions to certify the Court's February 14, 2020 Order for interlocutory appeal.  (Doc. Nos. 201-02.)  In accordance with the Court's Order adopting their proposed briefing schedule (Doc. No. 203), Defendants filed motions to dismiss the TAC (Doc. Nos. 213, 215, 217), and completed briefing on the motions to dismiss on August 26, 2020.  The Court granted Defendants' motions to certify its Order for interlocutory appeal, finding that there existed substantial grounds for difference of

opinion on the issue of whether claims reasserted against the Defendants were barred by the respective statutes of repose (Doc. Nos. 229-30), the Third Circuit Court of Appeals granted their petitions for permission to appeal the February 14, 2020 Order pursuant to 28 U.S.C. § 1292(b), and Defendants filed a notice of appeal (Doc. Nos. 236, 253).

After requesting supplemental briefing and hearing argument, the Third Circuit issued its Opinion and Judgment affirming this Court's Order permitting the filing of the TAC on September 2, 2021.  (Doc. No. 264.)  Upon receipt of the Third Circuit's mandate, this Court scheduled oral argument on the motions to dismiss the TAC.  (Doc. No. 266.)  The parties thereafter filed a joint motion to continue the hearing to permit them to engage in private mediation.  (Doc. No. 267.)  The Court granted the motion (Doc. No. 268), and, on January 21, 2022, the parties filed a joint status report indicating that their mediation was unsuccessful and asking the Court to reschedule oral argument on the motions to dismiss the TAC.  (Doc. No. 269.)  The Court heard argument on the motions to dismiss on July 13, 2022, and, on August 18, 2022, issued a 156-page Memorandum and accompanying Order granting in part and denying in part Defendants' motions to dismiss the TAC.  (Doc. Nos. 276-77.)  That decision upheld the TAC's Securities Act claims asserted against Orrstown, the Bank, SEK, the Underwriter Defendants, and certain Individual Defendants, and upheld Exchange Act claims against Orrstown, the Bank, SEK, and certain Individual Defendants.  (Id.)  Also on that same date, as noted, supra, the Court issued a Memorandum and Order granting SEPTA's renewed motion to compel the production of certain documents withheld from production as confidential supervisory information protected by the bank examination privilege (Doc. Nos. 278-79), prompting Orrstown's production of the relevant documents and SEPTA's review of the same.

After Defendants filed answers to the TAC (Doc. Nos. 283-85), on October 5, 2022, the Court held a status conference with the parties, at which time they informed the Court that they planned to re-engage in settlement discussions (Doc. No. 297 at 6). Subsequently, the parties separately re-engaged with Mr. Robert Meyer, an experienced JAMS mediator, on several occasions to discuss their respective positions, and, on October 28, 2022, the parties engaged in a full-day mediation session with Mr. Meyer. (Id.) While the parties did not reach a settlement during this mediation session, they agreed to continue their discussions with the assistance of Mr. Meyer. (Id.) Thereafter, Mr. Meyer presented the parties with a mediator's proposal to assist them in coming to an agreement-in-principle to resolve this case. (Id.) The parties accepted Mr. Meyer's proposal and, on November 7, 2022, executed a memorandum of understanding setting forth their agreement-in-principle to resolve and settle this case in exchange for a total payment of $15 million to the proposed Class,[4] inclusive of fees and costs. (Id.) The parties then negotiated the terms of the Stipulation and Agreement of Settlement ("Stipulation"). (Id.)

The parties' Stipulation provides that Defendants will pay a total of $15 million ("Settlement Amount") in exchange for the release of all claims that were or could have been asserted relating to Defendants' conduct as set forth in the TAC. (Doc. No. 297-1 ¶¶ 2.1, 4.1-4.4.) Of the total Settlement Amount, Orrstown will pay $13 million and SEK will pay $2 million. (Id. ¶ 2.1.) The costs of notice to the Class and the costs of settlement administration ("Notice and Administration Fees"), court-approved attorneys' fees and litigation expenses, taxes, and any other Court-approved fees or expenses are to be paid from the Settlement Fund

---

[4] The "Class" is defined by the parties as "[a]ll Persons who purchased or otherwise acquired the common stock of Orrstown Financial Services, Inc. during the Class Period. Excluded from the Class are Defendants and their families, officers, affiliates, entities in which they have or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the Class are any Persons who timely and validly request exclusion from the Class, as approved by the Court." (Doc. No. 297-1 at 10.)

(which consists of the Settlement Amount plus any interest earned thereon).  (Id. ¶¶ 2.3, 1.32.)

The balance of the Settlement Fund is to be distributed pursuant to the proposed Plan of

Allocation to Class Members submitting timely, valid claims, and whose payments would equal

$10.00 or more.  (Id. ¶ 5.13.)  Any balance remaining after a reasonable period of time after the

initial distribution date will be reallocated among Authorized Claimants[5] in an equitable fashion,

if feasible.  (Id. ¶ 5.14.)  The Stipulation provides that any de minimis balance remaining in the

Net Settlement Fund will be distributed to MidPenn Legal Services, or a non-profit non-sectarian

organization chosen by the Court.  (Id.)

On December 8, 2022, SEPTA filed its Unopposed Motion for Entry of An Order

Preliminarily Approving Settlement, Establishing Notice Procedures, and Setting Settlement

Hearing Date.  (Doc. No. 295.)  By way of the instant motion, SEPTA seeks an Order that: (1)

preliminarily approves the proposed $15 million class action Settlement with Defendants; (2)

preliminarily certifies the proposed Class for purposes of the Settlement only; (3) preliminarily

appoints Plaintiff SEPTA to represent the Class; (4) preliminarily appoints Chimicles Schwartz

Kriner & Donaldson-Smith LLP as Class Counsel; (5) appoints a Settlement Claims

Administrator; (6) approves the form, content, and plan for dissemination of the long-form notice

("Notice"), Claim Form, and summary form of the Notice for publication ("Summary Notice"),

attached as Exhibits A-1, A-2, and A-3 to the Preliminary Approval Order (Exhibit A to the

Stipulation), respectively; (7) preliminarily approves the Plan for Allocation for the Net

Settlement Fund as set forth in the Notice; (8) establishes deadlines and procedures for Class

Members to opt-out or exclude themselves from the Class and Settlement or to object to the

Settlement, the Plan of Allocation, or Class Counsel's application for an award of attorneys' fees

---

[5]  Authorized Claimants are any Class Members whose claims for recovery have been allowed
pursuant to the terms of the Stipulation.  (Id. ¶ 1.1.)

and litigation expenses; and (9) schedules a final fairness hearing on the proposed Settlement. (Doc. No. 295 at 2.)

In connection with its unopposed motion, SEPTA submitted the following documents: a Proposed Order (Doc. No. 295-1); a Memorandum of Law in Support of Unopposed Motion (Doc. No. 296); and the Declaration of Kimberly M. Donaldson-Smith in Support of [SEPTA's] Unopposed Motion (the "Donaldson-Smith Declaration") (Doc. No. 297).  The Donaldson-Smith Declaration attaches the following documents:  Exhibit 1, Stipulation with four attached exhibits—Exhibit A, a Proposed Order Preliminarily Approving Class Action Settlement, Exhibit A-1, a Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Hearing ("Notice"), Exhibit A-2, a Proof of Claim and Release Form ("Claim Form"), and Exhibit A-3, a Summary Notice (Doc. No. 297-1); Exhibit 2, the Firm Resume of Chimicles Schwartz Kriner & Donaldson-Smith LLP (Doc. No. 297-2); and Exhibit 3, Kroll Settlement Administration Overview and Kroll Securities Overview (Doc. No. 297-3).[6]

## II.   LEGAL STANDARD

### A.   Class Action Settlement

"Review of a proposed class action settlement typically proceeds in two stages.  At the first stage, the parties submit the proposed settlement to the court, which must make 'a preliminary fairness evaluation.'"  In re Nat'l Football League Players' Concussion Inj. Litig., 961 F. Supp. 2d 708, 713-14 (E.D. Pa. 2014) (quoting MANUAL FOR COMPLEX LITIGATION

---

[6]  Where possible, the Court has referred to certain docket entries and definitions herein using the definitions set forth in the parties' Stipulation.  (Doc. No. 297-1 at 10-17.)

(FOURTH) § 21.632 (2004)).[7]  Upon a finding that the proposed settlement is preliminarily

acceptable, the Court directs notice to all class members who would be bound by the settlement,

providing them an opportunity to be heard, object to, and potentially opt out of the settlement.

See id. at 714.

Federal Rule of Civil Procedure 23(e) governs the preliminary approval process and

dictates the procedures that apply for review of a class action settlement.  See Fed. R. Civ. P.

23(e) (setting forth the "procedures [that] apply to a proposed settlement, voluntary dismissal, or

compromise"); see also In re Nat'l Football League Players Concussion Inj. Litig., 775 F. 3d

570, 580-81 (3d Cir. 2014) (explaining that Rule 23(e) "provides the procedures applicable to

settlements, voluntary dismissals, or compromises" in the context of class actions (citing Fed. R.

Civ. P. 23(e))).  Rule 23(e) imposes the following requirements as to the procedures applicable to

a proposed settlement: (1) that the Court "direct notice in a reasonable manner to all class

members who would be bound by the proposal"; (2) that, "[i]f the proposal would bind class

members, the [C]ourt [] approve it only after a hearing and only on finding that it is fair,

reasonable, and adequate"; (3) that "[t]he parties seeking approval [] file a statement identifying

any agreement made in connection with the proposal"; (4) that "[i]f the class action was

previously certified under Rule 23(b)(3), the [C]ourt may refuse to approve a settlement unless it

affords a new opportunity to request exclusion to individual class members who had an earlier

---

[7]  Section 21.632 of the Manual for Complex Litigation states that "[r]eview of a proposed class
action settlement generally involves two hearings.  First, counsel submit the proposed terms of
settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial
evaluation can be made on the basis of information already known, supplemented as necessary
by briefs, motions, or informal presentations by parties."  Here, the Court concludes that the
submissions by Plaintiff, coupled with the numerous documents that are part of the
comprehensive docket in this long-standing case, provide the Court with all of the information
necessary for it to preliminarily evaluate the fairness of the proposed settlement, and
accordingly, the Court finds a preliminary hearing unnecessary.

opportunity to request exclusion but did not do so"; and (5) that "[a]ny class member may object to the proposal if it requires court approval under this subdivision[,]" and that "[t]he objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." See Fed. R. Civ. P. 23(e).

Federal Rule of Civil Procedure 23(e)(2) describes the factors the Court must consider in determining whether a settlement is fair, reasonable, and adequate:

> **(A)** the class representatives and class counsel have adequately represented the class;
> **(B)** the proposal was negotiated at arms' length;
> **(C)** the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (vi) any agreement required to be identified under Rule 23(e)(3); and
> **(D)** the proposal treats class members equitably relative to each other.

See Fed. R. Civ. P. 23(e)(2).

A court's decision to preliminarily approve a proposed class action settlement "is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" See Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting Smith v. Prof. Billing & Mgmt. Servs., Inc., No. 06-cv-04453, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007)).  A preliminary approval determination "establishes an initial presumption of fairness."  See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig., 55 F.3d 768, 785 (3d Cir. 1995) (citing HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992)). Further, the preliminary approval process entails a determination of "whether notice to the [c]lass

and the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile." See WILLIAM RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 13:13 n.9 (5th ed. 2011) (citing Klug v. Watts Regulator Co., Nos. 8:15-cv-61, 8:16-cv-200, 2016 WL 7156478, at *6 (D. Neb. Dec. 7, 2016)).

### B.   Conditional Certification of the Settlement Class

Additionally, if "the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23." See Gates, 248 F.R.D. at 439 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)).  In this context, the Court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) (citing id. § 21.22).  The Court may conditionally certify a class for settlement purposes, "leaving the final certification decision for the fairness hearing." See Gates, 248 F.R.D. at 439.

Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" the following requirements are met:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

See Fed. R. Civ. P. 23(a).  As noted supra, the Court must also determine that the action satisfies at least one subsection of Rule 23(b).  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).  In the instant case, Plaintiff relies on Rule 23(b)(3), which is applicable when "the [C]ourt finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  See Fed. R. Civ. P. 23(b)(3).

## III.   DISCUSSION

Before reviewing the proposed Stipulation to determine if it should be preliminarily approved, the Court first examines whether the proposed Settlement Class satisfies the requirements of Rule 23.

### A.   Preliminary Certification of Class Action

#### 1.   Proposed Settlement Class Definition

The parties define the proposed "Class" for purposes of settlement, i.e., the "Settlement Class," as follows:

> [a]ll Persons who purchased or otherwise acquired the common stock of Orrstown Financial Services, Inc. during the Class Period.  Excluded from the Class are Defendants and their families, officers, affiliates, entities in which they have or had a controlling interest, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party.  Also excluded from the Class are any Persons who timely and validly request exclusion from the Class, as approved by the Court.

(Doc. No. 297-1 at 10.)  The "Class Period" is defined as "the period from March 15, 2010 through April 26, 2012, inclusive."  (Id.)

The Third Circuit has clarified that it views Rule 23 as containing an "ascertainability" requirement that must be met for class certification.  See Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015) (imposing an "ascertainability" requirement under Rule 23 and explaining that "[t]he ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition") (internal quotation marks and citation omitted)).

13

Upon review of the parties' proposed definition, the Court finds that it meets the Third

Circuit's Rule 23 "ascertainability" requirement for purposes of this preliminary determination.

Here the proposed Class is defined by "objective" and "administratively feasible" criteria,

consisting of all "Persons[8] who purchased or otherwise acquired the common stock of Orrstown

Financial Services, Inc. during the Class Period."  Accordingly, the Court proceeds to its

examination of whether the requirements set forth in Rule 23(a)(1) through (a)(4) are satisfied.

### 2.      Numerosity

The numerosity requirement is satisfied if "the class is so numerous that joinder of all

members is impracticable."  See Fed. R. Civ. P. 23(a)(1).  The Court "presume[s] joinder is

impracticable when the potential number of class members exceeds forty."  See Allen v. Ollie's

Bargain Outlet, 37 F.4th 890, 896 (3d Cir. 2022) (citing Mielo v. Steak'n Shake Operations, Inc.,

897 F.3d 467, 483-84 (3d Cir. 2018)).  Here, Plaintiff represents that the Settlement Class is in

excess of forty (40) shareholders, stating that its consulting expert "estimates that there are

approximately 7 million shares in the Class, which were owned by thousands of Class Members;

during the Class Period Orrstown's SEC filings reported approximately 3,000 shareholders of

record annually."  (Doc. No. 297 at 9.)  Upon consideration of this figure, the Court finds that,

for purposes of preliminary certification, the numerosity requirement is met.

### 3.      Commonality

The second element of Rule 23(a) requires that "there are questions of law or fact

common to the class."  See Fed. R. Civ. P. 23(a)(2).  "A putative class satisfies Rule 23(a)'s

---

[8]  "Person" is defined in the Stipulation as "an individual, corporation, limited liability
corporation, professional corporation, partnership, limited partnership, limited liability
partnership, limited liability company, joint venture, association, joint stock company, estate,
legal representative, trust, unincorporated association, government of any political subdivision or
agency thereof, and any business or legal entity and their spouses, heirs, predecessors,
successors, representatives, or assignees."  (Doc. No. 297-1 at 14, Stipulation ¶ 1.19.)

commonality requirement if 'the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)).  "Their claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." In re Nat'l Football League Players Concussion Inj. Litig., 821 F.3d 410, 427 (3d Cir. 2016) (omission in original) (quoting Dukes, 564 U.S. at 350).  Plaintiff asserts that Plaintiff and Class Members "all purchased Orrstown common stock at artificially inflated prices based on uniform statements filed with the SEC and were subsequently harmed upon reveal of Defendants' alleged false and misleading statements."  (Doc. No. 296 at 34.)  For purposes of preliminary certification, the Court finds that the commonality requirement is satisfied.  See Rodriguez, 726 F.3d at 383 (stating that "there may be many legal and factual differences among the members of a class, as long as all were subjected to the same harmful conduct by the defendant") (citing Baby Neal, 43 F.3d at 56).

### 4.  Typicality

Pursuant to Rule 23(a)(3)'s typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  See Fed. R. Civ. P. 23(a)(3).  In the Third Circuit, this requirement has been recognized as having a "low threshold."  See In re Nat'l Football League Players Concussion Inj. Litig., 821 F.3d at 428 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182-83 (3d Cir. 2001)).  Accordingly, "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories[] or where the claim arises from the same practice or course of conduct."  See id. (quoting In re Prudential Ins.

Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 311 (3d Cir. 1998)).  Here, Plaintiff

asserts that the typicality requirement has been satisfied because "Plaintiff purchased Orrstown

common stock during the Class Period, including shares sold in the March 2010 public offering,

at prices that were allegedly artificially inflated by Defendants' alleged false and misleading

statements" and "[t]here are no valid defenses unique to SEPTA"; therefore, "SEPTA's claims

are typical of the class delineated for the proposed settlement."  (Doc. No. 296 at 32.)  For

purposes of preliminary certification, the Court finds that Rule 23(a)'s typicality requirement is

satisfied.

### 5.        Adequacy of Representation

Rule 23(a) also imposes a fourth requirement: that "the representative parties will fairly

and adequately protect the interests of the class."  See Fed. R. Civ. P. 23(a)(4).  In order to

determine whether this requirement has been met, the Court must examine "(1) whether the

representatives' interests conflict with those of the class and (2) whether the class attorney is

capable of representing the class."  See Newton, 259 F. 3d at 185 (citing Gen. Tel. Co. of Sw. v.

Falcon, 457 U.S. 147, 157 (1982); Barnes v. Am. Tobacco Co., 161 F. 3d 127, 141 (3d Cir.

1998)).  Having reviewed the record in this case, the Court is persuaded that there is no conflict

of interest between Plaintiff and the members of the Settlement Class, and that the evident

competence and experience on the part of Plaintiff's counsel satisfies Rule 23(a)'s requirement

as to adequacy of representation.

### 6.        Rule 23(b)(3)

As noted, supra, in addition to examining whether the four requirements of Rule 23(a)

have been met, the Court must determine whether the proposed Settlement Class "satisf[ies] at

least one of the three requirements listed in Rule 23(b)."  See Dukes, 564 U.S. at 345.  In the

instant case, the parties refer to Rule 23(b)(3), which governs cases where "the questions of law or fact common class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  See Fed. R. Civ. P. 23(b)(3).

The first inquiry—referred to as the predominance inquiry—examines "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  See Sullivan v. DB Invs., Inc., 667 F.3d 273, 298 (3d Cir. 2011).  According to Plaintiff, this requirement is met because "Plaintiff and Class Members all purchased Orrstown common stock at artificially inflated prices based on uniform statements filed with the SEC and were subsequently harmed upon reveal of Defendants' alleged false and misleading statements"; further, Plaintiff maintains that "predominance is 'readily met' in cases involving securities fraud."  (Doc. No. 296 at 34) (quoting Windsor, 521 U.S. at 625).  For purposes of preliminary certification, the Court is satisfied that common questions surrounding Defendants' alleged false and misleading statements and the Class Members' reliance on those statements in connection with their purchase of Orrstown common stock appear to predominate over individual questions of law or fact.  See Sullivan, 667 F.3d at 297-98; In re Linerboard Antitrust Litig., 305 F.3d 145, 163 (3d Cir. 2002).

The second focal point for purposes of Rule 23(b)(3)—the superiority inquiry—requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication."  See In re Cmty. of N. Va. Mortg. Lending Pract. Litig., 795 F.3d 380, 409 (3d Cir. 2015) (quoting In re Cmty. Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005)).  As to this prong, Plaintiff asserts that "it would be deleterious to the Class

members to pursue actions individually" because "[t]he time and expense of litigation measured

against the potentially minimal relief any individual may receive weighs in favor of certification

of the Class." (Doc. No. 296 at 34.) In addition, Plaintiff maintains that "if every Class Member

diligently prosecuted their own claim against Orrstown, there would be significant strain on

judicial resources." (Id. at 35.) Having considered these arguments, as well as the pertinent

authority, the Court agrees that in this case, resolution through class action settlement presents "a

more desirable outcome for the class than individualized litigation." See In re Gen. Motors

Corp., 55 F.3d at 796; see also Utah Ret. Sys. v. Healthcare Servs. Grp., Inc., No. 19-cv-01227,

2022 WL 118104, at *5 (E.D. Pa. Jan. 12, 2022) (approving settlement class action in part

because of the potential waste of judicial resources otherwise).

 In light of the Court's conclusion that the requirements set forth in Rules 23(a) and

23(b)(3) have been met on a preliminary basis, the Court will preliminarily certify the proposed

Settlement Class. Accordingly, the Court turns to an analysis of whether preliminary approval of

the proposed Stipulation is appropriate.

### B. Preliminary Approval of Stipulation

 As noted by Plaintiff and detailed above, Rule 23(e)(2), as amended in 2018, sets forth

four factors to be considered by the Court in determining whether a settlement is fair, reasonable,

and adequate. The 2018 Advisory Committee's Note to Rule 23 clarifies that these factors are

the "core concerns" animating a determination as to the fairness of a proposed settlement but do

not replace or displace other factors traditionally applied by courts in conducting such an

assessment. See Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. In

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), the Third Circuit articulated a list of nine (9)

factors to consider in connection with a class action settlement: "(1) the complexity, expense and

likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the

proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7)

the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of

the settlement fund to a possible recovery in light of all the attendant risks of litigation." See id.

(cleaned up) (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)).[9]

These factors significantly overlap with the Rule 23(e)(2) factors; accordingly, the Court

addresses each of the Rule 23(e)(2) factors below while noting the Girsh factors, where

applicable.

### 1.    Whether Plaintiff and Its Counsel Have Adequately Represented the Settlement Class

The Court agrees with Plaintiff's characterization of its representation of the interests of

the proposed Settlement Class members as "relentless[]" and "effective[]."  (Doc. No. 296 at 19.)

As noted by Plaintiff, this litigation has been pending for more than a decade, and has involved:

significant investigation, the preparation of four lengthy complaints, voluminous briefing on

multiple rounds of motions to dismiss, extensive document discovery and motion practice related

to that discovery, an interlocutory appeal, and participation in the mediation process and ultimate

---

[9]  The Third Circuit expanded on the Girsh factors in In re Prudential Ins. Co. Am Sales Prac. Litig. Agent Actions, 148 F.3d 283, 323 (3d Cir. 1998).  The Prudential factors are: (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; (2) the existence and probable outcome of claims by other classes and subclasses; (3) the comparison between the results achieved by the settlement for the individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; (4) whether class or subclass members are accorded the right to opt out of the settlement; (5) whether any provisions for attorneys' fees are reasonable; and (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.  See id.

negotiation of the Stipulation.  Even the most cursory review of the docket in this matter reflects the vigorous advocacy and evident competence of Plaintiff as representative of the Settlement Class and its counsel.  Accordingly, this factor weighs strongly in favor of approval of the Stipulation.[10]

## 2.   Whether the Settlement Is the Result of Good Faith, Arm's Length Negotiations

In the instant case, as discussed above, in late 2021, while the motions to dismiss the TAC and renewed motion to compel remained pending, the parties engaged the services of Robert Meyer, an experienced mediator with JAMS,[11] and, after exchanging mediation briefs, participated in an all-day mediation on January 19, 2022.  (Doc. No. 297 at 4-5.)  After the Court issued its Orders granting in part and denying in part Defendants' motions to dismiss the TAC (Doc. Nos. 276-77) and granting Plaintiff's renewed motion to compel the production of documents (Doc. Nos. 278-79), the parties decided to re-engage in settlement discussions with Mr. Meyer (Doc. No. 297 at 5-6).  Their initial communications with him culminated in another full-day mediation session on October 28, 2022, after which the parties agreed to continue discussions with the assistance of Mr. Meyer.  (Id. at 6.)  Those discussions resulted in a mediator's proposal to assist the parties in achieving an agreement-in-principle to settle this action.  (Id.)  The parties ultimately accepted the proposal of Mr. Meyer and executed a

---

[10]  The Court notes that this factor overlaps with the third Girsh factor—the stage of the proceedings and amount of discovery completed.

[11]  Plaintiff represents that "[i]n addition to extensive experience mediating settlements of complex litigation, Mr. Meyer has specifically mediated settlements in numerous securities lawsuits involving both Fortune 500 companies and start-ups, in actions that involve Securities Act and Exchange Act claims."  (Doc. No. 297 at 5.)

memorandum of understanding setting forth their agreement-in-principle to settle this action in exchange for a payment of $15 million to the Class, inclusive of fees and costs.  (Id.)

The above sequence of events demonstrates that the settlement reached between the parties resulted from an extensive good faith, arm's length negotiation conducted with the assistance of a mediator experienced in mediating complex litigation, specifically lawsuits involving securities claims.  See Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").  In addition, the Court finds it apparent that Plaintiff as well as Defendants have been ably represented by counsel experienced in complex litigation.  (Doc. No. 297-2.)  The Court therefore easily concludes that the proposed Settlement is the result of good faith, arm's length negotiations, and accordingly, this factor weighs in favor of approval.  The Court turns to an assessment of the terms of the proposed Settlement.

### 3.      Whether the Relief Provided to the Class Is Adequate[12]

Rule 23(e) provides four subfactors for the Court to consider in connection with a determination as to whether relief provided to the Class is adequate, as follows:

> (i) the costs, risks, and delays of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

See Fed. R. Civ. P. 23(e)(2)(C).

---

[12]  The Court notes that this factor overlaps with the eighth and ninth Girsh factors, which are: "the range of reasonableness of the settlement fund in light of the best possible recovery," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  In addition, it relates to the first Girsh factor, which considers the "complexity, expense, and likely duration of the litigation," and the fourth and fifth Girsh factors, which assess the risks of establishing liability and damages.

As an initial matter, the Court notes that the proposed Settlement provides for a $15 million Settlement Amount, which is a significant recovery.  The $15 million figure represents approximately 29 to 36% of the maximum damages estimated by Plaintiff's expert, which is in the range of $42 to 52.5 million.  (Doc. No. 297 at 7.)  This recovery significantly exceeds the median recovery—7.2 to 7.3%—in cases involving 10b-5 claims with $25 to 74 million in estimated damages, according to a recent Cornerstone Research study.  See Cornerstone Research, Securities Class Action Settlements: 2021 Review and Analysis, at Figure 5, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf; see also In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig., No. 17-cv-00341, 2022 WL 717254, at *4 (E.D. Pa. Mar. 10, 2022) (finding that a "12% [recovery of damages] is not an unreasonable recovery, given the 'costs, risks, and delay of trial and appeal' for both sides"); Stevens v. SEI Invs. Co., No. 18-cv-04205, 2020 WL 996418, at *6 (E.D. Pa. Feb. 28, 2020) (finding that a 31% recovery of total calculated damages was a "significant settlement" that "substantially outweigh[ed] the mere possibility of future relief"); In re PNC Fin. Servs. Grp., Inc., Sec. Litig., 440 F. Supp. 2d 421, 436 (W.D. Pa. 2006) (approving a settlement recovery of 12% of calculated total damages).  The Court addresses each of the four Rule 23(e)(2)(C) factors in turn.

With regard to the costs and risks of trial and appeal, the Court notes that the substantial benefit of the $15 million recovery must be weighed against the risks posed by continued litigation.  Here, those litigation risks and costs include the completion of discovery, securing class certification, defending motions for summary judgment, and defending expert opinions, all before proceeding to trial.  At trial, Plaintiff would have to rely extensively on expert witnesses on issues of accounting, loss causation, and damages.  Absent this settlement, the case is likely to

continue to be litigated for several years and cost hundreds of thousands of dollars to prosecute. In addition, there is no guarantee of success on Plaintiff's claims, as Defendants have proffered numerous affirmative defenses to Plaintiff's claims.  As noted by Plaintiff, this Settlement avoids those risks while at the same time providing a substantial recovery for the Settlement Class.

Regarding the method of processing claims and distributing relief to the members of the Class, Plaintiff proposes that Kroll Settlement Administration LLC as Claims Administrator collect and process claims in accordance with the procedures set forth in the Plan of Allocation, which is contained in Section 8 of the Notice to be sent to Class Members (Doc. No. 297-1 at 67, Exhibit A-1 to the Stipulation) and in the Proof of Claim and Release form ("Claim Form") (Doc. No. 297-1 at 74-79, Exhibit A-2 to the Stipulation).  Plaintiff represents that the Plan of Allocation was developed in connection with one of Plaintiff's experts and is designed to provide for distribution of the Net Settlement Fund to Class Members who submit timely, valid claims accepted by the proposed Claims Administrator in proportion to their Recognized Claim Amount.  (Doc. No. 296 at 24.)  The Court recognizes that the purpose of the Plan of Allocation is to distribute the Net Settlement Fund to Authorized Claimants based on their respective alleged economic losses as a result of Defendants' alleged misrepresentations and/or omissions, as opposed to any losses caused by market-wide factors or other factors unrelated to the alleged misrepresentations and/or omissions.  Accordingly, the Plan of Allocation takes into consideration the dates on which the public disclosure of relevant information occurred and the market's reaction to that information as reflected in the trading price of Orrstown common stock.

Further, the Notice's requirement that Class Members file a Claim Form is standard and appropriate in this case and provides for subsequent distributions to Authorized Claimants if feasible; in addition, it permits Claimants the ability to cure any deficiencies in their claims or

request that the Court review a denial of their claims.  (Doc. No. 297-1 at 67-70.)  The Notice

permits Class Members to submit Claim Forms by mail or electronically, including via a website

maintained by the proposed Claims Administrator and dedicated to the Settlement in this case.

(Id. at 66-67.)

Upon consideration of the above, the Court concludes that the proposed Plan of

Allocation and process for the submission of claims by Class Members is consistent with

standard practice in securities class actions.  See In re Innocoll, 2022 WL 717254, at *5

(preliminarily approving a securities class action where the distribution process involved the

submission of proofs of claim and a plan of allocation "based on an objective formula that

considers how many shares owned, when the shares were purchased and for what price, and the

estimated inflation of the price of the shares based on the alleged misstatements" so as to

"ensure[] that shareholders will recover 'based on the . . . extent of their [individual] injuries'")

(quoting In re Ikon Office Sols., Inc., Sec. Litig., 194 F.R.D. 166, 184 (E.D. Pa. 2000) (second

alteration in original)).

Regarding the issue of a proposed award of attorneys' fees, as disclosed in the proposed

Notice to the Class Members, Lead Counsel will apply to the Court for an award of attorneys'

fees in an amount up to 35% of the Settlement Fund plus reimbursement of litigation expenses

incurred in an amount not to exceed $800,000.  (Doc. Nos. 296 at 26, 297-1 at 71.)  The Court

notes that its role at this preliminary stage is not to approve those amounts but rather to simply

determine that the proposal is reasonable for purposes of providing Notice to Class Members and

scheduling a final fairness hearing.  The Court notes that, as discussed supra, the Settlement

Amount is a significant amount well above the median recovery in comparable cases and reflects

Plaintiff's counsel's decade-long relentless and effective representation of the interests of the

Settlement Class, which involved: developing significant amounts of evidence, (largely) prevailing on the motions to dismiss the TAC, succeeding on the motion to compel, and prevailing on the Third Circuit interlocutory appeal.  The Court concludes that Lead Counsel's proposed request appears reasonable for purposes of Notice to the Class Members, as it is within the range typically awarded in similar cases in this Circuit.  See, e.g., Dartell v. Tibet Pharm., Inc., No. 14-cv-03620, 2017 WL 2815073, at *9 (D.N.J. June 29, 2017) (awarding 1/3 fees in a "relatively small" securities class action where plaintiff achieved a recovery of about 13% of damages); Yedlowski v. Roka Bioscience, Inc., No. 14-cv-08020, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) (stating that "[f]or smaller securities fraud class actions, courts within this Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses") (internal quotation marks and citation omitted); In re Ravisent Techs., Inc. Sec. Litig., No. 00-cv-01014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (same).

With regard to any agreement under Rule 23(e)(3), the parties' Stipulation references a separate agreement between Plaintiff and Defendants to the effect that Defendants can terminate the Settlement if Class Members who in the aggregate purchased more than a certain number of shares of Orrstown Financial Services, Inc. common stock during the Class Period timely and validly exclude themselves from the Class, in accordance with the manner prescribed by the Notice.[13]  (Doc. No. 297-1 at 30, Stipulation ¶ 7.3.)  The proposed Notice also informs the Class Members of this separate agreement.  "This type of agreement is standard in securities class

---

[13]  While the separate agreement is identified in the Stipulation, Plaintiff represents that "its terms are confidential to avoid the creation of incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement."  (Doc. No. 296 at 28) (citing Hefler v. Wells Fargo & Co., No. 16-cv-05479, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) (stating that "[t]he existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair")).

action settlements and has little to no negative impact on the fairness of the settlement." In re Innocoll, 2022 WL 717254 at *5 (internal quotation marks and citation omitted).

Considering all of these factors as a whole, the Court finds that they clearly support a conclusion that the relief provided by the Settlement is adequate. The Court turns to an assessment of the final Rule 23(e)(2)(C) factor.

### 4. Whether the Settlement Treats Class Members Equitably Relative to Each Other

As noted above, Rule 23(e)(2)(D) asks courts to determine whether a settlement treats class members equitably relative to one another. Here, the Plan of Allocation apportions the Net Settlement Fund among Class Members who timely submit valid claims in proportion to their losses, all as calculated pursuant to the model developed in consultation with Plaintiff's damages expert. (Doc. No. 297-1 at 67-70.) As detailed in the Notice, the amount to be received by each Class Member is dependent on multiple factors, including the timing of the purchase and sale of the shares, the purchase and sale price of the shares, and the estimated artificial inflation in the respective share prices at the time of purchase and sale. (Id.) Accordingly, the Net Settlement Fund will be allocated to Class Members on a pro rata basis determined by the relative size of their loss. The Court finds that this Plan of Allocation treats Class Members equitably relative to each other, as required by Rule 23(e)(2)(D).[14] The Court turns to the issue of the proposed form and method of notice to the Settlement Class.

---

[14] In addition, the Court notes SEPTA's representation that it seeks no incentive award or reimbursement of costs and expenses related to its representation of the class, as permitted by 15 U.S.C. § 78u-4(a)(4), and will share in the recovery only in proportion to all other Class Members who submit valid claims. (Doc. No. 296 at 30.)

### C.      Approval of Proposed Form and Method of Notice to Class

With regard to the proposed form and method of notice directed to members of the

Settlement Class, Federal Rule of Civil Procedure 23(c)(2)(B) requires that "the Court [] direct to

class members the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort."  See Fed. R. Civ. P.

23(c)(2)(B).[15]  Under Rule 23(c)(2)(B), therefore, "[t]he notice must clearly and concisely state

in plain, easily understood language" the following:

- (i)    the nature of the action;
- (ii)   the definition of the class certified;
- (iii)  the class claims, issues, or defenses;
- (iv)   that a class member may enter an appearance through an attorney if the member so desires;
- (v)    that the court will exclude from the class any member who requests exclusion;
- (vi)   the time and manner for requesting exclusion; and
- (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

See Fed. R. Civ. P. 23(c)(2)(B).  Moreover, Rule 23(h) requires that "[n]otice of the motion [for

attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class

members in a reasonable manner."  See Fed. R. Civ. P. 23(h)(1).  Due process demands "that

notice be 'reasonably calculated, under all the circumstances, to apprise the interested parties of

the pendency of the action and afford them an opportunity to present their objections.'"  See In re

---

[15] In a similar vein, Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the [C]ourt will likely be able" both to "approve the proposal under Rule 23(e)(2); and [] certify the class for purposes of judgment on the proposal."  See Fed. R. Civ. P. 23(e)(1)(B).  "The Rule 23(e) notice is designed to summarize the litigation and the settlement and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'"  In re Prudential Ins., 148 F.3d at 327 (quoting RUBENSTEIN ET AL., supra, § 8.32 at 8-109).

Nat'l Football League Players Concussion Inj. Litig., 821 F.3d at 435 (quoting Mullane v. Cent.

Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

In connection with the instant motion, and as reflected in the Stipulation, Plaintiff

proposes the following method to provide notice to the Settlement Class:

> The Claims Administrator[16] will: (a) mail the Notice and Claim Form to all Class
> Members who can be reasonably identified using the Orrstown Notice List[] and
> to proprietary lists maintained by the Claims Administrator of over 1,400 banks,
> brokers and other nominees ("nominees"); (b) mail Notices and Claim Forms to
> the beneficial holders identified by nominees to the Claims Administrator, or
> provide the nominees copies of the Notice and Claim Form to send to the
> beneficial holders;[] (c) post the Notice, Summary Notice and Settlement
> documents on a website dedicated to the Settlement maintained by the Claims
> Administrator; and (d) cause the publication of the Summary Notice in Investor's
> Business Daily and disseminate the Summary Notice through PRNewswire, a
> national newswire service.

(Doc. No. 296 at 35-36) (citing Doc. No. 297-1 at 24, Stipulation ¶ 5.4).  The Court is satisfied

that the proposed method of notice, including both individual notice and general publication,

complies with the requirements of Rule 23 and the standards of due process.  See, e.g., In re

Royal Dutch/Shell Transp. Sec. Litig., No. 04-cv-00374, 2008 WL 9447623 at *11 (D.N.J. Dec.

9, 2008) (granting final approval of a settlement and holding that notice including direct mailing,

publication on websites, and publication in newspapers "more than satisfie[d] due process and

the requirements of Rule 23").[17]

---

[16]  Plaintiff proposes the appointment of Kroll Settlement Administration, LLC ("Kroll") as the
Claims Administrator for the Settlement.  Plaintiff represents that "Kroll has extensive
experience in serving as the notice and claims administrator in complex class actions (among
others) and specifically in federal securities class actions."  (Doc. No. 297 at 8.)  Plaintiff states
that Kroll will "carry out the Notice plan (mailing the Notice and publishing the Summary
Notice) and will collect and process claims in accordance with the processes set forth in the Plan
of Allocation."  (Id.)

[17] In addition, pursuant to the Stipulation and the Class Action Fairness Act, on December 15,
2022, Defendants filed their "Report on Mailing of Notice of Proposed Settlement in Accordance
with 28 U.S.C. § 1715 and Settlement Agreement Paragraph 5.2" (Doc. No. 298), attesting to
their compliance with the Class Action Fairness Act's requirement that they "serve upon the

Further, having reviewed the proposed Notice (Doc. No. 297-1 at 60-72), the Court is satisfied that its form and substance meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e)(1), as well as the PSLRA and due process.  It informs the Class Members of the following: (a) the rights of the Class Members, including instructions as to how objections may be lodged, exclusions may be requested, and the completion and submission of a Claim Form to the Claims Administrator; (b) the nature, history, and status of this litigation; (c) the proposed Settlement; (d) a description of the proposed Plan of Allocation; (e) the maximum fees and expenses to be sought by counsel; (f) the definition of the Settlement Class; (g) the basis for the proposed Settlement; (h) the estimated distribution per damaged share; (i) the Class's claims; (j) the Parties' disagreement over damages and liability; (k) contact information for all counsel and the Court; and (l) the time, date, and location of the Settlement Hearing.  See 15 U.S.C. § 78u-4(a)(7)(A)-(F).

In addition, with regard to the requirements of Rule 23(h), the Notice informs Class Members that Lead Counsel will seek attorneys' fees of up to 35% of the Settlement Amount, and reimbursement of expenses of up to $800,000, all to be paid from the Settlement Fund. Plaintiff also represents that it will "file its motions for, and memoranda in support of, final approval of the Settlement and award of fees and litigation expenses prior to the dates by which Class Members must object or opt out of the Settlement, so that Class Members can make such decisions based on the detailed information and law that will be presented in those filings." (Doc. No. 296 at 38.)

---

appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement" (id. at 2).

Upon consideration of the foregoing, the Court will approve the proposed settlement Notice and appoint Kroll Settlement Administration, LLC as Claims Administrator for the Settlement.

### D.     Appointment of Class Counsel and Class Representative

Plaintiff's motion also seeks the appointment of Chimicles Schwartz Kriner and Donaldson-Smith LLP as Lead Counsel and itself as Lead Plaintiff to represent the Settlement Class.  (Doc. No. 295.)  The Court notes that "the application [for appointment as class counsel] is generally submitted as part of the certification motion."  See MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.273 (2004).  In fact, the Third Circuit has stated that "a district court's decision to certify a class must precede the appointment of class counsel."  See Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010)); see also RUBENSTEIN ET AL., supra, § 3.84 ("[I]t is clear that a court must appoint class counsel at the same time it certifies the class.").

By Memorandum Order dated May 20, 2012, the Court granted Plaintiff's motion to serve as Lead Plaintiff in this putative class action pursuant to the Private Securities Litigation Reform Act.  (Doc. No. 33.)  In that Memorandum Order, the Court also approved Plaintiff's selection of Chimicles & Tikellis LLP to serve as Lead Counsel.  (Id.)  Accordingly, pursuant to Rule 23, and for purposes of Settlement only, the Court will preliminarily appoint Plaintiff as Class Representative and preliminarily appoint Chimicles Schwartz Kriner & Donaldson-Smith LLP as Lead Counsel for the Settlement Class.

## IV.   CONCLUSION

For the reasons stated above, the Court will grant Plaintiff's unopposed motion for preliminary approval of class action settlement (Doc. No. 295) and will preliminarily certify the proposed Settlement Class.  The Court will also approve the proposed Notice to the Settlement

Class, and the appointment of Kroll Settlement Administration, LLC to serve as Claims

Administrator for the Settlement, and will schedule a Settlement Hearing.  An appropriate Order

follows.